# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**08 C 242**

| | |
|---|---|
| **LG ELECTRONICS U.S.A., INC.,** a subsidiary of LG Electronics, Inc., a Korean company, | ) ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| **WHIRLPOOL CORPORATION,** | ) ) ) |
| Defendant. | ) ) ) |

Civil Action No. _____   **JUDGE ST. EVE**
**MAGISTRATE JUDGE MASON**

JURY DEMAND

## REDACTED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF LG ELECTRONICS U.S.A., INC.'S MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiff LG Electronics U.S.A., Inc. ("LG USA") seeks a preliminary injunction against its leading direct competitor in the production, distribution, and sale of clothes dryers, Defendant Whirlpool Corporation ("Whirlpool" or "Defendant"), enjoining Defendant from using, airing, disseminating or causing to be used, aired or disseminated, the name Duet® Steam Dryer and any television, print, online, or other advertisements stating that the Duet® Steam Dryer utilizes steam. Excerpts from the website, www.whirlpool.com, are attached hereto as Exhibit 1. Whirlpool's conduct constitutes a willful attempt to deceive consumers and damage its competition by falsely claiming that its dryers have the capability of creating steam, when, in fact, they do not. This deception comes at the expense of both consumers and LG USA, which is in the process of entering the market in the United States with a dryer that actually uses steam technology.

The Duet® Steam Dryer, which was introduced by Defendant in October 2007, is accompanied by advertising claims which are literally false. These false claims are: (1) "Naturally steam out wrinkles and odors with the touch of a button. The new Duet® Steam dryer features two cycles – Enhanced Touch-Up and Quick Refresh – that infuse clothing with steam to refresh and dewrinkle;" (2) "The pure power of steam – Nothing beats the power of steam to get rid of wrinkles. The Duet® Steam dryer naturally steams out wrinkles in just minutes, while removing any lingering odors;" (3) The Duet® Steam Dryer (i) "naturally steams away tough stains," (ii) "steams out tough wrinkles and odors," and (iii) uses the "pure power of steam;" (4) "How does the addition of steam work to enhance cleaning performance?" The Duet® Steam Dryer: (i) provides the "unique benefits of steam" and (ii) provides a setting of "20 minutes of steam and tumbling"; and (5) "The Whirlpool Duet® Steam laundry pair, a whole new way to care for your clothes from start to finish, with the pure power of steam. Just another laundry innovation from Whirlpool." (*See* Ex. 1).

Whirlpool's use of the word "steam" in these advertising claims and in the name of its Duet® Steam Dryer is literally false and misleading because the Duet® Steam Dryer does not use steam, but instead uses a mist of cold water sprayed into a warm dryer drum. As set forth below in more detail, steam and mist (that vaporizes and evaporates in the warm air of the dryer) are thermodynamically different substances and have different characteristics. Thus, Defendant's claims are false and misleading in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, and the Illinois common law of unfair competition. Despite LG USA's written demand that Defendant cease and desist from any further use of the word "steam" in connection with its Duet® Steam Dryer

and related nationwide television, print, and online advertising, and immediately destroy any inventory of marketing materials using the word "steam", Defendant refuses to cease its unlawful practices and has persisted in using the word "steam" in the name of its dryer and related nationwide advertising. (*See* Letters, attached hereto as Exhibit 2).

By reason of Defendant's false and misleading advertising, LG USA is suffering and continues to suffer irreparable harm to its business, goodwill and reputation, particularly because LG USA and Whirlpool are direct competitors in the clothes dryer market. The immediacy of the irreparable harm facing LG USA is readily apparent, as LG USA has recently launched its Tromm Steam Dryer, which is equipped with a steam generator and infuses true steam into the dryer drum.[1] Accordingly, LG USA requests and is entitled to a preliminary injunction to prevent further irreparable harm.

## FACTUAL BACKGROUND

**A.  THE PARTIES**

LG USA is a global leader of home appliances with its principal place of business in New Jersey, and is a subsidiary of LG Electronics, Inc. ("LG"), a Korean corporation. Together, the two entities are global leaders in the manufacture and distribution of consumer electronics, home appliances, and mobile communications equipment. LG employs more than 82,000 people and has 81 subsidiaries around the world.

