IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LG ELECTRONICS U.S.A., INC. <br> a subsidiary of LG Electronics, Inc., <br> a Korean company <br><br> Plaintiff, <br><br> v. <br><br> WHIRLPOOL CORPORATION, <br><br> Defendant. | Civil Action No.: 08 C 242 <br><br> Judge St. Eve <br><br> Magistrate Judge Mason |

**MEMORANDUM OF LAW IN SUPPORT OF WHIRLPOOL CORPORATION'S
MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

**I.      INTRODUCTION**

On January 10, 2008, LG Electronics U.S.A., Inc. ("LG") filed this action against defendant Whirlpool Corporation ("Whirlpool") for alleged violations of the Lanham Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Uniform Deceptive Trade Practices Act, and the Illinois common law of unfair competition. In the interests of convenience and justice, Whirlpool moves to transfer this case to the Western District of Michigan pursuant to 28 U.S.C. § 1404(a).

The Northern District of Illinois has no significant or meaningful relationship with this case. Neither LG nor Whirlpool is headquartered here. LG's principal place of business is in the District of New Jersey, while Whirlpool's principal place of business is in the Western District of Michigan. The material events giving rise to LG's allegations of unfair competition and deceptive advertising did not occur here, and neither the witnesses nor the relevant documents are in this district.

By contrast, the Western District of Michigan has substantial connections to this case. Not only is it home to Whirlpool's corporate headquarters, it is also where the technology used in Whirlpool's Duet® Steam Dryer was developed, where the advertising and marketing campaigns for the product were conceived and implemented, and where nearly all the likely witnesses and relevant documents are located. Moreover, Whirlpool has significant relationships to the community of the Western District of Michigan, where it employs more than 3,000 people. Accordingly, in the interests of justice and for the convenience of the parties and witnesses, this Court should exercise its discretion under 28 U.S.C. § 1404(a) and transfer this case to the Western District of Michigan.

## II.     RELEVANT FACTS

Plaintiff LG, a sales subsidiary of LG Electronics, Inc., a foreign corporation headquartered in Seoul, Korea, has its principal place of business in Englewood Cliffs, New Jersey. (Compl. at ¶ 4.) LG alleges that it employs more than 82,000 people worldwide, of which a mere 200 are located in an office in Lincolnshire, Illinois that provides technical support for LG products. (*Id.*) LG does not allege that this Lincolnshire office does any work related to that company's competitive steam dryer, that any likely witnesses reside there, or that it has any connection at all to this litigation.

Whirlpool is a Delaware corporation with its principal place of business in Berrien County, Michigan. (Decl. of P. Rogers at ¶ 3, attached as Exhibit 1.) Whirlpool's corporate headquarters are located in Benton Harbor, Michigan, and it employs approximately 3,100 people in and around the Western District of Michigan. (*Id*.)

Whirlpool's technology, marketing, and advertising for its Duet® Steam Dryer are at the center of LG's claims in this case. LG's complaint alleges that Whirlpool made "explicitly false and misleading marketing and advertising claims regarding its Duet® Steam Dryer in a national

advertising campaign appearing on television, in print, and on its website, www.whirlpool.com," including "an advertising campaign in every market nationwide and online which makes the explicitly false and misleading claim that its Duet® Steam Dryer uses steam to remove wrinkles, touch-up clothing, and remove odors from clothing." (Compl. ¶¶ 2-3.) The issues central to this case, therefore, will include the technology used in Whirlpool's Duet® Steam Dryer and the related advertising and marketing campaigns. None of LG's claims has a specific connection to the Northern District of Illinois.

Indeed, all of the evidence, including witnesses and documents, relevant to these issues is located in Berrien County, in the Western District of Michigan. The design and development of Whirlpool's Duet® Steam Dryer occurred entirely in Berrien County, Michigan. (Ex. 1, Decl. of P. Rogers at ¶ 4.) Whirlpool's laundry technology and product development centers, which were responsible for the design and development of the Duet® Steam Dryer, are located in St. Joseph and Benton Harbor, Michigan. (*Id.*) The entire core team of approximately ten engineers, including five of whom are specifically identified by Whirlpool as likely witnesses, are located in Michigan, where all the final decisions with respect to the technology were made. (*Id.* at ¶ 5.)

