**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LG ELECTRONICS U.S.A., INC.** | ) | |
|   **a subsidiary of LG Electronics, Inc.,** | ) | |
|   **a Korean company** | ) | |
| | ) | |
|        **Plaintiff,** | ) | |
| | ) | **Civil Action No.:**    **08 C 242** |
| | ) | |
|        **v.** | ) | **Judge St. Eve** |
| | ) | |
| | ) | **Magistrate Judge Mason** |
| **WHIRLPOOL CORPORATION,** | ) | |
| | ) | |
|        **Defendant.** | ) | |

## DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Defendant Whirlpool Corporation ("Whirlpool") hereby moves this Court pursuant to

Federal Rule of Civil Procedure 37(a) for an order compelling Plaintiff LG Electronics U.S.A.,

Inc. ("LG") to produce documents responsive to Whirlpool's First Set of Document Requests.

## INTRODUCTION

LG's pending motion for preliminary injunction asserts that the word "steam" is

misleading when applied to Whirlpool's Duet® Steam Dryer and harmful to LG because, it

claims, LG's competing Tromm Steam Dryer is one of the "only" dryers on the market "that

*actually* uses steam technology" or that is capable of creating "*true* steam." (Memorandum of

Law in Support of Plaintiff's LG Electronics U.S.A., Inc.'s Motion for Preliminary Injunction

("Pltf's. Mem. of Law") at pp. 1, 3, 4).[1] LG's motion advances arguments and relies on

declarations abounding with allegations about LG's technology and its purported superiority.

Yet, LG refuses to produce any documents regarding its product, insisting that the only discovery

relevant to its motion for preliminary injunction is discovery directed to information LG has

---

[1] Emphasis is added throughout unless otherwise noted.

about Whirlpool's product.  Not so.  LG has placed its own clothes dryer technology on a pedestal, claimed that only *its* technology justifies the use of the word "steam" in advertising; thus, LG has placed its own technology at the core of its claim for preliminary injunctive relief. LG should be compelled to produce documents responsive to Whirlpool's narrowly-tailored document requests so that Whirlpool can respond to the arguments and evidence LG presents in support of its preliminary injunction motion and further develop Whirlpool's defenses to LG's claims.

## PROCEDURAL BACKGROUND

On January 17, 2008, in response to LG's motion for expedited discovery against Whirlpool, the Court entered an order permitting *both* parties to propound expedited discovery "regarding" LG's preliminary injunction motion to be returned by February 1, 2008.  Whirlpool served LG with its First Set of Document Requests (a copy of which is attached hereto as Exhibit A) on January 18, 2008.  The document requests sought information relating to LG's assertions in its preliminary injunction motion about both Whirlpool's and LG's steam dryer and the meaning and use of the word "steam."

Counsel for LG responded immediately to the document requests by email, insisting that LG's product and performance were "not the subject of LG's motion for preliminary injunction," and that any request related to LG's product should be withdrawn.  The requests to which LG objected were Request 2 and any parts of Requests 3, 4, 5, 7, 8, and 10 that sought documents related to LG's claim that the Tromm Steam Dryer "steams" clothes, tests and comparisons of LG's and Whirlpool's products, documents showing the actual temperature of LG's "steam," documents showing how LG defines and uses "steam" in its other appliances, and documents relating to its claim to have the "first" or "only" steam dryer in the United States market.

In response, on the morning of Monday, January 21, 2008, counsel for Whirlpool, Brian Roche, initiated a telephone conference with counsel for LG, Ronald Rothstein, to discuss the requests, their relation to LG's preliminary injunction motion, LG's objections, and whether any resolution of the issue could be reached without involving the Court. Notwithstanding counsel's good faith efforts to resolve the dispute, no resolution could be reached. Now, Whirlpool moves to compel LG to respond and produce documents responsive to Requests 2, 3, 4, 5, 8, and 10 in their entirety.[2]

## **APPLICABLE LAW**

The general rule is that the right to discovery is broad. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . ." Fed. R. Civ. Pro. 26(b); *see also Storck USA, L.P. v. Farley Candy Co.*, No. 92 C 552, 1995 WL 153260, at *1 (N.D. Ill. Apr. 6, 1995) (Holderman, J.) ("In deciding any discovery issue, the overriding policy and concern inherent in the federal rules is to encourage broad, open discovery to ensure a fair trial." (citing *United States v. Procter Gamble Co.*, 356 U.S. 677, 682 (1958).) In the context of a preliminary injunction motion, the same rule applies. Although the scope of discovery "is properly limited to matters relevant to Plaintiff's request for preliminary injunctive relief," within those parameters, the same broad scope of discovery may be sought. *See A.G. Edwards & Sons, Inc. v. Marcolla,* No. 07-3260, 2007 WL 3037269, *3-4 (C.D. Ill. Oct. 17, 2007) (citing Fed. R. Civ. Pro. 26(b)(1) and holding that discovery related to one of plaintiff's theories was relevant to preliminary injunction motion); *Modern Engineering, Inc. v. Peterson*, No. 07-CV-1055, 2007 WL 2680563, at *1 (C.D. Ill. July 16, 2007) (same). Thus, Whirlpool is entitled to discovery with respect to all matters, not privileged, that are relevant to the claims made in or defenses to LG's preliminary injunction motion.

