IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC., | ) | |
| a subsidiary of LG Electronics, Inc., | ) | |
| a Korean company, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Case No. 08 C 242 |
| | ) | |
| v. | ) | Honorable Amy J. St. Eve |
| | ) | |
| WHIRLPOOL CORPORATION, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## DEFENDANT WHIRLPOOL CORPORATION'S ANSWER, JURY DEMAND, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Defendant/Counter-Plaintiff Whirlpool Corporation ("Whirlpool"), by its

attorneys, Reed Smith LLP, answers the Complaint of Plaintiff/Counter-Defendant LG

Electronics U.S.A., Inc. ("LG"), as follows:

## NATURE OF THE ACTION

1.      This is an action seeking the entry of a preliminary and permanent injunction for false advertising and unfair competition for the violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, and the Illinois common law of unfair competition.

**RESPONSE:**  Whirlpool admits that in this action LG seeks the entry of a preliminary

and permanent injunction pursuant to the statutes and common law as alleged in Paragraph 1.

Whirlpool denies that LG is entitled to the relief sought and denies any liability herein.

2.      This action arises from Whirlpool's practice of unfair competition in interstate commerce, by making explicitly false and misleading marketing and advertising claims regarding its Duet® Steam Dryer in a national advertising campaign appearing on television, in

print, and on its website, www.whirlpool.com.  Whirlpool's website print ads are attached as Exhibit 1.

**RESPONSE:**  Whirlpool admits that Exhibit 1 contains true copies of Whirlpool website

print ads.  Whirlpool denies each of the remaining allegations in this paragraph.

3.      In October 2007, Whirlpool launched its Duet® Steam Dryer in the United States. At approximately the same time, Whirlpool began an advertising campaign in every market nationwide and online which makes the explicitly false and misleading claim that its Duet® Steam Dryer uses steam to remove wrinkles, touch-up clothing, and remove odors from clothing. The Duet® Steam Dryer, however, does not use "steam," but instead uses a mist of cold water sprayed into a warm dryer drum.  The name "Duet® Steam Dryer" is in and of itself explicitly false and misleading.

**RESPONSE:**  Whirlpool admits that it launched its Duet® Steam Dryer on a nationwide

basis in October 2007 in conjunction with a national advertising campaign, but states that it

initiated a limited release and related marketing campaign prior to October 2007.  Whirlpool

denies each of the remaining allegations in this paragraph.

## THE PARTIES

4.      Plaintiff LG USA has its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey, 07632.  LG USA is a sales subsidiary of LG Electronics, Inc. ("LG"), a Korean corporation with its headquarters at LG Twin Towers 20, Yoido-dong, Youngdungpo-gu Seoul, Korea 150-721.  LG USA has an office at 2000 Millbrook Drive, Lincolnshire, Illinois, 60069, which has approximately 200 employees and provides technical support for all LG products.  LG is a global leader of consumer electronics, home appliances, and mobile communications.  LG employs more than 82,000 people and has 81 subsidiaries around the world.  LG home appliance products are sold in the United States through LG USA.

**RESPONSE:**  On information and belief, Whirlpool admits that LG's principal place of

business is 1000 Sylvan Avenue, Englewood Cliffs, New Jersey, 07632, and that LG is a

subsidiary of LG Electronics, Inc., a Korean corporation with its headquarters at LG Twin

Towers 20, Yoido-dong, Youngdungpo-gu Seoul, Korea 150-721.  Whirlpool lacks knowledge

or information sufficient to form a belief as to the truth of the remaining allegations in this

paragraph.

5.    Defendant Whirlpool is a publicly held corporation organized and existing under the laws of the state of Delaware. Whirlpool's principal place of business is 2000 North M-63, Benton Harbor, Michigan, 49022-2692. Whirlpool manufactures and markets home appliances and related products, including laundry appliances, refrigerators, and dishwashers. Whirlpool's brand names include Whirlpool, Maytag, KitchenAid, Roper, Estate, Admiral, Speed Queen, Baunecht, Ignis, Laden, Algor and Fides.

**RESPONSE:** Admitted, except that Whirlpool or one of its subsidiaries is the owner of

the referenced brand names.

6.    LG USA and Whirlpool are direct competitors in the home appliance industry, including direct competitors in the washer and dryer segment. LG USA's and Whirlpool's washer and dyers are sold in the same channels of commerce, and the same retail outlets and stores, in every state.

**RESPONSE:** Admitted.

## JURISDICTION AND VENUE

7.    Whirlpool has engaged in the transaction of business and committed the acts complained of herein in interstate commerce and in the Northern District of Illinois. Jurisdiction is based upon 15 U.SC. § 1121 and 28 U.S. C. §§ 1331 and 1338(b). Venue is proper in the district under 28 U.S.C. § 1391(b) as the case in controversy arose in this judicial district. Venue is also proper in this district because Whirlpool is deemed to reside in Illinois pursuant to 28 U.S.C. § 1391(c).

**RESPONSE:** Whirlpool admits that this Court has both subject matter and personal

jurisdiction over this dispute. Whirlpool also admits that venue is proper in the Northern District

of Illinois pursuant to 28 U.S.C. § 1391. Whirlpool has moved, pursuant to 28 U.S.C. § 1404(a),

to transfer this action to the Western District of Michigan as a more convenient and appropriate

forum. Whirlpool denies any remaining allegations in this paragraph.

