### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **LG ELECTRONICS U.S.A., INC.,** | ) | |
| **a subsidiary of LG Electronics, Inc.,** | ) | |
| **a Korean company,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.:    08 C 242** |
| **v.** | ) | |
| | ) | **Judge St. Eve** |
| **WHIRLPOOL CORPORATION,** | ) | |
| | ) | **Magistrate Judge Mason** |
| **Defendant.** | ) | |

### MEMORANDUM OF LAW OF PLAINTIFF LG ELECTRONICS U.S.A., INC. IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

Plaintiff LG Electronics U.S.A., Inc. ("LG USA"), by its undersigned counsel, Winston & Strawn LLP, respectfully submits its Memorandum of Law in Opposition to the Motion to Transfer Venue by Whirlpool Corporation ("Whirlpool") pursuant to 28 U.S.C. § 1404(a).

### INTRODUCTION

Chicago is overwhelmingly the most convenient forum for the parties to this lawsuit. Whirlpool is right in the middle of Chicago and Grand Rapids, Michigan, where this case would likely be transferred. Whirlpool's product development center in St. Joseph, Michigan is 93 miles from the federal court in Chicago and 88 miles from the federal court in Grand Rapids. Similarly, Whirlpool's headquarters in Benton Harbor, Michigan is exactly 100 miles from the federal court in Chicago and 78 miles from the federal court in Grand Rapids. In the broad analysis of convenience factors to be weighed by this Court, a 5-mile or 22-mile difference is not material.[1]

---

[1] Although the court located in Kalamazoo, Michigan also falls within the Western District of Michigan, the broad convenience factors to be weighed by this Court disfavor transfer there as well. Kalamazoo has only two judges, one of whom is a Senior Judge and likely limited in his case load. Even if the case were transferred there, Kalamazoo is just as, if not more, burdensome as Grand Rapids for LG USA's

The parties agree that venue is proper in Illinois.  Whirlpool moves this Court to transfer venue based on this mere 5 to 22-mile "convenience" for Whirlpool and its witnesses, but ignores the greatly increased burden that would be suffered by the many witnesses who would already be flying to Chicago, regardless of whether venue is located there or in the Western District of Michigan.

For example, several LG USA witnesses reside in Korea and will be required to travel to the United States in connection with this case.  Chicago is home to international airports, is a major hub for two of the largest US airlines, and has an international terminal to accommodate large international airlines.  Korean Air provides direct flight to Chicago with a flying time of 12 hours and 50 minutes.  Grand Rapids, however is a different story.  It is home to a small regional airport that does not have direct flights to Korea or anywhere in Asia.  The quickest route to Grand Rapids from Korea requires a layover in Chicago and the flying time ranges from 15 hours and 11 minutes to 22 hours and 46 minutes, depending on the airline and availability of connecting flights.  Upon arrival in Chicago, these witnesses would be required to clear customs, collect bags, and locate and attempt to catch their connecting flight.  Under the most optimistic of circumstances, the witnesses would arrive in Grand Rapids 3 to 6 hours later.  Landing in Chicago after 13 hours of flying and taking a taxi to a downtown hotel would clearly be far less burdensome, especially when compared to the few more minutes Whirlpool's employees may have to sit in the car to drive to the federal courthouse here.

Not only is Chicago the most convenient forum for the parties and witnesses, but the interests of justice also require keeping this case in Chicago.  There is a strong interest in this

---

witnesses, including third parties.  There are no direct flights from Korea or New Jersey to Kalamazoo, travel to Kalamazoo is more costly and often requires a layover in Chicago.  *See* discussion *infra* Part I.A. Additionally, for LG USA's witnesses who will be driving, the forty-five-minute or two-hour drive to Chicago turns into a three or four-hour drive to Kalamazoo, respectively.  *Id.*

Court retaining jurisdiction to ensure that LG USA's preliminary injunction motion is heard without delay. Swift action is necessary here to prevent further irreparable harm to LG USA. To transfer this case to Michigan would cause undue delay as the schedule set by this Court would necessarily be altered. The Western District of Michigan's docket is significantly more congested than this District's. In addition, three of LG USA's four causes of action are premised on Illinois law. The manifest injustice that would be caused by transfer of this case to the Western District of Michigan is simply not overcome by the 5 to 22-mile difference relied upon by Whirlpool.

