**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LG ELECTRONICS U.S.A., INC.** | ) | |
| **a subsidiary of LG Electronics, Inc.,** | ) | |
| **a Korean company** | ) | |
| | ) | **Civil Action No.: 08 C 242** |
| **Plaintiff/Counterdefendant,** | ) | |
| | ) | **Judge St. Eve** |
| **v.** | ) | |
| | ) | **Magistrate Judge Mason** |
| **WHIRLPOOL CORPORATION,** | ) | |
| | ) | |
| **Defendant/Counterplaintiff.** | ) | |

**WHIRLPOOL CORPORATION'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO TRANSFER**

**I.      Introduction**

The Western District of Michigan is the most convenient forum for this litigation.  Not

only is it Whirlpool's home forum, where it is headquartered and employs more than 3,000

people, it was also the location of the material events giving rise to the claims in this lawsuit.

Moreover, transfer to the Western District of Michigan would be more convenient for

Whirlpool's witnesses, all of whom are located in that district.  The public interest supports

transfer as well, because the community in the Western District of Michigan has a far stronger

connection to this case than does this district.  In opposition, LG insists that its witnesses (the

majority of whom are located in Korea) would have slightly longer flights if forced to travel to

Michigan.  But the addition of a short domestic connection after a lengthy international flight is

not enough of an inconvenience to keep this case in this district.  Moreover, although LG

identifies potential witnesses in Lincolnshire, the material witnesses reside outside of this

district.  In fact, LG's actions with respect to its preliminary injunction motion exemplify this;

although LG filed declarations from 7 witnesses in support of its motion for preliminary

injunction, not one of those witnesses reside in this district.  This Court should exercise its

discretion and transfer this case to the Western District of Michigan, the district with by far the most material connection to this dispute.

## II.     LG's Choice Of Forum Should Be Afforded Little Weight

Despite the lack of a substantial connection to this district, LG insists the Court should give deference to its choice of forum, citing *In Re National Presto Indus., Inc.,* 347 F.3d 662, 664 (7th Cir. 2003).  (*See* Memorandum of Law of Plaintiff LG Electronics U.S.A., Inc. In Opposition to Defendant's Motion to Transfer Venue ("LG Resp. Br.") at pp. 5, 10.)  However, as this Court has recognized, the principle of deference to plaintiff's choice of forum does not apply where "the plaintiff chooses a forum that is not its home forum or chooses a forum that does not have a significant relationship to the material events leading to the litigation."  *First Horizon Pharm. Corp. v. Breckenridge Pharm. Inc.*, No. 04 C 2728, 2004 WL 1921059, *2-3 (N.D. Ill. Jul. 21, 2004) (St. Eve, J.).  With global headquarters in Korea and U.S. headquarters in New Jersey, LG cannot and does not claim that this district is its "home forum."  *See Biomet, Inc. v. Stryker Howmedica Osteonics Corp.*, No. 03 C 6491, 2004 WL 769358, *4 (N.D. Ill. Apr. 9, 2004) (St. Eve, J.) (this district was not plaintiff corporation's home forum where company was incorporated and had principal place of business in Indiana; therefore plaintiff's choice of forum was entitled to less deference).  Because this district is not LG's home forum, deference to LG's choice falls away, and "it is appropriate, [instead], to discuss choice of forum together with the location of material events."  *Schwarz v. National Van Lines, Inc.*, 317 F. Supp. 2d 829, 835 (N.D. Ill. 2004) (St. Eve, J.).

