**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LG ELECTRONICS U.S.A., INC., )<br>  a subsidiary of LG Electronics, Inc., )<br>  a Korean company )<br>                                     )<br>         Plaintiff,     )<br>                                     )<br>     v.                      )<br>                                     )<br>WHIRLPOOL CORPORATION,     )<br>                                   )<br>         Defendant.     ) | Civil Action No.    08 C 242<br><br>Judge St. Eve<br><br>Magistrate Judge Mason |

**PLAINTIFF LG ELECTRONICS U.S.A., INC.'S MEMORANDUM IN OPPOSITION TO WHIRLPOOL CORP.'S MOTION SEEKING LEAVE TO FILE A SURRREPLY**

Ronald Y. Rothstein
Rrothstein@winston.com
Bryna J. Dahlin
Bdahlin@winston.com
Eric L. Broxterman
Ebroxterman@winston.com
Stephanie R. Dykeman
Sdykeman@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600 – telephone
(312) 558-5700 – facsimile

*Counsel for LG Electronics U.S.A., Inc.*

## **INTRODUCTION**

With nothing new to say, Whirlpool has filed a Surreply to get the last word and nothing more. Whirlpool, clearly in a hole, has opted to keep digging and make the hole deeper. LG USA did not assert any new arguments in its Reply brief and Whirlpool's Surreply is merely a rebuttal that repeats arguments previously made in its Opposition brief. In reality, it further compounds the problems Whirlpool created for itself in presenting ill-conceived unscientific testing and flawed legal analysis in its 960 page Opposition filing.

Dr. Malladi's "rehabilitation" declaration and the brand new declaration of Kirk Dunsbergen are completely meaningless in the context of this litigation. These declarations continue making unsupported and unsupportable statements that constitute nothing more than *ipse dixit*. For example, Dr. Malladi continues to fail to identify how much water allegedly gets entrained within a few cubic inches of the heater and then allegedly turns, suddenly, into steam. Why: because he never measured it. Now, in rebuttal, he asserts that he merely observed it. One need not be a scientist to know that such a self-serving, unsupported rhetorical assertion is not scientific.

Dr. Malladi has also resorted to making a gross mischaracterization regarding the quality of his testing when he alleges his work has been peer reviewed. He states that because six of his unnamed employees and the Chairman Emeritus of his company reviewed his work, that it is peer reviewed. Dr. Malladi is either being cute or intentionally deceitful to the Court. What Dr. Malladi describes is cronyism, not peer review. These are mere illustrations of the quality and veracity of the work Whirlpool asks this Court to accept.

Mr. Dunsbergen is equally guilty of this "take my word for it" approach. He goes to great lengths in his report to describe tests he alleges were performed by Whirlpool prior to its launch demonstrating the capability of the Whirlpool dryer to create steam. Yet again, however, he fails to attach even a single shred of documentary evidence. His unsupported rhetorical assertions again do not constitute proof.

Recognizing its weak position, Whirlpool has flouted the rules and has filed a 203 page Surreply in desperation, further sandbagging the Court and attempting to obfuscate the issues. The difficulty Whirlpool faces is that the issues are simple and no amount of testing or unproven assertions can demonstrate otherwise. The Whirlpool dryer does not create steam and was never designed to do so. Accordingly, LG USA requests that this Court deny Whirlpool's motion

seeking leave to file a surreply as it contains nothing new, is not instructive to the Court, and needlessly compounds what amounts to a very basic absence of proof.

## ARGUMENT

**I.     LG Does Not Assert New Arguments In Its Reply To Justify Whirlpool's Surreply.**

LG Electronics USA Inc.'s ("LG USA") entire Reply brief rebuts the ill-conceived science and illogical legal analysis advanced by Whirlpool Corp. ("Whirlpool") in its Opposition brief. LG USA does not change its position or advance new theories other than to refute Whirlpool's erroneous arguments that were both factually and legally wrong.

However, in gratuitously taking a second bite at the apple, Whirlpool surprisingly still does not address the key points at issue in this litigation. Whirlpool continues to fail to reconcile the inconsistency in its marketing and advertising position that its Duet® Steam Washer creates steam with a steam generator that boils water and injects it into the drum, while the Duet® Steam Dryer allegedly creates steam by spraying cold water into a warm drum that evaporates and turns into warm moist air. Moreover, Whirlpool continues to fail to provide any documentary proof, in the form of engineering or design documents created during the development that the Whirlpool Duet® Steam Dryer, demonstrating that the Whirlpool dryer actually creates and uses steam consistent with the opinions of Dr. Malladi and Mr. Dunsbergen.

