## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC., a subsidiary of LG Electronics, Inc., a Korean company, | ) ) ) ) | Civil Action No. 08 C 242 |
| Plaintiff, | ) ) | Judge St. Eve |
| v. | ) ) | Magistrate Judge Mason |
| WHIRLPOOL CORPORATION, | ) ) | |
| Defendant. | ) | |

**PLAINTIFF LG ELECTRONICS U.S.A., INC.'S MEMORANDUM OF LAW
IN SUPPORT OF LG USA'S MOTION TO COMPEL
<u>UNREDACTED DOCUMENTS AND INSTANT MESSAGES</u>**

I.      INTRODUCTION

Plaintiff LG Electronics U.S.A., Inc. ("LG USA") brings this motion only after numerous meet and confers in which the parties have failed to resolve deficiencies in Defendant Whirlpool Corporation's ("Whirlpool") document production: (1) Whirlpool's inexplicable redaction of thousands of pages not based on privilege; and (2) Whirlpool's wholesale failure to produce instant message communications.  LG USA first addressed the redaction issue with Whirlpool in May of this year after LG USA discovered that Whirlpool's production contained thousands of redacted documents, including public documents, emails and advertisements related to the Duet® Steam Dryer.  Due to Whirlpool's excessive redactions, which rendered thousands of pages unintelligible, LG USA was prevented from using any of these documents in LG USA's preliminary injunction motion filed in early January.  One such document, which was captioned **REDACTED** and discusses why Whirlpool's "steam" dryer does not in fact use steam, was completely redacted.  After Whirlpool successfully handicapped LG USA during the preliminary injunction stage, Whirlpool acknowledged its policy of excessive redaction and agreed to reproduce these documents with fewer redactions.  However, Whirlpool continued its pattern of abuse and failed to produce unredacted documents containing clearly relevant and discoverable information.  Whirlpool's behavior has continued for six months, during which Whirlpool has repeatedly promised to undo this pattern of improper redactions, but this practice persists and LG USA is left with no option but to move to compel.

Additionally, although it has become evident that Whirlpool uses instant messaging as a means of inter-company communication, Whirlpool has utterly failed to produce these messages.  It was not until LG USA noticed in its review of documents produced by Whirlpool a single string of instant message communications attached to an email that LG USA

1

became aware that Whirlpool employees use instant messaging. Realizing that Whirlpool had categorically excluded production of these instant message communications, LG USA has made numerous requests that Whirlpool immediately produce them. Despite these numerous requests, Whirlpool has stonewalled LG USA for over two weeks and to this day has failed to provide an answer on whether it will produce such messages.

Despite LG USA's persistent, yet patient attempts to resolve the present disputes, Whirlpool continues to act in defiance of its obligations under the Federal Rules of Civil Procedure, and is engaging in a scheme of delay. Accordingly, although LG USA is loathe to file the instant motion, Whirlpool has given it no choice. Moreover, sanctions in the form of the cost of filing and pursuing this motion are warranted in these circumstances as Whirlpool's actions are not substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii).

## II.  BACKGROUND

### A.  LG USA Has Been Prejudiced Because Whirlpool Redacted Two-Thirds Of Its Documents.

LG USA filed the present case seeking an injunction and damages against Whirlpool on January 10, 2008. The case concerns Whirlpool's willful attempt to deceive consumers by falsely claiming that its dryers have the capability of creating steam, when in fact, they do not.[1] LG USA immediately sought a preliminary injunction during which expedited discovery was granted by this Court. Although Whirlpool produced almost 12,000 pages prior to the Court's ruling on LG USA's preliminary injunction motion, Whirlpool redacted **7,507 pages** – nearly two-thirds of its production. The vast majority of these redactions were not on the basis

---

[1] At the time that LG USA filed its preliminary injunction motion, LG USA was only aware of advertisements relating to Whirlpool's Duet® Steam Dryer. Since the inception of this lawsuit, LG USA has become aware that Whirlpool is also deceiving customers by claiming that the Maytag Bravos® and the Whirlpool Cabrio® also have the capability of creating steam, when they do not. LG USA has since amended its Complaint to include these dryers.

