# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 242 | **DATE** | 5/12/2009 |
| **CASE TITLE** | LG Electronics vs. Whirlpool Corp. | | |

**DOCKET ENTRY TEXT**

Whirlpool Corporation's motion to bar the rebuttal expert report of Bruce D. Spencer [161] is granted and LG Electronics U.S.A., Inc.'s motion to set expert deadlines [198] is denied, as to the second report of Bruce D. Spencer, and granted in part and denied in part as previously stated.

■[ For further details see text below.]      Notices mailed by Judicial staff.

# STATEMENT

    On April 28, 2009, the Court granted Whirlpool Corporation's motion to bar the second expert report of Anthony M. Jacobi because Jacobi's report was neither timely nor a proper supplemental opinion pursuant to Rule 26(a)(2). (R. 187-1.) Currently before the Court is Whirlpool's motion to bar the rebuttal expert report of Bruce D. Spencer (R. 161-1) and LG's motion to set expert deadlines (R. 198-1). For the following reasons, the Court grants Whirlpool's motion and grants in part and denies in part LG's motion.

## BACKGROUND

    Whirlpool Corporation ("Whirlpool") and Defendant LG Electronics U.S.A., Inc. ("LG") are competitors in the market for home appliances. LG filed this complaint in 2008, alleging that Whirlpool falsely advertises its washers and dryers. Specifically, LG's Second Amended Complaint ("SAC") includes four counts relating to Whirlpool's Duet Steam Dryer, Cabrio Steam Dryer, and Maytag Bravos Steam Dryer: Count I alleges false advertising in violation of Section 43(a) the Lanham Act, 15 U.S.C. § 1125(a); Count II alleges violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2; Count III alleges violation of the Illinois Uniform Deceptive Trace Practices Act, 815 ILCS 510/2; and Count IV alleges unfair competition under Illinois law. Each count relates to Whirlpool's Steam Dryer campaign that includes claims such as, "[n]othing beats the power of steam to get rid of wrinkles. The Duet® Steam Dryer naturally steams out wrinkles in just minutes, while removing any lingering odors;" "naturally steams away tough stains;" "steams out tough wrinkles and odors;" and uses "the pure power of steam." (R. 116-1, Second Am. Compl. at ¶¶ 22–23.) Following numerous extensions, the Court recently set a firm June 1 deadline for the close of discovery. (R. 186-1.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

The Court's December 2, 2008 scheduling order set January 5, 2009 as the disclosure date for survey expert reports; January 30, 2009 as the disclosure date for burden of proof expert reports; and February 27, 2009 for rebuttal expert reports. (R. 134-1.) On April 2, 2009, LG disclosed the report of Brian D. Spencer, Ph.D., a statistical expert. (R. 161-2, Ex. A to Def.'s Mot.) The Spencer report purports to rebut the rebuttal expert report of Dr. Subbaiah Malladi, apparently disclosed by Whirlpool on March 2, 2009. (*Id.* at 2.) In particular, the Spencer report notes that his assigned task was to "evaluate Dr. Malladi's claims that Whirlpool's Steam dryers use steam to relax wrinkles and remove odors." (R. 161-1 at 2.) Dr. Spencer examined Whirlpool internal documents and a summary of Whirlpool's internal testing, prepared by LG counsel, and opines that "the wrinkle removal for Myst compared to No Myst is not statistically significant at the 95% confidence level for the 20 minute cycle for any of the three models of dryers tested" but that the wrinkle removal was statistically significant at the 95% confidence level "for the 15 minute cycle for each of the three models tested." (R. 161-2, Ex. A to Def.'s Mot. at ¶¶ 16–17.)

