# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC., a subsidiary of LG Electronics, Inc., a Korean company, | ) ) ) ) | Civil Action No. 08 C 242 |
| Plaintiff, | ) ) | Judge St. Eve |
| v. | ) ) | Magistrate Judge Mason |
| WHIRLPOOL CORPORATION, | ) ) | |
| Defendant. | ) | |

**PLAINTIFF LG ELECTRONICS U.S.A. INC.'S MEMORANDUM IN SUPPORT
OF MOTION FOR FEES AND COSTS AS PREVAILING PARTY**

LG Electronics, U.S.A. ("LG USA") brings this motion for fees and costs in connection with Whirlpool's Counterclaim, dismissed with prejudice at the request of Whirlpool on June 19, 2009. LG USA is entitled to attorneys' fees and costs as the prevailing party under the fee shifting provision of the Lanham Act. Whirlpool's Counterclaim, brought in retaliation after LG USA initiated this lawsuit, was completely without merit, and was oppressive in that it only served to increase the cost of this litigation for LG USA. Not a single advertising claim that Whirlpool alleged was false in its Counterclaim was either false or misleading, and none were actionable under the Lanham Act. Whirlpool only superficially prosecuted its Counterclaim in the 16 months after it was filed, made no effort whatsoever to develop a factual or legal case against LG USA, and flooded LG USA with document and discovery requests that LG USA was forced to respond to, expending significant time, money, and effort. As discovery progressed, Whirlpool incrementally narrowed and withdrew its claims, but only when pressured by LG USA. On June 16, 2009, Whirlpool finally capitulated and sought dismissal of its Counterclaim with prejudice.[1] LG USA was forced to defend itself against Whirlpool's frivolous claims for 16 months, expending approximately $1 million in attorneys' fees and costs, and is entitled to those attorneys' fees and costs in connection with a Counterclaim that should not have been brought in the first place.

I.  **FACTUAL BACKGROUND**

LG USA initiated this lawsuit on January 10, 2008, alleging that Whirlpool violated the Lanham Act and state law in its advertising of the Duet™ Steam Dryer. (Docket # 1.) LG USA's allegations (and this litigation) were limited only to Whirlpool's advertising and naming of its steam dryers. On February 4, 2008, Whirlpool filed an answer and retaliatory Counterclaim, alleging that certain advertisements by LG USA violated identical sections of the

---

[1] This Court granted Whirlpool's Motion to Voluntarily Dismiss with Prejudice on June 19, 2009.

1

Lanham Act and state law. (Docket #57, hereinafter Whirlpool's "Counterclaim.") Whirlpool's Counterclaim greatly expanded the scope of this litigation to include both LG USA's Steam Dryers *and* Steam Washers.

In its Counterclaim, Whirlpool alleged that LG USA's advertising contained the following allegedly "false and misleading" claims:

1. that the LG Tromm Steam Dryer "offers unmatched functionality in freshening clothes compared to other dryers on the market" (the "Functionality Claim");

2. that the SteamFresh™ Cycle on the Tromm Steam Dryer is "steam only" and reduces wrinkles and freshens dry clothes without the use of water (the "Steam Only Claim");

3. that the Tromm Steam Dryer and Steam Washer offers consumers "the first and only complete steam laundry care option" and that it has "pioneered the first steam washer and dryer." (the "First and Only Claim");

4. "that LG USA falsely claims on its website and elsewhere that the Tromm Steam Washer has a SteamFresh™ cycle that allows dirty clothes to be removed from the washer in a clean and ready-to-wear condition after just twenty minutes" and

5. that a television commercial (known as the "Dirty City" commercial) misrepresents the speed and efficiency of the Tromm Steam Washer.

(*Id. at* 18-19.) (claims 4 and 5 hereinafter referred to collectively as the "20 Minute Claim.")

On February 19, 2008, Whirlpool served its Third Set of Document Requests, containing 25 requests for documents from LG USA, nearly all relating to Whirlpool's Counterclaim. (*See* Whirlpool's Third Set of Document Requests, attached hereto as Ex. 1.) Whirlpool's requests were extremely broad, requesting virtually every document in LG USA's files related to the testing, development, marketing, claims testing, and advertising of both LG USA's Steam Dryers and Steam Washers. (*Id.*) After extensively searching through its files, counsel for LG USA reviewed 49 gigabytes of information. LG USA began producing these

2

documents on a rolling basis beginning on April 4, 2008, and largely completed its document production by September 20, 2008.

