IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC. | ) | |
| a subsidiary of LG Electronics, Inc., | ) | |
| a Korean company, | ) | |
| | ) | Civil Action No.: 08 C 242 |
| Plaintiff, | ) | |
| | ) | Judge St. Eve |
| v. | ) | |
| | ) | Magistrate Judge Mason |
| WHIRLPOOL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**WHIRLPOOL CORPORATION'S BRIEF IN SUPPORT OF MOTION TO STAY
COURT'S ORDER ON PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF
DOCUMENTS LISTED ON DEFENDANT'S PRIVILEGE LOG**

**INTRODUCTION**

On August 24, 2009, the Court issued a ruling granting in part and denying in part Plaintiff LG Electronics U.S.A., Inc.'s Motion to Compel Production of Documents Listed on Defendant's Privilege Log, and directed further briefing with respect to whether the attorney-client privilege protects communications between Whirlpool's counsel and its outside advertising and marketing agencies. On October 13, 2009, the Court issued an order deciding that the communications are not protected, and ordered 90 communications to be produced by October 27, 2009.

Because of the lack of clear direction from the Seventh Circuit on key issues relating to the motion, what Whirlpool believes are inconsistencies between certain aspects of this Court's ruling and rulings of the Seventh Circuit, and the critical importance of the attorney-client privilege, Whirlpool intends to file an appeal and, if necessary, an alternative, contingent petition for a writ of mandamus with the Seventh Circuit. The Seventh Circuit, however, will not address this issue before October 27, 2009. If Whirlpool is forced to disclose the privileged communications before it has an opportunity to obtain an interlocutory ruling from the Seventh

Circuit, then Whirlpool's ability to maintain the confidentiality of the communications at issue – and thus its ability to ever obtain meaningful review of this Court's decision – will be forever lost. Whirlpool therefore respectfully requests that the Court grant a stay of its order directing disclosure of the communications between Whirlpool's counsel and its outside advertising and marketing agencies in order to allow Whirlpool to obtain a ruling from the Seventh Circuit.

## ARGUMENT

### A.    The Court of Appeals Has Jurisdiction To Review This Court's Order To Produce As A Collateral Order

Courts of appeals have jurisdiction over all "final" district court decisions under 28 U.S.C. § 1291. Jurisdiction under § 1291 also includes a "narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867, (1994) (internal quotation marks and citation omitted). The Supreme Court established the collateral order doctrine as an exception to the finality requirement of § 1291 in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). Under *Cohen*, an order is appealable if it (1) conclusively determines the disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978).

There is a difference of opinion among the federal courts of appeals with respect to whether a ruling that arguably privileged documents must be produced is an immediately appealable collateral order. The Ninth Circuit has repeatedly held that where "a district court holds, following full development of the issues by the parties, that a privilege has been vitiated, its order constitutes a conclusive determination." *In re Napster Inc. Copyright Litig,,* 479 F.3d 1078, 1088 (9th Cir. 2007) (and cases cited therein). In deciding whether an order to produce documents claimed to be privileged is an appealable collateral order, the *Napster* court found that once privileged materials are disclosed, the effect of the disclosure order is often irreparable on appeal because when "'[t]he cat is already out of the bag,' it may not be possible to get back in." *Id*. (citing *Agster v. Maricopa County*, 422 F.3d 836, 838 (9th Cir. 2005)). And although the court acknowledged that there might be some overlap between the privilege issue and the merits in the case before it, the court held that determination of the privilege issue was "too important to be denied review and too independent of the cause itself to require that appellate

consideration be deferred until the whole case is adjudicated." 479 F.3d at 1088 (*citing Cohen*, 337 U.S. at 546).

Likewise, the Third Circuit found that "the attorney-client privilege is one of the pillars that supports the edifice that is our adversary system. As such, it is 'deeply rooted in public policy,'" and thus sufficiently important to satisfy the requirements of the collateral order test. *In re Ford Motor Co.*, 110 F.3d 954, 961-62 (3rd Cir. 1997) (*quoting Digital Equip. Corp., v. Desktop Direct, Inc.,* 511 U.S. 863, 884 (1994)). And, like the Ninth Circuit, the court held an order to disclose privileged documents effectively unreviewable on final appeal: "Appeal after final judgment cannot remedy the breach in confidentiality occasioned by erroneous disclosure of protected materials. At best, on appeal after final judgment, an appellate court could send the case back for re-trial without use of the protected materials. At that point, however, the cat is already out of the bag." 110 F.3d 963. *See also United States v. Phillip Morris Inc.*, 314 F.3d 612, 618 (D.C. Cir. 2003) (citing with approval Third Circuit's holding in *Ford* that attorney-client privilege is "the type of 'institutionally significant status or relationship' that justifies collateral order review") (*quoting Ford*, 110 F.3d at 960).

