IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC. | ) | |
| a subsidiary of LG Electronics, Inc., | ) | |
| a Korean company | ) | |
| | ) | Civil Action No.: 08 C 242 |
| Plaintiff, | ) | |
| | ) | Judge St. Eve |
| v. | ) | |
| | ) | Magistrate Judge Mason |
| WHIRLPOOL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**WHIRLPOOL CORPORATION'S MOTION FOR CLARIFICATION AND/OR
APPLICATION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b)**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .................................................................................................. 1

ARGUMENT ......................................................................................................... 3

I.     THE DOCTRINE OF LITERAL FALSITY BY NECESSARY
        IMPLICATION HAS NOT BEEN ADOPTED BY THE SEVENTH
        CIRCUIT, AND WOULD NOT BE APPLIED TO THIS CASE BY THOSE
        CIRCUITS THAT HAVE ADOPTED THE DOCTRINE............................................ 3

        A.     In The Seventh Circuit, And In Other Circuits That Have *Not*
              Adopted This Doctrine, Ambiguous Statements Cannot Be Literally
              False........................................................................................................... 3

        B.     The Literal Falsity By Necessary Implication Doctrine Also Requires
              That The Challenged Statement Be Unambiguous........................................... 6

        C.     Because Whirlpool's Advertising Is Ambiguous At Best, The Doctrine
              Of Literal Falsity By Necessary Implication Cannot Be Applied Here. .......... 7

        D.     This Court Should Reject The Doctrine Of Literal Falsity By
              Necessary Implication In Any Event.............................................................. 9

II.    WHIRLPOOL DID NOT WAIVE ITS ARGUMENT REGARDING THE
        LITERAL FALSITY BY NECESSARY IMPLICATION DOCTRINE...................... 9

        A.     Whirlpool's Conduct Was Reasonable. ....................................................... 10

        B.     LG Waived Its New Claim Of Literal Falsity By Necessary
              Implication................................................................................................ 11

III.   BECAUSE THE TERM "STEAM" HAS MORE THAN ONE MEANING,
        WHIRLPOOL'S USE OF THE TERM DOES NOT SUPPORT A LITERAL
        FALSITY CLAIM. ....................................................................................... 12

IV.   IF THE COURT ADOPTS THE LEGAL STANDARD FOR LITERAL
        FALSITY FOUND IN ITS SUMMARY JUDGMENT OPINION,
        WHIRLPOOL RESPECTFULLY REQUESTS THAT THE COURT
        CERTIFY THE FOLLOWING ISSUES TO THE SEVENTH CIRCUIT
        UNDER § 1292(B)....................................................................................... 14

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**Cases**

*Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992)............................................. 3, 4

*Ahrenholz v. Board of Trs. of Univ. of Ill.*, 219 F.3d 674 (7th Cir. 2000) .............................. 14, 15

*Allsup, Inc. v. Advantage 2000 Consultants Inc.*, 428 F.3d 1135 (8th Cir. 2005).......................... 4

*American Council of Certified Podiatric Physicians v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir. 1999)...................................................................................... 6

*Appraisers Coalition v. Appraisal Inst.*, No. 93 C 913, 1999 WL 89663 (N.D. Ill. Feb. 12, 1999) ............................................................................................................................................... 4

*Aussie Nads U.S. Corp. v. Sivan*,  41 F. App'x 977 (9th Cir. 2002)............................................. 7

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967 (7th Cir. 1999)..................... 3, 4, 13

*BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081 (7th Cir. 1994) ....................... 3, 4, 13

*City of Joliet v. Mid-City Nat'l Bank*, No. 05 C 6746, 2008 WL 4889038 (N.D. Ill. June 13, 2008), *aff'd*, 562 F.3d 830 (7th Cir. 2009) ................................................................................ 15

*Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317 (Fed. Cir. 2009) ..................................... 5

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24 (1st Cir. 2000) ......................................................................................................................................... 6, 7

*Coors Brewing Co. v. Anheuser-Busch Cos.*, 802 F. Supp. 965 (S.D.N.Y. 1992) ................ 12, 13

*Euro-Pro Operating LLC v. Euroflex Americas,* No. 08CV6231(HB), 2008 WL 5137060 (S.D.N.Y. Dec. 8, 2008)................................................................................................................ 13

*Gillette Co. v. Norelco Consumer Prods. Co.,* 69 F. Supp. 2d 246 (D. Mass 1999) .................... 13

*Hancock v. Potter*, 531 F.3d 474 (7th Cir. 2008) ....................................................................... 11

*Hickson Corp. v. Northern Crossarm Co.,* 357 F.3d 1256 (11th Cir. 2004) .................................. 4

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 27 F. Supp. 2d 1043 (N.D. Ill. 1998) .................................... 13

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813 (7th Cir. 1999) ..................................... 3, 4, 8, 13

*Houben v. Telular Corp.*, 231 F.3d 1066 (7th Cir. 2000) .............................................................. 6

*In re Century 21-RE/MAX Real Estate Advertising Claims Litigation,* 882 F. Supp. 915 (C.D. Cal. 1994)............................................................................................................................. 13

*In re Ocwen Fed. Bank*, No. 04 C 2714, MDL 1604, 2006 WL 1371458 (N.D. Ill. May 16, 2006), *aff'd*, 491 F.3d 638 (7th Cir. 2007) ............................................................. 15

*Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687 (6th Cir. 2003) ................................................................................................................................. 5

*Johnson & Johnson-Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294 (2d Cir. 1992)............................................................................................................ 4

