# United States District Court, Northern District of Illinois

| **Name of Assigned Judge or Magistrate Judge** | Amy J. St. Eve | **Sitting Judge if Other than Assigned Judge** | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 242 | **DATE** | 7/22/2010 |
| **CASE TITLE** | LG Electronics vs. Whirlpool Corp. | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion to exclude survey evidence and the expert report of Whirlpool's expert Dr. Ravi Dhar [377] is denied.

■[ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

Plaintiff LG Electronics U.S.A., Inc. ("LG") has filed a motion to exclude the opinions and testimony of Dr. Ravi Dhar, Defendant Whirlpool Corporation's ("Whirlpool") expert. For the reasons set forth in detail below, the Court denies the Motion.

### LEGAL STANDARD

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Rule 702 provides, in relevant part, that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact[,] . . . a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion. . . ." *Id.* "It also requires that: (1) the testimony must be based upon sufficient facts or data; (2) it must be the product of reliable principles and methods; and (3) the witness must have applied the principles and methods reliably to the facts of the case." *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010).

Continued...

| | Courtroom Deputy Initials: | KF |
|---|---|---|

Under the expert-testimony framework, courts perform the gatekeeping function of determining prior to admission whether the expert testimony is both relevant and reliable. *See id.*; *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) ("To determine reliability, the court should consider the proposed expert's full range of experience and training, as well as the methodology used to arrive [at] a particular conclusion."). In doing so, courts employ a three-step analysis: "[T]he witness must be qualified as an expert by knowledge, skill, experience, training, or education[;] the expert's reasoning or methodology underlying the testimony must be scientifically reliable; and the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007) (internal quotations and citations omitted); *see also Pansier*, 576 F.3d at 737. As the Seventh Circuit instructs, "'[t]he focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate.'" *Winters v. Fru-Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2007) (quoting *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002)). "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167 (1999)).

## BACKGROUND

LG sued Whirlpool for false advertising in violation of Section 43(a) the Lanham Act, 15 U.S.C. § 1125(a), regarding its steam dryers. LG asserts both literal and implied falsity theories under the Lanham Act. The thrust of LG's claim is that Whirlpool uses the word "steam" in its ads and in the name of its Duet® Steam Dryer, and that such use is literally false and misleading because the Duet® Steam Dryer does not truly use steam, but instead uses a mist of cold water sprayed into a warm dryer drum.

Trial is scheduled to commence in this case on October 4, 2010. In anticipation of trial, LG challenges the admissibility of certain portions of Dr. Dhar's proposed expert testimony pursuant to Rules 402 and 702 of the Federal Rules of Evidence and *Daubert*.

## ANALYSIS

LG has moved to exclude the opinions and survey evidence of Dr. Ravi Dhar, Whirlpool's expert. Plaintiff argues that Dr. Dhar's opinions are not relevant to any issue before the Court, that he is opining on issues outside of his expertise, and that survey evidence is not appropriate to rebut materiality. The Court disagrees.

### I. Dr. Dhar's Background and Opinions

Whirlpool disclosed Dr. Dhar as an expert witness on the materiality of LG's implied falsity claims. Dr. Dhar opines on the materiality of claims that the Whirlpool dryer injects hot vapor onto clothes.

#### A. Background

Dr. Dhar is the George Rogers Clark Professor of Management and Marketing and the Director of the Yale Center for Customer Insights at the Yale University School of Management. He is also the Director of the Yale Center for Customer Insights at the School of Management at Yale University. At Yale, he teaches two doctoral courses that examine advanced research topics in the area of consumer behavior, judgment and decision-making.

Dr. Dhar's field of expertise is in consumer behavior and consumer psychology, branding, marketing management, and marketing strategy. He consults – mostly with large corporations – on questions of branding and questions of consumer behavior. In connection with this consulting work, Dr. Dhar has conducted,

supervised, or evaluated more than a hundred surveys as well as analyzed questions relating to different aspects of consumer behavior. As part of his research, he tests for consumer purchase intent and focuses on the impact manipulating different variables has on consumer purchasing decisions.