Whirlpool is a Delaware corporation with its principal place of business in Michigan. It manufactures and markets home appliances and related products, including laundry

---

[1] LG USA sent a cease and desist letter to Whirlpool on December 17, 2007, requesting a response by December 28. On December 20, LG USA received a request from counsel for Whirlpool for an extension of time, due to schedules over the holiday season. LG USA agreed to an extension of time for Whirlpool's response through January 9, and commenced this action on January 10. (*See* Ex. 2).

appliances, refrigerators, and dishwashers. Whirlpool's various brand names include Whirlpool, Maytag, Kitchen Aid, Roper, Estate, Admiral, and Speed Queen.

LG USA and Whirlpool are direct competitors in the home appliance industry, including direct competitors in the clothes washer and clothes dryer segment. (Declaration of Tae Jin Lee ("Lee Decl.") ¶¶ 11, 29, attached hereto as Exhibit 3). LG USA and Whirlpool's washers and dryers are sold in the same channels of commerce, and the same retail outlets and stores, in every state in the United States. (*Id.* ¶ 11).

**B.  THE STEAM DRYER MARKET**

Dryers utilizing steam have benefits separate and distinct from traditional dryers. Steam removes wrinkles, static, and odors better than a traditional dryer. (Declaration of Chul Jin Choi ("Choi Decl.") ¶ 7, attached hereto as Exhibit 4). A steam dryer also uses less energy than drying a load in the traditional way. Given the added benefits of utilizing steam in the dryer, it is anticipated that the steam dryer market will become significant. (Ex. 3 ¶ 12). With these benefits comes increased cost, as the creation of steam requires additional components in the dryer. (Ex. 4 ¶ 17; Ex. 3 ¶ 13). Apart from Whirlpool's claimed use of steam in the Duet® Steam Dryer, the only sellers of dryers capable of creating steam in the United States are LG USA and Electrolux.

Whirlpool introduced its dryer called the "Duet® Steam Dryer" in October 2007. (Ex. 4 ¶ 10). By its name and national advertising, the Duet® Steam Dryer purports to be capable of producing steam and attaining the many attributes and benefits of steam. The Duet® Steam Dryer does not, however, utilize "steam," which is a clear gas obtained by vaporizing water, and which occurs at standard pressure when the water is heated at or above its boiling point of 100 degrees Centigrade. (Expert Declaration of Anthony M. Jacobi ("Jacobi Decl.") ¶

4

24, attached hereto as Exhibit 5). Instead, the Duet® Steam Dryer injects a mist of cold water for 60 seconds into a heated dryer drum. (Ex. 4 ¶ 15). Mist is an opaque or semi-opaque collection of liquid water and air into droplets which occurs when water is mechanically dispersed at a temperature below 100 degrees Centigrade. (Ex. 5 ¶ 16). Steam and mist are separate and distinct forms of water and steam itself is never used or created in the Duet® Steam Dryer. (Ex. 5 ¶¶ 17, 24).

The Duet® Steam Dryer does not possess a steam generator or any apparatus that creates steam or otherwise provides for heat transfer, nor does the drum reach sufficient temperatures to generate steam. (Ex. 4 ¶ 19; Ex. 5 ¶¶ 20-21). Instead, the Duet® Steam Dryer tumbles like a traditional dryer utilizing a gas or electric heater. (Ex. 4 ¶ 15). Then, once the tumbler is heated, a mist of cold water from a Y-connector from the washing machine is shot into the tumbler for 60 seconds. (*Id.*). Tumbling clothes that have been sprayed with cold water in a warm dryer drum does not create steam, however, but simply results in the evaporation of the water – just like any traditional, non-steam washing machine. (Ex. 5 ¶ 18). Indeed, the mist of cold water that Whirlpool's machine shoots into the tumbler is evaporated to form hot, moist air that remains thermodynamically different from steam. (Ex. 4 ¶ 15; Ex. 5 ¶¶ 18, 23).[2]

LG USA began development of a steam dryer called the "Tromm Steam Dryer" in October 2005, which launched in the United States during the final week of December 2007 on a limited basis and will launch nationwide in January 2008. (Ex. 4 ¶¶ 5, 8; Ex. 3 ¶¶ 5, 9). To date, LG USA has spent approximately [Redacted] on the development of its Tromm Steam Dryer, and will spend [Redacted] on marketing during 2008. (Ex. 3 ¶ 15).