In addition, Whirlpool's advertising, marketing, training, and public relations groups that were responsible for the marketing and development of the advertising campaign for the Duet® Steam Dryer are also located in Berrien County, Michigan. (*Id.* at ¶ 8.) There are approximately 5-20 people in each of those groups that worked on the Duet® Steam Dryer, all of whom are located in Berrien County, Michigan, including specific individuals who have been identified as likely witnesses. (*Id.* at ¶¶ 5, 8.) Moreover, the ongoing development, maintenance, and content decisions with respect to Whirlpool's website, www.whirlpool.com, take place in Michigan. (*Id.* at ¶ 9.) Ultimately, all final business decisions pertaining to North American marketing and

advertising for Whirlpool's Duet® Steam Dryers are made in Berrien County, Michigan. (*Id.* at ¶ 8.)

Virtually *all* witnesses with knowledge of Whirlpool's technology, advertising, and marketing for the Duet® Steam Dryer, and all related documents, are located in Berrien County, Michigan. (*Id.* at ¶¶ 5, 7, 8, 12.) All witnesses with knowledge of Whirlpool's online advertising and website content, and the documents related thereto, are also located in Berrien County, Michigan. (*Id.* at ¶ 9, 12.) Furthermore, there are numerous third party witnesses, including the outside advertising and marketing firms with knowledge of the development of the Duet® Steam Dryer's advertising campaign, media statements, and consumer and market research, who are also located in the Western District of Michigan. (*Id.* at ¶ 13.)

In contrast, none of the design, engineering, development, advertising, or marketing decisions with respect to Whirlpool's Duet® Steam Dryer occurred in the Northern District of Illinois. (*Id.* at ¶¶ 6, 10, 11.) None of the relevant witnesses or documents are located here. (*Id.*) Indeed, to the best of Whirlpool's knowledge, not even the witnesses or documents relevant to LG's competitive steam dryer are located in this District.

## III. ARGUMENT

### A. Applicable Legal Standard

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The moving party bears the burden of showing that the transfer is proper. *Event News Network, Inc. v. Thill*, No. 05 C 2972, 2005 WL 2978711, *3 (N.D.Ill. Nov. 2, 2005). To do so, "the moving party must demonstrate: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interests of justice." *See*, *e.g.*, *id.* "The decision

to transfer is left to the sound discretion of the trial court." *Sassy, Inc. v. Berry*, 406 F.Supp.2d 874, 875 (N.D.Ill. 2005).

## B. Venue Is Proper In Both This District And The Western District Of Michigan

In this case, venue is governed by 28 U.S.C. § 1391(b), which states that a civil action not founded solely on diversity of citizenship can be brought in any judicial district where a defendant resides. A corporation is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Id.* at § 1391(c). Venue is unquestionably proper in the Western District of Michigan because Whirlpool's principal place of business is located within that district. Venue is also appropriate in the Western District of Michigan because a substantial part of the events giving rise to LG's claims occurred in this district. *Id.* at § 1391(b)(2). As Whirlpool transacts business within Illinois and in this district, Whirlpool does not dispute that venue is also proper in this District.

## C. Convenience Of The Parties and Witnesses Favors Transfer To The Western District Of Michigan

In weighing the convenience of the parties and witnesses, the following factors are relevant: (1) the plaintiff's choice of forum; (2) the site of material events; (3) the convenience to the witnesses; (4) the convenience to the parties; and (5) the relative ease of access to sources of proof. *See*, *e.g.*, *Matweld, Inc. v. Portaco, Inc.*, No. 04 C 1273, 2004 WL 1403696, *1 (N.D.Ill. June 23, 2004); *Von Holdt v. Husky Injection Molding Systems, Ltd.*, 887 F.Supp. 185, 188 (N.D.Ill. 1995).