---

[2] Whirlpool withdraws and does not move to compel a response to Request 7.

**LG'S PRELIMINARY INJUNCTION MOTION IS PREMISED
ON CLAIMS THAT ITS PRODUCT IS SUPERIOR TO WHIRLPOOL'S**

LG's motion for preliminary injunction is built upon the conceit that Whirlpool's Duet®
Steam Dryer, unlike LG's Tromm Steam Dryer, does not create "true" steam (by which LG
means steam that is created by heating water to a temperature of 212 degrees Fahrenheit).  They
assert that the use of the word "steam" in advertising for Whirlpool's dryer (which, they claim,
produces hot mist instead of "true" steam), will divert customers from LG's Tromm Steam Dryer
and cause irreparable harm to the goodwill it would otherwise have as a result of being an
innovator of steam technology.  In support of this theory, LG makes the following arguments in
its motion for preliminary injunction, all of which are premised on the assertion that LG's dryer,
not Whirlpool's, produces "true" steam:

- "This deception comes at the expense of both consumers and LG USA, which is in the process of entering the market in the United States with a dryer that *actually uses steam technology.*"  (Pltf's Mem. of Law at 1.)

- "The immediacy of the irreparable harm facing LG USA is readily apparent, as LG USA has recently launched its Tromm Steam Dryer, which is equipped with a steam generator and infuses *true steam* into the dryer drum."  (*Id.* at 3.)

- "Dryers utilizing steam have benefits separate and distinct from traditional dryers. . . . *the only sellers of dryers capable of creating steam* in the United States are LG USA and Electrolux."  (*Id.* at 4.)

- "The addition of a steam generator that injects *real steam* into the dryer drum is a unique feature on the Tromm Steam Dryer and is costly."  (*Id.* at 6.)

- Whirlpool's alleged "deception comes at the expense of both consumers and LG USA, which recently entered the market with a dryer that *actually* uses steam and is priced accordingly."  (*Id.* at 11.)

- "A key element of [LG's] goodwill and reputation is the introduction of new and innovative products such as LG USA's Tromm Steam Dryer, which is equipped with a steam generator and infuses *true steam* into the dryer drum."  (*Id.* at 14.)

Similarly, the declarations submitted in support of LG's motion for preliminary injunction are

replete with testimony regarding the Tromm Steam Dryer, its development, and technology:

- "LG's Tromm Steam Dryer is equipped with a generator and other components that heat water for three and a half minutes until it reaches the boiling point of 100 degrees Celsius and creates steam. . . . The steam that is injected into the dryer is not a mist of water that is later heated.  The generator in the Tromm Steam Dryer creates steam prior to it entering the dryer tumbler (drum)." (Decl. of Tae Jin Lee, ¶ 14.)

- "Whirlpool's explicitly false and misleading name and advertisements that it utilizes 'steam' in its Duet® Steam Dryer *diminishes LG's goodwill in utilizing steam technology*.  By falsely claiming steam capabilities where they do not exist, Whirlpool has placed LG at a competitive disadvantage, appearing to be behind the curve when, in fact, LG's Tromm Steam Dryer is cutting-edge." (*Id.* at ¶ 26.)

- "Whirlpool's Duet® Steam Dryer does not contain a generator or any other mechanical parts that create steam. *However LG's Tromm Steam Dryer contains a generator, which costs more to include in the dryer.*  As such, LG must sell its Tromm Steam Dryer at a higher point than the Duet® Steam Dryer." (*Id.* at ¶ 27.)

- "Whirlpool's naming and advertising of the Duet® Steam Dryer is harmful to competition because the Duet® Steam Dryer does not utilize steam, and will divert sales from LG to Whirlpool's product, *even though only LG's product uses steam*." (*Id.* at ¶ 29.)

In addition, the declarants provide detailed testimony regarding the development of LG's Tromm

Steam Dryer and how its technology works.  (*Id.* at ¶¶ 6-15; Decl. of Chul Jin Choi, ¶¶ 6-9.)