## FACTUAL ALLEGATIONS

8.    In October 2007, Whirlpool launched the Duet® Steam Dryer, a machine which, by its name and national advertising, purports to be capable of producing steam and the many attributes and benefits of steam.

**RESPONSE:** Whirlpool admits that it launched the Duet® Steam Dryer on a nationwide

basis in October 2007, after an earlier limited release, in conjunction with a national advertising

campaign that truthfully states that the Duet® Steam Dryer uses steam to refresh, reduce

wrinkles, and remove odors.  Whirlpool denies each of the remaining allegations in this

paragraph.

9.    Whirlpool claims that Duet® Steam Dryer infuses clothing "with steam" to refresh, steam out wrinkles, and deodorize.

**RESPONSE:**  Admitted.

10.    Whirlpool has been advertising the alleged steam attribute of its new dryer in print, television, and online advertising.

**RESPONSE:**  Admitted.

11.    Whirlpool's use of the word "steam" in the name of the Duet® Steam Dryer and in advertising campaigns promoting it is expressly false and misleading to consumers and extremely harmful to legitimate competition.

**RESPONSE:**  Denied.

12.    The Duet® Steam Dryer does not utilize "steam."  Instead, the Duet® Steam Dryer injects a mist of cold water for 60 seconds into a heated dryer drum.  Steam itself is never used or created in the Duet® Steam Dryer.

**RESPONSE:**  Whirlpool admits that the Duet® Steam Dryer injects a nebulized mist of

water for 60 seconds into a heated dryer drum to create steam.  Whirlpool denies each of the

remaining allegations in this paragraph.

13.    The Duet® Steam Dryer does not possess a steam generator or any mechanism capable of infusing water heated to 100 degrees Celsius (212 degrees Fahrenheit) onto clothing.

**RESPONSE:**  Denied.

14.    Instead, the Duet® Steam Dryer tumbles like a traditional dryer utilizing a gas or electric heater.  Then, once the tumbler is heated, a mist of cold water from a Y-connector from the washing machine is shot into the tumbler for 60 seconds.  The dryer continues to warm and tumble until the water is removed from the clothing.

**RESPONSE:** Whirlpool admits that the Duet® Steam Dryer creates steam by injecting a fine mist of water from a Y-connector into a heated dryer drum for 60 seconds. Whirlpool denies each of the remaining allegations in this paragraph.

15.     Simply heating the interior or the dryer drum to a temperature well short of the required 100 degree Celsius threshold required to create steam, infusing a mist of cold water, and tumbling until dry is, under no circumstances, a steam function.

**RESPONSE:** Denied.

16.     Steam is a clear gas obtained by vaporizing water, which occurs at standard pressure when the water is heated at or above its boiling point of 100 degrees Centigrade.

**RESPONSE:** Whirlpool admits that this paragraph contains one of the acceptable definitions of steam. Whirlpool denies that this is the only acceptable definition of steam and denies any remaining allegations in this paragraph.

17.     Mist is a opaque or semi-opaque collection of liquid water and air into droplets, which occurs when water is mechanically dispersed at a temperature below 100 degrees Centigrade.

**RESPONSE:** Whirlpool admits that this paragraph contains one of the acceptable definitions of mist. Whirlpool denies that this is the only acceptable definition for mist and denies any remaining allegations in this paragraph.

18.     Steam and mist are separate and distinct forms of water. Steam must reach boiling points. Mist never reaches boiling point.

**RESPONSE:** Denied.

19.     For instance, many clothing irons have separate mist and steam functions. The mist function shoots out a spray of water that is then ironed into the clothes by the iron's heat. The steam function, however, requires that a generator within the iron heat water to boiling point and then send out the vapor of steam onto the clothing.

**RESPONSE:** Denied.

20.     The uses of steam are commonplace and well-known. For example, steam engines have powered everything from locomotives, boats and factories since the industrial revolution. Power from steam engines begins with a boiler. The boiler's job is to apply heat to

water to its boiling point, thus creating steam.  The steam generated from the boiler is injected into the engine.  The force of the steam then moves pistons to create power.

**RESPONSE:**  Whirlpool admits that this paragraph describes one method of generating a particular type of steam in a particular context.  Whirlpool denies the implication that the word "steam" must necessarily involve a boiler, and denies any remaining allegations in the paragraph.

21.     A mist of water cannot power a steam engine.  A mist of water does not reach boiling point and thus does not have the energy or force to drive an engine.

**RESPONSE:**  Whirlpool admits that a mist of water cannot power a steam engine. Whirlpool denies the implication that the word "steam" must necessarily involve boiling, denies that there is any expectation that the steam used in a clothes dryer should be able to power a steam engine, and denies any remaining allegations in this paragraph.

22.     LG USA launched its Tromm Steam Dryer in the United States during the final week of December 2007 on a limited basis and will launch nationwide in January 2008.

**RESPONSE:**  Admitted upon information and belief.

23.     Unlike the Duet® Steam Dryer, LG USA's Tromm Steam Dryer actually shoots steam into the dryer tumbler from a steam generator attached to the machine.  LG USA's Tromm Steam Dryer, equipped with a generator, heats water to the boiling point of 100 degrees Celsius. Once the generator creates the steam, the steam is blown through a tube and injected in the dryer tumbler.  The steam that is injected into the dryer is not a mist of cold water that is later heated, like the Duet® Steam Dryer.  The generator in the Tromm Steam Dryer creates steam prior to its entering the dryer tumbler.