**FACTUAL BACKGROUND**

**A. Procedural History**

LG USA filed suit in this Court based on Whirlpool's false and misleading advertising claims in connection with its Duet® Steam Dryer in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, and the Illinois common law of unfair competition. (Compl. ¶¶ 1-2 (Docket # 1)). These claims arise from Whirlpool's advertising the Duet® Steam Dryer as capable of producing steam, when it does no such thing. (*Id.* ¶¶ 3, 8-15, 28-39).

Because Whirlpool's false advertising campaign for its Duet® Steam Dryer has caused LG USA, which markets the LG Tromm Steam Dryer and Washer, to suffer irreparable harm to its business, goodwill and reputation, particularly given that LG USA and Whirlpool are direct competitors in the clothes dryer market, LG USA moved this Court on January 10, 2008 for a preliminary injunction to enjoin Whirlpool from continuing to make its "steam" claims in connection with the Duet® Steam Dryer and any related television, print, online, and other

advertisements.  (LG USA's Mot. for Prelim. Inj. and Mem. of Law in Support (Docket #s 10, 12, 24)).  On January 16, 2008, Whirlpool filed its motion to transfer venue.  (Docket #s 25, 26).

### B.  LG USA's Business

LG USA is a subsidiary of LG Electronics, Inc., a Korean company, with its principal place of business in Englewood Cliffs, New Jersey.  (Compl. ¶ 4).  LG USA has an office in Lincolnshire, Illinois, which has approximately 200 employees.  (*Id.*).  LG USA's Lincolnshire office performs on-site testing of LG products; and provides technical, quality assurance, training, development, finance, public relations, business, advertising, marketing, sales, and customer support for LG products, including the LG Tromm Steam Dryer and Washer. (Declaration of Hwan Joo Myung ¶ 5, attached as Ex. 1).

All of LG USA's witnesses and documents relevant to steam technology are located in Lincolnshire, Illinois, New Jersey, and Korea.  (*Id.* ¶¶ 6-9; Declaration of Timothy E. Kavanaugh ¶¶ 6-8, attached as Ex. 2).  The entire core team of approximately 50 engineers, including seventeen of whom are specifically identified by LG USA as likely witnesses, are located in Illinois and Korea.  (Ex. 1, Myung Decl. ¶¶ 6-7).  In addition, LG employees that were involved in and are knowledgeable about the marketing and advertising for LG's Tromm Steam Dryer and Washer, including likely witness Tae Jin Lee and Timothy E. Kavanaugh, are also located in Illinois, New Jersey, and Korea.  (Ex. 2, Kavanaugh Decl. ¶¶ 2-3, 6).

### C.  Whirlpool's Business

Whirlpool's headquarters are located in Benton Harbor, Michigan.  This is 78 miles from the courthouse in Grand Rapids and 100 miles from the courthouse in Chicago.  (*See* Travel from Benton Harbor, attached as Ex. 3A).  Whirlpool's product development center is located in St.

Joseph, Michigan, which is 88 miles from the courthouse in Grand Rapids and 93 miles from the courthouse in Chicago. (*See* Travel from St. Joseph, attached as Ex. 3B).

Whirlpool "does not dispute that venue is proper" in Illinois as it transacts business within Illinois and in this District. (Def.'s Br. 5 (Docket # 26)). In fact, Whirlpool maintains a sales office in the Chicago metropolitan area. (Def.'s Resp. to Pl.'s Second Set of Interrogs. # 1, attached as Ex. 4). Whirlpool's counsel, Reed Smith LLP, also reside in Chicago and provide or have provided counsel to Whirlpool regarding its advertising for laundry care products. (Def.'s Resp. to Pl.'s First Set of Reqs. for Admis. # 1, attached as Ex. 5).

LG USA and Whirlpool are direct competitors in the home appliance industry, including direct competitors in the washer and dryer segment. (Compl. ¶ 6). LG USA's and Whirlpool clothes dryers are sold in the same channels of commerce, and the same retail outlets and stores, in every state, including Illinois. (*Id.*). In 2007, 5.6% of Whirlpool's national sales, including its Duet® Steam Dryer, was sold to trade partners in Illinois. (Ex. 4 # 2). By contrast, only 1.9% of Whirlpool's national sales was sold to trade partners in Michigan. (*Id.*). One of Whirlpool's trade partners is Sears, "which is headquartered in Illinois," and sells Whirlpool's Duet® Steam Dryer to consumers. (*See id.*).