## III.    All Material Events Occurred in the Western District of Michigan

Although LG emphasizes irrelevant facts to try and link itself and Whirlpool to the state of Illinois, "the location of *material events* for purposes of venue is *the location where the*

*defendant's decisions and activities that gave rise to the claim took place.*" *See First Horizon Pharm. Corp.*, 2004 WL 1921059, *3 (noting that "the contacts that Plaintiff asserts to have with Illinois do not support the argument that Plaintiff's choice of forum should be given substantial deference.") (emphasis added). LG fails to identify any events *material* to its claims against Whirlpool that took place in this district. Rather, all the material events, such as where Whirlpool developed and designed the steam technology for its Duet Steam Dryer and where it created its advertising and marketing campaign, took place in the Western District of Michigan. (Docket Entry #26, Ex. 1, P. Rogers Jan. 15, 2008 Declaration ("P. Rogers Jan. 15, 2008 Decl."), at ¶¶ 4-5, 8-9, 13.)

LG points to the fact that 5.6% of Whirlpool's sales occur in Illinois.[1]  However, as many courts have held, Whirlpool's Illinois sales are irrelevant to a case involving claims about Whirlpool's *national* advertising campaign. *See*, *e.g.*, *First Horizon Pharm. Corp.*, 2004 WL 1921059, *3 ("[p]laintiff has not identified any circumstances giving Illinois a stronger connection to the material events leading to the litigation than other states that also store and distribute the . . . product"); *Ambrose v. Steelcase, Inc.*, No. 02 C 2753, 2002 WL 1447871, *2 (N.D. Ill. July 3, 2002) (plaintiffs failed to show substantial connection between national infringement claims and this district, notwithstanding defendant's large volumes of sales in this district); *Greene Mfg. Co. v. Marquette Tool & Die Co.*, No. 97 C 8857, 1998 WL 395155, *2 (N.D. Ill. July 9, 1998) (this district had no substantial connection to the case, despite fact that 7.6% of defendant's national sales occurred here).

---

[1] LG presents no information regarding what percentage of Whirlpool's sales take place in the Northern District of Illinois.

Since LG cannot identify any material events that occurred in this district, it points out that Sears, one of Whirlpool's many trade customers, is headquartered in Illinois.  However, the fact that Whirlpool has a trade customer headquartered in Illinois, among many others located elsewhere, does not demonstrate any substantial connection to the material events in this case. Sears maintains its own independent marketing and advertising for products sold under Sears' Kenmore label, and itself sells such products on a nationwide basis.  (Docket Entry #51, P. Rogers Feb. 11, 2008 Decl., at ¶ 32.)  The location of Sears' headquarters is simply irrelevant to LG's claims against Whirlpool.

LG makes a half-hearted attempt to show that material events took place in this district by generally describing work performed at its Lincolnshire, Illinois office.  However, while LG's carefully worded declarations speak generally about on-site testing of "LG products" in Lincolnshire, they do not claim that any such testing was performed on the products in question – the LG Tromm Steam Washer and Dryer and Whirlpool Duet® Steam Dryer – or that the testing has any relevance to this case.  (*See* Docket Entry #73, Ex. 1, Myung Declaration, at ¶ 5 ("Myung Decl.").)  LG fails to describe whether any work ostensibly performed in Lincolnshire for the LG Tromm Steam Washer and Dryer had anything to do with the steam technology, or any other matters at issue in this case.  (*Id.*)  Moreover, as explained in the witness convenience section below, the potential "engineering" witnesses in Illinois identified by LG clearly did not perform work related to the relevant steam technology.  After reading the declaration, one is left wondering what kind of "design and development" work was actually performed for the Tromm Steam Washer and Dryer by engineers in Illinois, especially considering that, as LG admits, "all documents related to the technology used in the LG Tromm Steam Dryer and Washer are *generated* and located at LG's headquarters in Korea."  (*Id.* at ¶¶ 6, 9 (emphasis added).)