Other than making conclusory statements that LG USA has introduced new arguments in its Reply brief, Whirlpool simply restates arguments it previously made, repeats the same cases and their holdings for the exact same legal propositions, fails to identify new issues and attempts to rehabilitate Dr. Malladi after LG USA took him to task on the numerous flaws and lack of relevance of his testing. There is simply no basis here for a surreply.

    **A.     Whirlpool Is Not Entitled To A Surreply Because LG Did Not Present Any New Evidence.**

Courts routinely deny motions for leave to file a surreply when new issues are not raised in the reply. *Porter v. Fairbanks Capital Corp.*, No. 01 C 9106, 2003 WL 21210115, at *7 (N.D. Ill. May 21, 2003) (plaintiff's motion for surreply denied where reply did not raise a "new matter"); *U.S. v. Portis*, 542 F.2d 414, 418 (7th Cir. 1976) (surreply proper only where party goes into a "new matter" or injects "fresh issues"). Courts will not tolerate "gamesmanship" and attempts to "get the last word" and will not consider a surreply under such circumstances.

*Portis*, 542 at 418 (purpose of surreply is "for the full development of the respective cases of the litigants, and gamesmanship in getting the last word should have no part in it."); *C & F Packing Co., Inc. v. IBP, Inc.*, 916 F. Supp. 735, 741 (N.D. Ill. 1995) (leave to file surreply denied where it was merely an "attempt to get in the 'last word'" after hundreds of pages of briefs had been already been filed); *Porter*, 2003 WL 21210115, at *7 (same).

Moreover, parties cannot engage in "sandbagging," that is, holding back evidence and offering it for the first time in a surreply. *Pike v. Caldera*, 188 F.R.D. 519, 537 (S.D. Ind. 1999) (filing evidence with surreply that was available at time party made its first submission and supports propositions in first submission "needlessly wastes time, and at its worst, it smacks of sandbagging."); *Lloyd v. Rolls-Royce Corp.*, No. IP011775-CHK, 2003 WL 23101791, at *3 (S.D. Ind. Aug. 26, 2003) (party not entitled to hold back evidence until filing a surreply brief). This is especially inappropriate where the evidence was available to the party at the time of its first submission and yet is presented for the first time in an affidavit attached to the surreply, leaving the opposing side with no opportunity to respond. *Boustead v. Barancik*, 151 F.R.D. 102, 106-07 (E.D. Wis. 1993) (striking second affidavit introducing new factual assertions where information was available when party filed first brief and first affidavit for same witness); *Lloyd*, 2003 WL 23101791, at *3 (where affidavit raised host of new points that should have been raised in party's original response, affidavit stricken). Because Whirlpool's Surreply is nothing more than an attempt to get the last word and sandbag this Court and LG USA, this Court should not consider Whirlpool's Surreply.

### B. LG Has Not Conceded or Changed Its Definition Of Steam.

Whirlpool's dryer does not create steam by any definition. However, Whirlpool continues to engage in the straw man approach of argumentation repeatedly misstating LG USA's position and continually failing to knock it down. Contrary to Whirlpool's self-serving construction of the issues, LG USA has never changed its position.

LG USA explained in its Opening brief that steam is a "clear gas obtained by vaporizing water, and which occurs at standard pressure when water is heated at or above its boiling point of 100 degrees Centigrade." (Opening brief at 4). This is the common and ordinary definition of

steam.[1]  Whirlpool, on the other hand, now contends that by merely creating "warm moist air," its dryer is capable of creating steam.  (Surreply at 2).  Whirlpool is wrong.[2]  Warm moist air, which is the product of evaporation incidental to the drying of wet clothes, is patently different from steam under any definition.[3]  The lay definitions of steam advanced by Whirlpool involve condensation that creates a white billowy appearance when warm water is introduced into a cooler environment.  However, these definitions are totally unrelated to the way the Whirlpool dryer operates.  Setting aside the fact that Whirlpool expects LG USA to be a mind reader and anticipate frivolous arguments, LG USA exposed the fallacy of Whirlpool's positions on each of the definitions put forward by its experts.