2

of privilege. Because of these numerous redactions, Whirlpool's documents were basically meaningless, and as a result, LG USA was denied the opportunity to use key admissions from Whirlpool during the preliminary injunction stage. This Court ruled against LG USA in its motion for a preliminary injunction on March 19.

### B.   LG USA Has Met And Conferred With Whirlpool On Several Occasions.

In its review of Whirlpool's documents, it became immediately apparent to LG USA that Whirlpool had engaged in a systematic and abusive practice of document redaction. Whirlpool was redacting large chunks of information including press releases, technical development documents comparing Whirlpool's Duet® Steam Dryer and the LG Tromm® Steam Dryer, pictures of the Duet® Steam Dryer, storyboards, advertisements relating to the Duet® Steam Dryer, and emails relating to the Duet® Steam Dryer.[2] Concerned that Whirlpool was redacting critical information, LG USA complained to Whirlpool about its inappropriate redactions in a May 13, 2008 letter. *See* May 13, 2008 letter from E. Broxterman to J. DePriest, attached hereto as Exhibit A. Shortly thereafter, LG USA had the first of many meet and confers with Whirlpool regarding its abusive use of redactions. During this call, Whirlpool acknowledged that it had improperly redacted documents in its first three productions and that: (1) Whirlpool would reproduce documents that are redacted, and (2) Whirlpool would cautiously use redactions in the future. Based on this conversation, LG USA was left with the impression from Whirlpool that the issue was resolved. LG USA was misled.

---

[2] During the early stages of discovery, the parties agreed that forward looking marketing documents would not be produced. However, once the plans in these forward looking marketing documents were implemented, the parties agreed that they had an obligation to supplement their productions. Also, it was the understanding of the parties that redactions were appropriate where the communications involved products that had not yet launched. The vast majority of Whirlpool's redactions do not qualify under these two understandings.

3

Contrary to Whirlpool's promise, Whirlpool continued its abusive practice of redacting relevant information in its subsequent productions.[3] Although documents had been produced on a rolling basis by both parties, a large exchange of documents occurred on August 2, 2008. LG USA determined from its review of this production that Whirlpool continued its abusive redaction practice. On September 9, 2008, LG USA had a second meet and confer with Whirlpool regarding Whirlpool's egregious behavior. During this call, counsel for LG USA again complained of this pattern of excessive redaction and specifically identified examples of improperly redacted documents – (1) WHR000184 (attached hereto as Exhibit B), (2) WHR009349 (attached hereto as Exhibit C), and (3) WHR0022408 (attached hereto as Exhibit D).[4] *See* September 10, 2008 letter from E. Broxterman to J. DePriest, attached hereto as Exhibit E. Counsel for LG USA also complained that Whirlpool's previous attempts to unredact documents were deficient.

The parties held a third meet and confer on September 11, 2008 wherein Whirlpool responded that the first two documents had been reproduced with fewer redactions; yet upon review, it was clear that they were still heavily redacted.[5] Whirlpool further stated that it was standing behind the redactions in WHR022408 and but refused to explain why. *See* September 11,2008 letter from E. Broxterman to J. DePriest, attached hereto as Exhibit G.

---

[3] As of May 22, 2008, Whirlpool had produced approximately 19,190 pages. Of these pages, redactions appear on 53% (10,094) of its pages.

[4] The first document is a document entitled "REDACTED". REDACTE was the previous name for the Duet Steam Dryer. Of this forty-six (46) page document, forty-two (42) pages contained redactions. The second document is entitled REDACTED." Of this twenty-four (24) page document, eighteen (18) pages contain redactions, of which seventeen (17) are full page redactions. The third document is a two page email entitled "REDACT" with several redacted lines. Additionally, this documents also contains an embedded instant message between two Whirlpool employees discussing the RE dryer.

[5] One such document, WHR043975, consisting of 45 pages, still contained 17 pages of redactions. (Attached hereto as Exhibit F).