Following the Court's April 28, 2009 Order striking the second expert report of Anthony M. Jacobi, LG filed a motion to set deadlines for expert reports addressing newly discovered evidence. (R. 198-1.) The motion (1) sought reconsideration of the Court's April 28 Order regarding the Jacobi report; (2) requested leave to serve a supplemental report of LG's damages expert; and (3) requested leave to serve yet another report authored by Dr. Spencer, a companion report to the earlier-issued April 2, 2009 Spencer report that Whirlpool currently seeks to bar. In essence, Spencer's first report relates to wrinkle removal and his second report relates to odor removal. (*See* R. 199-1, LG's Br. at 2.) At its May 7, 2009 motion hearing, the Court granted LG's motion as to its damages expert, denied its motion as to Dr. Jacobi, and took the remainder of the motion, as to Dr. Spencer, under advisement for the purpose of ruling on both Spencer reports simultaneously. (R. 204-1.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2)(C)(ii) provides that "[a]bsent a stipulation or a court order," reports "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)" must be made "within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(C)(ii). "The sanction for failing to comply with Rule 26(a)(2)(C) is 'automatic and mandatory' exclusion from trial of the non-disclosed evidence under Fed. R. Civ. P. 37(c)(1) 'unless non-disclosure was justified or harmless.'" *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 869 (7th Cir. 2005) (quoting *Musser v. Gentiva Health Svcs.*, 356 F.3d 751, 758 (7th Cir. 2004)). District courts have broad discretion to impose this sanction. Fed. R. Civ. P. 37(c)(1). The Seventh Circuit has enumerated four factors that guide a district court's discretion: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *see also Rowe Int'l Corp. v. Ecast, Inc.* 586 F. Supp.2d 924, 934–35 (N.D. Ill. 2008).

## ANALYSIS

### I. Timeliness

As an initial matter, it is not clear from the parties' briefing whether Spencer's first report was timely. The Court set a rebuttal disclosure date of February 27, 2009. (R. 134-1.) The Court's schedule was silent as to the date by which to serve expert reports purporting to rebut the parties' rebuttal expert reports, or sur-rebuttals. Although the Court generally prefers that the parties agree or file a motion for leave to disclose a sur-rebuttal, in the absence of a court schedule, such a report could logically be governed by Rule 26(a)(2)(C)(ii), and thus timely if submitted 30 days following the report which it rebuts.

According to the materials submitted by the parties, Whirlpool belatedly disclosed Dr. Malladi's report no earlier than March 2, 2009—the date of Dr. Malladi's signature. (R. 155-4, Malladi Report at 32.) The Court is

thus left to assume that this delay was by stipulation of the parties, or at the very least, not objected to by LG. LG served the Spencer report, which purports to rebut to the "March 2, 2009" Malladi report (R. 161-2 at 2), on April 2, 2009—31 days after March 2, 2009, by the Court's count. (R. 177-3 at 8.) LG claims in its Response, however, that Dr. Malladi submitted his report on March 3, 2009. (R. 180-1 at 1.) The parties' briefing has not clarified the timeline under which they appear to have been operating and thus leaves the Court with a confusing patchwork of possible deadlines. Consequently, to the extent that the first Spencer report is a proper rebuttal, the Court is unwilling to find the report untimely based on a one day discrepancy. To the extent that the report is not a rebuttal, however, it certainly falls outside of the Court's scheduling order and is thus untimely.

As to the second Spencer report, it is the Court's understanding that LG has not yet disclosed this report and awaits the Court's ruling on its motion to set expert deadlines. LG does not dispute that the second Spencer report is untimely under any measure, and instead agues that it intends the Spencer reports to "address information that has been discovered since it filed its burden of proof expert reports." (R. 199-1, LG's Mem. at 1.) In particular, LG claims that Whirlpool has changed its defense and "shifted its focus," and that Whirlpool now argues that "'steam' is not material to a consumer's purchase because consumers do not care whether Whirlpool's steam dryers actually create or use steam in its steam dryers, just so long as the Whirlpool steam dryer removes wrinkles and odors from the clothes." (*Id.* at 6.) To the extent that the two Spencer reports rebut this defense, then, and to the extent that this defense is, indeed, newly-discovered, the untimeliness of the Spencer reports may be justified.