On August 15, 2008, LG USA served its 4th Set of Interrogatories on Whirlpool, requesting that Whirlpool "[i]dentify each and every false or misleading statement or representation of fact that Whirlpool contends was made by LG USA" that is either (1) literally false, or (2) literally true or ambiguous, but conveys a false impression or is misleading in context." (LG USA's Fourth Set of Interrog. Nos. 3 and 4, attached hereto as Ex. 2.) On September 15, 2008, Whirlpool responded that it intended to proceed as to the Functionality Claim, the Steam Only Claim, the First and Only Claim, and the 20 Minute Claim on the grounds of both literal falsity and implied falsity.[2] (Whirlpool's Resp. to LG USA's Fourth Set of Interrog. Nos. 3 and 4, attached hereto as Ex. 3.) Just one month later, on October 21, 2008, only after the vast majority of LG USA's document production efforts were complete, Whirlpool served an amended response to LG USA's 4th Set of Interrogatories, withdrawing several claims. The remaining claims related to LG USA's Steam Washers:

- The SteamFresh™ cycle "freshens fabrics and reduces odors in just 20 minutes."

- The SteamFresh™ cycle allows clothes to be "ready-to-go in just 20 minutes."

(Whirlpool's Am. Resp. to LG USA's 4th Interrogatories Nos. 3 and 4, attached hereto as Ex. 4.) Thus, without explanation, Whirlpool narrowed its Counterclaim after 8 months of litigation and thousands of attorney hours spent reviewing 49 gigabytes of documents to one frivolous claim – the 20 Minute Claim.

---

[2] Whirlpool also added a 6th allegation of falsity in its September 15, 2008 Interrogatory Response, claiming that "[t]he representation in the "Refresh" commercial that it is safe to reach into the Steam Washer while steam is present" was also false. This allegation did not appear in Whirlpool's Counterclaim, and no such representation existed in the "Refresh" (or "Dirty City") commercial. It is not surprising that Whirlpool dropped this allegation just over a month later.

3

On November 18, 2008, and again on February 27, 2009, Whirlpool served a total of 52 Requests for Admission on LG USA, asking for admissions related to the 20 Minute Claim. (*See* Whirlpool's 1st Set of Requests for Admission, attached hereto as Ex. 5; Whirlpool's 3rd Set of Requests for Admission, attached hereto as Ex. 6.) LG USA expended significant time and great expense responding to these discovery requests.

On January 16, 2009, LG USA served its 7th Set of Interrogatories on Whirlpool, requesting that Whirlpool identify any survey, study, or inquiry as to whether consumers "have been, or are likely to be deceived, confused, or influenced" by LG USA's advertisements, and to identify any documents that support Whirlpool's claim that consumers are "deceived, confused, or influenced" by LG USA's advertisements. (LG USA's 7th Set of Interrogatories, attached hereto as Ex. 7.) On February 17, 2009, Whirlpool conceded in its Interrogatory responses that it had not conducted a single survey, study, or inquiry related to its Counterclaim since the onset of this litigation. Rather, Whirlpool responded that it would attempt to prove the falsity of the 20 Minute Claim by way of a single survey conducted by its advertising agency, Publicis, of 12 individuals on September 10, 2007. This survey, which Whirlpool described as a "directional consumer perception survey" (the "Directional Survey") because it had no statistical validation whatsoever, was the sole basis for Whirlpool to continue to pursue its Counterclaim. (Whirlpool's Resp. to LG USA's 7th Set of Interrog. Nos. 1 and 2, attached hereto as Ex. 8.)

On January 30, 2009, burden of proof expert reports were due in this case. (Docket # 134.) Whirlpool did not produce a single expert report related to its Counterclaim. However, because of Whirlpool's February 17, 2009 statement that it was relying on the Directional Survey to prove the implied falsity of the 20 Minute Claim, LG USA was forced to obtain an

4

expert opinion on the Directional Survey. (*See* Expert Report of Jerry Wind at 28, attached hereto as Ex. 9.)