Some other courts of appeals disagree. *See F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 458 (1st Cir. 2000) (finding discovery orders in general, and an order involving party's claim of attorney-client privilege, not appealable under collateral order doctrine); *Boughton v. Cotter Corp.*, 10 F.3d 746, 749-50 (10th Cir. 1993) (declining to accept jurisdiction, and noting that other circuit courts at the time had refused to take jurisdiction over attorney-client privilege claims); *Texaco Inc. v. Louisiana Land & Exploration Co.*, 995 F.2d 43, 44 (5th Cir. 1993) (order to produce documents claimed to be subject to attorney-client privilege not appealable under the collateral order doctrine); *Chase Manhattan Bank v. Turner & Newall, PLC*, 964 F.2d 159, 162-63 (2d Cir. 1992) (pretrial discovery orders are not appealable under collateral order doctrine); *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 644 (Fed. Cir. 1991) (order compelling discovery of attorney opinion letters not immediately appealable under collateral order doctrine).

The question presented by this case has not been squarely ruled upon by the Seventh Circuit. While the Seventh Circuit has stated that "orders to produce information over strong objections based on privilege are not appealable," the case before it did not involve such an order, and instead dealt with a party's refusal to submit to a medical examination under

Federal Rule of Civil Procedure 35. *Reise v. Board of Regents of Univ. of Wisconsin Sys.*, 957 F.2d 293, 295 (7th Cir. 1992). The Seventh Circuit has thus not been called upon to engage in any analysis of the *Cohen* factors in circumstances similar to those here. Such a review might lead the court to a decision contrary to the statement in dicta in *Reise*.

In any event, the split in authority between the various courts of appeals will now be resolved by the Supreme Court. It granted certiorari, and on October 5, 2009 heard oral argument, in *Mohawk Indus. v. Carpenter* (No. 08-678), an appeal from an Eleventh Circuit Court of Appeals decision declining to exercise collateral order jurisdiction over a district court order finding waiver of the attorney-client privilege and directing production of privileged materials. 541 F.3d 1048 (11th Cir. 2008).

The appealability of an order directing production of arguably privileged communications is of sufficient importance that Whirlpool asks that the Court stay the order to produce until the Seventh Circuit has had an opportunity to address the issue. As the American Bar Association stated in a recent *amicus curiae* brief submitted to the U.S. Supreme Court in *Mohawk*, "There should be a right to an immediate appeal under *Cohen* when a court rules that the attorney-client privilege has been waived and compels production of attorney-client communications, because of the importance of the attorney-client privilege and the importance of maintaining the balance between the public interests embodied in the privilege and in the principle that the public has" a general right to evidence. (Br. *Amicus Curiae* of the ABA at 5, available at http://www.scotuswiki.com/index.php?title=Mohawk_Industries%2C_Inc._v._ Carpenter.)

**B.** **A Stay Of The Court's Order Is Warranted In The Circumstances Of This Case**

When considering a request for stay of an order pending appeal, a district court should generally consider the following factors: (1) whether the movants are likely to succeed on the merits; (2) whether the movants will suffer irreparable harm if a stay is not granted; (3) whether a stay will substantially harm other parties to the litigation; and (4) whether it is in the public interest to grant the stay. *Colin v. O'Malley*, 452 F. Supp. 577, 579 (N.D. Ill. 1978) (*citing Adams v. Walker*, 488 F.2d 1064 (7th Cir. 1973)); *see also, McSurely v. McClellan*, 697 F.2d 309, 317 (D.C. Cir. 1982) (applying same factors, "flexibly according to the unique

circumstances of each case," in context of request for stay pending collateral order appeal). These factors all counsel in favor of a stay here.

Whirlpool's arguments on the merits urged attorney-client privilege protection of the communications at issue on two different grounds. First, Whirlpool and its outside advertising agencies share a common legal interest in avoiding liability for false advertising claims, and that common interest extends the protection of the attorney-client privilege to communications of legal advice between them. Alternatively, Whirlpool argued that the communications should be protected on the grounds that the agencies, which take primary responsibility for creating and disseminating Whirlpool's advertising, were acting as representatives or functional employees of Whirlpool in the communications.