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578 (3d Cir. 2002)........................................................................................................ 6

*Pebble Beach Co. v. Tour 18 I Ltd.*, 942 F. Supp. 1513 (S.D. Tex. 1996) ..................................... 5

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489 (5th Cir. 2000)................................... 5, 8

*Rexall Sundown, Inc. v. Perrigo Co.*, No. 07-CV-3397, 2009 WL 2891021 (E.D.N.Y. Sept. 10, 2009) ................................................................................................................... 6

*Scotts Co. v. United Indus. Corp.*, 315 F.3d 264 (4th Cir. 2002) ................................................. 7

*Shanahan v. City of Chicago*, 82 F.3d 776 (7th Cir. 1996) ........................................................ 11

*Sheridan Furniture, Inc. v. Kincaid Furniture Co.*, No. 3:98-CV-16-R, 1999 WL 33603128 (W.D. Ky. Nov. 24, 1999) ......................................................................................... 5, 6

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs.*, 86 F.3d 656 (7th Cir. 1996) ........................................................................................................................... 14

*Stephens v. CVS Pharmacy*, 2009 WL 1916402 (N.D. Ill. June 11, 2009) ........................... 11, 12

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007) ............................... 7, 8

*Warren v. Solo Cup Co.*, 516 F.3d 627 (7th Cir. 2008) ............................................................... 11

*Zoller Labs., LLC. v. NBTY, Inc.*, 111 F. App'x. 978 (10th Cir. 2004) ....................................... 7

**Statutes**

15 U.S.C. § 1125(a)(1)................................................................................................................. 9

**Other Authorities**

BLACK'S LAW DICTIONARY (8th ed. 2004) ................................................................................... 9

## INTRODUCTION

At the time Whirlpool filed its motion for summary judgment, LG based its Lanham Act claim on two theories of liability. LG asserted that Whirlpool's advertising for its steam dryer is literally false because Whirlpool's steam dryer does not create steam, and is impliedly false because it conveys the false impression that Whirlpool's steam dryer injects a hot vapor onto clothes. These two claims were the subject of Whirlpool's motion for summary judgment.

In a short discussion near the end of LG's response brief, LG injected a new falsity claim: that Whirlpool's steam advertisements "imply that consumers are receiving a dryer that creates and uses steam in a way conventional dryers do not." (Docket No. 278 at 22.) LG cited to a few cases from other circuits that allowed certain implied claims to be treated as literal claims under the doctrine of "literal falsity by necessary implication." LG did not report that this doctrine is not the law in this circuit. In advancing this argument, LG conflated the distinctions between literal and implied claims, and unambiguous and ambiguous claims—distinctions that are well-recognized in the law of this circuit. The Court appeared to accept LG's argument that the "literal falsity by necessary implication" doctrine both applied and precluded summary judgment on LG's claim of literal falsity. But the theory of "literal falsity by necessary implication" as argued by LG is not the law of this circuit. Nor would it be applied in this case even by the circuits which have adopted the theory, because even those courts require that the purported message be unambiguous. Here, the purported message that LG contends is necessarily implied by Whirlpool's advertising is ambiguous at best, and the determination of a message's ambiguity is a question of law for the Court.

In its reply brief, Whirlpool did not specifically address the inapplicability of the doctrine of literal falsity by necessary implication to this case. Whirlpool's failure to do so, however, is excusable under the circumstances. *First*, under Seventh Circuit law, LG's new claim is an **implied** claim, and since LG had not submitted any evidence that consumers actually took away this implied message, Whirlpool focused its reply brief instead on the literal and implied falsity claims that were in the case based on the pleadings, LG's discovery responses, and its expert's opinion. *Second*, as set forth in greater detail below, LG improperly raised this new claim for the first time in response to Whirlpool's summary judgment motion. By not asserting this theory until its response to Whirlpool's motion for summary judgment, LG has waived it. In hindsight, the better course may have been to point out that LG was introducing a new claim into the case

too late, and, though it did not expressly say so, that LG was asking the Court to apply a new legal rule not recognized in this circuit. But given the importance of these issues for the trial of this case, Whirlpool respectfully requests that the Court consider them on their merits.

There is another important point, closely related to the reasons why the theory of "literal falsity by necessary implication" cannot be applied in this case. The Court concluded that LG's literal falsity claim could only be resolved by a fact finder because of "the existence of competing definitions" of the word "steam," (Docket No. 324 at 13), thus appearing to allow the jury to determine **which** definition applies to the term "'steam,'" as well as whether Whirlpool meets that definition. While Whirlpool is mindful that the Court may be reluctant to clarify its decisions for fear of re-litigating issues previously considered, the summary judgment opinion effectively reverses the Court's ruling at the preliminary injunction stage, where the Court observed that "when a term is capable of multiple meanings, an advertisement is not literally false as long as the claim meets at least one of those definitions." (Docket No. 101 at 5; *see also* Docket No. 245 at 4.) An advertisement must be both unambiguous **and** false to be actionable as literally false under § 43 of the Lanham Act. By holding that ambiguity (because of multiple definitions) creates a question of fact as to literal falsity and literal falsity by necessary implication, the Court inadvertently contravened the rule that the Seventh Circuit and 11 other circuits have adopted—that ambiguous statements cannot provide the basis for a claim of literal falsity or literal falsity by necessary implication. Should the Court apply the rule that it recognized at the preliminary injunction phase, noted above, Whirlpool respectfully requests that the Court grant Whirlpool's motion for summary judgment with respect to LG's literal falsity claim, as it is undisputed that Whirlpool's steam dryers meet at least one definition of "steam."