In addition, Dr. Dhar has published over 50 articles, including publications in the leading marketing, psychology and management journals. The journals include, among others, the *Harvard Business Review*, *Journal of Behavioral Decision Making*, *Journal of Business*, *Journal of Consumer Psychology*, *Journal of Consumer Research*, *Journal of Marketing Research*, and *Journal of Personality and Social Psychology*. He serves on the editorial board of *Journal of Consumer Research*, *Journal of Consumer Psychology*, *Journal of Marketing*, *Journal of Marketing Research and Marketing Letters*.

Dr. Dhar has a Ph.D. and M.S. in Business Administration from the University of California at Berkeley. His doctoral dissertation was in the area of consumer decision-making.

### B. Dr. Dhar's Opinion

Whirlpool disclosed Dr. Dhar as an expert to rebut the opinions of LG's expert, Robert N. Reitter. Dr. Dhar designed and conducted a consumer perception survey to assess whether the implied claim that the Whirlpool Duet® Steam Dryer injects hot vapor onto clothes had any impact on consumers' decisions to purchase the Whirlpool Duet® Steam Dryer. Based on his education, background, professional experience, and the survey he conducted, Dr. Dhar opined that "even if one assumes that a majority of the consumers were taking away a claim that the Whirlpool Dryer injects hot vapor onto clothes as R. Reitter concludes, my survey shows no statistical difference in the intent to purchase as well as in product quality in comparison to a control ad that explicitly added the language stating that a mist of water is injected and is heated after it is sprayed into the dryer drum."

## II. Dr. Dhar's Testimony is Relevant and Will be Helpful to the Jury

LG challenges both the relevance and helpfulness of Dr. Dhar's testimony. Indeed, "*Daubert* instructs that expert testimony must be relevant and factually linked to the case in order to meet Rule 702's 'helpfulness' requirement." *United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007) (citing *Daubert*, 509 U.S. at 591). Further, expert testimony is inadmissible if it covers irrelevant issues. *See United States v. Fuller*, 387 F.3d 643, 648 (7th Cir. 2004).

### A. Materiality Is An Element of An Implied Falsity Claim

In order to establish a claim under the Lanham Act, "the plaintiff must show that the defendant (1) made a false or misleading statement, (2) that actually deceives or is likely to deceive a substantial segment of the advertisement's audience, (3) on a subject material to the decision to purchase the goods, (4) touting goods entering interstate commerce, (5) and that results in actual or probable injury to the plaintiff." *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999). The implied falsity doctrine applies where the advertising is either literally true or ambiguous. Where a statement or claim is literally true or ambiguous, a plaintiff must prove that the statement "implicitly convey[s] a false impression, [is] misleading in context, or likely to deceive consumers." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999); *see also B. Sanfield*, 168 F.3d at 971 (plaintiff must show that statement is "misleading in context, as demonstrated by actual consumer confusion") (quoting *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1089 (7th Cir. 1994)). In other words, "[a] statement is misleading when, although literally true, it implies something that is false." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir. 1992). Materiality is an element of an implied falsity claim. "A claim is considered material if it 'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding a product.'" *Kraft, Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992).

Dr. Dhar's opinions go to the materiality prong of LG's implied falsity claim. The parties dispute the

appropriate standard for materiality under an implied falsity theory. In its motion, LG contends that Whirlpool's advertisements are ambiguous (not literally true) and misleading because "they convey the message that the Whirlpool Dryer creates and uses steam when it fact it does not." Under this theory, LG claims that the materiality standard for its implied falsity claims is the same as for its literal falsity claims – whether consumers are influenced from the advertisements representing that the dryers have steam based on the consumer's perception of what steam is (*i.e.* – vapor evaporation or hot steam). Whirlpool, however, claims that based on the way LG has pursued its claims, the relevant inquiry for the materiality standard is **how** steam is created, not **whether** steam is created. Given the opinions offered by LG's expert – Reitter – Dr. Dhar's opinions are relevant and proper rebuttal.