---

2   Whirlpool's Duet® Steam Dryer is sold throughout the United States, including Illinois, at a price point of approximate $1200-1250. (Ex. 3 ¶ 25). By comparison, Whirlpool's traditional dryers sell for $279-999. (*Id.*).

Unlike Whirlpool's Duet® Steam Dryer, LG USA's Tromm Steam Dryer is equipped with a generator that heats water for three and a half minutes until it reaches the boiling point of 100 degrees Celsius and creates steam. (Ex. 4 ¶ 9). Once the generator creates steam, the steam is blown through a tube and injected into the dryer tumbler ("drum") for seven minutes. (*Id.*). The steam that is injected into the dryer is not a mist of cold water that is later heated, but rather the generator in the Tromm Steam Dryer creates steam prior to it entering the dryer tumbler (drum). (*Id.*). The dryer then heats like a traditional dryer for the remainder of the cycle until the clothes are dried. (*Id.*). The addition of a steam generator that injects real steam into the dryer drum is a unique feature on the Tromm Steam Dryer and is costly. (*Id.* ¶ 17; Ex. 3 ¶ 13). As a result, upon introduction, the Tromm Steam Dryer will, by necessity, be priced higher than the Duet® Steam Dryer, at approximately $1400.00. LG USA's Tromm Steam Dryer will be sold throughout the United States, including Illinois.

## ARGUMENT

To pass the threshold inquiry for obtaining a preliminary injunction, LG USA must demonstrate that it has (1) some likelihood of success on the merits; and (2) no adequate legal remedy such that it will suffer irreparable harm if preliminary relief is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992) (vacating an order denying preliminary injunction of Section 43(a) false advertising claim). If LG USA clears both thresholds, the Court must then consider (3) any irreparable harm a preliminary injunction would cause Defendant, balanced against the irreparable harm LG USA will suffer if a preliminary injunction is denied; and (4) the consequences to the public interest of granting or denying the requested relief. *Id.* at 211-12; *see also Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). The Court weighs these factors on a

"sliding scale," such that the more likely it is that LG USA will succeed on the merits, the less the balance of harms need favor LG USA. *Ty*, 237 F.3d at 895; *Eli Lilly*, 233 F.3d at 461; *Abbott*, 971 F.2d at 12.

As outlined below, the balance of factors in this case weighs substantially in favor of granting LG USA's motion for preliminary injunction.

**A.   LG USA IS ENTITLED TO A PRELIMINARY INJUNCTION UNDER SECTION 43(a) OF THE LANHAM ACT**

   **1.   LG USA Has An Overwhelmingly Strong
   Likelihood of Success On The Merits**

LG USA has a strong likelihood of establishing that Defendant is engaging in false advertising at a trial on the merits. *See Ill. Bell Tel. Co. v. MCI Telecomm. Corp.*, No. 96 C 2378, 1996 WL 717466, at *9-10 (granting preliminary injunction in a false advertising claim); *see also Nat'l People's Action v. Wilmette*, 914 F.2d 1008,1010 (7th Cir. 1990) (explaining that "some likelihood of success on the merits" means that chances of succeeding are "better than negligible"). Preliminary relief is necessary to prevent further irreparable harm to LG USA's goodwill and reputation from the dissemination of Defendant's false advertising.

Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), prohibits false or deceptive advertising in interstate commerce. The Act provides in relevant part that:

> (1)   Any person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> * * *
>
> (B)   in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

7

shall be liable in a civil action by any person who believes
that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

To establish its claim under this prong of the Lanham Act, LG USA must prove: (1) a false statement of fact by Defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) Defendant caused its false statement to enter interstate commerce; and (5) LG USA has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to Defendant or by a loss of goodwill associated with its products. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999); *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994); *Ill. Bell*, 1996 WL 717466 at *3. Each of these elements is satisfied here, such that LG USA has a strong likelihood of success on the merits.