### 1. LG's Choice Of Forum Should Be Afforded Little Weight

In some situations, deference is given to a plaintiff's choice of forum under § 1404(a). *Sassy, Inc.*, 406 F.Supp.2d at 876. However, where the selected forum is not the plaintiff's home forum, that "choice warrants less deference." *Matweld*, 2004 WL 1403696, *2; *see*, *e.g.*, *St. Paul*

*Fire and Marine Ins. Co. v. Brother Intern. Corp.*, No. 05 C 5484, 2006 WL 1543275, *2 (N.D.Ill. June 1, 2006); *S.C. Johnson & Son, Inc. v. Buzz Off Insect Shield, LLC*, No. 05 C 1046, 2005 WL 1838512, *2 (N.D.Ill. July 28, 2005). Similarly, where the forum chosen by the plaintiff "lacks any significant contact with the underlying cause of action," *Ambrose v. Steelcase, Inc.*, No. 02 C 2753, 2002 WL 1447871, *2 (N.D.Ill. July 3, 2002), and is not the site of material events, *Law Bulletin Pub., Co. v. LRP Publications, Inc.*, 992 F.Supp. 1014, 1017 (N.D.Ill. 1998), it merely becomes one of many factors to be considered in the convenience analysis. *Ambrose*, 2002 WL 1447871, at *2; *Von Holdt*, 887 F.Supp. at 188 (N.D.Ill. 1995).

Here, LG's choice of forum is not entitled to deference. This district is not LG's home forum. LG, a sales subsidiary of a foreign company headquartered in Seoul, Korea, has its principal place of business in New Jersey. (Compl. ¶ 4.) Moreover, although LG alleges that it has an office in Lincolnshire, Illinois, LG does not describe any connection between this office and the events giving rise to its claims. (*Id.*) Nor are LG's claims limited or even centered on conduct that occurred in Illinois. On the contrary, LG specifically decries Whirlpool's *national* advertising campaign with respect to the Duet® Steam Dryer. (*Id.* at ¶¶ 2-3, 8-10 (describing Whirlpool's "national advertising campaign appearing on television, in print, and on its website" in "every market nationwide and online".) "Where it appears, as here, that plaintiff could have sued in many different districts and there is no particular reason why plaintiffs would prefer this district" this Court should not defer to LG's forum choice. *Ambrose*, 2002 WL 1447871, at *2.

### 2. The Site Of Material Events Favors Transfer

The second factor also favors the Western District of Michigan, as this district is not the site of *any* of the material events giving rise to LG's claims. *See First Horizon Pharmaceutical Corp. v. Breckenridge Pharmaceutical, Inc.*, No. 04 C 2728, 2004 WL 1921059, *3 (N.D.Ill. July 21, 2004) ("Material events are those that give rise to the cause of action.") "In cases

involving . . . unfair competition claims, the material activities central to the claims occur *where the allegedly infringing products are designed, manufactured and marketed.* As a result, Lanham Act cases typically focus on the 'activities of the alleged infringer, its employees, and its documents; therefore, the location of the infringer's place of business is often the critical and controlling consideration.'" *Confederation Des Brasseries De Belgique v. Coors Brewing Co.*, No. 99 C 7526, 2000 WL 88847, *3 (N.D.Ill. Jan. 20, 2000) (citations and internal quotations omitted) (emphasis added). Thus, where, as here, "all decisions regarding the development, packaging, marketing and advertising" of the defendant's product occurred in another district, this factor strongly supports transfer to that venue. *Id.*

There can be no doubt that the material events in this case occurred in the Western District of Michigan, and not in the Northern District of Illinois. Indeed, virtually *all* of Whirlpool's decisions with respect to the design, development, marketing, media statements, print and online advertising of the Duet® Steam Dryer, occurred (and continue to occur) in Berrien County, Michigan. (Ex. 1, Decl. of P. Rogers at ¶¶ 4-5, 8-9, 13.)

While LG may argue that Whirlpool advertises and sells its Duet® Steam Dryers in Illinois, as well as throughout the country, that fact does not weigh in favor of keeping this case in this District as "there is no reason to believe that any injury that occurred here is any more significant than any injury that occurred in any other district." *S.C. Johnson & Son, Inc.*, 2005 WL 1838512, at *3; *see Brunswick Bowling v. Qubica USA, Inc.*, No. 05 C 3603, 2005 WL 2367764, *2 (N.D.Ill. Sept. 26, 2005) (material events analysis was neutral or weighed in favor of transfer where there was no connection to the Northern District of Illinois); *Greene Mfg. Co. v. Marquette Tool & Die Co.*, No. 97 C 8857, 1998 WL 395155, *2 (N.D.Ill. July 9, 1998) ("sales alone are insufficient to establish a substantial connection to the forum if the defendants'