Of course, the entire concept of "true" steam vs. some other kind of steam depends on a

comparison of the two products.  Yet, LG wishes to hamper Whirlpool's ability to defend itself

by lopsidedly insisting that it can claim to have "true" steam, present abundant argument and

testimony about its product, disparage Whirlpool's product, claim to be irreparably harmed in the

marketplace by Whirlpool's marketing of its supposedly less-than-true steam, without ever

having to respond to discovery about the claims it makes about its own product.  LG has placed

its own dryer in the spotlight by claiming to have the gold standard of steam, and its claims to

such superiority, made expressly in support of its motion for preliminary injunction, should not now be permitted to go unexamined.

Moreover, LG cannot argue that the many pages of information it presents about the Tromm Steam Dryer are mere background to its motion. To prevail on its motion for preliminary injunction, LG has to show that it will be irreparably harmed if preliminary relief is denied. *Abbott Laboratories v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992). While a claim to irreparable harm for an alleged Lanham Act violation may be presumed in the first instance, it is a presumption that may also be rebutted. *Id.* at 16, 18. LG's claim to irreparable harm is based upon the loss of goodwill the company will allegedly suffer if Whirlpool is permitted to continue marketing the Duet® Steam Dryer as using "steam." (Pltf's. Mem. of Law at 13-14.) The existence and magnitude of that alleged harm, of course, depends in large part on whether LG's competing product has a legitimate claim to using "true" steam, or whether such claim is spurious. Indeed, if the Court were to get to the point of considering the "balance of irreparable harms"[3] this issue will become even more crucial: the harm to Whirlpool of an injunction will be substantial in any event; the harm to LG will be nonexistent if their pretensions to "true" steam prove false. Thus, discovery regarding LG's Tromm Steam Dryer and its claims to use "true" steam, is not only relevant, but crucial to Whirlpool's defense.

Additionally, Whirlpool is entitled to discovery regarding LG's use of the word "steam" with respect to its other appliance products. To prevail on its motion, LG must show that it has a likelihood of prevailing on its theory that only one "true" definition of the word "steam" exists and that any other definition must, therefore, false. In order to impeach the testimony already

---

[3] If, on a motion for preliminary injunction, the moving party clears the threshold of showing both a likelihood of success on the merits and irreparable harm, the court must then consider "the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied." *Abbott*, 971 F.2d at 11.

presented by LG in support of its motion, that there is only one "true" definition of the word "steam," Whirlpool is entitled to discovery regarding how LG has used that same word in connection with its other appliances.

**CONCLUSION**

LG puts forth its own technology as one of the primary reasons it is entitled to a preliminary injunction against Whirlpool.  Whirlpool's narrowly-tailored discovery regarding LG's claims that its technology uses "true" steam, and that there is only one "true" definition of the word "steam," are plainly relevant LG's motion for preliminary injunction and Whirlpool's defense thereof.

**WHEREFORE**, Defendant Whirlpool Corporation respectfully requests that LG Electronics U.S.A., Inc. be compelled to respond and provide documents responsive to Whirlpool's document requests, numbers 2, 3, 4, 5, 8, and 10, by February 1, 2008, in accordance with the Court's order for expedited discovery, and for such further relief as the Court deems appropriate.

Dated: January 23, 2008

Respectfully submitted,
WHIRLPOOL CORPORATION, Defendant

/s/      Carey L. Bartell
Brian D. Roche
Carey L. Bartell
Vanessa C. Martí
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 207-1000

Attorneys for Defendant, Whirlpool
Corporation

Of counsel:
J. A. Cragwall, Jr.
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, Michigan 49503-2487
Telephone (616) 752-2000

2133842

## CERTIFICATE OF SERVICE

I, Carey L. Bartell, an attorney, hereby certify that on January 23, 2008, I filed the foregoing **Motion to Compel Production of Documents** with the Clerk of the Court using the ECF system which will send notification of such filings to the following:

> Ronald Y. Rothstein
> rrothstein@winston.com
> David Alexander Latchana
> dlatchana@winston.com
> Shannon Leigh Stevens
> sstevens@winston.com

I hereby also certify that I mailed the attached **Motion to Compel Production of Documents** to the following by first class mail with postage prepaid on this 23d day of January, 2008:

> Mary M. Hutchings
> Winston & Strawn LLP
> 35 West Wacker Drive
> Chicago, IL  60601

By:     */s/ Carey L. Bartell*
Brian D. Roche
Carey L. Bartell
Vanessa C. Martí
REED SMITH, LLP
10 South Wacker Drive
Chicago, IL  60606-7507
(312) 207-1000