**RESPONSE:**  Whirlpool admits that LG's Tromm Steam Dryer is equipped with a generator that boils water to create steam.  Whirlpool denies that the paragraph correctly describes the functioning of LG's Tromm Steam Dryer, denies that the Duet® Steam Dryer does not use steam, and denies all the remaining allegations in this paragraph.

24.     The addition of a steam generator that injects real steam into the dryer drum is a unique feature on the Tromm Steam Dryer and is costly.  As a result, upon introduction, the Tromm Steam Dryer will, by necessity, be priced higher than the Duet® Steam Dryer.  Yet, as described above, Whirlpool's machine is bearing "steam" in its name and advertised as such,

lacks any steam capability.  The deception employed by Whirlpool puts LG USA at a distinct and unfair competitive disadvantage.

**RESPONSE:**  Whirlpool lacks knowledge or information sufficient to form a belief as to costs of the boiler tank used for creating steam in the Tromm Steam Dryer and whether this will result in a dryer priced higher than the Duet® Steam Dryer.  Whirlpool denies that Tromm Steam Dryer provides a unique feature of steam in a dryer and denies any remaining allegations in this paragraph.

25.    Whirlpool is fully aware of the deception it is engaged in as it does, in fact, make a washing machine that contains a steam generator designed to steam clothing during the wash cycle.  Prior to launching the Duet® Steam Dryer, Whirlpool had introduced the Duet® Steam Washer.  The Duet® Steam Washer utilizes a steam generator that heats water to boiling point and is used in the wash cycle.

**RESPONSE:**  Whirlpool admits that the Duet® Steam Washer uses a steam generator that heats water to the boiling point and is used in the wash cycle.  Whirlpool denies that it has engaged in any deception and denies the remaining allegations in this paragraph.

26.    Dryers utilizing steam have benefits separate and distinct from traditional dryers.  Steam removes wrinkles, static, and odors better than a traditional dryer.  It also uses less energy than drying a load in the traditional way.

**RESPONSE:**  Whirlpool admits that dryers utilizing steam have benefits separate and distinct from traditional dryers, including removing wrinkles and odors better than a traditional dryer.  Whirlpool lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations in this paragraph.

27.    Given the added benefits of utilizing steam in the dryer, it is anticipated that the steam dryer market will become a significant part of the home appliance industry.

**RESPONSE:**  Whirlpool admits that, given the added benefits of utilizing steam in the dryer, it is anticipated that steam dryers will become a significant part of the home appliance industry.  Whirlpool denies the remaining allegations in this paragraph.

28.     Whirlpool launched its Duet® Steam Dryer in October 2007.  Whirlpool chose to use the term "steam" in its dryer name despite the fact that it injects a mist of cold water into a heated tumbler, not steam.

**RESPONSE:**  Whirlpool admits that it launched the Duet® Steam Dryer on a nationwide basis in October 2007, after an earlier limited release.  Whirlpool admits that it uses the term "steam" in the dryer's name and admits that it creates steam by injecting a mist of water into a heated dryer drum.  Whirlpool denies any remaining allegations in this paragraph.

29.     At or about the time of the Duet® Steam Dryer launch, Whirlpool placed on its website information regarding the Duet® Steam Dryer (the "ad" or "ads").  The ads are easily accessible via Whirlpool's webpage www.whirlpool.com, and are also attached as Exhibit 1.

**RESPONSE:**  Admitted.

30.     One ad states:  "Naturally steam out wrinkles and odors with the touch of a button.  The new Duet® Steam dryer features two cycles – Enhanced Touch-Up and Quick Refresh – that infuse clothing with steam to refresh and dewrinkle."

**RESPONSE:**  Admitted.

31.     Further, a pop-up ad titled "The pure power of steam" states "Nothing beats the power of steam to get rid of wrinkles.  The Duet Steam dryer naturally steams out wrinkles in just minutes, while removing any lingering odors."

**RESPONSE:**  Admitted.

32.     The website also contains a feature video titled "Duet® Steam Fabric Care System.  This video states that the Duet® Steam Dryer:

     i.     "naturally steams away tough stains;"
     ii.    "steams out tough wrinkles and odors;" and
     iii.   uses "the pure power of steam."

**RESPONSE:**  Whirlpool admits that the website contains a featured video entitled "Duet® Steam Fabric Care."  Whirlpool further admits that the video states that the Duet® Steam *Washer* "naturally steams away tough stains," that the Steam Dryer "steams out wrinkles and odors," and that the Steam Washer and Steam Dryer together care for your clothes with "the pure power of steam."  Whirlpool denies the remaining allegations of this paragraph.

8

33.    The website video further asks "How does the addition of steam work to enhance cleaning performance?  In response, the video states that the Duet® Steam Dryer:

     i.    provides the "unique benefits of steam;" and
     ii.   provides a setting of "20 minutes of steam and tumbling."

**RESPONSE:**  Whirlpool admits that the video asks "How does the addition of steam

work to enhance cleaning performance" in connection with the Duet® Steam *Washer*.

Whirlpool further admits that the video states that the "unique benefits of steam" are available in

the Steam Dryer, and that the Dryer has a setting for "20 minutes of steam and tumbling."

Whirlpool denies the remaining allegations of this paragraph.