## ARGUMENT

The decision to transfer venue is discretionary. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). Transfer may be granted only "[f]or the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). Whirlpool has failed to satisfy its heavy burden under either element. Only when the balance is "far askew" in favor of the transferee district should the "extraordinary relief" of transfer be granted. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003). Transfer is inappropriate if it merely transforms

an inconvenience for one party into an inconvenience for another party, as it does here.  *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 835 (N.D. Ill. 2004) (St. Eve, J.); *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 973, 979 (N.D. Ill. 2002) (St. Eve, J.).

I. __Whirlpool Has Failed To Prove That The Western District of Michigan Is Clearly The Most Convenient Forum.__

Whirlpool bears the difficult "burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient" than the transferor court. *Schwarz*, 317 F. Supp. 2d at 835 (quoting *Coffey*, 796 F.2d at 219-20).  To determine whether another venue is more convenient, courts examine a variety of factors, including (1) the convenience to the parties and witnesses; (2) the plaintiff's choice of forum; (3) the location of the material events; and (4) the relative ease of access to sources of proof.  *Schwarz*, 317 F. Supp. 2d at 835.  The thrust of Whirlpool's transfer argument is that is that it and its witnesses are located in Michigan, so the Western District of Michigan is the more convenient forum. (Def.'s Br. 1-5; 8-11).  This argument does not pass muster.

A. __Illinois is the Forum Most Convenient to the Witnesses__

"The convenience of witnesses is often viewed as the most important factor in the transfer balance."  *Schwarz*, 317 F. Supp. 2d at 836.  In determining the convenience to the witnesses, the court must look "to the nature and quality of the witnesses' testimony with respect to the issues of the case;" "at the persons who will be required to take time away from their respective home bases and activities to deal with trial preparation and trial;" and at "whether the witness[es] can be compelled to testify."  *Id.*; *First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc.*, No. 04 C 2728, 2004 WL 1921059, at *4, *5 (N.D. Ill. July 21, 2004) (St. Eve, J.).

LG USA's potential key witnesses with knowledge of LG's steam technology and of Whirlpool's false advertising with respect to its Duet® Steam Dryer are located in Lincolnshire,

6

Illinois; Englewood Cliffs, New Jersey; and Seoul, Korea. For all these witnesses, the Northern District of Illinois is overwhelmingly more convenient than the Western District of Michigan. (*See* Ex. 1, Myung Decl. ¶¶ 6-8; Ex. 2, Kavanaugh Decl. ¶¶ 1-3, 6-7).

For instance, twelve of LG USA's core team of approximately fifty engineers, who were responsible for the design and development of the LG Tromm Steam Dryer and Washer, reside in Korea. (Ex. 1, Myung Decl. ¶ 7). While there are direct flights between Korea and Chicago, there are no direct flights between Korea and Grand Rapids or Kalamazoo. (*See* Travel from Korea, attached as Ex. 6). In fact, travel from Korea to Grand Rapids or Kalamazoo often requires a layover in Chicago. (*See id.*). Because travel from Korea to Chicago rather than Grand Rapids or Kalamazoo is far more convenient, this factor weighs against Whirlpool's motion to transfer. *See, e.g., Oller v. Ford Motor Co.*, Nos. 92-523-Civ-T-17A and 92-555-Civ-T-15C, 1994 U.S. Dist. LEXIS 4849, at *8 (M.D. Fla. Mar. 30, 1994) ("This practical consideration, of added expense and inconvenience in travel" due to the lack of "direct flight service" to transferee forum "weighs against Defendant's motion to transfer").