- 4 -

Noticeably, LG does not dispute Whirlpool's argument in its transfer motion (which was supported by LG's representations and admissions made on its own web pages) that the Lincolnshire facility houses, not LG's laundry division, but its Commercial Products Division, a business unit dedicated to providing electronic equipment, such as televisions and digital signage, to commercial customers.  In fact, LG admits that about ███ of the employees in Lincolnshire work on ██████████████. (*See* Pl. LG Electronics U.S.A., Inc.'s Objections and Resp. to Whirlpool's First Set of Interrogs., at #3 ("LG Interrog. Resp."), attached as Ex. 1.) Moreover, the only LG division in Lincolnshire that potentially works on laundry products handles a variety of tasks including █████████████████████████ ████████ – none of which relates to the issues here.  (*Id.*)  LG also concedes that, between █████████ through the present, its Lincolnshire office accounted for less than ██████████ of its total public relations, advertising and marketing expenditures, and less than ██████████ of its total design, development and engineering expenditures, for the Tromm Steam Washer and Dryer.  (*Id.* at #1, #2.)

LG's intentional lack of specificity in describing the work done in Lincolnshire leaves only one reasonable conclusion:  any work LG performed on the Tromm Steam Washer and Dryer in this district simply is not material to this case.

IV.     **Convenience of Witnesses and Parties Favors Transfer**

A.     **No Significant LG Witnesses Are Located in This District**

LG identifies a total of 19 potential witnesses, but fails to identify a single potential witness in Illinois with knowledge of LG's public relations, marketing or advertising for its Tromm Steam Washer and Dryer, one of the core issues involved in this case.  Although LG alludes to persons in Illinois that do such work, it does not identify any individual witnesses.

The case law is clear that courts "will not consider the convenience of ... unidentified witnesses." *Law Bulletin Publ'g, Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1018 (N.D. Ill.1998); *see*, *e.g.*, *First Horizon Pharm. Corp.*, 2004 WL 1921059, *5 (plaintiff's failure to disclose the identity of Illinois witnesses undermined its witness convenience arguments).

With respect to engineering, LG describes its "core team" as including 50 engineers, 12 of whom it says are located in Korea, and 5 of whom are located in Illinois. Considering that Whirlpool's core team for a similar product consisted of only 10 engineers, LG's identification of 5 times as many engineers seems unnaturally large. However, "[t]he determination of whether a particular venue is more convenient for the witnesses should not turn on which party produces a longer witness list." *Law Bulletin Publ'g, Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. at 1018. Instead, the court must consider "nature, quality, and importance of the witnesses' testimony with respect to the issues of the case" in order to decide if the potential witness testimony is relevant and not cumulative. *See*, *e.g.*, *S.C. Johnson & Son. Inc. v. Buzz Off Insect Shield, LLC*, No. 05 C 1046, 2005 WL 1838512, at * 3 (N.D. Ill. July, 28, 2005); *id.*; *Ambrose*, 2002 WL 1447871, at *3-4.

LG fails to sufficiently identify the "nature, quality, and importance" of its potential Illinois witnesses. Hwan Joo Myung's declaration states that the engineers in Lincolnshire, Illinois were, along with other members of LG's 50 engineer "core team," "responsible for the design and development *of the LG Tromm Steam Dryer and Washer, which is relevant to this litigation*." (*See* Myung Decl., at ¶ 6.) This generalized statement misses the critical information – whether these Illinois witnesses have knowledge of or participated in the development of the steam technology used in those appliances. LG's failure to specify that information is all the more stark when compared to Whirlpool's declaration in support of its motion to transfer, which

identifies potential engineering witnesses "responsible for the design and development of *the*

*Duet Steam Dryer technology, which is the subject of this lawsuit.*"  (P. Rogers Jan. 15, 2008

Decl., at ¶ 5.)

       A review of documents produced by LG on February 22, 2008 in response to Whirlpool's

venue discovery shows that work performed by the potential Illinois witnesses did not concern

the relevant steam technology.  The five persons in Illinois LG identified as engineering

witnesses (Myung, Palmer, Vieria, Lee and Wyatt) participated in ███████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███, attached as Ex. 2.)  These inspections, which took place in ██████████████████

███████████████, concerned the ████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████ LG also produced emails to and

from ████████████, one of the five potential Illinois witnesses, regarding the ████████

████████████████████████████; however, none of this correspondence

addressed the relevant steam technology.  (████████████████████████████████

████████████, attached as Ex. 3.)