Whirlpool now takes the irreconcilable position that since the steam in LG USA's dryer condenses into a white billowy cloud, it is not steam either.  Whirlpool's position is scientifically absurd.  It is fundamental that steam, after it is released into the drum like in the LG Tromm Steam Dryer, releases highly concentrated heat energy causing the temperature of the clothes and air in the drum to increase and then condense into white billowy moisture.  (*See* Reply brief at 6).  The Whirlpool Duet® Steam Washer works the same way.  This has never been in dispute and Whirlpool's attempt to erect a straw man should be rejected.  The problem with the Duet® Steam Dryer is that it does not have any of these capabilities.

Moreover, Whirlpool conveniently fails to discuss *how* the "warm moist air" created in its Duet® Steam Dryer ever takes on an appearance of steam or the characteristics inherent to steam.  The Whirlpool Duet® Steam Dryer operates by tumbling the clothes for several minutes and by intermittently blowing in warm air to heat the clothes.  Cold water is then sprayed onto

---

[1]     LG USA did not take the bait from Whirlpool and engage in a patent claim analysis.  LG USA will not, and has not, conceded that it defined steam in its patents or in this litigation in any other way than its normal and ordinary meaning.  To determine the meaning of steam in LG USA's patents, this Court would have to undertake a claim construction analysis – something that is unprecedented in a false advertising case.

[2]     Whirlpool argues that "Dr. Choi describes this warm moist air environment inside the LG drum as "steam" which infuses the clothes (Suppl. Choi Decl., ¶¶ 26-28)." (Surreply at 2).  Dr. Choi never once uses the term "warm moist air" anywhere in his declaration, let alone in paragraphs 26-28.

[3]     Even if this argument were true (which it is not), Whirlpool already asserted this argument in its Response to LG's Opening Brief.  (Response at 4) ("In any event, the Duet® Steam Dryer generates steam under any definition, including the narrow one that LG urges here.").  Therefore, regardless of what definition Whirlpool argues that LG now asserts, Whirlpool has already made this losing argument.  By asserting this argument, Whirlpool ignores a basic axiom in advertising law that an advertiser is obligated to support all reasonable interpretations of the claims made in its advertising.  *National Com. on Egg Nutrition v. FTC*, 570 F.2d 157, 161 (7th Cir. 1977) (declining to disturb the finding of the FTC that "where an advertisement conveys more than one meaning, one of which is false, the advertiser is liable for the misleading variation").

the clothes to dampen the fibers in the clothes. This cold water has little to no heat energy. Instead, the heat from the heater causes the water in the clothes to evaporate. This water vapor is immediately vented out of the dryer to allow the clothes to dry. Thus, "warm moist air" is the *result* of the evaporation process and cannot be referred to as steam under any definition and is unrelated to the proper functioning of the Whirlpool dryer. Accordingly, it is immaterial what definition of steam LG USA asserts because Whirlpool's Duet® Steam Dryer does not make steam under *any* definition.

### C. Whirlpool – And Not LG – Is Attempting To Impose A New Test For The Creation Of Steam.

It is Whirlpool – and not LG – that is attempting to improperly impose a *de facto* industry testing standard. If this Court were to adopt Dr. Malladi's *ad hoc* testing, it would be tantamount to adopting a testing standard which would be contrary to the current industry norms.[4]

In its Reply brief, LG USA criticized the biased testing of Dr. Malladi and pointed out that the laundry care industry has never been shown such tests and would never accept such tests. Moreover, the declarations filed by Mr. McGrady, Dr. Choi, and Dr. Jacobi attacked the validity of Dr. Malladi's tests, which were disclosed by Whirlpool. In a false advertising case such as this one, LG USA is permitted to attack tests that Whirlpool argues establish its claims. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (holding that plaintiffs may demonstrate that defendant's testing is not sufficiently reliable to permit the court to conclude with reasonable certainty that the tests established the claims made by the defendant).