4

Moreover, an explanation was requested regarding Whirlpool's failure to produce instant message communications. Whirlpool's counsel was unable to provide an answer.[6]

In its continued desire to resolve the discovery disputes without resorting to this Court's involvement, LG USA and Whirlpool had yet another telephonic meet and confer on September 16, 2008 to discuss Whirlpool's discovery failures at which Whirlpool again promised to look into the problem. *See* September 16, 2008 letter from E. Broxterman to J. DePriest, attached hereto as Exhibit H. On September 19, Whirlpool responded by letter merely stating *again* that it would investigate improperly redacted documents identified by LG USA but failed to state that it would reproduce these documents without redactions or when it would do so. *See* September 19 letter from J. DePriest to E. Broxterman, attached hereto as Exhibit I.

Whirlpool's September 19 letter also stated that it was continuing to investigate the production of instant messages but failed to provide specifics on whether and when it would produce instant messages. In its letter, Whirlpool attempted to justify its non-production of instant message communications because it had "not seen any in LG's production."

## III.   LEGAL STANDARD

"The Federal Rules of Civil Procedure allow for broad discovery." *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550 , 552 (N.D. Ill. 2008). Specifically, the Rules provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(a)(1). Discovery is relevant if "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. "The federal discovery rules are to be construed broadly and liberally." *Herbert v. Lando*, 441 U.S. 153, 177,

---

[6] Fearing that counsel at Reed Smith LLP would not be knowledgeable about Whirlpool's use of instant messaging, LG USA requested that someone from the law firm of Norcross & Judd LLP, the law firm handling Whirlpool's document production, participate on the conference call. Counsel at Reed Smith stated no one from Norcross & Judd LLP was available to participate on the call.

99 S. Ct. 1635, 60 L. Ed. 2d 115 (1979). "The scope of discovery should be broad in order to aid the search for the truth." *Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 WL 314526, at *2 (N.D. Ill. May 19, 1995). "Therefore, courts commonly look unfavorably upon anything that significantly restricts this scope." *Id*.

IV.     **ARGUMENT**

Whirlpool's redaction of relevant information is completely contrary to the liberal rules of discovery. Its abusive use of redactions has effectively rendered thousands of pages meaningless to LG USA. LG USA has requested numerous times to have Whirlpool unredact relevant information, but to no avail. Moreover, Whirlpool has utterly refused to provide non-privileged unredacted documents that are clearly relevant to this case. Whirlpool's conduct has delayed LG USA's ability to conduct depositions and simply refuses to cooperate and correct its deficient production. Whirlpool's redacting of thousands of pages along with its withholding of instant message communications is a clear attempt to prevent LG USA from discovering relevant information. Court intervention is now necessary to force Whirlpool into compliance. Whirlpool should also be required to pay for LG USA's costs in bringing this motion.

   A.   **Whirlpool's Improper Redactions Are Hindering LG USA's Ability To Discover Relevant Information.**

Whirlpool's excessive use of redactions in its productions has rendered a large volume of its documents unintelligible. Given that there is a protective order in place to protect against the dissemination of sensitive information, there is no justification for redacting documents. *See S. Ill. Laborers' & Emplrs. Health & Welfare Fund*, 2007 U.S. Dist. LEXIS 93797 at *20-22 (N.D. Ill. Dec. 21, 2007)(ordering plaintiffs to produce unredacted documents because there was a sufficient protective order in place to preserve confidentiality). Of the first 11,944 pages produced by Whirlpool, nearly two-thirds (7,507) contained redactions. Even more

6

troubling, as shown below, are two examples of key documents there were redacted by Whirlpool, thus preventing LG USA from using these documents in support of its preliminary injunction motion. Example 1, initially produced as completely redacted, discusses why the Whirlpool's Duet® Steam Dyer does not actually use steam, which is exactly what LG USA argued in its preliminary injunction motion.

**REDACTED**

Example 1, attached hereto as Exhibit J.