## II.   Rebuttal

Rule 26(a)(2) describes a proper rebuttal as "evidence intended solely to contradict or rebut evidence on the same subject matter identified by another party" in its expert disclosures. Fed. R. Civ. P. 26(a)(2)(C)(ii); *see also Aircraft Gear Corp. v. Marsh*, No. 02 C 50338, 2004 WL 1899982, at *5 (N.D. Ill. Aug. 12, 2004). Whirlpool argues that the first Spencer report is not a proper rebuttal because it "offers an opinion on an issue not previously addressed by either LG's own steam expert or [Whirlpool's expert] Dr. Malladi, to whose report Dr. Spencer purports to respond." (R. 161-1 at 5.) LG responds that Dr. Spencer rebuts the Malladi report, which "repeatedly made reference to the Whirlpool dryer's ability to relax wrinkles and remove odors." (R. 177-1 at 1.) More recently, in its motion to set expert deadlines, LG has contended that the Spencer reports respond to the "new focus" of Whirlpool's defense.

The Malladi report opines, among other things, that one of the definitions of "steam" considered by LG's expert, "[a] vapor arising from a heated surface," "unambiguously applies to the Whirlpool Duet® Steam Dryer." (R. 161-4, Ex. C to Def.'s Mot., Malladi report at ¶ 17.) Neither party disputes that Malladi's opinion properly purports to rebut LG's burden-of-proof expert. In support of his opinion, Malladi cites various uses of the term "steam" and draws a distinction between steaming dry clothes (in a dryer) and steaming wet clothes:

> Steam dryers are intended to relax wrinkles and reduce odors when **dry** clothing is placed in the dryer, something that is absent from conventional dryers. Dr. Jacobi does not (and cannot) deny that when dry clothing is placed in the Whirlpool Dryer and a steam function is selected, water vapors will arise from hot surfaces and clothing within the dryer and will circulate within the drum before eventually being drawn out.

(*Id.*, Malladi report at ¶ 20 (internal footnote reference omitted) (emphasis in original.) Malladi also notes that "[t]he Whirlpool Dryer is advertised as relaxing wrinkles and reducing odors using a process involving steam. This process is similar to other commercially available consumer laundry dryers that are advertised as steam dryers..." (*Id.* at ¶ 45.)

These statements are not the substance of Dr. Malladi's opinion but rather an assumption upon which he relies—specifically, the assumption that Whirlpool's steam dryer products are "intended to relax wrinkles and reduce odors." (*Id.*, Malladi report at ¶ 20.) Although this assumption provides context to the Malladi report,

deleting it likely would not change the overall substance of Malladi's opinions relating to the proper definition(s) of steam. Read broadly, the Spencer reports do not directly dispute Malladi's opinions, but rather his reliance on Whirlpool's claims that its steam dryers relax wrinkles and reduce odors.

By not addressing Dr. Malladi's opinions head-on, however, Dr. Spencer's reports appear to exceed the scope of Dr. Malladi's report. Specifically, the Spencer reports purport to opine that Whirlpool's testing does not substantiate its wrinkle and odor claims.[1] In opining on substantiation, however, the Spencer reports go far beyond the issues raised in the Malladi report—Malladi makes no statements in his report as to whether and what extent Whirlpool can substantiate wrinkle reduction and odor claims. Instead, the Spencer reports address issues for which Plaintiff bears the burden of proof. *See BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1091 (7th Cir. 1994) ("a Lanham Act plaintiff bears the burden of proving literal falsity"). To allow such opinions on sur-rebuttal is akin to accepting new arguments in reply. More importantly, it allows Plaintiff to "evad[e] the orderly development of the case, in which plaintiffs should be expected to come forward first with any theory...and supporting expert testimony, followed by a response from defendants, and an opportunity for rebuttal." *Nelson v. Ipalco Enters., Inc.*, No. 2005 WL 1924332, at *8 (S.D. Ind. 2005). If LG intends Dr. Spencer's report to support its theory that Whirlpool cannot substantiate wrinkle and odor removal claims, LG should have disclosed Dr. Spencer's opinions, in accordance with the Court's schedule, in January. As it goes "far beyond" the Malladi report, however, the Spencer report is not a proper rebuttal. *See Gilbane Bldg. Co. v. Downers Grove Cmty. High School Dist. No. 99*, No. 02 C 2260, 2005 WL 838679, at *11 (N.D. Ill. Apr. 5, 2005).