Whirlpool's pattern of capitulation continued after LG USA sought a 30(b)(6) witness to testify as to the merits of Whirlpool's Counterclaim, and what damages Whirlpool was seeking in connection to its Counterclaim. Whirlpool refused to provide a single witness to testify that it had been damaged by the acts alleged in Whirlpool's Counterclaim, and on March 4, 2009, for the first time, Whirlpool conceded that it "*is not seeking damages from LG related to LG's false advertising,*" and therefore it refused to produce a corporate witness to testify on this topic. (Whirlpool's Objections to LG USA's Rule 30(b)(6) Topic No. 3, attached hereto as Ex. 10 (emphasis added).) Whirlpool also refused to provide a witness regarding the Directional Survey related to its 20 Minute Claim, stating that the topic is "not relevant" to Whirlpool's Counterclaim. (*Id.,* Topic No. 7.) Then, on March 11, 2009, Whirlpool again changed course, and withdrew the statement made on February 17, 2009, stating that it "does not intend to rely on [the Directional Survey] in support" of its Counterclaim, and that it would only proceed on the basis that the 20 Minute Claim was literally false. (March 11, 2009 Letter from J. DePriest to E. Broxterman, attached hereto as Ex. 11.) On March 23, 2009, Whirlpool reiterated its retraction by changing its response to LG USA's 4th Set of Interrogatories, stating that it is only proceeding on a literal falsity basis. (Whirlpool's Second Amended Resp. to LG USA's 4th Set of Interrog. No. 3, attached hereto as Ex. 12.)

Finally, on June 16, 2009, obviously concerned that LG USA would seek summary judgment (and, in fact, LG USA had been well into its drafting of its motion for summary judgment) on the remaining 20 Minute Claim, Whirlpool voluntarily, without first discussing the matter with LG USA, moved this Court to dismiss, with prejudice, all of its claims against LG

5

USA. (Docket #217.) In its motion, Whirlpool stated that it "learned that LG had ceased making nearly all of the advertising claims that were the subject of" Whirlpool's Counterclaim. (*Id.*) However, at no time did LG USA represent that any these advertising claims were withdrawn. On June 19, 2009, this Court granted Whirlpool's motion, dismissing its Counterclaim 16 months after it was initially filed. During the 16 months that Whirlpool persisted in keeping its frivolous Counterclaim alive, LG USA was forced to expend nearly $1 million in attorneys' fees, experts' fees, and other costs in investigating Whirlpool's allegations, preparing analyses and opinions, conducting interviews, collecting voluminous documents, responding to written discovery requests, preparing its witnesses for depositions, and engaging in other discovery related to Whirlpool's Counterclaim.

## II.     ARGUMENT

LG USA is entitled to fees and costs under the fee shifting provisions of the Lanham Act. 15 U.S.C. § 1117(a) (2008). The Lanham Act provides that the Court "in exceptional cases may award reasonable attorney fees to the prevailing party." *Id.* "Where the defendant is the prevailing party, the standard is not whether the claimant filed suit in good faith but rather whether plaintiff's action was oppressive." *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001) ("*S Industries*") citing *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 126 F.3d 1028, 1031 (7th Cir. 1997). "A suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit." *Id.* Here, Whirlpool's conduct is oppressive because it brought claims that it knew lacked merit solely for the purpose of driving up the costs of this litigation, actions that the Seventh Circuit and other courts in this jurisdiction have repeatedly found justify an award of attorneys' fees under the Lanham Act.

6

    A.    LG USA is the Prevailing Party With Respect to Whirlpool's Counterclaim as <u>Defined in the Lanham Act.</u>

In the Seventh Circuit, a party is the prevailing party in litigation when it prevails "as to the substantial part of the litigation." *First Commodity Traders, Inc. v. Heinold Commodities*, 766 F.2d 1007, 1015 (7th Cir. 1985). The "dismissal of [a] Lanham Act claim *with prejudice* clearly" renders the Defendant the prevailing party for the purposes of the fee-shifting provisions of the Lanham Act. *Zila Swab Tech., Inc. v. Van Dyke,* No. 01 C 8729, 2003 WL 1745901 at *2 (N.D. Ill. Apr. 1, 2003), *citing Szabo Food Serv., Inc. v. Canteen Corp.,* 823 F.2d 1073, 1076-77 (7th Cir. 1987). "A dismissal with prejudice is an adjudication on the merits that changes the legal relationship between the plaintiff and the defendant, extinguishing whatever claim the plaintiff might have had against the defendant. Accordingly, a dismissal with prejudice makes the defendant a prevailing party . . . ." *Zila Swab,* 2003 WL 1745901 at *2; *see also Claiborne v. Wisdom*, 414 F.3d 715 (7th Cir. 2005) (holding that a dismissal with prejudice makes the defendant the prevailing party.) Because Whirlpool's Counterclaim was dismissed with prejudice, LG USA is the "prevailing party" with respect to Whirlpool's Counterclaim.