The Court rejected application of the common interest doctrine to Whirlpool's relationship with its advertising agencies, relying most heavily on two cases with much different factual circumstances from those in this case. The first of these cases is *In the matter of Jenny Craig, Inc.,* Docket No. 9260, 1994 WL 16774903 (F.T.C. May 16, 1994). *Jenny Craig* involved communications between two parties actually involved in active litigation and thus, not surprisingly, each represented by their own independent counsel who worked together jointly to formulate legal strategy. Whirlpool is not aware of any case, however, suggesting that each party to a communication must have its own independent counsel in order for the common interest doctrine to apply. The Seventh Circuit did not include such a requirement in its decision adopting the common interest exception, *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007) cert. denied, 128 S. Ct. 1471 (2008). Instead, the Seventh Circuit merely held that the exception applies "where the parties undertake a joint effort with respect to a common legal interest," and "encourages parties with a shared legal interest to seek legal assistance in order to meet legal requirements and to plan their conduct accordingly." 492 F.3d at 816 (internal quotation omitted). The requirement that the parties each seek assistance through their own counsel, rather than the same counsel, however, is not included.

The second case on which the court relied is *FTC v. Rexall*, No. M18-304, 2001 WL 396522 (S.D.N.Y. April 19, 2001). While that case involved far more analogous circumstances – communications between a company's in-house counsel and representatives of an outside advertising agency to ensure advertising met legal requirements – there was a critical difference between that case and this one. In *Rexall*, the court expressly noted that it was <u>the</u>

company that would have been in a position to assert any attorney-client privilege, not the advertising agency, but that the company was not a party to the proceeding and not the party seeking to assert the privilege. 2001 WL 396522, at *3 fn.1. Here, the company is a party, and is the one asserting the privilege. Further, *Rexall* examined whether an actual attorney-client relationship had been demonstrated to exist between counsel for the company and the advertising agency. 2001 WL 396522, at * 3. The rule of *BDO*, by contrast, is not based on any finding of an attorney-client relationship between counsel for BDO and the outside law firms with which they had communicated. Instead, the Seventh Circuit looked to the common legal interest shared between them. 492 F.3d 816. *Rexall* is therefore both factually inapposite and at odds with the law in this circuit.

With respect to the *de facto* or functional employee exception, Whirlpool respectfully submits that this Court adopted an overly restrictive view. Whirlpool outlined the "balanced approach" adopted by Magistrate Judge Keys in *Stafford Trading, Inc. v. Lovely*: that the attorney-client privilege should extend to instances where the independent contractor assists a lawyer in giving legal advice, or where the independent contractor's participation is necessary to enable the attorney to render legal advice, and protects confidential communications between a client's independent contractor and the client's attorney "for the purpose of obtaining or providing legal advice." No. 05 C 4868, 2007 WL 611252, at *6-7 (N.D. Ill. Feb. 22, 2007). The Court appeared to reject *Stafford* and other cases on which *Stafford* relied simply because they involved accountants and investment advisors. (Docket No. 333 at 10.) While *Stafford* involved an outside investment advisor, and other rulings on which *Stafford* relied dealt with accountants, nothing in the rulings was expressly or impliedly restricted to those types of outside contractors. And although Magistrate Judge Keys subsequently declined to find a common interest in a case involving communications with a marketing agency, *Flagstar Bank v. Freestar Bank,* that decision was based not on the nature of the outside contractor, but instead on the fact that the communication at issue was not shown to have been made for the rendition of legal advice or the protection of a legal interest. No. 09 C 1941, 2009 U.S. Dist. Lexis 76842, at *17 (N.D. Ill. Aug. 25, 2009).

Finally, this Court noted that the Seventh Circuit has not yet clarified the applicability or contours of a common interest exception in this circuit. (Docket No. 333 at 4.)

With this motion to stay, Whirlpool is simply asking that its attorney-client privilege be maintained until the Seventh Circuit addresses the issues presented by this case.