Given the far-reaching implications of these issues for this case, Whirlpool respectfully requests that the Court clarify its order or certify the following two issues to the Seventh Circuit.

1. Should the Seventh Circuit recognize a claim for literal falsity by necessary implication?

2. Can an ambiguous advertising claim be the subject of a literal falsity claim?

**ARGUMENT**

I.   **THE DOCTRINE OF LITERAL FALSITY BY NECESSARY IMPLICATION HAS NOT BEEN ADOPTED BY THE SEVENTH CIRCUIT, AND WOULD NOT BE APPLIED TO THIS CASE BY THOSE CIRCUITS THAT HAVE ADOPTED THE DOCTRINE.**

While some circuits have recognized the doctrine of literal falsity by necessary implication and others have not, the circuits overwhelmingly agree that, **regardless**, an ambiguous statement cannot be literally false. That rule makes sense, for if a word has multiple, conflicting definitions, it is impossible for an advertisement to satisfy all of them simultaneously. Because each of the statements that LG challenges is ambiguous, and at least one of the meanings of each is true, LG cannot prevail on any literal falsity claim, including literal falsity by necessary implication. As Whirlpool argued, this was the Court's observation at the preliminary injunction stage, and it is a correct statement of the law.

A.   **In The Seventh Circuit, And In Other Circuits That Have *Not* Adopted This Doctrine, Ambiguous Statements Cannot Be Literally False.**

The Seventh Circuit has not adopted the literal falsity by necessary implication doctrine, nor has any district court within the Seventh Circuit. But the Seventh Circuit has repeatedly recognized two distinct categories of statements that violate the Lanham Act, with literally false statements falling on one side of the division, and ambiguous statements on the other. For example, in *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813 (7th Cir. 1999), the Seventh Circuit identified the two categories: "(1) commercial claims that are literally false as a factual matter" and "(2) claims that may be literally true or **ambiguous**, but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Id.* at 820 (emphasis added). The Seventh Circuit has long recognized this distinction. *See, e.g.*, *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971–72 (7th Cir. 1999) (putting statements that are "actually false" into one category and those that are "ambiguous" into another); *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1088–89 (7th Cir. 1994) (same); *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir. 1992) (same).

Under this framework, a plaintiff can show that an **un**ambiguous statement is literally false without resort to evidence of consumer confusion. *See, e.g.*, *Hot Wax*, 191 F.3d at 820 ("When the statement in question is actually false, the plaintiff need not show that the statement either actually deceived customers or was likely to do so."). But to show that an ambiguous

3

message violates the Lanham Act, a plaintiff must present proof of actual consumer confusion. *Id.* ("[W]hen the statement is . . . ambiguous, the plaintiff must prove that the statement is misleading in context by demonstrated actual consumer confusion."); *B. Sanfield, Inc.*, 168 F.3d at 971–72 (same); *BASF Corp.*, 41 F.3d at 1088–89 (same); *Abbott Labs.*, 971 F.2d at 13 (same). And the preferred method for proving "actual consumer confusion" is by survey evidence. *Johnson & Johnson-Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992) (implied falsity claims usually turn on consumer surveys).

A previous decision by Judge Nordberg of this Court has recognized that when a message conveys two possible meanings, one of which is true, the message cannot be literally false. In *Appraisers Coalition v. Appraisal Inst.*, No. 93 C 913, 1999 WL 89663 (N.D. Ill. Feb. 12, 1999), the Court addressed a literal falsity claim by a group of real-estate appraisers concerning advertisements by an organization that grants professional designations to appraisers. Judge Nordberg analyzed the challenged statement—"Now there are only two professional designations for appraisers"—and concluded it was ambiguous: "It could mean that as of 1991 the Appraisal Institute . . . had only two professional appraiser designations, which would be false given the existence of the RM, SRPA, and SREA designations, or it could mean that from 1991 on the Appraisal Institute would grant only two designations, which would be true." *Id.* at *4. Because the statements were "ambiguous," this Court concluded that "[n]one of these statements are literally false." *Id.*

A number of other circuits—the Fifth, Sixth, Eighth, Eleventh, and Federal Circuits—that have not adopted the doctrine of literal falsity by necessary implication all follow the same approach as the Seventh Circuit, and place ambiguous statements outside the literal falsity framework. *See, e.g.*, *Allsup, Inc. v. Advantage 2000 Consultants Inc.*, 428 F.3d 1135, 1138 (8th Cir. 2005) ("[A] statement is false if it is either 1) literally false, or 2) literally true or ambiguous, but renders a 'false impression' when viewed in context.") (citation omitted); *Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004) ("[T]he plaintiff [must] show that the statements at issue were either '(1) commercial claims that are literally false as a factual matter' or '(2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers.'").