### B. Mr. Reitter's Opinions

LG is pursuing both a literal falsity and an implied falsity claim in this case. As described in detail in a prior ruling, Reitter is a Senior Vice President of the consultancy Guideline who has designed and supervised over five hundred consumer surveys in the areas of trademark, trade dress, advertising perception, and advertising claim substantiation. He conducted a study in this case for LG. Mr. Reitter's study examines a commercial for Whirlpool's Duet® Steam Washer and Dryer, entitled, *New Way to Care for Clothes* (the "test commercial"). "The purpose of the study is to learn to what extent if any relevant consumers take away from this test commercial the impression that the Duet® Steam Dryer uses steam; taking away that it injects a hot vapor onto clothes, and not that it injects a mist of cold water that is heated after it is sprayed into the drum." (R. 379-1, Ex. G., Reitter Report at 1.) He concluded based on the results of his study that a "clear majority of the relevant consumers (66%) who were shown a test commercial for the Duet® Washer and Dryer rejected the notion that the dryer injects a mist of cold water that is then heated by the normal heating action of the dryer." (*Id.* at 2.)

In a subsequent affidavit, Mr. Reitter noted the following regarding his study:

> The pattern of affirmative answers among test group respondents reflects a recognition that the description with the words 'hot vapor' accurately described the dryer advertised in the test commercial, while the description with the words 'mist of cold water' did not do so. ..... . (¶ 19.)

Reitter also averred that:

> [The] test commercial misleads consumers into thinking that the Whirlpool Duet Steam dryer utilizes steam to remove wrinkles and odors from clothing, as well as into thinking that it injects a hot vapor onto clothes inside the dryer drum, an idea that is completely consistent with the ordinary meaning of 'steam' as used in the term 'steam dryer' so frequently spoken and prominently shown in the Whirlpool commercial. Moreover respondents emphatically rejected the notion that the advertised dryer injects a mist of cold water which is then heated by the regular heating action of the dryer. (¶ 36.)

Furthermore, in LG's responses to Whirlpool's requests for admission, LG admits that: "One of the false messages that LG contends is implied by the advertising for the Whirlpool steam dryers is that Whirlpool steam dryers inject a hot vapor onto the clothes in the dryer drum." In connection with this admission, Whirlpool noted that Mr. Reitter's study "found that a majority of consumers came away with the impression that the Whirlpool Duet® Steam Dryer injects a hot vapor into clothes into the dryer drum after viewing the Whirlpool test commercial." (R. 385-4, Response to Req. To Admit #2, at 3.)

Dr. Dhar's opinions are directly relevant to the opinions of Mr. Reitter. Mr. Reitter has opined that consumers take away an implied message from Whirlpool's Duet® Steam Dryer advertising that Whirlpool's dryers inject a hot vapor onto clothes. Mr. Reitter addressed the deception element of an implied falsity claim, namely that consumers were deceived by the impression that Whirlpool's Duet® Steam Dryer injects a hot vapor onto clothes. Based on his study, Dr. Dhar opines that such deception is not material because it is not likely to

influence the purchasing decisions of consumers. These opinions are relevant and appropriate to rebut Mr. Reitter's.

LG contends that Mr. Reitter's study was merely an attempt "to determine how consumers perceived the Whirlpool commercial as it related to the creation and use of steam." (R. 378, LG's Mot., p. 9.) As described above, Mr. Reitter, however, has not merely opined that consumers perceive that the Whirlpool dryer uses steam. Instead, Mr. Reitter directly addressed how consumers perceive the manner in which the Whirlpool dryers operate or employ "steam," namely that they perceive the use of a hot vapor injection on the clothes in the dryer drum.

Although LG now contends that it is not going to argue implied falsity based on how steam was created, the opinions of Mr. Reitter suggest otherwise. If Mr. Reitter testifies as to these opinions at trial, LG has opened door to Dr. Dhar's testimony.

### III. Dr. Dhar May Rely on Factual Assumptions

LG also briefly argues[1] that Dr. Dhar assumes that the Whirlpool dryer uses steam to relax wrinkles and remove odors and that this assumption is "fatal to his survey" because it is outside his expertise. (Br. at 8.) As Dr. Dhar repeatedly explained during his testimony, he made this factual assumption because his testimony is only applicable to LG's implied falsity claim. If the jury believes that Whirlpool's dryers do not create steam under any definition, then LG's implied falsity claim will not come into play because an implied claim only applies where the advertising is either literally true or ambiguous.