### a. Defendant's Television, Print, And Online Advertising Disseminate Literally False Statements Of Fact

A plaintiff may establish a Lanham Act violation by demonstrating that the commercial claims at issue are literally false as a factual matter. *See Hot Wax*, 191 F.3d at 820; *accord B. Sanfield*, 168 F.3d at 971-72; *Abbott*, 971 F.2d at 13; *Republic Tobacco L.P. v. N. Atl. Trading Co.*, No. 06 C 2738, 2007 WL 1424093, *4 (N.D. Ill. May 10, 2007); *Energizer Holdings, Inc.v. Duracell, Inc.*, No. 01 C 9720, 2002 WL 1067688, *4 (N.D. Ill. May 28, 2002). To make this showing, LG USA must "offer affirmative proof that the advertisement is false." *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1091 (7th Cir. 1994). Moreover, when a

8

statement is literally false, the plaintiff does not need to show that the consumers were actually or likely deceived by the statement. *See Hot Wax*, 191 F.3d at 820; *B. Sanfield*, 168 F.3d at 971; *Republic Tobacco*, 2007 WL 1424093 at *4; *Energizer*, 2002 WL 1067688 at *4.

Here, Whirlpool makes the following expressly false advertising claims in the television, print, and online advertising for its Duet® Steam Dryer:

1. "Naturally steam out wrinkles and odors with the touch of a button. The new Duet® Steam dryer features two cycles – Enhanced Touch-Up and Quick Refresh – that infuse clothing with steam to refresh and dewrinkle."

2. "The pure power of steam – Nothing beats the power of steam to get rid of wrinkles. The Duet® Steam dryer naturally steams out wrinkles in just minutes, while removing any lingering odors."

3. The Duet® Steam Dryer:
    i. "naturally steams away tough stains;"
    ii. "steams out tough wrinkles and odors;" and
    iii. uses "the pure power of steam."

4. "How does the addition of steam work to enhance cleaning performance?" The Duet® Steam Dryer:
    i. provides the "unique benefits of steam;" and
    ii. provides a setting of "20 minutes of steam and tumbling;" and

5. "The Whirlpool Duet® Steam laundry pair, a whole new way to care for your clothes from start to finish, with the pure power of steam. Just another laundry innovation from Whirlpool."

9

The claims recited above explicitly state that Whirlpool's Duet® Steam Dryer uses its "innovative" steam technology to achieve certain results with respect to deodorization and wrinkle removal. LG USA sought to determine the truth or falsity of such claims by analyzing the performance of a Duet® Steam Dryer. This analysis revealed that Whirlpool's Duet® Steam Dryer does not contain a generator that creates steam, but rather only injects a cold water mist into the dryer drum. This mist is subsequently heated by the dryer's hot air, but never reaches boiling point or otherwise becomes steam. As demonstrated in the attached Declaration of Professor Jacobi, mist and steam are thermodynamically different substances and have differing qualities. (Ex. 5 ¶¶ 15-17). Moreover, steam cannot be created inside the Duet® Steam Dryer drum because the temperatures inside are not sufficiently hot. (Ex. 4 ¶ 19). Rather, the cold water mist simply evaporates during the drying process into hot, moist air that remains thermodynamically different from steam. (Ex. 4 ¶ 15; Ex. 5 ¶¶ 18, 23).

Based on this evaluation, there can be no doubt that Whirlpool's claims that its Duet® Steam Dryer utilizes steam or has the "power of steam" are literally false. Moreover, nothing in Whirlpool's response letter counsels a contrary conclusion. (*See* Ex. 2). *First*, while Whirlpool argues that consumer perception is relevant to determining the falsity of its claims (*id.*), well-established precedent of the 7th Circuit dictates otherwise, holding that "[w]hen the statement in question is actually false, the plaintiff need not show that the statement either actually deceived customers or was likely to do so." *Hot Wax*, 191 F.3d at 820.