goods are sold in many states"). Moreover, it is "the location of the actions creating the injury, not the location of the injury itself," that is relevant to the analysis. *Event News Network, Inc.*, 2005 WL 2978711, at *4-5 (concluding analysis favored transfer to site where allegedly infringing products were developed and any misleading advertising or marketing statements originated). Unlike the Western District of Michigan, the Northern District of Illinois simply has no significant connection to this case that would make it a more appropriate venue than any other district in the country.

### 3. The Convenience To The Witnesses

"In determining whether to transfer venue, the convenience of the witnesses is often the factor given the most weight." *Kammin v. Smartpros, Ltd.*, No. 07 C 2665, 2007 WL 3046128, *2 (N.D.Ill. Oct. 9, 2007). While the location of non-party witnesses is typically most significant, the location of employee witnesses is particularly important in cases involving intellectual property, where employees will have most of the relevant knowledge of product development, and advertising and marketing decisions. *See Event News Network, Inc.*, 2005 WL 2978711, at *5-6. In evaluating witness convenience, courts should consider "the number of witnesses located in each forum; the nature, quality and importance of the witnesses' testimony with respect to the issues of the case; the expense of transportation and the length of time the witnesses will be absent from their jobs; and whether the witnesses can be compelled to testify." *Event News Network, Inc.*, 2005 WL 2978711, at *5; *Ambrose*, 2002 WL 1447871, at *3; *Law Bulletin Pub.*, 992 F.Supp. at 1018-19.

Whirlpool has multiple teams of people, including engineers, product development, marketing, training, and public relations people – all of whom are located in Michigan – that have knowledge of the design, development, marketing, and advertising of its Duet® Steam Dryer. (Ex. 1, Decl. of P. Rogers at ¶ 4-5, 8-9, 13.) Whirlpool has specifically identified seven

employees in Berrien County who are the key people with knowledge of the development, advertising, and marketing for the Duet® Steam Dryer. (*Id.* at ¶¶ 2, 5, 8.)

There are also numerous third party witnesses, including employees of an outside advertising agency and an outside marketing firm, with relevant knowledge of the Duet® Steam Dryer campaign, as well as market and consumer research that was done with respect to the product. (*Id.* at ¶ 13.) The testimony of these witnesses is not duplicative of the employee witnesses because they, unlike the employee witnesses, have personal knowledge of consumer interviews, and specific market and product research that was done with respect to the Duet® Steam Dryer, that will be necessary to defend the claims brought by LG. (*Id.*) The testimony of these third party witnesses can be compelled in the Western District of Michigan.

By contrast, Whirlpool is not aware of a single Whirlpool employee or third party witness with knowledge relevant to the issues in this case who is located in this District. Moreover, to the best of Whirlpool's knowledge, any witnesses with potentially relevant personal knowledge about LG's competitive steam dryer are likely located in Korea or New Jersey. LG has filed two declarations from employees in support of its motion for preliminary injunction with all the key information in support of its claims. While the declarations do not disclose the location of the witnesses, it is notable that both witnesses, Tae Jin Lee and Chul Jin Choi, are identified as employees of "LG Electronics" (presumably the Korean parent company located in Seoul), rather than "LG Electronics U.S.A., Inc. (the United States operating company located in New Jersey and the plaintiff in this matter). The declarations also suggest that the witnesses *reside* in Korea where their employer is located. Each witness uses the language required under 28 U.S.C. § 1746(1) for declarations that are executed *outside the United States*. (Decl. of Tae Jin Lee at ¶ 1; Decl. of Chul Jin Choi at ¶ 1) ("I declare under penalty of perjury *under the laws of the United*

*States* that the following is true and correct"). Because it appears that LG's key witnesses must travel regardless of which district hears this case, those witnesses will not be more inconvenienced by having this case in the Western District of Michigan rather than the Northern District of Illinois. *See Event News Network*, 2005 WL 2978711, *5-6 (where "witnesses must travel regardless of the district" and "a greater number of witnesses with testimony important to the events are located in" another district, witness convenience favors transfer). Accordingly, analysis of witness convenience in this case also favors transfer.