34.    The website video states that "The Whirlpool Duet® Steam laundry pair, a whole new way to care for your clothes from start to finish, with the pure power of steam.  Just another laundry innovation from Whirlpool."

**RESPONSE:**  Admitted.

35.    The name "Duet® Steam Dryer" and statements in the ads as described in Paragraphs 29-34 are explicitly false and misleading because they falsely imply that the a Duet® Steam Dryer uses steam, and that drying with steam was Whirlpool's "innovation."

**RESPONSE:**  Denied.

36.    The Duet® Steam Dryer does not use steam.  Upon information and belief, the Duet® Steam Dryer injects water for up to 60 seconds into a warm dryer tumbler.  The Duet® Steam Dryer does not inject steam into the dryer tumbler.

**RESPONSE:**  Whirlpool admits that the Duet® Steam Dryer creates steam by injecting a

nebulized mist of water for 60 seconds into a heated dryer drum.  Whirlpool denies the

remaining allegations of this paragraph.

37.    Upon information and belief, Whirlpool is well aware from its own advertising initiatives and marketing expertise that the word "steam" has a specific meaning and context, particularly when used in a context of cleaning.  "Steam" in the cleaning contexts relates to superior and deep-penetrating cleaning with added benefits of reducing wrinkles and odors.  A false and deceptive superiority claim of cleaning power is extremely harmful to fair competition.

**RESPONSE:** Whirlpool admits only that a false and deceptive superiority claim of cleaning power would be harmful to fair competition. Whirlpool denies that steam has only one meaning either in the context of cleaning or in common usage, and denies the remaining allegations of this paragraph.

38.     Whirlpool specifically states in its online pop-up ad "Nothing beats the power of steam. . . . The Duet Steam dryer naturally steams out wrinkles in just minutes, while removing any lingering odors." This statement is explicitly false and misleading because it claims that drying with steam is superior. The Duet® Steam Dryer, however, does not utilize steam, and thus lacks the attribute that it claims superior.

**RESPONSE:** Whirlpool admits that it has used the pop-up ad referenced in this paragraph. Whirlpool denies the remaining allegations of this paragraph.

39.     The unfair and deceptive effect of Whirlpool's use of "steam" in the naming of its Duet®  Steam Dryer and the advertising surrounding it is clear and dramatic. By using the word "steam" in the name of the Duet® Steam Dryer and in advertising, the message conveyed to consumers is that the Duet® Steam Dryer utilizes steam to provide superior cleaning performance.

**RESPONSE:** Whirlpool admits that it uses the word "steam" in its product name and advertising, but denies that such use is unfair or deceptive. Whirlpool denies the remaining allegations of this paragraph.

40.     Whirlpool's use of the word "steam" to describe its Duet® Steam Dryer is explicitly false and misleading because steam is not used at all in Whirlpool's steam dryer. Whirlpool knowingly utilizes the word "steam" because its rival, LG USA, has recently launched a dryer that shoots steam in the dryer tumbler. Whirlpool's actions constitute a knowing attempt by Whirlpool to misappropriate LG USA's potential customers.

**RESPONSE:** Denied.

41.     Whirlpool's use of the word "steam" in the naming and advertising of its Duet® Steam Dryer will cause and is causing LG USA to suffer irreparable injury to its goodwill and reputation, for which LG USA has no adequate remedy at law.

**RESPONSE:** Denied.

42.     Whirlpool's explicitly false and misleading name and advertisements that it utilizes "steam" in its Duet® Steam Dryer diminishes LG USA's goodwill in utilizing steam

technology.  LG USA  has added a steam generator to its Tromm Steam Dryer.  The addition of the generator costs more to manufacture and LG USA, consequently, must sell its Tromm Steam Dryer at a higher price point than the Duet® Steam Dryer.  Whirlpool's naming and advertising of the Duet® Steam Dryer is harmful to competition because the Duet® Steam Dryer does not utilize steam, but will divert sales from LG USA to Whirlpool's product, even though only LG USA's product uses steam.  The irreparable injury caused by these actions is especially potent since LG USA and Whirlpool are direct competitors in the sale of washers and dryers nationally.

**RESPONSE:**  Whirlpool admits that the Tromm Steam Dryer, like the Duet® Steam

Dryer, has the capability to generate steam, and that the Tromm Steam Dryer has a MSRP that is

more than the Duet® Steam Dryer.  Whirlpool denies the remaining allegations of this

paragraph.

43.     LG USA believes that it will lose sales of its Tromm Steam Dryer as a direct result of the explicitly false claims made by Whirlpool in naming and advertising its product as a "steam" dryer, when it actually utilizes a cold water mist.  LG USA will now be forced to expend monies to counteract the inaccuracies in Whirlpool's advertising and explain why it is not utilizing "steam" technology.

**RESPONSE:**  Denied.

## COUNT I:  LANHAM ACT

44.     LG USA repeats and realleges the allegations set forth in paragraphs 1 through 43 of this complaint.

**RESPONSE:**  Whirlpool incorporates its answers to paragraphs 1 through 43 by

reference.

45.     Whirlpool's explicitly false advertising claims as described above constitute false and misleading descriptions of fact and false and misleading representations of fact in interstate commercial advertising and promotion, which materially misrepresent the performance capabilities of its Duet® Steam Dryer, in violation of Section 43(a) of the Lanham Act, 15. U.S. C. § 1125(a).