Likewise, six of LG USA's core team of approximately fifty engineers, who were responsible for the design and development of the LG Tromm Steam Dryer and Washer, are located in Lincolnshire, Illinois. (Ex. 1, Myung Decl. ¶ 6). Lincolnshire is approximately 34 miles from the courthouse in Chicago, but 210 miles from the courthouse in Grand Rapids and 179 miles from the courthouse in Kalamazoo. (*See* Travel from Lincolnshire, attached as Ex. 7). Whereas driving to Chicago would be a simple forty-five-minute drive, driving to Grand Rapids or Kalamazoo would take over three hours. (*Id.*).[2]

---

[2] LG USA's thermodynamics expert, Professor Anthony M. Jacobi, who is knowledgeable of the scientific characteristics of steam and concluded upon inspection that Whirlpool's Duet® Steam Dryer does not utilize steam, would similarly be subjected to unnecessary burdensome travel if transfer is granted. (Expert Declaration of Anthony M. Jacobi ¶¶ 2, 14-24 (Docket # 12-8)). Professor Jacobi

Additionally, Timothy E. Kavanaugh, Director of Merchandising, and Tae Jin Lee, a Product Manager, who have knowledge of the advertising and marketing done in connection with the LG Tromm Steam Dryer and Washer, and of Whirlpool's Duet® Steam Dryer and its devastating effect on LG USA's sales, market share, and good will, must travel from New Jersey. (Ex. 2, Kavanaugh Decl. ¶¶ 1-3, 6; Declaration of Tae Jin Lee ¶¶ 21-29 (Docket # 12-6)). While there are direct flights from New Jersey to Chicago and Grand Rapids, there are at least five times as many direct flights to Chicago than Grand Rapids, and direct flights to Grand Rapids are more costly. (*See* Travel from New Jersey, attached as Ex. 9). There are no direct flights from New Jersey to Kalamazoo, and a majority of the flights are more costly and require a layover in Chicago. (*See id.*).[3]

In contrast, the locations of Whirlpool's potential witnesses are Benton Harbor, Michigan and St. Joseph, Michigan. Both of these towns are almost as close to Chicago as they are to Grand Rapids—the difference is 5 miles (St. Joseph to Chicago vs. Grand Rapids) and 22 miles (Benton Harbor to Chicago vs. Grand Rapids). (*See* Exs. 3A-3B). Such mileage difference does not favor transfer in this case. *See Carrols Corp. v. Cain Rest. Co.*, No. 07-10947, 2007 WL 2782049, at *4 (E.D. Mich. Sept. 24, 2007) (finding that a 180-mile distance between president of defendant company and the courthouse was "insignificant for determining the appropriateness of transferring venue due to convenience considerations"); *Bay County Democratic Party v. Land*, 340 F. Supp. 2d 802, 809 (E.D. Mich. 2004) (finding a 100-mile difference "negligible as a discretionary venue change").

---

resides in Champaign, Illinois, (*see id.* ¶¶ 4-5), which is approximately a two-hour drive to Chicago, but over a four-drive to Grand Rapids or Kalamazoo. (*See* Travel from Champaign, attached as Ex. 8). Similarly, one of Whirlpool's own expert witnesses, Dr. Judith Levi, is based in the Chicago area. (Expert Declaration of Dr. Judith Levi ¶¶ 3, 7 (Docket # 53)). Transfer to Michigan makes no sense.

So that Whirlpool's witnesses can save the effort of this extra 5 to 22-mile drive, Whirlpool asks this Court to force Plaintiff's witnesses to fly from either New Jersey or Korea to Chicago, and *then* fly or drive to Michigan, or drive 210 miles from Lincolnshire to Grand Rapids or 179 miles to Kalamazoo.  (*See* Exs. 6-8).  These are not "minor differences [that] fail to impact the convenience of the witnesses."  *Schwarz*, 317 F. Supp. 2d at 837; *see also Roadmaster Corp. v. Nordictrack, Inc.*, Civ. A. No. 93 C 1260, 1993 WL 625537, at *4 (N.D. Ill. Sept. 20, 1993) (finding inconvenience where witnesses had to drive to fly, or fly to fly, to defendant's proposed venue).

Moreover, the Northern District of Illinois is also more convenient for third party witnesses.  LG USA has identified numerous potential third party witnesses, including outside advertising and marketing firms with knowledge of the development of LG's Tromm Steam Dryer and Washer's advertising campaign, media statements, and consumer and market research, who are located *in Illinois*, as well as New Jersey and other states within the U.S. that offer more convenient travel options to Chicago than to Grand Rapids or Kalamazoo.  (Ex. 2, Kavanaugh Decl. ¶¶ 9-10).  Whirlpool, on the other hand, asserts it has "several" third party witnesses relevant to the advertising done in connection with its Duet® Steam Dryer, yet only identifies two, both of whom are located in St. Joseph, Michigan, within the subpoena power of this Court. (Declaration of Pamela Rogers ¶ 13 (Docket # 26-2)).  Again, in the broad analysis of convenience factors, the 5-mile difference in travel from St. Joseph to Chicago vs. Grand Rapids is not material.  *See Bay County*, 340 F. Supp. 2d at 809.