       Ultimately, the vague descriptions included in LG's declarations, in combination with the

information in the LG documents, makes clear that the Illinois witnesses did not perform

significant design and development work related to the steam technology used in the Whirlpool

or LG appliances.  LG fails to identify whether any of its potential engineering witnesses in Illinois have any knowledge relevant to the issues in this case.

### B.      O'Hare Airport is an Insufficient Reason to Deny Transfer

Fundamentally, LG's argument against transfer boils down to the assertion that moving this case from Illinois to Michigan would make travel less convenient for its witnesses flying from Korea or New Jersey because O'Hare Airport is located here.  However, the convenience of "witnesses who live in neither the transferor nor the transferee forum are insignificant to the court's analysis" because "the reality is that these witnesses would be away from their homes and work regardless of whether the trial is held in [Michigan] or Illinois."  *Brunswick Bowling v. Qubica USA, Inc.*, No. 05 C 3603, 2005 WL 2367764, *4 (N.D. Ill. Sept. 26, 2005) (internal quotations and citations omitted).  Courts in this jurisdiction, including this Court, have overwhelmingly rejected inconvenience arguments like LG's before.  *See Biomet, Inc.*, *v. Stryker Howmedica Osteonics Corp.*, No. 03 C 6491, 2004 WL 769358, *6-7 (N.D. Ill. Apr. 9, 2004) (St. Eve, J.) (rejecting plaintiff's argument that "Chicago's central geographic location makes it the more convenient forum," because "witnesses will have to travel by airplane" to arrive at either forum and doubting the inconvenience of "a slightly longer plane trip"); *Schwarz v. National Van Lines, Inc.*, 317 F. Supp. 2d 829, 836-37 (N.D. Ill. 2004) (St. Eve, J.) (where a "significant number of anticipated witnesses will be forced to travel" to either district, plaintiff's argument that Chicago offers shorter flights and more flight options than proposed transfer district represented "minor" or "negligible" inconveniences that "does not tilt the convenience scale in either direction."); *see*, *e.g.*, *Matweld, Inc. v. Portaco, Inc.*, No. 04 C 1273, 2004 WL 1403696, *2-3 (N.D. Ill. June 23, 2004) (witness convenience analysis favored transfer where plaintiff's witnesses will have to "travel substantial distances" to either district); *S.C. Johnson &*

*Son, Inc.*, 2005 WL 1838512, at *3 (it was "not a reason to keep the case in Chicago" that this city "is more centrally located and has a major international airport" because witnesses would experience a "relatively slight inconvenience" by changing planes to travel to Greensboro, North Carolina). Because more than two-thirds of LG's identified witnesses, and likely all the witnesses with relevant and important testimony, will have to travel regardless of whether the case is transferred, the convenience of LG's witnesses does not weigh heavily against transfer.

### C.     Convenience for Whirlpool's Witnesses Favors Transfer

LG argues that Whirlpool's employee witnesses will not be inconvenienced by the drive to Chicago. However, courts in this jurisdiction have granted transfers to the Western District of Michigan on the basis of convenience to witnesses in southwestern Michigan before. *See Ambrose*, 2002 WL 1447871, at *4 ("[a]lthough defendants do not make a compelling argument that it would be especially inconvenient for them to litigate in Chicago, which is but 180 miles from Grand Rapids, . . . the court still concludes that this factor weighs somewhat in favor of transfer"). This is particularly so here, where *all* of Whirlpool's witnesses reside in the Western District of Michigan, while more than *two-thirds* of plaintiff's witnesses will have to travel long distances regardless of whether the case remains in Chicago or is transferred to Michigan. *See id.* (witness convenience favored transfer to Grand Rapids where defendant identified 13 witnesses in that district and plaintiff's witnesses had to travel from Boston even if the case remained in Chicago).