Whirlpool's internally inconsistent positions illustrate why a surreply is inappropriate. First, Whirlpool argues that LG USA misrepresents Dr. Malladi's tests with "new evidence." (Surreply at 4). Then, in that same paragraph, Whirlpool states that none of LG USA's experts "perform[ed] a single test of its own."[5] (*Id*). Because LG USA did not conduct any testing, as none is necessary to prove that Whirlpool's dryer fails to create steam, and chose only to expose the irrelevance and flawed nature of Dr. Malladi's tests, Whirlpool simply cannot argue that LG

---

[4]    The current norms of the industry are to create steam using a steam generator to heat the water to boiling. Whirlpool's own Duet® Steam Washer employs this same technology.

[5]    Whirlpool asserts at least three more times that LG's experts did not perform their own tests. (Surreply brief at 5-6). Because LG did not conduct their own tests, there is no new evidence that entitles Whirlpool to a surreply.

5

USA has introduced new facts or arguments entitling Whirlpool to a surreply. Whirlpool's tactics are nothing more than gamesmanship to get the last word, something the Seventh Circuit has specifically forbidden. *See U.S. v. Portis*, 542 F.2d 414, 418 (7th Cir. 1976) (forbidding parties from participating in "gamesmanship in getting the last word").

      **D.  Whirlpool's Surreply is Replete With Unsupported Conclusory Statements Lacking in Actual Proof.**

Even taking a second bite at the apple, Whirlpool still fails to cure any of Dr. Malladi's deficiencies in his testing. For example, although Dr. Malladi states that he personally "observed" liquid droplets present in the region near the air supply grill, he still fails to corroborate his statement with any actual proof. (Surreply at 6). To say that he observed water droplets in the region is nothing more than a rhetorical statement without any proof. It begs the question: if Dr. Malladi observed the water that gets entrained near the air inlet grill, why did he not measure it? This "absence of proof" theme is littered throughout Whirlpool's filings.

Astonishingly, Dr. Malladi's now states that his work was "peer reviewed," citing to his unnamed co-workers and a business colleague that reviewed his work. However, as explained by the Unites States National Library of Medicine National Institutes of Health, peer review is defined as follows:

> **Peer review:** the process by which manuscripts submitted to health, biomedical, and other scientifically oriented journals and other publications are evaluated by experts in appropriate fields (usually anonymous to the authors) to determine if the manuscripts are of adequate quality for publication.

(*available at*: http://www.nlm.nih.gov/nichsr/hta101/ta101014.html). Central to the concept of peer review is independence. *U.S. v. Frabizio*, 445 F. Supp. 2d 152, 165-66 (D. Mass. 2006) (peer review in the form of coworker analysis "is a far cry from the type of independent review that would bolster the technique's reliability."); *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 635 (8th Cir. 2007) (relevant peer review group would not include coworkers since "[i]f that proposition were true, any employee could arguably be considered an expert on account of the fact that he or she worked with others."); *Martinez v. Terex Corp.,* 241 F.R.D. 631, 638 (D. Ariz. 2007) (peer review by coworker does not rise to the level of peer review that would demonstrate soundness of the methodology used in the analysis). Apparently, Dr. Malladi mistakes cronyism for peer review. We are confident Dr. Malladi knows the difference, but his argument remains

6

troubling; namely, what is his purpose in falsely stating that his work is peer reviewed if he is not attempting to mislead the Court?

Nonetheless, Whirlpool still has not shown that Dr. Malladi's testing grew out of pre-litigation research, that his testing has been subjected to scientific scrutiny and peer review (other than people associated with his business), nor has he explained precisely how the conclusions were reached or pointed to some objective source to show that the conclusions would be accepted in the industry.

      E. **LG Has Not Challenged The Performance Of Whirlpool's Duet® Steam Dryer Other Than To Rebut Whirlpool's Position That Its Cold Mist System Possesses The Qualities and Benefits Of Real Steam.**

Whirlpool asserts that LG USA attacked the performance of Whirlpool's Duet® Steam Dryer for the first time in its Reply Brief, thus justifying the need to file a surreply. Again, Whirlpool confuses the issues at hand. LG USA does not attack the performance of the Whirlpool's dryer other than to rebut the fallacious argument that its cold mist system possesses the same qualities and benefits of real steam. Whirlpool simply has no proof for this assertion. Although Whirlpool argues that its cold mist system provides some of the same benefits of real steam, that is irrelevant as to whether its "steam" claims are false under the Lanham Act. *See W.L. Gore & Assoc. v. Totes, Inc.*, 788 F. Supp. 800, 803 (D. Del. 1992).[6]

If Whirlpool did, in fact, conduct several tests to substantiate its performance claims before making them in advertising, Whirlpool continues to fail to reveal the results or explain how they support its steam advertising claims. The simple and obvious truth, however, is that Whirlpool's Duet® Steam Dryer does not utilize steam, and Whirlpool has not been able to prove otherwise.