Example 2, document WHR000205, which was also initially produced completely redacted, compares certain attributes between Whirlpool's Duet Steam Dryer and the LG Steam Dryer. LG USA argued in its preliminary injunction motion that because the Whirlpool Duet® Steam Dryer does not use "real" steam, it is less efficient. (Pltf's P.I. Reply at 7.) LG USA raised this issue to directly rebut one of Whirlpool's experts, Dr. Malladi. REDACTED

**REDACTED**

Example 2, attached hereto as Exhibit K.

Whirlpool has redacted thousands of other responsive documents. Because of the pervasiveness of these redactions, LG USA is unable to determine if Whirlpool has redacted other key pieces of information as well. The context of these documents, however, makes it clear that there is simply no basis to redact these documents. For example:

- WHR016391 – This document is an email with the subject heading REDACTED ▮▮▮▮▮▮▮ specifically discusses certain benefits of steam in its washer. However, Whirlpool redacted this document in five different places. (Attached hereto as Exhibit L.)

8

- WHR016469 – This document is a "REDACTED" for the Duet® Steam Washer. This document specifically discusses what Whirlpool is telling sales people to say to potential customers about the Duet® Steam Washer, yet there is a large redacted section in one of the pages. (Attached hereto as Exhibit M.)

- WHR024030 – This document directly compares the Duet® Steam Washer and Dryer to LG's Steam Washer and Dryer. Although this document compares the exact products at issue in this case, Whirlpool still redacted certain portions of this document related to Whirlpool's washer and dryer. (Attached hereto as Exhibit N.)

- WHR023983 – This document, entitled "REDACTED" discusses several aspects of the Duet® Steam Washer and Dryer. This document has several pages completely redacted. (Attached hereto as Exhibit O.)

In other instances, Whirlpool has redacted entire pages, which prevents LG USA from deciphering the meaning of the document. Below are some examples:

- WHR025023 – This document, entitled "REDACTED" is a four page document with every page fully redacted. (Attached hereto as Exhibit P.)

- WHR024928 – This is a 90 page presentation titled "REDACTED" with over 60 pages fully redacted. (Attached hereto as Exhibit Q.)

- WHR025011 – This is a document titled "REDACTED" It is a 12 page document with 9 pages fully redacted. (Attached hereto as Exhibit R.)

- WHR025053 – This document, entitled "REDACTED" is a 11 page presentation with eight (8) pages redacted. (Attached hereto as Exhibit S.)

- WHR020553 – This document is titled "REDACTED". It is a 45 page slide presentation prepared for Whirlpool by a third party, Decision Analyst, of which 19 pages are completely redacted. (Attached hereto as Exhibit T.)

- WHR025744 – This document is entitled "REDACTED" It is a 21 page document with 18 pages redacted. (Attached hereto as Exhibit U.)

9

- WHR025766 – This documents is entitled "REDACTED" and is a 14 page document purportedly discussing costs savings. Of the 14 pages, 12 pages are redacted. (Attached hereto as Exhibit V.)

As evidenced by Whirlpool's redaction policy, Whirlpool has effectively rendered thousands of pages virtually meaningless. Not only did Whirlpool hinder LG USA from using key documents in its motion for a preliminary injunction, it is obvious that Whirlpool intends to continue this abusive practice and prevent LG USA from using key documents at depositions and trial. Accordingly, Whirlpool should be required to remove <u>all</u> redactions except those made on the basis of privilege. *See Heller v. Graf*, No. 03 C 6988, 2004 WL 2057894, at *1 (N.D. Ill. Aug. 25, 2004) (granting motion to compel because documents were improperly redacted); *Dekalb Genetics Corp. v. Pioneer Hi-Bred Int'l*, 2002 U.S. Dist. LEXIS 3297 at *8 (Feb. 27, 2002) (compelling a party to produce in unredacted form relevant information where it is not burdensome to do so).