### III. Justification for Delay

LG argues that its delay in disclosing the Spencer reports is due to Whirlpool's recent disclosure of its new and unexpected "benefits" defense. The Court does not agree, however, that Whirlpool's defense is in any way new or unexpected. Responding to Plaintiff's motion for entry of a preliminary injunction—more than one year ago—Whirlpool repeatedly argued that LG would have difficulty proving that "any alleged false statements were material," (R. 50-1, Whirlpool Resp. to Mot. for P.I. at 16), because "Whirlpool delivers the *benefits* of steam, which is what ultimately drives consumers' purchase decisions," (*Id.* at 7), and chief among these benefits is that the Whirlpool dryer "reduces wrinkles and removes odors." (*Id.* at 18; *see also Id.* at 1, n.1; 2–4, 14, 16–19.) LG admits in its motion that Whirlpool "first previewed this new defense in Dr. Dhar's expert report submitted on January 5, 2008," (R. 199-1 at 6). This admission alone is fatal to LG's "new evidence" argument—if LG could not rebut Dr. Dhar's report by the Court's February 27 deadline, then LG should have requested an extension. LG claims that it was not certain of Whirlpool's theory until Whirlpool served its March 3, 2009 interrogatory responses, but this argument is meritorious only if the Court accepts that Whirlpool's current position is the "shift in strategy" portrayed by LG, rather than a consistent theme first raised a year ago in response to LG's preliminary injunction request. Regardless, Spotting a "new" theory on March 3, 2009, LG could have sought leave to file additional expert reports, as it eventually did over two months later. Instead, at all status hearings before this Court, LG counsel has pushed to move discovery along as quickly as possible. Nor has LG pointed to any documents belatedly produced by Whirlpool that reveal information necessitating the Spencer reports. The Court sympathizes with parties forced to deal with last-minute document dumps, but Whirlpool's current theory is neither new nor unexpected.

---

[1] The Court rejects Whirlpool's argument that the Spencer reports relates to entirely new claims—LG identified these claims in its SAC, (R. 116-1, Second Am. Compl. at ¶¶ 22–23), and LG's response to Whirlpool's Interrogatory No. 1. (*See* R. 161-3, Ex. B to Def.'s Mot. at 3–4.) Regardless, the fact that LG included these claims in its SAC and interrogatory responses suggests that LG should have disclosed the Spencer report in January, as a report on an issue for which it bore the burden.

## IV. Prejudice

The Court previously struck LG's supplemental expert report of Dr. Jacobi because it was not a proper supplemental report but rather a belated attempt to inject an entirely new claim—relating to energy efficiency—into the case on the eve of the close of discovery. The Spencer report is likewise a belated attempt to admit evidence relating to LG's case-in-chief by disguising it as rebuttal evidence. The prejudice that results from this delay is clear: Whirlpool has spent the past year developing its defense. This defense comes as no surprise, as Whirlpool disclosed it in some of the earliest pleadings in this case and reiterated it in its initial expert disclosures. Allowing LG to offer the Spencer report works "an unfair 'ambush' in which a party advances new theories or evidence to which its opponent has insufficient time to formulate a response." *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp.2d 924, 934 (N.D. Ill. 2008). Given the dearth of time remaining in discovery, it would be unfairly prejudicial to Whirlpool to force it to respond to Spencer's belated opinions.

The alternatives to exclusion are equally unsatisfactory. Allowing Whirlpool an additional rebuttal report further delays this case and holds both parties hostage to protracted litigation regarding on-going advertising campaigns. Permitting LG to use Spencer's opinions solely in its rebuttal case would disrupt the trial and confuse the jury by allowing LG to admit evidence relating to its *prima facie* case on rebuttal— thus providing LG with an unfair mulligan should its primary theories fail.

## CONCLUSION

For the foregoing reasons, Whirlpool's motion to strike the Spencer rebuttal report is granted. LG's motion to set expert deadlines is granted in part and denied in part, to the extent previously stated in the Court's May 7, 2009 motion hearing, and denied as to Spencer's second rebuttal report.