    B.    Whirlpool's Counterclaim Was Oppressive Because it Lacked Merit, and Had Elements of an Abuse of Process in That it Was Designed to Increase the Cost of <u>This Litigation</u>.

"A suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit."[3] *S Industries,* 249 F.3d at 627 (awarding fees in a Trademark case where Plaintiff had no federally protected right, and presented no evidence as to the merits of its claims.) A "suit can be oppressive

---

[3] Although the test says "and," it is not necessarily a conjunctive test. *See Centra 2000 v. S. Indus., Inc.*, No. 96 C 3524, 1998 WL 395161 (N.D. Ill. July 9, 1998), *aff'd*, 249 F.3d 625 (7th Cir. 2001) (lack of merit and increased costs). Nevertheless, filing a suit for the ulterior motive of driving up the costs of litigation is an abuse of process in itself. *Rohr-Gurnee Motors, Inc. v. Patterson*, No. 03 C 2493, 2004 U.S. Dist. LEXIS 2068, at *5-6 (N.D. Ill. Feb. 9, 2004).

7

because of lack of merit and cost of defending." *Door Systems,* 126 F.3d at 1032. Further, an award of attorneys' fees may "[b]e based solely on the weakness of [the Plaintiff's] claims." *S. Industries*., 249 F.3d at 627. *See also Top Tobacco, L.P. v. North Atl. Operating Co.,* No. 06-C-950, 2007 U.S. Dist. LEXIS 28543 at *5, *9 (N.D. Ill. Apr. 17, 2007) (finding that claims asserted under the Lanham Act were "exceptionally weak," and holding that fees could be granted based solely on the weakness of the plaintiff's claims); *Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.,* 389 F. Supp. 2d 983, 986 (N.D. Ill. 2005) (awarding fees where plaintiff filed a trade dress claim under the Lanham act that was without merit); *Sears, Roebuck & Co. v. Menard, Inc*., No. 01-C-9843, 2003 U.S. Dist. LEXIS 22246 (N.D. Ill. Dec. 8, 2003) (awarding fees under the Lanham act based solely on the lack of merit of the plaintiff's allegations); *Yankee Candle Co. v. Bridgewater Candle Co*., 140 F. Supp. 2d 111, 121-22 (D. Mass. 2001) (awarding fees in a Lanham Act case where plaintiff engaged in the "aggressive pursuit of unfounded claims.")

In this case, Whirlpool's claims were clearly without merit, and LG USA is entitled to attorneys' fees based on this fact alone. *S Industries,* 249 F.3d at 627. Further, while Whirlpool brought its Counterclaim with the purpose of driving up costs and making litigation more burdensome on LG USA, the lack of merit of the Whirlpool's Counterclaim, rather than its intent and motives in filing the case, independently justifies an award of fees under the Lanham Act. *Bretford Mfg., Inc,* 389 F. Supp. 2d at 984 (N.D. Ill. 2005) (focusing on the lack of merit, rather than the plaintiff's intent in filing suit, in deciding to awarding fees under the Lanham Act). However, to make matters worse, Whirlpool purposefully maximized the burden on LG USA, forcing it to expend approximately $1 million in defending Whirlpool's meritless claims. Whirlpool did so by engaging in a pattern of whittling its claims down substantially only in

response to pressure from LG USA, finally admitting that it would not seek any damages, and in the end dismissing the claims altogether.

### (1) *Whirlpool's Claims Were Without Merit*

In order to succeed under Section 43(a) of the Lanham Act[4], 15, U.S.C. § 1125(a), Whirlpool must show (1) a false statement of fact by LG USA in a commercial advertisement regarding its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) LG USA caused its false statement to enter interstate commerce; and (5) Whirlpool has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to LG USA or by a loss of goodwill associated with its products. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999); *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994).