Separate from the merits, the Court should also consider the potential harm to Whirlpool if the order to produce is not stayed. The discussion in the previous section of this Brief, specifically the reasoning of the Ninth Circuit in *Napster* and the Third Circuit in *Ford*, demonstrates why Whirlpool will suffer irreparable harm if it is compelled to produce the documents at issue before it has a reasonable chance to obtain appellate review from the Seventh Circuit Court of Appeals. Once the documents at issue are produced, the privilege will have been compromised and the confidentiality of the documents forever lost. Even if appellate review is subsequently obtained, that review will have little meaning. While some have suggested that a party wishing to obtain effective appellate review can merely refuse to comply with a court's order to produce documents withheld on the basis of privilege, thereby incurring contempt sanctions that might themselves be appealable, this is not the way in which Whirlpool would voluntarily choose to conduct itself with respect to an order of a court, nor the way in which it would seem a court would want to encourage parties to proceed. A stay of the effect of the Court's order would be a far more logical solution. As the ABA stated in its *amicus* brief in *Mohawk*, "the costs that can result when review … must await a final judgment (or in many cases not occur at all) make these orders 'sufficiently important to overcome the policies militating against interlocutory appeals.'" (Br. *Amicus Curiae* of the ABA at 6 (quotation omitted).)

The third factor to consider in evaluating a request for stay is the adverse effect on the opposing party. A stay of the order to produce here would not have any substantial adverse affect on LG, or on the ongoing proceedings in this case. The Court has recently set the case for trial in April of 2010, more than five months from now. This Court and the parties should know well before that time what action the Seventh Circuit will take with respect to the privilege ruling.

Finally, there is the consideration of the public interest. The Supreme Court held in *Upjohn Co. v. United States* that the very purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients…[because] **sound legal advice or advocacy serves public ends** and…such advice or advocacy depends upon the lawyer's being fully informed by the client." 449 U.S. 383, 389 (1981) (emphasis added). In

*BDO*, the Seventh Circuit noted that "[o]pen communication assists lawyers in rendering legal advice, not only to represent their clients in ongoing litigation, but also to prevent litigation by advising clients to conform their conduct to the law and by addressing legal concerns that may inhibit clients from engaging in otherwise lawful and socially beneficial activities." 492 F.3d at 815. The attorney-client privilege is a critical protection that the public interest strongly favors protecting.

## CONCLUSION

This Court's order that 90 documents communicating legal advice be produced conclusively determines a disputed question that is both important and completely separate from the merits of the action, and would be effectively unreviewable on appeal from a final judgment. It is thus an immediately appealable collateral order, and Whirlpool intends to seek review from the Seventh Circuit Court of Appeals. The benefit of that review will be lost, however, if Whirlpool is forced to produce the documents in question before the review can be obtained. Whirlpool is not asking for a stay of all proceedings, but only a stay of the order directing production of the disputed documents. That stay will avoid irreparable harm to Whirlpool, will not substantially harm LG, and will serve the strong public interest in protecting the attorney-client privilege. Whirlpool therefore respectfully requests that the Court stay its October 13, 2009 Order directing that the documents at issue be produced by October 27 until the Seventh Circuit Court of Appeals decides Whirlpool's appeal or, alternatively, and if necessary, its contingent petition for a writ of mandamus.

Dated: October 22, 2009

Respectfully submitted,

WHIRLPOOL CORPORATION,
Defendant.


By:*/s/Brian D. Roche*
      One of its Attorneys

    Brian D. Roche
    Jennifer Yule DePriest
    Vanessa Martí Heftman
    REED SMITH LLP
    10 South Wacker Drive, Suite 4000
    Chicago, Illinois 60606
    312.207.1000

    J.A. Cragwall, Jr.
    John J. Bursch
    WARNER NORCROSS & JUDD LLP
    900 Fifth Third Center
    111 Lyon Street, N.W.
    Grand Rapids, Michigan 49503-2487
    616.752.2000

    Attorneys for Defendant, Whirlpool Corporation

## <u>CERTIFICATE OF SERVICE</u>

I, Brian D. Roche, an attorney, hereby certify that on October 22, 2009, I filed **Whirlpool Corporation's Brief In Support Of Motion To Stay Court's Order On Plaintiff's Motion To Compel Production Of Documents Listed On Defendant's Privilege Log** with the Clerk of the Court using the ECF system, which will send notification of such filing to the following individuals:

> Ronald Y. Rothstein
> rrothstein@winston.com
> Eric L. Broxterman
> ebroxterman@winston.com
> Bryna Joyce Roth Dahlin
> bdahlin@winston.com
> Winston & Strawn LLP
> 35 West Wacker Drive
> Chicago, IL 60601

*/s/ Brian D. Roche*

US_ACTIVE-102541611.1