Like the Seventh Circuit, these courts all require that Lanham Act claims based on ambiguous statements must be supported by evidence showing the statements actually misled

consumers. As the Fifth Circuit has explained, "when the statements of fact are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers," but "[o]n the other hand, if the statements at issue are . . . ambiguous . . . the plaintiff must present evidence of actual deception." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000). With ambiguous statements, "[t]he plaintiff may not rely on the judge or the jury to determine, 'based solely upon his or her own intuitive reaction, whether the advertisement is deceptive.' Instead, proof of actual deception requires proof that 'consumers were actually deceived by the defendant's ambiguous . . . statements.'" *Id.* (citation omitted); *see also Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1329 (Fed. Cir. 2009) ("A distinction exists between claims based on literally false statements, and claims based on statements that are ambiguous . . . . Thus, the distinction between a literally false statement and a materially misleading statement is important. A claim based on a materially misleading statement requires proof of actual consumer deception, while in the case of a claim based on a literally false statement the court presumes the existence of deception.") (citations omitted); *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 699 (6th Cir. 2003) ("Where statements are . . . too ambiguous to support a finding of literal falsity, a violation can only be established by proof of actual deception . . . . A plaintiff relying upon statements that are literally true yet misleading cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react.") (quotations omitted).

Like Judge Nordberg's decision in *Appraisers Coalition*, decisions by lower courts within these circuits have rejected literal falsity claims attacking ambiguous statements. For example, in *Pebble Beach Co. v. Tour 18 I Ltd.*, 942 F. Supp. 1513 (S.D. Tex. 1996), a plaintiff claimed that advertisements describing golf courses modeled after famous U.S. golf courses were literally false because the advertisements used "the words 'replica,' 'copy,' and 'simulation'" to "tell consumers that Tour 18's holes are exactly the same as the originals." *Id.* at 1562. The court rejected this argument, concluding that "[s]uch words are susceptible to varying interpretations and are therefore ambiguous" and noting that "ambiguity precludes a finding of literal falsity." *Id.* Similarly, in *Sheridan Furniture, Inc. v. Kincaid Furniture Co.*, No. 3:98-CV-16-R, 1999 WL 33603128 (W.D. Ky. Nov. 24, 1999), a furniture company advertised that its products were "solid cherry," even though "parts of the furniture contained other woods not disclosed on the hang-tags, advertisements, or promotional materials." *Id.* at *1. Although one of its competitors

claimed this description violated the Lanham Act by being literally false, the court concluded that the challenged statements were "ambiguous or literally true yet misleading" because the products did "contain cherry wood and those cherry wood parts are solid, as opposed to a veneer." *Id.* at \*4. Accordingly, the defendant company's "description of its furniture as exclusively 'solid cherry' [was] not literally false." *Id.*

The determination concerning whether a statement is ambiguous is a matter of law for the court, while the determination as to whether facts exist so as to justify the statement is a question of fact. *American Council of Certified Podiatric Physicians v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 615 n.2 (6th Cir. 1999). This rule makes sense "because determining what meaning(s) words facially convey requires no weighing of evidence," as is illustrated by the familiar rules of contract interpretation. *Id.*; *see also Rexall Sundown, Inc. v. Perrigo Co.*, No. 07-CV-3397, 2009 WL 2891021, at \*21 (E.D.N.Y. Sept. 10, 2009) ("The question of whether an advertising claim is susceptible to more than one reasonable interpretation is a question of law for the court to resolve, similar to the question of whether the terms of a contract are unambiguous."); *cf. Houben v. Telular Corp.*, 231 F.3d 1066, 1072 (7th Cir. 2000) ("We begin with the well-accepted principle that when contract construction is at issue, the question whether contractual terms are ambiguous or not is a question of law for the court to decide."); *but see Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 34–35 (1st Cir. 2000) (interpretation of message not to be resolved on motion to dismiss).

## B. The Literal Falsity By Necessary Implication Doctrine Also Requires That The Challenged Statement Be Unambiguous.

Six other circuits—the First, Second, Third, Fourth, Ninth, and Tenth Circuits—have accepted the literal falsity by necessary implication doctrine. But all six of these circuits have likewise held that an ambiguous statement **cannot** be considered literally false by necessary implication. *See, e.g.*, *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586–87 (3d Cir. 2002) ("A 'literally false' message may be either explicit or 'conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.' Regardless, only an **unambiguous** message can be literally false.") (citations omitted). In the words of the Tenth Circuit, it is "the correct and well-established legal standard that a literally-

false-by-necessary-implication claim must fail if the statement can reasonably be understood as conveying different messages." *Zoller Labs., LLC. v. NBTY, Inc.*, 111 F. App'x. 978, 983–84 (10th Cir. 2004); *see also Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 275 (4th Cir. 2002) ("Because the graphic can reasonably be understood as conveying different messages, Scotts' literal falsity argument must fail."); *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) ("[We] now formally adopt what is known in other circuits as the 'false by necessary implication' doctrine. . . . However, 'only an **unambiguous** message can be literally false.' Therefore, if the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false.") (citations omitted); *Aussie Nads U.S. Corp. v. Sivan*, 41 F. App'x 977, 978 (9th Cir. 2002) (addressing the literal falsity by necessary implication doctrine and concluding that "[g]iven [an] ambiguity, the doctrine of literal falsity is inapplicable"); *see also Clorox Co.*, 228 F.3d at 34–35 (message with several plausible meanings cannot serve as the basis of a literal-falsity claim).

In sum, just as under the ordinary literal falsity doctrine, these courts too require proof of consumer confusion with respect to ambiguous claims. As the Second Circuit put it, to resolve a claim based on an ambiguous message, "the district court must look to consumer data to determine what 'the person to whom the advertisement is addressed find[s] to be the message." *Time Warner Cable*, 497 F.3d at 158. "[W]here the advertisement does not unambiguously make a claim, 'the court's reaction is at best not determinative and at worst irrelevant.'" *Id.*

### C. Because Whirlpool's Advertising Is Ambiguous At Best, The Doctrine Of Literal Falsity By Necessary Implication Cannot Be Applied Here.