Furthermore, Whirlpool will have to present evidence to support the factual assumptions upon which Dr. Dhar relies at trial. As the Seventh Circuit has emphasized, "the court's gatekeeping function focuses on an examination of the expert's methodology. The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact ...." *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000). *See also Pansier*, 576 F.3d at 738 (same); *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 165 (S.D. Ind. 2009) (denying request to strike expert's opinions where expert assumes facts based on his review of evidence even though opponent submitted evidence contradicting his assumptions). Accordingly, this argument fails.

### IV. Dr. Dhar's Survey Evidence is Appropriate

LG next contends that the Court should exclude Dr. Dhar's opinions because courts typically do not rely on surveys to show that a challenged advertisement is not material in a Lanham Act case. It asserts that "LG can not find a single instance in which a court has ever relied upon a survey to show that a challenged advertising claim is not material in a Lanham Act case." (R. 378, Mem. in Support, at 11.) As an initial matter, given the limited case law addressing the issue of materiality in implied falsity claims under the Lanham Act, the lack of case law evidencing use of surveys in this manner does not render Dr. Dhar's use of a survey inappropriate. Moreover, to support this argument LG relies on *IDT Telecom, Inc. v. CVT Prepaid Solutions, Inc.*, 2009 U.S. Dist. LEXIS 120355 (D.N.J. Dec. 28, 2009). LG's reliance, however, is misplaced. In *IDT Telecom*, the defendants argued that a survey demonstrating that only 3% of consumers considered the relevant portion of a challenged advertisement when making a purchasing decision demonstrated that the advertisements were not material to the purchasing decisions of consumers. The court found that this survey did not demonstrate that the *content* of the advertisement was immaterial to consumers and further noted that "[b]ecause the advertisements go so clearly to the purpose of the product - the amount of minutes of talk time that they deliver - the statements are material as a matter of law." *Id.*

The Seventh Circuit's decision in *Kraft v. FTC*, 970 F.2d 311 (7th Cir. 1997) is more instructive. In *Kraft*, the Seventh Circuit addressed a Federal Trade Commission ("FTC") cease and desist order against Kraft for making materially false misrepresentations in its advertisements regarding the amount of calcium contained in

---

[1] LG did not focus on these issues during the Daubert hearing.

Kraft's Singles American Pasteurized Process Cheese Food ("Singles"). The Seventh Circuit enforced the FTC's order which ordered Kraft to cease and desist from making misrepresentations regarding its Singles. In reaching its holding, the Seventh Circuit noted that cases brought under Section 43(a) of the Lanham Act were "analogous" to the FTC case and that the Lanham Act provides a private right of action for deceptive advertising. *Id.* at 319.

The Seventh Circuit addressed the issue of materiality in *Kraft*, noting that a "claim is considered material if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding a product." *Id.* at 323 (citations and quotations omitted). Kraft argued that the materiality finding was not supported by substantial evidence. The Seventh Circuit rejected this argument because it found that the FTC had satisfied the deferential, substantial evidence standard based on the evidence in the record. In rejecting this argument, however, the Seventh Circuit did not – as LG argues – hold that as a matter of law a party cannot submit surveys to refute materiality in these cases. The Seventh Circuit simply addressed the weight of the evidence to support the materiality element.

LG further argues that Dr. Dhar has never conducted any materiality survey "for litigation purposes" and therefore the Court should not permit him to give his opinions. This argument, however, is somewhat disingenuous. Dr. Dhar has conducted over a dozen surveys relating to different aspects of consumer behavior. Furthermore, he testified that in his marketing and business work, he conducts tests to assess purchase intent on a regular basis, and that such tests are similar to his studies in this case. He applied the same standards in his survey in this case that he applies in his academic and professional context, including in his consulting business. Given that he has conducted extensive surveys in a non-litigation context, he is certainly qualified to conduct one for litigation purposes. Indeed, experts must apply the "same level of intellectual rigor" that is demanded in their professional work. *Winters v. Fru-Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2007).

## CONCLUSION

For the foregoing reasons, the Court denies LG's Motion.