*Second*, Whirlpool appears to contend that its advertising is not false because when the cold water mist is injected into its Duet® Steam Dryer, this water evaporates to form "water vapor," which is the same as steam. (Ex. 2). This is patently false, as it is clear that the cold water mist injected into Whirlpool's drum simply evaporates to form hot, moist air that

10

remains thermodynamically different from steam. (Ex. 5 ¶ 18). Were it otherwise, *any* traditional, non-steam dryer could claim to be a "steam" dryer simply by virtue of the fact that water evaporates within the dryer drum from wet clothing.

*Third*, while Whirlpool contends that it is "puzzled" by LG USA's false advertising claims, such ignorance is belied by the fact that it already manufactures a washing machine that – like LG USA's Tromm Steam Dryer – actually contains an internal steam generator. (Ex. 3 ¶ 24; *see also Whirlpool Duet® Steam Front-Loading Automatic Washer Use and Care Guide* 10, attached as Exhibit 6 (noting that the machine contains "a built-in steaming unit"). Given this, Whirlpool cannot possibly argue that its Duet® Steam Dryer – which simply causes a cold water mist to evaporate – has the same capability as either its own washing machine or of LG USA's Tromm Steam Dryer, both of which contain internal steam generators.

Thus, LG USA has satisfied its burden under the *BASF* test to demonstrate the falsity of Whirlpool's claims regarding "steam." Moreover, the unfair and deceptive effect of Whirlpool's use of the work "steam" in its Duet® Steam Dryer and related advertising is clear and dramatic. By falsely representing this its Duet® Steam Dryer utilizes steam to achieve certain results, and by charging a premium for its use of this "steam" technology, Whirlpool is attempting to gain market share and realize higher margins. This deception comes at the expense of both consumers and LG USA, which recently entered the market with a dryer that actually uses steam and is priced accordingly.

      b.      **The Falsity Is Material In That It Is Likely To Influence Purchasing Decisions**

The facts in this case unquestionably support a finding that Whirlpool's literally false claims regarding "steam" are material. LG USA will inevitably lose sales as a direct result of Defendant's false advertising in connection with its Duet® Steam Dryer, particularly because

LG USA has added a steam generator to its Tromm Steam Dryer that costs more to manufacture, and consequently must be sold at a higher price than the Duet® Steam Dryer. LG USA and Whirlpool are direct competitors in the sale of dryers for consumers in the United States. It is clearly foreseeable that customers will be diverted from purchasing LG USA's Tromm Steam Dryer to purchasing Whirlpool's lower-priced Duet® Steam Dryer because they erroneously believe that Whirlpool's Duet® Steam Dryer utilizes steam when, in fact, it only uses a mist of cold water. As a result, such actions on the part of consumers will inevitably cause distributors and retailers to purchase less of LG USA's product, causing further economic damage to LG USA.

    **c. Defendant's False Claims Have Entered Interstate Commerce And LG USA Is Likely To Be Injured As A Result**

Defendant's false and misleading advertising claims have caused and will continue to cause damage to LG USA on a daily basis. Defendant's Duet® Steam Dryer is distributed in all major markets throughout the United States, including Illinois, and the false claims appear on its nationwide television, print, and online advertising. Because Defendant's Duet® Steam Dryer is new to the dryer market and was released into the market prior to LG USA's Tromm Steam Dryer, consumers are more likely to believe the claims and choose Defendant's steam dryer over the dryer they ordinarily use and over LG USA's steam dryer. Retailers and distributors are also likely to be influenced by Defendant's false advertising campaign. Therefore, because of the immediacy of the severe and irreparable harm, a preliminary injunction is of critical importance.

## 2. LG USA Has No Adequate Legal Remedy Such That It Will Suffer Irreparable Harm If Preliminary Relief Is Denied

It is a well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss. *Abbott*, 971 F.2d at 16; *McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988) (finding that where there is a "misleading comparison to a specific competing product," irreparable harm may be presumed because comparative advertising "necessarily diminishes [the competing] product's value in the minds of the consumer").