### 4. The Convenience To The Parties

Another relevant factor is the overall convenience of the parties. *See Law Bulletin Pub., Co.*, 992 F.Supp. at 1019. Courts should evaluate and consider the parties' respective residences and ability to bear the expenses of litigating in a particular forum. *Event News Network, Inc.*, 2005 WL 2978711, at *5-6. "Transfer is inappropriate if it merely transforms an inconvenience for one party into an inconvenience for the other party. *Id.* (citations and internal quotations omitted). Here, where this district is not LG's home forum, and transfer to the Western District of Michigan would allow Whirlpool to litigate in its home forum, transfer would be "more than a just a mere shift in inconvenience." *S.C. Johnson & Son, Inc.*, 2005 WL 1838512, at *3-4. Moreover, because LG is headquartered in Seoul, Korea with its principal place of business in this country in New Jersey, there is no increased inconvenience to LG to litigate this dispute in the Western District of Michigan rather than Chicago. *See Confederation Des Brasseries De Belgique*, 2000 WL 88847, at *5 (convenience of the parties analysis narrowly favored transfer to a Colorado district where defendant resided in that district, while the plaintiff resided in Belgium and could not show that litigating in Colorado would be significantly more inconvenient than litigating in Chicago). Although LG identifies an office in Lincolnshire, Illinois (its only alleged connection to this district), that office apparently houses LG's

Commercial Products Division, a business unit dedicated to providing electronic equipment, such as televisions and digital signage, to commercial customers in the hospitality and healthcare industries, among others.. (LG Commercial website, www.lgcommercial.com, pages regarding Commercial Products Division and products, attached as Exhibit 2.) It does not appear from the website for LG's Commercial Products Division that it has anything to do with consumer home appliances such as the dryers at issue in this lawsuit. (*Id.*) Accordingly, LG's office in Lincolnshire, Illinois is unlikely to make this district more convenient for the plaintiff and this factor, too, supports transfer.

> **5.  The relative ease of access to sources of proof.**

The final convenience factor is whether the location of sources of proof favors transfer. *Ambrose*, 2002 WL 1447871, at *3. Whirlpool's relevant documents, such as those related to the design and development of its Duet® Steam Dryer, including the technology used in that product, are located in Berrien County, Michigan. (Ex. 1, Decl. of P. Rogers at ¶ 7.) In addition, Whirlpool's advertising, marketing and sales records for the dryer, and its website development records, are also maintained in that county. (*Id.* at ¶¶ 12, 14.) In fact, Whirlpool is unaware of any documents relevant to either liability or damages in this case that are maintained in the Northern District of Illinois. Thus, this factor also supports transfer to the Western District of Michigan. *See Ambrose*, 2002 WL 1447871, at *3 (concluding where documents regarding the "design, development and engineering" of product were located in Michigan, this factor favored transfer).

> **D.  The Interests Of Justice Favor Transfer to The Western District of Michigan**

Finally, in deciding whether to transfer to another district, this court should consider "traditional notions of judicial economy" such as "relations of the community to the issues, the

respective courts' familiarity with the applicable law, and ensuring a speedy trial." *Confederation Des Brasseries De Belgique*, 2000 WL 88847, at *5-6.

Unquestionably, this dispute implicates the interests of the community in the Western District of Michigan far more than in this district. Whirlpool is headquartered in Berrien County, within the Western District of Michigan, and employs over 3,000 people in southwest Michigan. (*Id.* at ¶ 3.) *See Confederation Des Brasseries De Belgique*, 2000 WL 88847, at *5-6 (concluding Colorado had greater relation to issues in the case, where defendant maintained its corporate headquarters and employed thousands of people). Moreover, to the extent LG is seeking injunctive relief to halt Whirlpool's advertising and marketing of its Duet® Steam Dryers, any such relief would need to be enforced in the Western District of Michigan, where Whirlpool's advertising and marketing are carried out. (*Id.* at ¶¶ 8, 9, 10, 11, 13.) This enforcement would clearly have a far greater effect on the community in the Western District of Michigan than here in Chicago. *See Confederation Des Brasseries De Belgique*, 2000 WL 88847, at *5-6 (noting that injunctive relief would have more effect on the community in the district where it would be enforced); *Event News Network, Inc.*, 2005 WL 2978711, *6-7 (same). Thus, transfer would be "consistent with the notion that the administration of justice is served more efficiently when the action is litigated in the forum that is closer to the action." *Confederation Des Brasseries De Belgique*, 2000 WL 88847, at *6 (internal quotations and citation omitted).