**RESPONSE:**  Denied.

46.     Whirlpool's explicitly false and misleading descriptions of fact and false and misleading representations of fact are willful and intentional, with deceptive intent, making this an exceptional case.

**RESPONSE:**  Denied.

47.    Whirlpool's explicitly false and misleading advertising claims have caused, and will continue to cause, great, immediate, and irreparable harm to LG USA's business reputation, injury to its goodwill, loss of competitive advantage, and pecuniary damages.

**RESPONSE:** Denied.

48.    LG USA has no adequate remedy at law.

**RESPONSE:** Denied.

## COUNT II:  ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

49.    LG USA repeats and realleges the allegations set forth in paragraphs 1 through 43 of this complaint.

**RESPONSE:**  Whirlpool incorporates its answers to paragraphs 1 through 43 by

reference.

50.    Whirlpool's explicitly false advertising claims as described above constitute unfair methods of competition and unfair and deceptive acts and practices, including but not limited to the use and employment of deception, fraud, false pretense, false promise, misrepresentation and the concealment, suppression and omission of material facts, with intent that others rely upon the concealment, suppression and omission of such material facts in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

**RESPONSE:**  Denied.

51.    Whirlpool's explicitly false and misleading descriptions of fact and false and misleading representations of fact are willful and intentional, with deceptive intent, making this an exceptional case.

**RESPONSE:**  Denied.

52.    Whirlpool's explicitly false and misleading advertising claims have caused, and will continue to cause, great, immediate, and irreparable harm to LG USA's business reputation, injury to its goodwill, loss of competitive advantage, and pecuniary damages.

**RESPONSE:**  Denied.

53.    LG USA has no adequate remedy at law.

**RESPONSE:**  Denied.

## COUNT III:  ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

54.     LG USA repeats and realleges the allegations set for the in paragraphs 1 through 43 of this complaint.

**RESPONSE:**  Whirlpool incorporates its answers to paragraphs 1 through 43 by

reference.

55.     Whirlpool's explicitly false advertising claims as described above represent deceptive trade practices in that Whirlpool:  falsely represents that the Duet® Steam Dryer utilizes steam; possess characteristic sand benefits that it does not have; falsely represents that the Duet® Steam Dryer is of a particular quality or grade, when in fact it is another; disparages the goods of another by false and misleading representations of fact; and otherwise engages in conduct which creates a likelihood of confusion or misunderstanding in the violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

**RESPONSE:**  Denied.

56.     Whirlpool's explicitly false and misleading descriptions of fact and false and misleading representations of fact are willful and intentional, with deceptive intent, making this an exceptional case.

**RESPONSE:**  Denied.

57.     Whirlpool's explicitly false and misleading advertising claims have caused, and will continue to cause, great, immediate, and irreparable harm to LG USA's business reputation, injury to its goodwill, loss of competitive advantage, and pecuniary damages.

**RESPONSE:**  Denied.

58.     LG USA has no adequate remedy at law.

**RESPONSE:**  Denied.

## COUNT IV:  ILLINOIS COMMON LAW OF UNFAIR COMPETITION

59.     LG USA repeats and realleges the allegations set forth in paragraphs 1 through 43 of this complaint.

**RESPONSE:**  Whirlpool incorporates its answers to paragraphs 1 through 43 by

reference.

60.     Whirlpool's explicitly false advertising claims as described above constitute false and misleading descriptions of fact and false and misleading representations of fact in

commercial advertising and promotion, which misrepresent the performance capabilities of its Duet® Steam Dryer, in violation the common law of the State of Illinois.

**RESPONSE:**  Denied.

61.     Whirlpool's unfair competition is willful and intentional, with deceptive intent.

**RESPONSE:**  Denied.

62.     Whirlpool's conduct is in willful and wanton disregard of LG USA's valuable rights and property and of the law and practices of advertising.  By such conduct, Whirlpool knowingly seeks to misappropriate LG USA's valued customers and to injure and tarnish LG USA's valuation goodwill reputation.

**RESPONSE:**  Denied.

63.     LG USA has no adequate remedy at law.

**RESPONSE:**  Denied.

## PRAYER FOR RELIEF

WHEREFORE, Whirlpool requests that this Court dismiss LG's Complaint in its entirety and award Whirlpool all relief that the Court deems just and equitable, including Whirlpool's fees and expenses incurred in responding to LG's claims.

## JURY DEMAND

Whirlpool demands a trial by jury.

## AFFIRMATIVE DEFENSES

1.     LG's Complaint fails to allege facts sufficient to state a claim for which relief can be granted against Whirlpool.

2.     LG's claims are barred because LG cannot demonstrate any likelihood that the public will be confused or misled as to the nature or performance of the Duet® Steam Dryer.

3.     LG's claims are barred because LG failed to mitigate its damages, if any, by waiting for the most anti-competitive time to file this lawsuit, i.e., immediately following LG's

launch of the Tromm, rather than raising the issue when LG first became aware of Whirlpool's claims about the Duet® Steam Dryer.

4.     LG's claims are barred by waiver, estoppel, unclean hands, laches, or similar legal or equitable doctrines, because LG waited for the most anti-competitive time to file this lawsuit, i.e., immediately following LG's launch of the Tromm, rather than raising the issue when LG first became aware of Whirlpool's claims about the Duet® Steam Dryer.