LG USA chose to litigate in this District because it is convenient for *all* witnesses, whether they travel from Korea to the west, New Jersey to the east, and Lincolnshire,

---

[3]  This is without accounting for New York's nearby airports, which also offer far more travel options to Chicago than Grand Rapids or Kalamazoo.

Champaign, Benton Harbor, and St. Joseph locally.  Transfer to the Western District of Michigan

makes no sense for anyone.

### B.  Illinois is the Forum Most Convenient to the Parties

Whirlpool cannot be serious when it claims that because LG USA is headquartered in

Korea, with its principal place of business in New Jersey, "there is no increased inconvenience to

LG to litigate this dispute in the Western District of Michigan rather than Chicago."  (Def. Br.

10).  As discussed *supra*, the inconvenience to LG's party representatives traveling from Korea,

New Jersey, or Illinois to the Western District of Michigan is far greater than traveling to

Chicago.  The "inconvenience" to Whirlpool's party representatives driving to Chicago vs.

Grand Rapids, however, is negligible.[4]  It is well-established that transfer is inappropriate if it

merely transforms an inconvenience for one party into an inconvenience for another party.  *E &*

*J Gallo Winery*, 247 F. Supp. 2d at 979.  Here, transfer to the Western District of Michigan

would merely transform Whirlpool's inconvenience—if there even is one—into a far greater

inconvenience for LG USA.  "This is not a compelling reason to allow a transfer."  *Id.*

### C.  LG USA's Choice of Forum Should be Given Deference

A plaintiff's choice of forum is given substantial weight.  *Schwarz*, 317 F. Supp. 2d at

835.  "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum

should rarely be disturbed."  *In re Nat'l Presto Indus.*, 347 F.3d at 664 (quoting *Gulf Oil Corp. v.*

*Gilbert*, 330 U.S. 501, 508 (1947)).  This is particularly true where, as here, the plaintiff resides

in the chosen forum and the selected forum has a significant relationship with the material events

giving rise to the cause of action.  *Schwarz*, 317 F. Supp. 2d at 835.  LG USA has an office in

---

[4] In addition, Whirlpool has an office in the Chicago metropolitan area.  (Ex. 4, Def.'s Resp. to Interrogs. # 1).  Its counsel also resides in Illinois.  (Ex. 5, Def.'s Resp. to Reqs. for Admis. # 1).  *Bay County*, 340 F. Supp. 2d at 809 ("An argument premised on inconvenience is difficult to accept when the defendants routinely conduct business around the state and their advocate routinely appears in this Court.").

Lincolnshire, Illinois and transacts business in Illinois; thus LG USA is a resident of this District. (Compl. ¶¶ 4, 6). This office staffs approximately 200 employees, including likely witnesses who were responsible for the design and development of the LG Tromm Steam Dryer and Washer. (Ex. 1, Myung Decl. ¶¶ 4, 6).

Whirlpool requests that this Court ignore LG USA's right to choose the venue simply to transfer this case to a venue that is a few miles more convenient for Whirlpool. The Court should not accept Whirlpool's invitation to do so. *See Roadmaster Corp.*, 1993 WL 625537 at *4 ("The plaintiff is entitled to choose any proper forum and the court should not upset that choice merely to shift rather than eliminate inconvenience.").

**D. The Location of the Material Events Factor Does Not Weigh in Favor of Transfer to the Western District of Michigan**

Whirlpool is incorrect in its assertion that no material events giving rise to LG USA's claims occurred in Illinois. (Def. Br. 6). Whirlpool has engaged in false advertising related to its Duet® Steam Dryer in Illinois, maintains a sales office in the Chicago metropolitan area (Ex. 4, Def.'s Resp. to Interrogs. # 1), and its counsel, Reed Smith LLP, also reside in Chicago and have advised Whirlpool regarding its advertising for laundry care products (Ex. 5, Def.'s Resp. to Reqs. for Admis. # 1).