LG further points to Whirlpool's sales office in Hoffman Estates to try and even out the scales between Michigan and Illinois. It neglects to mention, however, that the sales office employs only *one* full-time Whirlpool employee, who has not been identified and is not a likely witness in this case. (*See* Docket Entry #73, Ex. 4, Whirlpool's Resp. to LG Electronics U.S.A.,

Inc.'s Second Set of Interrogs., at #1.)  This single employee in Illinois does not create a significant relationship between this district and the material events giving rise to LG's claims, or demonstrate that it is more convenient for Whirlpool to litigate here than where it employs thousands of people, including all of Whirlpool's likely witnesses.

While O'Hare airport is the primary basis for LG's claim that this forum is more convenient, Whirlpool seeks to litigate in its home forum, a significant factor that courts recognize is "more than just a mere shift in inconvenience." *S.C. Johnson & Son, Inc.*, 2005 WL 1838512, at *3-4.

### D. Convenience for Non-Party Witnesses Favors Transfer

*All* of the potential non-party witnesses identified by Whirlpool reside in the Western District of Michigan, further weighing in favor of transfer.  *See Kammin v. Smartpros, Ltd.*, No. 07 C 2665, 2007 WL 3046128, *2 (N.D. Ill. Oct. 9, 2007) (where defendant's non-party witnesses worked in the transfer forum, that weighed in favor of transfer).[2]  In contrast, LG has identified potential non-party witnesses located across the nation, in Sherwood, Oregon; Seattle, Washington; New York City; Fairfield and elsewhere in New Jersey; Milwaukee, Wisconsin, as well as in Barrington, Illinois.  ( Entry #73, Ex. 2, Decl. of Timothy E. Kavanaugh, at ¶ 9.)  LG fails to identify the nature, quality or importance of the potential testimony from any entity located in Illinois.[3]  Therefore, the witness convenience analysis clearly favors transfer here,

---

[2] In yet another attempt at misdirection, LG points to the fact that Whirlpool has retained attorneys in Chicago related to advertising matters.  In addition to the fact that Whirlpool's attorneys will not be witnesses in this case, the location and convenience of a party's attorney is "not an appropriate consideration in the transfer analysis." *First Horizon Pharm. Corp.*, 2004 WL 1921059, *3; *see Matweld, Inc.*, 2004 WL 1403696, *3 (location of a party's attorney was not enough to defeat transfer).

[3] Moore Creative Group was the only third party entity in Illinois identified by LG.  A review of Moore Creative Group estimates produced by LG shows ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Continued on following page

where "a greater number of witnesses with testimony important to the events are located in" the

Western District of Michigan.  *Event News Network, Inc. v. Thill*, No. 05 C 2972, 2005 WL

2978711, *5-6 (N.D. Ill. Nov. 2, 2005) (witness convenience favored transfer where plaintiff's

"witnesses must travel regardless of the district").  Because the majority of non-party witnesses

are located either in the Western District of Michigan, or otherwise outside of this district, that

factor, too, weighs in favor of transfer.[4]

V.     **Interests of Justice Favor Transfer**

Relying on (and mischaracterizing) this Court's decision in *First Horizon*

*Pharmaceutical Corp.*, LG suggests that the community in the Western District of Michigan has

no particular interest in this case because Whirlpool's products are sold nationally.  LG's

selective quotation of that case, however, is misleading:  immediately following the quote LG

excerpted in its brief, this Court went on to state that "[i]n assessing the relationship of the

community to the issue of the litigation, it appears that the [transfer forum] has a somewhat

stronger relationship because it is [defendant's] home forum" because other courts have found

the "defendant's home forum to have a substantial connection to the litigation, despite the fact

that the alleged infringement occurred in both the transferor and transferee forum."  *First*

---

Continued from previous page

███████████████████████████████████████████████████

██████, attached as Ex. 4.)  From these documents, it does not appear that testimony from
any potential witness from Moore Creative Group would be relevant to the issues in this
litigation and not unnecessarily cumulative.