      F. **The Dunsbergen Declaration Is New And Should Likewise Be Stricken.**

In its Surreply, Whirlpool attaches a declaration from yet another engineer, an employee of Whirlpool by the name of Kirk Dunsbergen. This is classic sandbagging because Mr. Dunsbergen purportedly relies on testing that was done prior to the launch of Whirlpool's Duet® Steam Dryer and should have been asserted in Whirlpool's Opposition brief. *See Lloyd v. Rolls-*

---

[6]     Moreover, Whirlpool's reliance on Consumer Reports to support performance claims is improper. Whirlpool's purpose in attaching the LG video to its Surreply filing is unclear as it does not relate to support for performance claims and involves a microwave oven.

7

*Royce Corp.*, No. IP011775-CHK, 2003 WL 23101791, at *3 (S.D. Ind. Aug. 26, 2003) (striking affidavit that addresses new points that should have been raised in plaintiff's response to the motion). On this fact alone, Mr. Dunsbergen's declaration should be stricken.

What is especially problematic with the Dunsbergen declaration is that he merely states, without any documentary proof, that certain tests were done to prove Whirlpool's performance claims. He is ostensibly asking the Court to take his word for it, without explaining what tests were done, what protocols were in place, why, how, and by whom the tests were performed or what they were intended to prove. Clearly, his statement adds nothing to this case.

Mr. Dunsbergen's declaration, like Dr. Malladi's, further exposes the weaknesses of Whirlpool's arguments. He states that Whirlpool's engineers "introduce[d] moisture into a heated environment such as that inside the drum of the Duet® would create water vapor." (Dunsbergen Decl. at ¶ 10). Mr. Dunsbergen goes on to state that "as the vaporized water moves from hotter to relatively cooler locations within the dryer drum, some of the water vapor would condense and the combination of water vapor, condensed water droplets and the atomized mist of water sprayed into the dryer would form what is commonly known as steam." (*Id*). Again, he makes these rhetorical assertions without any documentary evidence.

However, it is evident that Mr. Dunsbergen and Whirlpool are again confusing steam with other concepts. In fact, none are steam under any definition of the word. The water vapor described here is evaporation, and the atomized mist of water is just that, water. Furthermore, in Whirlpool's dryer, once the moisture from the clothes evaporates, it is vented out of the dryer drum through the exhaust vent and thus preventing any condensation in the drum. Mr. Dunsbergen concedes as much in his declaration. (Dunsbergen Decl. at ¶ 13).

## **CONCLUSION**

Because LG USA has demonstrated that its Reply Brief does not contain any new evidence or argument, Whirlpool is not entitled to file a surreply. Accordingly, Whirlpool's Surreply brief, along with all accompanying declarations and exhibits, should be stricken.

Dated:  March 11, 2008    Respectfully submitted,


**LG ELECTRONICS U.S.A., INC.**



By:  /s/Ronald Y. Rothstein_____
   One of its attorneys

Ronald Y. Rothstein – Rrothstein@winston.com
Bryna J. Dahlin – Bdahlin@winston
Eric L. Broxterman – Ebroxterman@winston.com
Stephanie R. Dykeman – Sdykeman@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600 – telephone
(312) 558-5700 – facsimile

*Counsel for LG Electronics U.S.A., Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing **PLAINTIFF LG ELECTRONICS U.S.A., INC.'S MEMORANDUM IN OPPOSITION TO WHIRLPOOL CORP.'S SURRREPLY** has been served on the following counsel of record via the Court's electronic filing system this 11th day of March, 2008.

Brian D. Roche – broche@reedsmith.com
Carey L. Bartell – cbartell@reedsmith.com
Vanessa C. Martí – vmarti@reedsmith.com
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606

                          /s/ Stephanie R. Dykeman
                          One of LG USA's Attorneys