  **B.** **Whirlpool Has Failed To Produce Instant Messages**

Whirlpool's employees use instant messaging to communicate. *See* Exhibit D. With this knowledge, Whirlpool has completely failed to search its instant message database and produce all responsive messages. Upon learning of Whirlpool's failure, LG USA immediately requested that Whirlpool produce all responsive instant messages. Despite numerous requests over the past two weeks via letter and by phone, Whirlpool has refused to provide a response. Whirlpool is once again engaging in delay tactics to prejudice LG USA. LG USA seeks to begin depositions in this case but has been thwarted by Whirlpool's refusal to produce relevant documents. These instant messages are already delinquent by many months and it should not take weeks for Whirlpool to provide a response regarding if, and when, such instant messages will be produced.

10

## V.      SANCTIONS

Fed. R. Civ. P. 37(a)(5) states that "[i]f a motion is granted … the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion … pay the movant's reasonable expenses in making the motion, including attorney's fees." (emphasis added.)  Whirlpool's conduct is not substantially justified and can only be characterized as egregious.  Not only has Whirlpool deliberately redacted key admissions, but it has continued its abusive use of redactions since this case began.  Despite LG USA's numerous attempts to reach resolution with Whirlpool without court intervention, Whirlpool refuses to bring itself into compliance with its obligations.  It is only reasonable that LG USA be sanctioned for its behavior in this case.  *See Kojis v. Equifax Credit Info. Servs.*, 2004 U.S. Dist. LEXIS 7948 at *11-12 (N.D. Ill. May 5,2004) (granting sanctions because plaintiff's failure to not produce documents was not substantially justified).

## VI.     CONCLUSION

For the reasons stated above, Whirlpool should be ordered to: (1) produce all documents without redactions unless the redactions are based on privilege, (2) provide a privilege log justifying all remaining redactions, and (3) produce all responsive instant messages within one week of the Court's order.

11

Dated:  September 25, 2008   Respectfully submitted,

**LG ELECTRONICS U.S.A., INC.**


By:  /s/ Ronald Y. Rothstein
       One of its attorneys

Ronald Y. Rothstein - rrothstein@winston.com
Bryna Dahlin  - bdahlin@winston.com
Eric Broxterman - ebroxterman@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600 – telephone
(312) 558-5700 – facsimile

*Counsel for LG Electronics U.S.A., Inc.*

## **CERTIFICATION**

I, Eric Broxterman, attorney of record for Plaintiff LG Electronics U.S.A., Inc., ("LG USA"), hereby offer the following Rule 37 and Local Rule 37.2 certification with respect to LG USA's Motion to Compel. As to this motion, I certify that after exchanging correspondence with counsel (attached to this motion) as well as two telephonic meet and confer discussions on September 9 and September 11, with Jennifer DePriest of Reed Smith LLP, the parties were not able to reach accord on the matters that are the subject of the motion and did not reach an accord thereafter. I further certify that I have made good faith attempts at reaching an accord on all matters in the foregoing motion.

Dated: September 25, 2008                               /s/ Eric Broxterman

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **Plaintiff LG Electronics U.S.A., Inc.'s Memorandum of Law in Support of LG USA's Motion to Compel Unredacted Documents and Instant Messages**, has been served on the following counsel of record via the Court's electronic filing system this 25th day of September, 2008.

        Brian D. Roche – broche@reedsmith.com
        Jennifer DePriest – cbartell@reedsmith.com
        Vanessa C. Martí – vmarti@reedsmith.com
        REED SMITH LLP
        10 South Wacker Drive, Suite 4000
        Chicago, Illinois 60606

        J. A. Cragwall , Jr. - jcragwall@wnj.com
        WARNER, NORGROSS & JUDD LLP
        900 Fifth Third Center
        111 Lyons Street NW
        Grand Rapids , MI 49506
        (616) 752-2000

        John J. Bursch - jbursch@wnj.com
        WARNER, NORGROSS & JUDD LLP
        111 Lyon Street NW
        Suite 900
        Grand Rapids , MI 49503
        (616) 752 2474

        /s/ Eric Broxterman_____
        One of LG USA's Attorneys