Whirlpool's claims were without merit because it could not even meet the first element of a Lanham Act claim, namely that LG USA made a false statement of fact in a commercial advertisement. Section 43(a) "applies with equal force to (1) statements which are literally false and (2) statements which, while literally true or ambiguous, convey a false impression or are misleading in context . . . ." *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 13 (7th Cir. 1992). In other words, in order for a statement to qualify as "false" under the first element, the statement must be (a) literally false as a factual matter or (b) likely to deceive or confuse. *S.C. Johnson & Son, Inc. v. Clorox Company*, 241 F.3d 232, 238 (2d Cir. 2001). Whirlpool could not, however, show that any of LG USA's advertising claims identified in its Counterclaim and described more

---

[4] The elements for Whirlpool's state law claims are essentially identical to its Lanham Act claims, and thus are similarly without merit.

9

fully in response to LG USA's discovery requests were either (1) literally false, or (2) conveyed a false impression or were misleading in context, and indeed made no effort to do so throughout this entire litigation.

At no point in this litigation did Whirlpool provide any evidence to support its claim. In *S. Industries,* the Seventh Circuit upheld an award of attorneys' fees where the plaintiff brought forth meritless claims, and did not provide a single shred of evidence to support its claims throughout protracted litigation. *S. Industries,* 249 F.3d. at 627. While the plaintiff in *S. Industries* also engaged in "dilatory tactics," the Seventh Circuit held that the district court could have awarded fees "based solely on the weakness" of the plaintiff's claims. *Id.* This case, like *S Industries*, is "not a murky case." *Id*. None of Whirlpool's allegations in its Counterclaim had any merit on their face, and Whirlpool made no effort, because it could not, to develop a cognizable Lanham Act case.

In October of 2008, after eight months of discovery, Whirlpool dropped its Functionality Claim, its Steam Only Claim, and its First and Only Claim after recognizing that they could be neither literally false nor misleading. The claims dropped by Whirlpool in October of 2008 were not comparative claims or performance claims. At best, these claims could be characterized as puffing, as they made no discernable statement regarding the efficacy or performance of LG USA's washers and dryers that could be false in any way. The remaining 20 Minute Claim was equally frivolous as those dropped by Whirlpool. Whirlpool's only basis for falsity for the 20 Minute Claim, according to its amended Interrogatory response, was that "[t]he SteamFresh™ cycle takes 20 minutes but then clothes must be allowed to dry for at least 10 additional minutes before they are dry and ready to be worn."[5] That Whirlpool would maintain a federal lawsuit

---

[5] Neither of these statements can possibly be literally false. It is not disputed that the SteamFresh™ cycle is a 20 minute cycle, nor is it disputed that the SteamFresh™ cycle freshens fabrics and reduces odors.

10

over this 20 Minute Claim smacks of the very oppressive and meritless type of claim on which the Seventh Circuit has upheld an award of attorneys' fees. *See S Industries.,* 249 F.3d at 627.

Given that Whirlpool could not show that LG USA's advertising claims that its washer "freshens fabrics and reduces odors in just 20 minutes" and allows clothes to be "ready-to-go in just 20 minutes" were literally false, it would be expected that Whirlpool would have engaged an expert and taken a consumer survey to determine whether LG USA's claims were potentially misleading to consumers.[6] Throughout this litigation, Whirlpool did neither.

In *Bretford Mfg., Inc. v. Smith,* the court evaluated whether to award attorneys' fees under the Lanham Act in a trade dress case. *Bretford,* 389 F. Supp. 2d at 985. In deciding whether to award fees, the court looked solely at the merits of the plaintiff's claims. *Id*. The court determined that in pursuing a trade dress claim, the plaintiff was required to establish a likelihood of consumer confusion. *Id*. at 986 Because the court found that the plaintiff put forward no evidence of a likelihood of consumer confusion, the court found the case "exceptional," and granted attorneys' fees. *Id.*

Before Whirlpool finally conceded that it was only going forward with a literal falsity claim on March 11, 2009, Whirlpool expended absolutely no effort to show that any of LG USA's advertising claims were confusing in any way to consumers. Without evidence of consumer confusion, it would be impossible for Whirlpool to prevail on the basis of implied

---

Also, while LG USA's manual states that some clothes may be slightly damp after the SteamFresh™ cycle, this does not contradict that clothes can be worn, and are "ready-to-go" after completion of the cycle. (*See* 12/10/08 Dep. of David Palmer at 94:4-20, attached hereto as Ex. 13; 2/6/09 Dep. of Timothy Kavanaugh at 133:12-134.2, attached hereto as Ex. 14.)