As the foregoing demonstrates, if Whirlpool's advertising is ambiguous, then the doctrine of literal falsity by necessary implication cannot be applied. The statements LG challenges as false by necessary implication are susceptible of more than one interpretation. Therefore, the theory of falsity by necessary implication is inapplicable.

LG asserted in its summary judgment response brief that "Whirlpool's advertising of its dryers as steam dryers necessarily implies the unambiguous message that its dryers create and use steam whereas conventional dryers do not" and that this "unambiguous message" is false by necessary implication. (Docket No. 278 at 21.) But as Whirlpool pointed out in reply, the advertising of its dryers as innovative actually refers to a different message—that its steam dryers deliver the refreshing benefits of steam to clothing that is already dry:

> In any event, Whirlpool's steam dryer and a conventional dryer are very different. Unlike a traditional dryer, a steam dryer has an independent "steam cycle" that actually **delivers steam to dry clothes** (via water that vaporizes in the heated drum) to relax wrinkles and reduce odors. (D. No. 247, Defendant's SOF ¶5.) A traditional dryer lacks such a cycle, and it is incapable of delivering steam in the drum to dry clothing.

(Docket No. 298 at 3.)

This message, which truthfully describes part of the innovative nature of Whirlpool's steam dryers, is at the very least a plausible inference to draw from Whirlpool's advertisements. LG's asserted message is therefore not "necessarily implied," and LG cannot rely on the theory of literal falsity by necessary implication. It must instead convince a jury that its asserted message is implied **to consumers**, and that the message is misleading. *See Time Warner Cable*, 497 F.3d at 158; *see also Pizza Hut*, 227 F.3d at 497. Put another way, if a particular statement or message is ambiguous, it is not "necessarily" implied, and that means that the plaintiff needs to prove that actual consumers received the supposedly implied message and were in fact deceived by it. *Hot Wax*, 191 F.3d at 820 ("[W]hen the statement is . . . ambiguous, the plaintiff must prove that the statement is misleading in context by demonstrated actual consumer confusion."). Because Whirlpool's advertising can convey different messages, any one message is not "necessarily implied," and LG cannot prevail on its literal falsity claim under this theory.

This well-established rule that only an unambiguous message can be literally false does not leave a plaintiff without recourse. A plaintiff can still attempt to prove that an advertisement with an ambiguous or implied message is misleading by presenting evidence of "demonstrated actual consumer confusion." *Id.* LG has attempted to do just that with regard to the statements about the meaning of the word "steam," by conducting a survey on that issue. But LG has not submitted any extrinsic evidence that consumers understood that Whirlpool's "dryers create and use steam whereas conventional dryers do not" (as LG contended when it raised this argument for the first time in its summary judgment response), as opposed to creating steam (within the ordinary sense of the term) in a dryer for clothes that were **already** dry. LG should not be permitted to bypass this requirement of "demonstrat[ing] consumer confusion" by claiming the literal falsity by necessary implication doctrine applies to Whirlpool's statements.

8

**D.     This Court Should Reject The Doctrine Of Literal Falsity By Necessary Implication In Any Event.**

As the foregoing demonstrates, the fact that Whirlpool's statements are subject to more than one interpretation means they cannot, as a matter of law, be subject to a literal falsity claim, whether under the traditional doctrine or under the literal falsity by necessary implication variant. This Court should also reject the necessary implication variant.

*First*, the doctrine is self-contradictory. Black's Law Dictionary defines "literal" as meaning "[a]ccording to expressed language," while defining "implied" to mean "[n]ot directly expressed." BLACK'S LAW DICTIONARY 951 & 770 (8th ed. 2004). Thus the doctrine is an attempt to find the "expressed language" of a statement to be false because of a meaning that was "[n]ot directly expressed." *Id.* The fact that the doctrine cannot be stated without contradicting itself is a good indication that the doctrine is seriously flawed.

*Second*, there is no basis for the doctrine in the text of the Lanham Act. Section 43(a)(1) of the Act prohibits any "false or misleading" description or representation of fact. 15 U.S.C. § 1125(a)(1). This language identifies two disjunctive categories of statements: those that are "false" and those that are "misleading." Statements that are literally true or ambiguous fall naturally within the "misleading" category, for they may convey a false impression in a given context. The statute simply does not create the conflated category that LG advances.

*Finally*, all 12 of the circuits cited above agree that determining falsity with respect to implied statements requires proof that actual consumers were deceived. Yet the literally false by necessary implication doctrine undermines this proof requirement by allowing a judge or jury to substitute its interpretation, if it thinks a statement is "necessarily" implied, for evidence of actual consumer deception. The natural result of this doctrine will be for plaintiffs to avoid proving consumer deception by portraying ambiguities in messages as statements that are necessarily implied. For all these reasons, this Court should reject the necessary implication doctrine.