LG USA's injuries, including damage to business reputation and loss of goodwill, are presumed irreparable because "it is virtually impossible to ascertain the precise economic consequences of intangible harms." *Abbott*, 971 F.2d at 16. It is also difficult for a court to project the long-term injurious effects of Defendant's false advertising campaign, which may influence consumers' choices for years to come. *Id.* at 18; *cf. Novartis Corp. v. FTC*, 223 F.3d 783, 787 (D.C. Cir. 2000) (concluding that the advertisement created a false and misleading belief in the public's mind that lingered on even after the advertising ceased). "[T]he difficulty, indeed practical impossibility, of quantifying" harms resulting from false advertising renders "monetary relief inadequate, and hence [LG USA's] injuries irreparable." *Abbott*, 971 F.2d at 17.

Therefore, as a matter of law, LG USA is presumed to be suffering irreparable harm, the nature, extent, and long-term consequences of which are difficult to ascertain, measure, or predict. *See id.* at 16; *see also Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) (holding that loss of goodwill is an irreparable harm); *Reinders Bros., Inc. v. Rain Bird E. Sales Corp.*, 627 F.2d 44, 53 (7th Cir. 1980) (same); *Storck USA, L.P. v. Farley Candy Co.*, 785 F. Supp. 730, 735-36 (N.D. Ill. 1992) ("Irreparable harm may result from

the loss of good will in a given product."). LG USA will continue to suffer such irreparable injury unless this Court orders Defendant to cease its false and misleading advertising campaign.

LG USA has built up tremendous goodwill in its LG USA brand as a result of the quality of its products and its extensive advertising. The fame and success of these products have greatly enhanced LG USA's reputation in the marketplace. A key element of that goodwill and reputation is the introduction of new and innovative products such as LG USA's Tromm Steam Dryer, which is equipped with a steam generator and infuses true steam into the dryer drum. Whirlpool's misleading television, print, and online advertising stating that its Duet® Steam Dryer uses steam, that drying with steam is superior, and that drying with steam was Whirlpool's "innovation," diminishes LG USA's goodwill, diverts sales from LG USA to Whirlpool, and tarnishes and diminishes LG USA's reputation. The irreparable injury caused by these actions is especially potent since Whirlpool and LG USA are direct competitors in the clothes dryer market nationwide and in Illinois.

### 3. The Balance Of The Harm Weighs Strongly In Favor of LG USA

Turning to the third factor for injunctive relief, the balance of harms clearly weighs in LG USA's favor. While LG USA is suffering irreparable damage to its business reputation, goodwill, and potential sales, Defendant will suffer no harm in having a falsely-advertised product removed from the marketplace. Indeed, Whirlpool will only have to change the current packaging and marketing of its Duet® Steam Dryer to remove references to "steam." Even if this Court concludes that the balance of equitable harms is similar, however, LG USA should nonetheless be granted the preliminary injunction because LG USA has demonstrated a strong likelihood of succeeding on the merits. Thus, it need not make a similarly strong showing

in the equitable balance of hardships. *See Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314-16 (7th Cir. 1994); *Abbott*, 971 F.2d at 12.

### 4. The Public Interest Would Be Served by The Granting Of A Preliminary Injunction

The impact on the public must also be factored into the balance of harms. *Abbott*, 971 F.2d at 12. In this case, the grant of preliminary injunction, which preliminary enjoins Defendant from making false and misleading claims, serves the public interest. As the Seventh Circuit has emphasized, the public has an interest "in truthful advertising, an interest that lies at the heart of the Lanham Act." *Id.* at 19 (citing *Wojnarowicz v. Am. Family Ass'n*, 745 F. Supp. 130, 141 (S.D.N.Y. 1990)). Clearly, the public interest is being harmed by Defendant's false and misleading claims because consumers are making purchasing decisions based upon the erroneous belief that Defendant's claims are true and accurate. Indeed, there is little, if any, countervailing public interest to promoting fair competition through truthful advertising, which will be accomplished through the grant of this preliminary injunction.