As both the courts in this district and the Western District of Michigan are equally familiar with federal unfair competition law and the Lanham Act, that analysis is neutral with respect to transfer. *See Brunswick Bowling*, 2005 WL 2367764, *5-6. The fact that LG also brought counts under Illinois law does not change that analysis. The Illinois counts are based on

the same facts as those asserted in the federal claim, namely, Whirlpool's *national* advertising claims. *See Confederation Des Brasseries De Belgique*, 2000 WL 88847, at *5-6. Moreover, even if the Northern District of Illinois might be more familiar with Illinois law, that does not weigh against transfer because "[c]ourts . . . are often called upon to decide substantive legal questions based upon another state's laws" and the overall record clearly favors transfer here. *Event News Network, Inc.*, 2005 WL 2978711, *6-7.

With respect to ensuring a speedy trial, the most recent statistics available, for 2006, show that this District has a somewhat shorter time to resolution than does the Western District of Michigan.[1] However, statistics for 2007 are not yet available for either district, and from 2001-2005, the Western District of Michigan had a shorter median time to trial than the Northern District of Illinois.[2] Moreover, even if we assume that the 2007 statistics will suggest that the Northern District of Illinois could offer faster resolution times in the future, that one factor does not suggest this case should be kept in this District, particularly where the overwhelming factors favor transfer. *See Matweld, Inc.*, 2004 WL 1403696, *4 (concluding overall factors favored transfer, despite case management statistics that suggest the case might conclude up to 13 months earlier if it remained in that district).

---

[1] According to the 2006 statistics, the latest available, the median time to disposition was 6.5 months and to trial was 26.4 months in this District. For the Western District of Michigan, the median time to disposition was 8 months, and to trial was 36 months. (Federal Court Management Statistics, http://www.uscourts.gov/cgi-bin/cmsd2006.pl (last visited January 15, 2008).)

[2] From 2001-2005, the median time to trial in the Western District of Michigan was 23.1 months, compared to the 26.7 months for the same time period in the Northern District of Illinois. (Federal Court Management Statistics, http://www.uscourts.gov/cgi-bin/cmsd2006.pl (last visited January 15, 2008).)

## IV. CONCLUSION

The balance of conveniences and the interests of justice strongly favor transferring this case to the Western District of Michigan. Accordingly, Whirlpool requests that this Court transfer this action to the United States District Court for the Western District of Michigan.

Dated: January 16, 2008

Respectfully submitted,

*/s/ __Brian D. Roche_____*

Brian D. Roche
Carey L. Bartell
Vanessa C. Martí
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 207-1000

Attorneys for Defendant, Whirlpool Corporation

Of counsel:

J. A. Cragwall, Jr.
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, Michigan 49503-2487
Telephone (616) 752-2000

# CERTIFICATE OF SERVICE

I, Vanessa C. Martí, an attorney, hereby certify that on January 16, 2008, I filed the attached **Memorandum of Law in Support of Whirlpool Corporation's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)** with the Clerk of the Court using the ECF system which will send notification of such filings to the following:

>Ronald Y. Rothstein
>rrothstein@winston.com
>
>David Alexander Latchana
>dlatchana@winston.com
>
>Shannon Leigh Stevens
>sstevens@winston.com

I hereby also certify that I mailed the attached **Memorandum of Law in Support of Whirlpool Corporation's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)** to the following by first class mail with postage prepaid on this 16th day of January, 2008:

>Mary M. Hutchings
>Winston & Strawn LLP
>35 West Wacker Drive
>Chicago, IL  60601

By:   /s/ _Vanessa C. Martí_
      Brian D. Roche
      Carey L. Bartell
      Vanessa C. Martí
      REED SMITH, LLP
      10 South Wacker Drive
      Chicago, IL  60606-7507
      (312) 207-1000