5.     LG's claims are barred because any damage LG has suffered is the result of its own conduct in creating and marketing a more expensive steam dryer, or the conduct of consumers who, with full knowledge of both products, have chosen the Duet® Steam Dryer over the Tromm.  Whirlpool therefore pleads independent, intervening, and/or superseding acts and omissions of LG and others as a complete bar to this action.

6.     LG's claims are barred because Whirlpool's advertising comes within the protection of the First Amendment and Article I, Section 4 of the Illinois Constitution.

<u>**COUNTERCLAIM**</u>

<u>**NATURE OF THE ACTION**</u>

1.     Whirlpool seeks entry of a preliminary and a permanent injunction and damages for false advertising and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2, and the Illinois common law of unfair competition.

2.     This action arises from LG's use of false and misleading marketing and advertising claims regarding several of its appliances, including its Tromm Steam Washer and Tromm Steam Dryer.  LG has made such false and misleading claims in national advertising

campaigns appearing on television, in print, and on its website with respect to its own products as well as those of Whirlpool.

## THE PARTIES

3.     Whirlpool Corporation is a Delaware corporation with its principal place of business at 2000 M63 N in Benton Harbor, Michigan.  Whirlpool manufactures, among other things, residential laundry appliances.

4.     LG is a Delaware corporation with its principal place of business at 1000 Sylvan Avenue in Englewood Cliffs, New Jersey.  LG is a subsidiary of LG Electronics, Inc., a Korean corporation with its headquarters at LG Twin Towers 20, Yoido-dong, Youngdungpo-gu Seoul, Korea 150-721.  LG manufactures, among other things, residential laundry appliances.

5.     Whirlpool and LG compete in the manufacture and sale of home appliances, including washers and dryers, in the United States and around the world.

## JURISDICTION AND VENUE

6.     This Court has federal question jurisdiction over the Lanham Act claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  The amount of controversy, exclusive of interests and costs, exceeds $75,000.

7.     Venue is proper in the Northern District of Illinois because, while the events giving rise to this claim did not occur in the district, both Whirlpool and LG conduct business in the state of Illinois, and thus are considered to reside in the district pursuant to 28 U.S.C. § 1391. Pursuant to 28 U.S.C. § 1404(a), Whirlpool has moved to transfer LG's original complaint in this matter to the Western District of Michigan as a more convenient and appropriate forum for this dispute.

## **FACTUAL ALLEGATIONS**

### *The Duet® Steam Washer and Steam Dryer*

8.     One of Whirlpool's newest products is a clothes dryer called the Duet® Steam Dryer.  The Duet® Steam Dryer uses an innovative steam technology to remove odors, relax wrinkles, and refresh dry clothes without the need to run the clothes through a full wash and dry cycle.  Steam is formed when the dryer injects a nebulized mist of water into the heated dryer drum.

9.     In October 2007, Whirlpool introduced the Duet® Steam Dryer to stores nationwide, following an earlier limited release.

10.     The Duet® Steam Dryer is the matching dryer to Whirlpool's Duet® Steam Washer, previously introduced by Whirlpool.

11.     Consumer Reports, an expert, independent nonprofit organization whose mission is "to work for a fair, just, and safe marketplace for all consumers and to empower consumers to protect themselves," has reviewed both the Duet® Steam Washer and the Duet® Steam Dryer in its publication and awarded both machines an overall rating of "excellent."  Consumer Reports first noted Whirlpool's claim that the Duet® Steam Washer's steam mode boosted stain removal and concluded that the steam setting was "better at removing stains—the LG's, less so."  Consumer Report also examined Whirlpool's claim that the Duet® Steam Dryer's steam setting reduced wrinkles, noting:  "We also tested the steam settings of Kenmore's and Whirlpool's matching dryers.  Both use a water hookup and heat to get rid of wrinkles and odors, and they mostly did so with the shirts we tested."  (The Consumer Reports article is attached as Exhibit 1.)

### *The Tromm Steam Washer and Tromm Steam Dryer*

12.    LG manufactures a competitive clothes dryer known as the Tromm Steam Dryer. LG launched the Tromm Steam Dryer in the United States in the final week of December 2007 on a limited basis and introduced the product nationwide in January 2008.

13.    Like the Duet® Steam Dryer, the Tromm Steam Dryer uses steam to help release wrinkles and reduce odors in clothes.  Unlike the Duet® Steam Dryer, the Tromm Steam Dryer uses a boiler tank for heating water to 100 degrees Celsius to create steam.  The Tromm Steam Dryer has a MSRP that is more than the Duet® Steam Dryer.

14.    LG also manufactures a matching competitive washer known as the Tromm Steam Washer which also offers steam as a feature of its wash cycle.

15.    LG advertises and markets its products through various media, including, but not limited to, television, the Internet, print and packaging.

16.    As set forth below, LG has made express and implied claims that its Tromm Steam Dryer is superior to Whirlpool's competing and first-to-market Duet® Steam Dryer.  LG's false and misleading advertising is designed to mislead consumers into believing that of the two dryers, only LG's uses steam; that LG was the first to have a dryer using steam; and that LG's dryer uses steam while Whirlpool, according to LG, uses only a mist of water.