Whirlpool's reliance on *Confederation Des Brasseries De Belgique v. Coors Brewing Co.*, No. 99 C 7526, 2000 WL 88847, at *3 (N.D. Ill. Jan. 20, 2000), for the proposition that transfer to the Western District of Michigan is proper is misplaced. (Def.'s Br. 7). In *Confederation*, no parties had a connection to Illinois, and while only 3.3% of sales of the product at issue occurred in Chicago, 11.5% of sales occurred in the transferee district. *Id.* That is not the case here. In 2007, approximately 5.6% of Whirlpool's national sales was sold to trade partners in Illinois. (Ex. 4, Def.'s Resp. to Interrogs. # 2). In contrast, only 1.9% of Whirlpool's

11

national sales was sold to trade partners in Michigan.  (*Id.*).  *See Glaxosmithkline Consumer Healthcare L.P. v. Merix Pharm. Corp.*, No. Civ.A. 05-898 (DRD), 2005 WL 1116318, at \*7 (D.N.J. May 10, 2005) (finding that 5% of total sales in the district and the presence of retailers in the district displaying the defendant's product showed that "the underlying false advertising dispute ha[d] a connection to [the district]").  Accordingly, Whirlpool has not shown that this factor weighs in favor of transfer to the Western District of Michigan.

### E. The Access to Sources of Proof Factor Does Not Weigh in Favor of Transfer to the Western District of Michigan

LG USA's documents relevant to Whirlpool's liability, LG USA's damages, and LG's knowledge of steam technology are maintained in Illinois, New Jersey, and Korea.  (Ex. 1, Myung Decl. ¶ 9; Ex. 2, Kavanaugh Decl. ¶ 8).  Whirlpool's assertion that Michigan is more convenient because its relevant documents are located there is inconsequential.  (Def.'s Br. 11); *Coolsavings.com, Inc. v. IQ.Commerce Corp.*, 53 F. Supp. 2d 1000, 1006 (N.D. Ill. 1999) (finding that collecting, copying, and shipping documents does not typically impose a significant burden); *Event News Network, Inc. v. Thill*, No. 05 C 2972, 2005 WL 2978711, at \*5 (N.D. Ill. Nov. 2, 2005) ("The location of party's documents and records is usually not a very persuasive reason to transfer a case.  All documents necessary to present both sides of the case can easily be transported to either venue.") (internal citations omitted).

Furthermore, Whirlpool has already produced documents to LG USA *in Illinois*, thereby negating any argument that producing documents in Illinois would pose even a minimal inconvenience to LG USA.  *See Arena Football League, Inc. v. Roemer*, 947 F. Supp. 337, 341 (N.D. Ill. 1996) (denying transfer in part because "[d]efendants have not demonstrated that they cannot bring the critical documents to this district").

**II. The Interests Of Justice Require Keeping This Case In Illinois.**

The "interests of justice" analysis relates to the efficient functioning of the court, not the merits of the underlying dispute. *Coffey*, 796 F.2d at 221. The interests of justice may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result. *Id.* at 220. Factors considered in this analysis may include the relationship of the community to the issue of the litigation, the prospects of a speedy trial, and the court's familiarity with the applicable law. *First Horizon*, 2004 WL 1921059 at *5. Here, the interests of justice clearly favor keeping this case in Illinois.

**A. Further Delay Will Cause LG USA Irreparable Harm**

First and foremost, there is a strong interest in this Court retaining jurisdiction to ensure that LG USA's preliminary injunction motion is heard without delay. *See PBM Prods., Inc. v. Mead Johnson & Co.*, Civ. A. No. 3:01CV199, 2001 U.S. Dist. LEXIS 18312, at *7-8 (E.D. Va. Apr. 4, 2001) (denying transfer because "any further delay in considering the issue presently before the Court would cause [plaintiff] irreparable harm"); *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1208-09 (N.D. Ga. 1995) ("where the only concern is one of convenience, the interests of justice surely would be disserved by forcing a plaintiff to await ruling on a motion for preliminary injunction until a more convenient court has time to receive, apprehend and consider the motion").

As set forth in detail in LG USA's Memorandum of Law in Support of its Preliminary Injunction, LG USA is suffering irreparable harm as a result of Whirlpool's false and misleading advertising claims, and time is of the essence. Any delay caused by transfer only increases the irreparable harm to LG USA. Moreover, the briefing of the motion would likely have to be re-done to conform to standards in the Western District of Michigan, and the judge to whom the

13

case is assigned may not have time to consider the motion on an expedited basis due to other commitments, a heavy criminal docket or vacation scheduling.