[4] Although LG points to one of Whirlpool's expert witnesses, who lives in Chicago, "the
residency of expert witnesses does not affect this court's analysis because expert witnesses are
paid for their time and are within the control of the party calling them."  *Amoco Oil Co. v. Mobil
Oil Corp.*, 90 F. Supp. 2d 958, 961 (N.D. Ill. 2000).

*Horizon Pharm. Corp.*, 2004 WL 1921059, *6 (citing *Colida v. Kyocera Wireless Corp.,* No. 02 C 7348, 2003 WL 1741396 (N.D. Ill. Apr.1, 2003)).

Contrary to LG's suggestion, the Western District of Michigan has a significant interest in this case that goes beyond the fact that Whirlpool's products are sold there. More than 3,000 Whirlpool employees live in or around the Western District of Michigan, where Whirlpool is headquartered, and where any injunction entered against Whirlpool in this case would need to be enforced. *See Confederation Des Brasseries De Belgique v. Coors Brewing Co.*, No. 99 C 7526, 2000 WL 88847, *5-6 (N.D. Ill. Jan. 20, 2000); *Event News Network, Inc.*, 2005 WL 2978711, at *6-7.

LG's pending preliminary injunction motion is not relevant to whether this case should be transferred. LG's claim that it will be irreparably harmed by any potential delay rings hollow in light of the fact that LG recently moved for and was granted an extension of time to file its reply in support of that motion. (*See* Docket Entry #67, Pl. LG Electronics U.S.A., Inc.'s Unopposed Mot. for Leave to File a Br. in Excess of 15 Pages and Extension of Time to Reply.) Apparently delay is only a concern when it is not requested by LG. Moreover, this Court has rejected LG's argument – in the very same case LG relies on throughout its brief. *See First Horizon Pharm. Corp.*, 2004 WL 1921059, at *6 (rejecting plaintiff's argument that "because it filed a motion for preliminary injunction in the Northern District of Illinois, transferring this case to Florida would only further delay a resolution" and noting that plaintiff could pursue its motion in Florida).

Furthermore, since Whirlpool filed its motion to transfer, the 2007 court statistics have become available and show that the Western District of Michigan has a shorter median time from filing to trial than the Northern District of Illinois. (*See* Federal Court Management Statistics,

http://www.uscourts.gov/cgi-bin/cmsd2007.pl (last visited February 22, 2008), attached as Ex.

5.)  According to the 2007 statistics, the median time to trial in the Northern District of Illinois

was 29.7 months, while it was only 28 months in the Western District of Michigan.  While this is

a relatively small difference, it is yet another factor that weighs in favor of transfer – particularly

in light of LG's professed concerns about delay.

Lastly, LG makes the preposterous argument that, because a few more "Copyright,

Patent, and Trademark" cases were filed in the Northern District of Illinois than in the Western

District of Michigan, that this district has more familiarity with those federal laws.  However,

"[i]n a case that hinges on federal law, precedent teaches that the respective courts' familiarity

with applicable law is a neutral factor."  *Andrade v. Chase Home Fin., LLC*, No. 04 C 8229,

2005 WL 3436400, *9 (N.D. Ill. Dec. 12, 2005) (rejecting "[p]laintiffs' argument that it should

take into account the relatively high number of FCRA cases filed in" this district because the

"courts of the Eastern District of Pennsylvania are eminently capable of interpreting and

applying the FCRA.")  Virtually every court that has considered a motion to transfer in a case

involving federal law has concluded that each federal district has equal expertise.  *See*, *e.g.*,

*Klutho v. 21ST Century Ins. Co.*, No. 07 C 4111, 2007 WL 4224296, *4 (N.D. Ill. Nov. 26, 2007)