[6] Proof of what an advertisement means to the public, which is key evidence in making an implied falsity claim, can be made through a reliable consumer survey. *Mead Johnson & Co. v. Abbott Laboratories,* 201 F.3d 883, 886 (7th Cir. 2000). Indeed, the 7th Circuit has long held that survey evidence is the most common method of proving actual deception and is the preferred method of proving the misleading nature of an advertisement. *Rhodes Pharmacal Co. v. Federal Trade Comm'n,* 208 F.2d 382, 386 (7th Cir. 1953.)

11

falsity. *Abbot Labs.,* 971 F.2d at 13 (affirming that a party cannot prevail on an implied falsity claim without actual evidence of consumer confusion.) Presenting absolutely no evidence of consumer confusion, where such evidence is required, is exactly what the court found to be "exceptional" in awarding attorneys' fees under the Lanham Act in *Bretford*. 389 F. Supp. at 986. Whirlpool's complete lack of effort underscores the fact that its Counterclaim had no merit and instead served only one purpose: to cause unneeded cost, expense, and delay in this litigation.

>  (2)   *Whirlpool's Counterclaim Had Elements of an Abuse of Process, Designed Solely to Drive Up Costs in This Litigation.*

Whirlpool's persistence in maintaining its Counterclaim and its constantly shifting positions were designed solely to drive up litigation costs. Whirlpool brought its Counterclaim only in response to LG USA's lawsuit, and intended to use its meritless Counterclaim as leverage against LG USA by driving up the cost of litigation, and forcing LG USA to expend nearly $1 million in fees defending itself from a claim that Whirlpool never intended to pursue.

Courts have found this type of ulterior motive to be an abuse of process. In *Rohr-Gurnee Motors, Inc. v. Patterson,* the plaintiff filed a trademark claim under the Lanham Act. The court analyzed whether the filing of the suit constituted an abuse of process designed to drive up litigation costs. *Rohr-Gurnee Motors, Inc.*, 2004 U.S. Dist. LEXIS 2068 at *3. The court found that the suit was filed for the purpose of driving up litigation costs, and awarded attorneys' fees. *Id* at *3, *9*; See also Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521, 527 (D.C. Cir. 1985) (finding that "economic coercion" justified a finding of an "exceptional case" in a Lanham Act case and awarding fees.) While the court in *Rohr-Gurnee* found evidence that the plaintiff initiated litigation for the purpose of increasing costs to the defendant at the onset, the court also held that the continued pursuit of the case once the plaintiff "became aware … that it

12

did not have better than negligible chance of success on the merits" was "oppressive" and warranted an award of attorneys' fees. *Rohr-Gurnee Motors, Inc.,* 2004 U.S. Dist. LEXIS 2068. at *9.

Similarly, Whirlpool filed its Counterclaim for the sole purpose of increasing LG USA's costs in this litigation. Further, like the plaintiff in *Rohr-Gurnee,* Whirlpool maintained its claim knowing that it had no more than a negligible chance of success. Perhaps most egregious, Whirlpool waited until March 11, 2009 to narrow its case one final time, informing LG USA that it was not proceeding even on the basis of implied falsity with respect to what was left of its Counterclaim. Only a month earlier, Whirlpool had asserted in its February 17, 2009 response to LG USA's 7th Interrogatories that it intended to use the Directional Survey as evidence of implied falsity. (Whirlpool's Resp. to LG USA's 7th Set of Interrog. Nos. 1 and 2, Ex. 8.) LG USA was forced to review and analyze what little evidence was produced regarding this survey, as well as have its expert, Dr. Wind, review and opine as to the relevancy (or, more accurately, total lack thereof) of the Directional Survey to Whirlpool's claims. This continued pursuit of a claim despite having no chance of success is exactly the type of behavior held to be oppressive in *Rohr-Gurnee Motors, Inc.*, 2004 U.S. Dist. LEXIS 2068 at *14-15.