**II.     WHIRLPOOL DID NOT WAIVE ITS ARGUMENT REGARDING THE LITERAL FALSITY BY NECESSARY IMPLICATION DOCTRINE.**

At the time Whirlpool filed its motion for summary judgment, LG's literal falsity claim was that Whirlpool's advertising for its steam dryer was false because Whirlpool's steam dryer does not create steam. LG's implied falsity claim was that Whirlpool's advertising conveyed the

false impression that its steam dryer injects a hot vapor on to clothes.[1]

In response to Whirlpool's motion for summary judgment, LG raised **for the first time in this lawsuit**, and not until page 21 of its 25-page brief, a new claim of falsity. LG asserted that "Whirlpool's advertising of its dryers as steam dryers necessarily implies the unambiguous message that its dryers create and use steam whereas conventional dryers do not." LG never previously pled this theory of liability, nor did it disclose it or the purported new implied "unambiguous message" in LG's discovery responses or its survey expert's report.[2]

Though the Court is correct that Whirlpool did not directly address in its reply brief the viability of LG's brand new theory under Seventh Circuit law, Whirlpool's conduct does not amount to a waiver for two reasons. First, Whirlpool's failure to address specifically LG's new theory was reasonable and excusable under the circumstances. And second, LG itself waived its new theory by not disclosing it earlier than its summary judgment response.

### A.     Whirlpool's Conduct Was Reasonable.

The doctrine of falsity by necessary implication is not recognized by the Seventh Circuit, and, in fact, conflicts with this circuit's law setting forth the elements of claims for literal and implied falsity. In its response, LG never directly asked the Court to adopt this doctrine for this case. Rather, when LG set forth the governing law for Section 43(a) claims, it cited existing Seventh Circuit law which distinguishes between claims that are literally false as a factual matter, and those that are literally true or ambiguous, but which implicitly convey a false impression. (Docket No. 278 at 8.) In that section, LG made no mention of the theory of literal falsity by necessary implication which allows **implied** claims to be treated as **literal** claims. It is

---

[1]   In both its original and amended complaints, LG identified the **express** claims in Whirlpool's steam advertising that it contended were false. (*See, e.g.*, Docket No. 116, ¶¶ 21–25, 29–31, 35–36.) Through its survey expert, LG identified only one **implied** message purportedly conveyed to consumers in this case: that Whirlpool's advertising conveys the message that Whirlpool's steam dryers **inject** a hot vapor onto clothes (as opposed to introducing steam into the dryer some other way, which is what Whirlpool's steam dryers do). (Docket No. 247-2 at Ex. 36, pp. 1, 19.)

[2]   In responses to Whirlpool's interrogatories seeking identification of all purportedly false statements and the bases for them, LG simply identified the express "steam" claims in Whirlpool's advertising and claimed as the basis for literal falsity that the "[p]roduct does not create steam under any common and ordinary definition of the word within the context of washer and dryer systems", and as the basis for implied falsity that "[t]he mist system in the Duet 'Steam' Dryer is not understood by consumers to be steam." LG stated that further bases under each theory would "also be the subject of Rule 26(a)(2) disclosures." (Docket No. 282 at Ex. 9, No. 2.) LG undisputedly never identified in its discovery responses or in any expert report the implied "unambiguous message" it speculates is associated with Whirlpool's use of "steam" in its advertising.

not until page 21 of its brief that LG mentions this new claim for the first time. And there, in a brief discussion, LG does not point out to the Court that this theory is not recognized by this circuit.

In its argument, LG identified this new claim as an implied claim. (*See* Docket No. 278 at 21–22 (stating "Whirlpool's advertising . . . implies the unambiguous message . . ." and "Whirlpool's 'steam' claims necessarily imply that consumers . . .").) In its reply, Whirlpool focused on the sole implied claim that LG identified in its expert report. Whirlpool did not address whether this implied claim should be treated as an express claim under the doctrine of literal falsity by necessary implication because that is not the law in this circuit, and LG did not assert it was, or argue that the law should be extended to this new theory. Though perhaps it could have done so more directly, Whirlpool did controvert LG's assertion that its alleged false message was necessarily implied, by pointing out that the innovation of steam dryers is that they introduce moisture to refresh clothes that are already dry, a function conventional dryers lack. (Docket No. 298 at 3.)[3]

## B.     LG Waived Its New Claim Of Literal Falsity By Necessary Implication.

By not asserting this new theory of liability until its response to Whirlpool's motion for summary judgment, **LG** has waived it. *See Warren v. Solo Cup Co.*, 516 F.3d 627, 629 n.3 (7th Cir. 2008) (claim not set forth in complaint cannot be raised for first time in response to motion for summary judgment); *Hancock v. Potter*, 531 F.3d 474, 480 (7th Cir. 2008) (refusing to address on appeal claim raised for first time in opposition to summary judgment motion); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); *Stephens v. CVS Pharmacy*, 2009 WL 1916402, at *1 n.3 (N.D. Ill. June 11, 2009) (refusing to

---

[3] In its Memorandum Opinion and Order, the Court stated that "[r]ather than address this argument, Whirlpool contends in its Reply that LG raises a new claim not previously identified in its interrogatory responses" and further found that "the language of the interrogatory and response to which Whirlpool points does not preclude this sub-theory of literal falsity." It appears that the Court was referring to Whirlpool's argument in its reply brief that LG's new literal falsity argument on "steam imagery" is irrelevant and not timely. (*See* Docket No. 324 at 13 n.5 (citing R. 297-1, at 6).) There, Whirlpool was responding to LG's argument that "the jury can look to Whirlpool's own advertisements to see that mere evaporation is not steam, as the advertisements are replete with steam imagery—hot, white puffs of visible vapor infusing clothing." (Docket No. 279 at 18 & n.9.) The discovery responses that Whirlpool cited and to which the Court likely referred reference LG's definition of lay steam as water vapor condensing "to form hot billowy white moisture." (Docket No. 247 at Ex. 35, pp. 5-6.)

consider claims raised for first time in summary judgment opposition).