### B. LG USA IS ALSO ENTITLED TO A PRELIMINARY INJUNCTION UNDER ITS COMMON LAW AND STATE LAW CLAIMS

LG USA has also demonstrated a likelihood of success on the merits and consequent entitlement to injunctive relief under the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/2, the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFDBPA"), 815 ILCS 505/2, and Illinois common law of unfair competition, which prohibit deceptive trade practices and false advertising. The elements of a claim under the UDTPA and CFDBPA are substantially the same as a claim for relief under Section 43(a) of the Lanham Act. *See B. Sanfield, Inc.*, 168 F.3d at 970-73, 975; *Republic Tobacco*, 2007 WL

1424093 at *4; *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001).

First, the UDTPA, which was enacted in Illinois and numerous other states, protects against false advertising in a substantially similar manner as the Lanham Act. *See* 5 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 27:114 (4th ed. 1992 & Supp. 2007). The UDTPA requires LG USA to establish that Defendant made representations concerning goods or services that were false, misleading, or deceptive. 815 ILCS 510/2(a). The UDTPA broadly covers conduct "involving either misleading trade identification or deceptive advertising." *Lynch Ford, Inc.v Ford Motor Co.*, 957 F. Supp. 142, 147 (N.D. Ill. 1997) (citing 815 ILCS 510). In this case, by demonstrating that the Defendant made false and misleading advertising claims concerning its Duet® Steam Dryer, LG USA has also satisfied the requirements under the UDTPA.

Second, LG USA is also entitled to a preliminary injunction under the CFDBPA. The CFDBPA requires the additional element of "intent," which means that LG USA is required to show (1) a deceptive act or practice by Defendant; (2) Defendant's intent that others rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). "Intent," as required by this Act, is only the intent that consumers rely on the information disseminated by Defendant. *Hoke v. Beck*, 587 N.E.2d 4, 8 (Ill. 1992). LG USA need not show that Defendant intended to deceive as "even an innocent misrepresentation . . . is actionable, so long as it was intended to induce . . . reliance" on the representations. *See id.*; *Indus. Enclosure Corp. v. N. Ins. Corp. of N.Y.*, No. 97 C 6850, 2000 WL 1029192, *7-8 (N.D. Ill. July 26, 2000). This additional element is no obstacle in this case where Defendant intended that consumers rely on its representations

that its Duet® Steam Dryer uses steam, a Whirlpool "innovation," and performs better than other standard dryers, and therefore purchase its Duet® Steam Dryer over those of its competitors, namely, LG USA's Tromm Steam Dryer.

Finally, LG USA is also entitled to a preliminary injunction under the Illinois common law tort of unfair competition. This claim differs from Section 43(a) of the Lanham Act only in that it requires a showing of actual loss. *See* 5 McCarthy, *Trademarks and Unfair Competition* § 27:2. Such requirement poses no obstacle where, as in this case, the parties are direct, leading competitors, and the critical element of deception of the consumers involved is a misleading, implied comparison of the competing products. LG USA will be readily able to prove that it has suffered monetary loss as a result of Defendant's unfair competition.

## CONCLUSION

Therefore, because LG USA will demonstrate a likelihood of success on the merits of its false advertising claim, and because it is and will continue to be immediately and irreparably harmed by Defendant's false advertising, LG USA respectfully requests that this Court grant its motion for a preliminary injunction in all respects.

Dated:  January 10, 2008

Respectfully submitted,

**LG ELECTRONICS U.S.A., INC.**

By: /s/ Ronald Y. Rothstein
        One of its attorneys

Ronald Y. Rothstein – rrothstein@winston.com
Mary M. Hutchings – mreed@winston.com
David A. Latchana – dlatchana@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600 – telephone
(312) 558-5700 – facsimile

*Counsel for LG Electronics U.S.A., Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **Memorandum of Law in Support of Plaintiff LG Electronics U.S.A., Inc.'s Motion for Preliminary Injunction** will be served on the following via hand delivery on the same date as the Complaint filed by LG Electronics U.S.A., Inc., on January 10, 2008.

>Whirlpool Corporation
>2000 N. M 63
>Benton Harbor, MI  49022

>/s/ Ronald Y. Rothstein_____
>One of LG USA's Attorneys