17.    LG has implemented its false advertising campaign with at least the following false and misleading claims:

      1.    that the LG Tromm Steam Dryer "offers unmatched functionality in freshening clothes compared to other dryers on the market";

      2.    that the SteamFresh™ Cycle on the Tromm Steam Dryer is "steam only" and reduces wrinkles and freshens dry clothes without the use of water;

3.      that the Tromm Steam Dryer and Steam Washer offer consumers "the first and only complete steam laundry care option" and that it has "pioneered the first steam washer and dryer".

18.     LG makes false and misleading claims in its advertising as to the steam functionality in its Tromm Steam Washer.  LG falsely claims on its website and elsewhere that the Tromm Steam Washer has a StreamFresh™ cycle that allows dirty clothes to be removed from the washer in a clean and ready-to-wear condition after just twenty minutes.  In fact, the SteamFresh™ cycle takes at least 20 minutes and clothes are damp at the end of the cycle so that a consumer must wait at least another 10 minutes, as acknowledged in the owner's manual of the LG Tromm Steam Washer, before clothes are ready to wear.  Moreover, a television commercial commonly referred to as the "Dirty City" commercial misrepresents the speed and efficiency of the Tromm Steam Washer, by showing that its SteamFresh™ cycle performs in a manner that is faster and more convenient that it actually is, communicating to a consumer that the SteamFresh™ cycle takes merely a matter of minutes and that, upon completion of that cycle, clothes are in a ready to wear condition.

### *Irreparable Injury to Whirlpool*

19.     LG's claims, noted above, are explicitly and demonstrably false and misleading:

1.      LG's Tromm Steam Dryer does not offer unmatched functionality in freshening clothes.  Testing shows that both LG's and Whirlpool's steam dryers offer similar results in freshening clothes.

2.      The Tromm Steam Dryer injects liquid water into the dryer drum when operating in its SteamFresh™ Cycle thus making false LG's express and implied claim that its product freshens clothes without the use of water and

implying that it is superior to the Duet® Steam Dryer because of LG's claim that the Tromm Steam Dryer uses "steam only" and "real steam".

3.    The Tromm Steam Washer and Tromm Steam Dryer did not offer consumers "the first and only complete steam laundry care option." The Whirlpool Duet® Steam Washer and Duet® Steam Dryer offer a complete steam care option and were the industry's first steam laundry pair.

4.    LG's SteamFresh™ cycle does not produce ready-to-wear clothes in "just twenty minutes." In fact, once the clothes complete the SteamFresh™ cycle, which takes at least twenty minutes, the clothes must be allowed to dry for at least 10-20 additional minutes before they are dry and ready to be worn. Unlike the Tromm Steam Washer, the Duet® Steam Dryer refreshes clothes quickly - within approximately fifteen minutes.

20.    On information and belief, LG is well aware that its marketing materials contain false or misleading statements such as those described above. LG nonetheless makes these false claims because its rival, Whirlpool, has a competing steam washer and steam dryer pair, which Whirlpool introduced before LG and at what LG claims is a lower price than its own product. LG's actions constitute a knowing attempt by LG to misappropriate Whirlpool's potential customers.

21.    LG's false and misleading statements regarding its products are harmful to fair competition and are causing and will cause Whirlpool to suffer irreparable injury in the form of decreased consumer confidence, sales, profits, reputation, and goodwill. Whirlpool will also be forced to spend significant advertising money of its own to counteract the inaccuracies in LG's advertising. The irreparable injury LG is causing and will continue cause to Whirlpool is

especially potent since LG and Whirlpool are direct competitors in the sale of washers and dryers in the United States.

## COUNT I

### LANHAM ACT

22.    Whirlpool incorporates paragraphs 1 through 21 herein by reference.

23.    Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), prohibits, among other things, any "false or misleading description of fact, or false or misleading representation of fact which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . . of . . . goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).

24.    LG's expressly false advertising claims, as described above, constitute false and misleading descriptions of fact and false and misleading representations of fact in interstate commercial advertising and promotion, which materially misrepresent the performance capabilities of the Tromm Steam Dryer and Tromm Steam Washer in violation of Section 43(a) of the Lanham Act.

25.    LG's expressly false and misleading advertising and statements about its products actually deceive or are likely to deceive a substantial segment of consumers.  On information and belief, LG's misrepresentations are willful and intentional, made with deceptive intent, making this an exceptional case.

26.    LG's false and misleading advertising and statements about its products are material to consumers' purchasing decisions.

27.    Whirlpool has suffered and will continue to suffer lost sales and profits as a result of LG's false and misleading advertisements and statements about its products.  In addition to monetary harm, LG's statements have caused and will continue to cause Whirlpool to suffer the

irreparable harm of loss of consumer confidence, reputation, and good will, for which there is no adequate remedy at law.

## COUNT II

### ILLINOIS CONSUMER FRAUD
### AND DECEPTIVE BUSINESS PRACTICES ACT

28.     Whirlpool incorporates paragraphs 1 through 21 herein by reference.

29.     LG's expressly false advertising claims, as described above, constitute unfair methods of competition and unfair and deceptive acts and practices.  On information and belief, LG's misrepresentations are willful and intentional, made with deceptive intent, making this an exceptional case.

30.     LG intended consumers to rely on its deceptive statements to induce them to purchase LG's products.

31.     LG's deceptive statements occurred in the course of conduct involving trade or commerce and in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

32.     Whirlpool has suffered and will continue to suffer lost sales and profits as a result of LG's false and misleading advertisements and statements about its products.  In addition to monetary harm, LG's statements have caused and will continue to cause Whirlpool to suffer the irreparable harm of loss of consumer confidence, reputation, and good will for which there is no adequate remedy at law.