**B.  The Western District of Michigan's Docket is Considerably More Congested**

Additionally, the court congestion factor favors keeping the case in this District.  As Whirlpool correctly noted, for the year ending 2006, the median time from filing a civil complaint to trial was 26.4 months in the Northern District of Illinois and 36 months in the Western District of Michigan.  (Def.'s Br. 13; *Federal Court Management Statistics* (2006), attached as Ex. 10).  This near ten-month difference weighs in LG USA's favor.  *Schwarz*, 317 F. Supp. 2d at 837 (finding that an eleven-month difference weighed in favor of denying defendant's transfer motion); *First Horizon*, 2004 WL 1921059 at *5 (finding an eight-month difference in court docket congestion significant).  Accordingly, the likelihood of a speedy trial is greater in the Northern District of Illinois, and this "interest of justice" factor weighs in favor of denying Whirlpool's motion.  *Schwarz*, 317 F. Supp. 2d at 837.

**C.  There Is No "Community Interest" in This Litigation**

The relationship of the community to the issue of the litigation also does not favor Whirlpool.  In assessing the interests of the community to the issue of the litigation, this Court has observed that "[w]hen the products at the center of the litigation are distributed nationwide, [] the 'community interest' factor remains neutral."  *First Horizon*, 2004 WL 1921059 at *6.  Because Whirlpool's Duet® Steam Dryer is distributed, sold, and advertised nationwide, this factor does not favor transfer to the Western District of Michigan.

**D.  This Court Has Greater Familiarity With the Laws Implicated by LG USA's Claims**

Finally, Whirlpool is incorrect in asserting that this Court's and the Michigan court's familiarity with federal unfair competition law and the Lanham Act is a neutral factor with

respect to transfer.  (Def.'s Br. 12).  This District is more familiar with federal unfair competition law and the Lanham Act than Michigan.  (Ex. 10, *Federal Court Management Statistics* (496 out of 7265 cases, or 7%, in Illinois, compared to 55 out of 1578 cases, or 4%, in Michigan were "Copyright, Patent, and Trademark" (code "I") cases).

Whirlpool is also mistaken in its assertion that the Illinois state law claims brought by LG USA do not change this analysis.  (Def's Br. 12).  The presence of three Illinois state law claims in this action favors this Court retaining the case in Illinois.  "Certainly the Northern District of Illinois is more familiar with Illinois law" than the Western District of Michigan.  *Schwarz*, 317 F. Supp. 2d at 837 (finding that this district was more familiar with Illinois law, which governed "five of eight counts in the complaint"); *cf. Plymouth Tube Co. v. O'Donnell*, No. 95 C 0277, 1995 U.S. Dist. LEXIS 8912, at *16 (N.D. Ill. June 27, 1995) ("the interests of justice are better served by having [an Illinois] court . . . apply Illinois law").  Hence, this factor favors denying Whirlpool's motion to transfer venue and retaining the action in the Northern District of Illinois. *Schwarz*, 317 F. Supp. 2d at 837.

<u>**CONCLUSION**</u>

WHEREFORE, for the foregoing reasons, LG USA respectfully requests this Court to deny Whirlpool's Motion to Transfer Venue and grant LG USA any and all further relief deemed necessary and proper.

Dated:  February 14, 2008                          Respectfully submitted,

**LG ELECTRONICS U.S.A., INC.**

By:  /s/ Ronald Y. Rothstein_____
One of its attorneys

Ronald Y. Rothstein – rrothstein@winston.com
Mary M. Hutchings – mreed@winston.com
David A. Latchana – dlatchana@winston.com

WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600 – telephone
(312) 558-5700 – facsimile

*Counsel for LG Electronics U.S.A., Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing **Memorandum of Law of Plaintiff LG Electronics U.S.A., Inc. in Opposition to Defendant's Motion to Transfer Venue** has been served on the following counsel of record via the Court's electronic filing system this 14th day of February, 2008.

Brian D. Roche
Carey L. Bartell
Vanessa C. Martí
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606


/s/ Ronald Y. Rothstein_____
One of LG USA's Attorneys