(both districts equally familiar with Fair Credit Reporting Act); *Juarez v. National R.R.*

*Passenger Corp.*, No. 06 C 3681, 2007 WL 2713357, *4 (N.D. Ill. Sept. 12, 2007) ("neither

District Court is better situated to interpret [FELA, a federal law]" and therefore "the factor

weighing the courts' familiarity with the applicable law is neutral in this case."); *Graham v.*

*United Parcel Service*, 519 F. Supp. 2d 801, 811 (N.D. Ill. 2007) ("Both divisions of the

Northern District are equally familiar with the federal law . . ."); *Timebase Pty Ltd. v. Thomson*

*Corp.*, No. 07 C 460, 2007 WL 772946, *3 (N.D. Ill. Mar. 9, 2007) (because "[p]atent

infringement is a question of federal law," both districts were "equally familiar and capable of deciding questions of federal law" and "this factor is neutral to the § 1404(a) analysis.")

Moreover, familiarity with state law claims has not been found to be a significant factor where, as here, the case was "essentially a Lanham Act case" and "[t]he Illinois law claims are a minor portion of the complaint and based on the same facts asserted in the federal claim." *See Confederation Des Brasseries De Belgique*, 2000 WL 88847, at *6; *see also First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 914 (N.D. Ill. 2006) ("where the law in question is neither complex nor unsettled, the interests of justice remain neutral between competing courts."); *DePuy Orthopaedics, Inc. v. Gault South Bay, Inc.*, No. 3:07-CV-425RM, 2007 WL 3407662, *11 (N.D. Ind. Nov. 13, 2007) (same). Accordingly, the familiarity with law factor is neutral here.

### VI.    Balancing of the Factors

The Western District of Michigan is Whirlpool's home forum, where it is headquartered and employs thousands of people. It is also where all of the material events giving rise to LG's claims arose, and where all of Whirlpool's employee and non-party witnesses reside. Although LG made an effort to identify some connection between this case and Illinois, its failure to describe the importance or relevance of the testimony of its potential Illinois witnesses is fatal to that effort. Ultimately, transferring this case to the Western District of Michigan only means slightly longer plane flights for LG witnesses that will already be forced to travel substantial distances to participate in any trial in this case. The balance of these factors clearly supports transfer to the Western District of Michigan.

Dated: February 28, 2008                    Respectfully submitted,

                                            WHIRLPOOL CORPORATION, Defendant

                                            By: */s/   Brian D. Roche*


Brian D. Roche
Carey L. Bartell
Vanessa C. Martí
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 207-1000

J. A. Cragwall, Jr.
John J. Bursch
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, Michigan 49503-2487
Telephone: (616) 752-2000

*Attorneys for Defendant, Whirlpool Corporation*

<u>**CERTIFICATE OF SERVICE**</u>

I, Vanessa C. Martí, an attorney, hereby certify that on February 28, 2008 I filed the attached **Whirlpool Corporation's Reply Brief in Support of its Motion to Transfer** with the Clerk of the Court using the ECF system which will send notification of such filings to the following:

> Ronald Y. Rothstein
> rrothstein@winston.com
>
> David Alexander Latchana
> dlatchana@winston.com
>
> Shannon Leigh Stevens
> sstevens@winston.com

I hereby also certify that I mailed an unredacted version of **Whirlpool Corporation's Reply Brief in Support of its Motion to Transfer, including exhibits,** to the following by overnight mail on this 28th day of February, 2008.

> Ronald Y. Rothstein
> David Alexander Latchana
> Shannon Leigh Stevens
> Mary M. Hutchings
> Winston & Strawn LLP
> 35 West Wacker Drive
> Chicago, IL  60601

> By:     /s/  Vanessa C. Martí
> Brian D. Roche
> Carey L. Bartell
> Vanessa C. Martí
> REED SMITH, LLP
> 10 South Wacker Drive
> Chicago, IL  60606-7507
> (312) 207-1000