Whirlpool's altering and narrowing of its claims in response to pressure from LG USA also supports a finding that LG USA is entitled to fees. In *Top Tobacco, L.P. v. North Atl. Operating Co,* a trademark suit filed under the Lanham Act, the court examined the plaintiff's inconsistent positions throughout litigation in determining that it improperly drove up litigation costs as part of the court's determination to award fees. *Top Tobacco, L.P.,* 2007 U.S. Dist. LEXIS 28543 at*14-16. The court held that it was the plaintiff's inconsistent positions that "highlighted the weakness" of its claims, and that its "inconsistent positions before … the court"

13

demonstrated that the plaintiff in *Top Tobacco* was "not playing straight … and needlessly increas[ing] the costs of defending" the suit. *Id.* at *15-16. Whirlpool's behavior in constantly altering and narrowing its claims after pressure from LG USA is like the behavior of the plaintiff in *Top Tobacco*. Like in *Top Tobacco,* Whirlpool's behavior needlessly increased LG USA's costs in this litigation.

Whirlpool persisted with its claims for 16 months, forcing LG USA to respond to expensive and burdensome discovery requests. At the same time Whirlpool made virtually no effort itself to build its case, as evinced by its pattern of narrowing its claims under pressure from LG USA. Whirlpool's Counterclaim, though without merit, contained charges that LG USA was forced to defend. Without Whirlpool's Counterclaim, the issues in this lawsuit would have been properly limited to Whirlpool's false claims regarding the creation of steam in its steam dryers. LG USA still had to file an answer, investigate Whirlpool's claims, prepare analyses and opinions, conduct interviews, consult with experts, and conduct discovery related to Whirlpool's claims, including the collection and review of over 49 gigabytes of documents responsive to Whirlpool's discovery request. LG USA was also forced to devise a litigation strategy with respect to Whirlpool's Counterclaim, prepare LG USA employees in advance of their depositions, and draft a summary judgment motion.

In sum, although LG USA has not calculated its total cost in defending Whirlpool's claims, LG USA estimates that it was forced to expend approximately $1 million (or perhaps more) in attorneys' fees and other costs in defending Whirlpool's Counterclaim. Whirlpool knew that its Counterclaim had no merit from the onset, and only filed and maintained it to put leverage on LG USA by driving up its costs. In the end, Whirlpool's frivolous Counterclaim did exactly what it was designed to do – significantly increase LG USA's litigation costs.

**III.    CONCLUSION**

For the foregoing reasons, LG USA respectfully petitions this Court for attorneys' fees, experts' fees, and all costs related to defending Whirlpool's Counterclaim.


Dated:  July 2nd, 2009                                         Respectfully submitted,

                                                                                **LG ELECTRONICS U.S.A., INC.**

                                                                                By:  /s/ Bryna J. Dahlin
                                                                                        One of its attorneys

                                                                                Ronald Y. Rothstein - rrothstein@winston.com
                                                                                Bryna J. Dahlin  - bdahlin@winston.com
                                                                                Eric Broxterman - ebroxterman@winston.com
                                                                                WINSTON & STRAWN LLP
                                                                                35 West Wacker Drive
                                                                                Chicago, Illinois  60601
                                                                                (312) 558-5600 – telephone
                                                                                (312) 558-5700 – facsimile

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **Plaintiff LG Electronics U.S.A., Inc.'s Memorandum in Support of Motion For Fees and Costs in Connection Whirlpool's Counterclaim**, has been served on the following counsel of record via the Court's electronic filing system this 2nd day of July, 2009.

>Brian D. Roche – broche@reedsmith.com
>Jennifer DePriest – cbartell@reedsmith.com
>Vanessa C. Martí – vmarti@reedsmith.com
>REED SMITH LLP
>10 South Wacker Drive, Suite 4000
>Chicago, Illinois 60606
>
>J. A. Cragwall , Jr. - jcragwall@wnj.com
>John J. Bursch - jbursch@wnj.com
>WARNER, NORGROSS & JUDD LLP
>900 Fifth Third Center
>111 Lyons Street NW
>Grand Rapids , MI 49506

>/s/ Bryna J. Dahlin
>One of LG USA's Attorneys