Because LG waived its new theory of liability, the Court need not address the applicability of the doctrine of literal falsity by necessary implication in the Seventh Circuit and to the facts of this case. To the extent that Whirlpool should have more directly pointed out that LG waived its brand new theory or pointed out to the Court what LG did not—that the Seventh Circuit has not recognized this theory—Whirlpool respectfully requests that the Court exercise its discretion and consider Whirlpool's waiver argument. To the extent it finds that LG has **not** waived pursuing this theory, Whirlpool requests that the Court consider Whirlpool's argument regarding the inapplicability of the doctrine in the Seventh Circuit, as this issue was not joined in the summary judgment briefing. Indeed, deciding this issue now will streamline the pretrial process and issues for trial. If the doctrine is inapplicable here, the parties (and the Court) need not engage in a battle of jury instructions and/or additional motion practice on this issue.

## III. BECAUSE THE TERM "STEAM" HAS MORE THAN ONE MEANING, WHIRLPOOL'S USE OF THE TERM DOES NOT SUPPORT A LITERAL FALSITY CLAIM.

Whirlpool briefly addresses an issue that flows naturally from the foregoing discussion of the authorities on literal falsity. Twelve circuits, including the Seventh, hold that an ambiguous message, *i.e.*, a message conveying two meanings, one of which is true and one of which may not be, cannot be challenged as "literally false." Because of this, even the literal falsity claim that LG actually pleaded in this case fails as well. As LG acknowledged in its briefing, there is more than one possible definition of the word "steam." (Docket No. 278 at 2.) And as this Court recognized, one of the Merriam-Webster's Collegiate Dictionary definitions is "vapor arising from a heated substance" (*see* Docket No. 101 at 5), a definition that LG concedes is found in the dictionary. (Docket No. 278 at 16.)

Nevertheless, LG asserts without support that "the meaning [of steam] is unquestionably neither intended, nor understood, to mean merely the evaporation of water off wet clothes." (*Id.*) LG claims, again without support, that "steam" is created only when there is "boiled water that is vaporized and then injected as visible steam condensing onto clothes." (*Id.* at 6–7.)

But because a consumer could interpret "steam" according to either the dictionary definition proffered by Whirlpool, or the narrative advanced by LG, it is an ambiguous term. When a statement is ambiguous, such as having several different definitions that could apply to a challenged statement, the statement cannot be literally false. In *Coors Brewing Co. v. Anheuser-*

12

*Busch Cos.*, 802 F. Supp. 965 (S.D.N.Y. 1992), the plaintiff defined the word "concentrate" narrowly as "a substance from which water has been removed," but the defendant offered "another, equally plausible definition of 'concentrate,' namely, 'a concentrated substance' or 'concentrated form of something.'" *Id.* at 969. The district court concluded that "[b]ecause the term 'concentrate' is equally open to either party's definition, defendant's advertising claim that Coors Light is made from concentrate is ambiguous at most," and "[t]herefore, the commercial's reference to concentrate is not literally false." *Id.*[4]

       This Court correctly observed in its preliminary injunction opinion that "[a]lthough the parties dispute the point, it appears that when a term is capable of multiple meanings, an advertisement is not literally false as long as the claim meets at least one of those definitions" (Docket No. 101 at 5 (citing *Coors*)). But the Court's most recent order instead cited *Hot Wax, Inc. v. Turtle Wax, Inc.*, 27 F. Supp. 2d 1043 (N.D. Ill. 1998), for the proposition that "given the existence of competing definitions, the Court cannot find as a matter of law that Whirlpool meets the definition of 'steam.'" (Docket No. 324 at 13.) In *Hot Wax*, the district court denied both parties' motions for summary judgment on literal falsity, but granted the defendant's motion on grounds of laches. The Seventh Circuit had no occasion to address on appeal the correctness of the ruling below on the defendant's literal falsity motion, though it did note the distinction between literally false and ambiguous claims, noting that the latter category requires proof of actual consumer confusion. *Hot Wax,* 191 F.3d 813, 820. Whirlpool respectfully suggests that had the district court in *Hot Wax* considered the Seventh Circuit's clear pronouncements that ambiguous statements cannot be literally false, it would have reached a different conclusion on defendant's literal falsity motion. *See, e.g.*, *B. Sanfield*, 168 F.3d at 971–72; *BASF Corp.*, 41 F.3d at 1088–89. The fact that the defendant's advertising satisfied at least one definition should have been dispositive.

       Here, the parties do not dispute that Whirlpool's dryers meet at least one definition of "steam" (note that LG has argued that Merriam-Webster's definition of "steam" is too broad, not

---

[4] *Accord, e.g., Euro-Pro Operating LLC v. Euroflex Americas*, No. 08CV6231(HB), 2008 WL 5137060, at *7 (S.D.N.Y. Dec. 8, 2008) (denying preliminary injunction because "general claims that the product can 'sanitize' are susceptible to more than one reasonable interpretation and thus cannot be literally false"); *In re Century 21-RE/MAX Real Estate Advertising Claims Litigation*, 882 F. Supp. 915, 923 (C.D. Cal. 1994) ("the phrase 'Highest level of customer satisfaction' is too ambiguous to be considered literally false"); *Gillette Co. v. Norelco Consumer Prods. Co.*, 69 F. Supp. 2d 246, 249-50 (D. Mass. 1999) (rejecting literal falsity claim because "irritation" was an ambiguous term).

that Whirlpool's dryers do not meet that definition). (Docket No. 278 at 16–17; *see also* Docket No. 247 at Ex. 43, pp. 147:19–148:2 (LG's expert agreeing that "if steam is defined as vaporizing [*sic*: should be "vapor rising"] from a heated surface . . . without more, that exists in the Whirlpool dryer drum").) Therefore, as a matter of law, Whirlpool's advertisements about "steam" cannot be literally false, and the Court should enter summary judgment in Whirlpool's favor on LG's claims of literal falsity. At a minimum, the Court should allow a jury instruction explaining that if Whirlpool's advertising satisfies at least one definition of the word "steam," then Whirlpool cannot be liable for literally false advertising.