## COUNT III

### ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

33.     Whirlpool incorporates paragraphs 1 through 21 herein by reference.

34.     LG's false advertising claims are made with the intent, purpose, and effect of disparaging Whirlpool's products and business by false or misleading representations of fact;

advertising products with an intent not to sell them as advertised; and otherwise creating a likelihood of confusion or misunderstanding.  On information and belief, LG's misrepresentations are willful and intentional, made with deceptive intent, making this an exceptional case.

35.     LG's conduct complained of herein constitutes the willful engagement in deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

36.     Whirlpool has suffered and will continue to suffer lost sales and profits as a result of LG's false and misleading advertisements and statements about its products.  In addition to monetary harm, LG's statements have caused and will continue to cause Whirlpool to suffer the irreparable harm of loss of consumer confidence, reputation, and good will for which there is no adequate remedy at law.

## COUNT IV
## COMMON LAW OF UNFAIR COMPETITION

37.     Whirlpool incorporates paragraphs 1 through 21 herein by reference.

38.     LG's expressly false advertising claims as described herein constitute false and misleading descriptions of fact and false and misleading representations of fact in commercial advertising and promotion, which misrepresent the performance capabilities of its products and those of Whirlpool, in violation of the common law of the State of Illinois.

39.     LG's unfair competition is willful and intentional, with deceptive intent.

40.     LG's conduct is in willful and wanton disregard of Whirlpool's valuable rights and property and of the law and practices of advertising.  By such conduct, LG knowingly seeks to misappropriate Whirlpool's valued customers and to injure and tarnish Whirlpool's valuable goodwill and reputation.

41.     Whirlpool has suffered and will continue to suffer lost sales and profits as a result of LG's false and misleading advertisements and statements about its products.  In addition to monetary harm, LG's statements have caused and will continue to cause Whirlpool to suffer the irreparable harm of loss of consumer confidence, reputation, and good will for which there is no adequate remedy at law.

## RELIEF REQUESTED

WHEREFORE, Whirlpool respectfully requests that the Court enter judgment in its favor and granting the following relief:

A.     Declare that Plaintiff/Counterdefendant LG has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2; the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2; and the Illinois common law of unfair competition;

B.     Enter an order enjoining Plaintiff/Counterdefendant LG, and its officers, agents, employees, servants, and those persons in privity or in active concert or participation with it, from airing, disseminating, or causing to be aired or disseminated any of the false advertising claims described herein related to its own or Whirlpool's products;

C.     Award Whirlpool damages in an amount adequate to compensate it for the Plaintiff/Counterdefendant LG's false advertising and misrepresentations pursuant to 15 U.S.C. § 1117;

D.     Award Whirlpool damages including Plaintiff/Counterdefendant LG's profits for its false advertising and misrepresentations pursuant to 15 U.S.C. § 1117;

E.    Enter an order trebling all damages awarded to Whirlpool by reason of Plaintiff/Counterdefendant LG's false advertising and misrepresentations pursuant to 15 U.S.C. § 1117;

F.    Enter an order awarding Whirlpool interest on damages awarded, costs, and reasonable attorneys' fees by reason of Plaintiff/Counterdefendant LG's false advertising and misrepresentations pursuant to 15 U.S.C. § 1117 and 815 ILCS 510/3;

G.    Award such other relief as the Court may deem appropriate and just.

## JURY DEMAND

Whirlpool Corporation demands trial by jury of all issues properly so triable.

Dated: February 4, 2008

                                        Respectfully submitted,
                                        WHIRLPOOL CORPORATION, Defendant

                              By:    */s/  Brian D. Roche*_____
                                        Brian D. Roche
                                        Carey L. Bartell
                                        Vanessa C. Martí
                                        REED SMITH LLP
                                        10 South Wacker Drive, Suite 4000
                                        Chicago, Illinois 60606
                                        Telephone: (312) 207-1000

                                        Attorneys for Defendant, Whirlpool
                                        Corporation

Of counsel:
J. A. Cragwall, Jr.
John J. Bursch
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, Michigan 49503-2487
Telephone (616) 752-2000

## <u>CERTIFICATE OF SERVICE</u>

I, Vanessa C. Martí, an attorney, hereby certify that on February 4, 2008, I filed

**Whirlpool Corporation's Answer, Jury Demand, Affirmative Defenses, and Counterclaim**

with the Clerk of the Court using the ECF system which will send notification of such filings to

the following:

>Ronald Y. Rothstein
>rrothstein@winston.com
>
>David Alexander Latchana
>dlatchana@winston.com
>
>Shannon Leigh Stevens
>sstevens@winston.com

I hereby also certify that a copy of **Whirlpool Corporation's Answer, Jury Demand,**

**Affirmative Defenses, and Counterclaim** was sent via U.S. Mail, postage prepaid, to the

following on this 4th day of February, 2008:

>Mary M. Hutchings
>Winston & Strawn LLP
>35 West Wacker Drive
>Chicago, IL  60601

By:    /s/ _Vanessa C. Martí_____
>Brian D. Roche
>Carey L. Bartell
>Vanessa C. Martí
>REED SMITH, LLP
>10 South Wacker Drive
>Chicago, IL  60606-7507
>(312) 207-1000