## IV.    IF THE COURT ADOPTS THE LEGAL STANDARD FOR LITERAL FALSITY FOUND IN ITS SUMMARY JUDGMENT OPINION, WHIRLPOOL RESPECTFULLY REQUESTS THAT THE COURT CERTIFY THE FOLLOWING ISSUES TO THE SEVENTH CIRCUIT UNDER § 1292(B).

If this Court should decline to clarify its ruling on the issues discussed above and intends to extend the literal falsity doctrine beyond the scope identified in Seventh Circuit precedents, Whirlpool respectfully asks, in the alternative, that this Court certify the following questions to the Seventh Circuit:

1. Should the Seventh Circuit recognize a claim for literal falsity by necessary implication?

2. Can an ambiguous advertising claim be the subject of a literal falsity claim?

For certification to be appropriate under 28 U.S.C. § 1292(b), "there must be a question of **law**, it must be **controlling**, it must be **contestable**, and its resolution must promise to **speed up** the litigation. *Ahrenholz v. Board of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). Each of these criteria is satisfied here. *First*, an issue presents a question of law if it presents a pure legal question that the court of appeals can resolve quickly without delving into factual issues or studying the record. *Id.* at 676–77. Determining whether an ambiguous statement can be literally false and whether the Court should adopt the literal falsity by necessary implication doctrine are pure questions of law, unaffected by any factual issues.

*Second*, "[a] question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs.*, 86 F.3d 656, 659 (7th Cir. 1996). Here, resolving the validity of finding an ambiguous statement literally false would resolve a count in the complaint, and determining what type of proof the parties must put on and what theories are

viable will necessarily affect jury instructions, the evidence presented at trial, and the like.

*Third*, a decision is contestable "if there is a 'difficult central question of law which is not settled by controlling authority,' and a 'substantial likelihood' exists that the district court's ruling will be reversed on appeal." *City of Joliet v. Mid-City Nat'l Bank*, No. 05 C 6746, 2008 WL 4889038, at *2 (N.D. Ill. June 13, 2008) (quoting *In re Brand Name Prescription Drugs Antitrust Litig.*, 878 F. Supp. 1078, 1081 (N.D. Ill. 1995)), *aff'd*, 562 F.3d 830 (7th Cir. 2009). While Whirlpool believes that the Seventh Circuit's decisions in *Hot Wax*, *B. Sanfield*, *BASF*, and *Abbott Laboratories* (not to mention the decisions of the 11 other circuits) demonstrate that ambiguous statements cannot be literally false, the Seventh Circuit has not accepted or rejected the literal falsity by necessary implication doctrine.

*Fourth*, resolving these issues will "promise to **speed up** the litigation." *Ahrenholz*, 219 F.3d at 675. If the Seventh Circuit agrees that unambiguous statements cannot be literally false, then a reversal would lead to the dismissal of the literal falsity count, and dismissing counts from the complaint will speed up the litigation. *See, e.g., In re Ocwen Fed. Bank*, No. 04 C 2714, MDL 1604, 2006 WL 1371458, at *3 (N.D. Ill. May 16, 2006), *aff'd*, 491 F.3d 638 (7th Cir. 2007). Moreover, if LG is relieved of its burden to provide extrinsic evidence of an implied message and of consumer confusion and if it prevails on its literal falsity claim, a reversal after final judgment may require conducting a second trial to consider the new evidence. Avoiding a new trial would speed up the ultimate resolution of the litigation.

## CONCLUSION

For the foregoing reasons, Whirlpool respectfully asks this Court to clarify the issues identified above and grant Whirlpool summary judgment as to LG's literal-falsity claims, or, alternatively, to certify those issues to the Seventh Circuit under 28 U.S.C. § 1292(b).

Dated:  October 23, 2009

<div style="margin-left:40%">

Respectfully submitted,

WHIRLPOOL CORPORATION,
Defendant.

By:*/s/Brian D. Roche*                    
            One of its Attorneys

</div>

Brian D. Roche
Jennifer Yule DePriest
Vanessa Martí Heftman
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
312.207.1000
broche@reedsmith.com

J.A. Cragwall, Jr.
John J. Bursch
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, Michigan 49503-2487
616.752.2000

Attorneys for Defendant, Whirlpool Corporation

## <u>CERTIFICATE OF SERVICE</u>

  I, Brian D. Roche, an attorney, hereby certify that on October 23, 2009, I filed **WHIRLPOOL CORPORATION'S MOTION FOR CLARIFICATION AND/OR APPLICATION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b)** with the Clerk of the Court using the ECF system, which will send notification of such filing to the following individuals:

    Ronald Y. Rothstein
    rrothstein@winston.com
    Eric L. Broxterman
    ebroxterman@winston.com
    Bryna Joyce Roth Dahlin
    bdahlin@winston.com
    Winston & Strawn LLP
    35 West Wacker Drive
    Chicago, IL 60601

    */s/ Brian D. Roche*