IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LG ELECTRONICS U.S.A., INC.       )
      a subsidiary of LG Electronics, Inc.,  )
      a Korean company,       )
                      )   Civil Action No.: 08 C 242
         Plaintiff,     )
                      )   Judge St. Eve
        v.        )
                      )   Magistrate Judge Mason
WHIRLPOOL CORPORATION,     )
                      )
        Defendant.    )


**INDEX OF EXHIBITS TO LG ELECTRONICS U.S.A., INC.'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF UNTIMELY DISCLOSED WITNESSES**


Ex. A:      Whirlpool Corporation's Second Supplemental Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)


Ex. B:      Whirlpool Corporation's response to LG Electronic U.S.A., Inc.'s Fourth Set of Interrogatories

Group Ex. C:  Excerpts from Deposition Transcripts Reflecting Query Results for Witness's Names

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LG ELECTRONICS U.S.A., INC.** | ) | |
| a subsidiary of LG Electronics, Inc., | ) | |
| a Korean company | ) | |
| | ) | **Civil Action No.: 08 C 242** |
| **Plaintiff/Counterdefendant,** | ) | |
| | ) | **Judge St. Eve** |
| v. | ) | |
| | ) | **Magistrate Judge Mason** |
| **WHIRLPOOL CORPORATION,** | ) | |
| | ) | |
| **Defendant/Counterplaintiff.** | ) | |

### WHIRLPOOL CORPORATION'S SECOND SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Defendant Whirlpool Corporation ("Whirlpool") makes the following supplemental initial disclosures based upon information reasonably available to it at this time and without prejudice to its rights to supplement these disclosures as investigation and discovery continue.  By making these disclosures, Whirlpool expressly reserves all objections relative to the use, for any purpose, of these initial and expert disclosures or of any information or document referenced herein.  Whirlpool makes these disclosures without prejudice to producing during discovery, or at trial, information that is subsequently discovered and determined to be relevant, or a product of ongoing investigation,.

### I.     Initial Disclosures under Fed. R. Civ. P. 26(a)(1)(A):

Pursuant to Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure, Whirlpool identifies the following individuals of which it is currently aware who are likely to have discoverable information that Whirlpool may use to support its claims or defenses:

**A.     Whirlpool Employees**

1.     Scott Brown

Possesses information regarding the advertising and marketing of Whirlpool's Steam Dryers.[1]

> 2. Fred Chernetski

Possesses information regarding the design, engineering, operation, and testing of Whirlpool's and LG's Steam Dryers.

> 3. Kirk Dunsbergen

Possesses information regarding the design, engineering, operation, and testing of Whirlpool's and LG's Steam Dryers.

> 4. Steve Ficke

Possesses information regarding the design, engineering, operation, and testing of Whirlpool's and LG's Steam Dryers.

> 5. Stephen Groppel

Possesses information regarding the design, engineering, operation, and testing of Whirlpool's and LG's Steam Dryers.

> 6. Charles Hall

Possesses information regarding the distribution and sales of Whirlpool's Steam Dryers.

> 7. Thomas Hassett

Possesses information regarding the advertising and marketing of Whirlpool's Steam Dryers.

> 8. Steve Koetsier

Possesses information regarding statistics and testing of Whirlpool's Steam Dryers.

> 9. Thomas Latack

---

[1] The "Whirlpool Steam Washers" and the "Whirlpool Steam Dryers", as used herein, shall mean any steam washer or steam dryer manufactured by Whirlpool under or for any name or brand, including without limitation, the following: Duet®, Maytag® Bravos™, Cabrio®, and Kenmore. The "LG Steam Washers" and the "LG Steam Dryers" shall mean any steam washers or steam dryers that LG is currently marketing and any previous versions or iterations thereof, including, but not limited to, the LG steam dryers referenced in the Complaint, First Amended Complaint and/or Second Amended Complaint.

Possesses information regarding the design, engineering, operation, and testing of Whirlpool's and LG's Steam Dryers.

10. Scot Lau

Possesses information regarding regarding statistics and testing of Whirlpool's Steam Dryers.

11. KD McAllister

Possesses information regarding the design, engineering, operation, and testing of Whirlpool's and LG's Steam Dryers.

12. Coleman McIntyre

Possesses information regarding the advertising and marketing of Whirlpool's Steam Dryers.

13. Robert Meyer

Possesses information regarding the design, engineering, operation, and testing of Whirlpool's and LG's Steam Dryers.

12. Audrey Reed-Granger

Possesses information regarding the marketing and advertising of Whirlpool's Steam Dryers.

13. Pamela S. Rogers

Possesses information regarding the marketing, advertising, distribution and sales of Whirlpool's Steam Dryers.

14. Angela Seger

Possesses information regarding the advertising and marketing of Whirlpool's Steam Dryers

15. Scott Slabbekoorn

Possesses information regarding the design, engineering, operation, and testing of Whirlpool's and LG's Steam Dryers.

16. Prasath Thirukonda

Possesses information regarding the design, engineering, operation, and testing of Whirlpool's and LG's Steam Dryers.

17. Michael Tilley

Possesses information regarding the design, engineering, operation, and testing of Whirlpool's and LG's Steam Dryers.

18. Donald Tomasi

Possesses information regarding the design, engineering, operation, and testing of Whirlpool's and LG's Steam Dryers.

19. Aida Torres

Possesses information regarding the advertising and marketing of Whirlpool's Steam Dryers.

20. Curt Tremel

Possesses information regarding the design, engineering, operation, and testing of Whirlpool's and LG's Steam Dryers.

21. Casey Tubman

Possesses information regarding the development and marketing of Whirlpool's Steam Dryers.

22. Erika Vallecorsa

Possesses information regarding the advertising and marketing of Whirlpool's Steam Dryers.

23. Lynn Voss

Possesses information regarding the design, engineering, operation, and testing of Whirlpool's and LG's Steam Dryers.

24. Martha Wah

Possesses information regarding the engineering and development of Whirlpool's Steam Dryers.

The aforementioned individuals work in Whirlpool's Benton Harbor, Michigan facility, except for Ms. Vallecorsa (who lives in Portland, Oregon), and may be contacted through counsel.

**B.      Former Whirlpool Employees**

1.      Mary Kennedy

Possesses information regarding the design, engineering, operation, and testing of Whirlpool's and LG's Steam Dryers.

2.      Don Rydberg

Possesses information regarding the design, engineering, operation, and testing of Whirlpool's and LG's Steam Dryers.

The aforementioned individuals are former employees of Whirlpool's Benton Harbor, Michigan or Newton, Iowa facilities, and may be contacted through counsel for Whirlpool, Warner Norcross & Judd LLP, 900 Fifth Third Center, Grand Rapids, Michigan 49503.

**C.      LG Employees**

1.      Individuals identified by LG in its Second Supplemental Rule 26(a)(1) Initial Disclosures (and any supplemental and amended responses to same), and in memoranda and declarations filed by LG in this litigation.

2.      Individuals identified by LG in its Response to Whirlpool Corporation's Second Set of Interrogatories, No. 6 (and any supplemental or amended responses to same); LG's Response to Whirlpool's Third Set of Interrogatories, No. 1 (and any supplemental or amended responses to same); and LG's Response to Whirlpool Corporation's Fourth Set of Interrogatories (and any supplemental or amended responses to same).

3.      Gyung Kyu Lee (a/k/a Clark Lee)

4. Hyeok Deok Kim

5. Vincent DiTerlizzi

6. Doug Gunderson

7. Sae Byul Moon

8. Nazeer Abdul Basheer

9. Ray French

10. Joo Han (a/k/a/ Pete) Yoon

11. Chung Seong Hae

12. Andrew Chul Ho Huh

13. HeeJin Lee

14. Soeg Ho Go

15. Il Tak Han

16. Tae Hee Lee

17. Seon Il Heo

18. Chang Woo Son

19. Jin Kyoung Kim

20. Sean Seong-Hae

The aforementioned individuals are/were LG employees. They may be called by Whirlpool regarding their knowledge concerning LG's Steam Washers and Steam Dryers.

**D.    Third Parties**

1. Arc Worldwide, 35 W. Wacker Drive, Chicago, IL  60601

2. ARS, 511 Renaissance Drive, Suite 150, St. Joseph, MI  49085

3. Carmichael Lynch Spong, 110 North Fifth Street, Minneapolis, MN  55403

4.     Decision Analyst, 604 Avenue H East, Arlington, Texas 70611

5.     Mindseye Research Inc., 2525 Cabot Drive, Suite 107, Lisle, IL 60542

6.     Optimedia, 375 Hudson Street, 7th Floor, New York, NY 10014

7.     Peppercom, 470 Park Avenue South, 5th Floor, New York, New York 10016

8.     Publicis, 20 North Michigan Avenue, Chicago, IL  60602

9.     The Boston Consulting Group, One Beacon Street, 10th Floor, Boston, MA  02108

10.    Smith-Dahmer Associates, LLC.  Smith-Dahmer may be contacted through its counsel, Warner Norcross & Judd LLP, 900 Fifth Third Center, Grand Rapids, Michigan 49503.

The aforementioned individuals/entities may be called by Whirlpool regarding their knowledge of Whirlpool's Steam Dryers.

11.    James Birtz and Kwame Green, BrandsMart.  Mr. Birtz and Mr. Green may be contacted through BrandsMart's counsel, Mr. James Balli, Sams, Larkin & Huff, 376 Powder Springs Street, Suite 100, Marietta, GA 30064-3448, Phone: 770-884-4819

The aforementioned individuals/entities may be called by Whirlpool regarding their knowledge of the advertising and marketing of Whirlpool's and LG's Steam Dryers, and consumer responses to that advertising and marketing.

12.    Individuals identified by LG in its Second Supplemental Rule 26(a)(1) Initial Disclosures (and any supplemental and amended responses to same), and in memoranda and declarations filed by LG in this litigation.

13.    Individuals/entities identified by LG in its Response to Whirlpool Corporation's Second Set of Interrogatories, Nos. 3, 6 (and any supplemental or amended responses to same); and in LG's Response to Whirlpool's Third Set of Interrogatories, No. 1 (and any supplemental or amended responses to same).

14.     Prof. Jung-Suk Lee, Gyeongsang National University

15.     Prof. Moon-Hwo Seo, Konkuk University

16.     Prof. Han Sung Kim, Pusan Nat. University

17.     Prof. Sung Bong Yang, Ulsan University

18.     Prof. Jung-Won Park, Yon Sei University

The aforementioned individuals/entities may be called by Whirlpool regarding their knowledge of LG's Steam Washers and Steam Dryers.

**II.     Initial Disclosures under Fed. R. Civ. P. 26(a)(1)(B):**

Pursuant to Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure, Whirlpool discloses the following categories of documents, data compilations, and tangible things in its possession, custody or control that Whirlpool may use to support its claims or defenses.  By making these disclosures, Whirlpool reserves the right to object to the admissibility, on any grounds, of such documents and evidence.

1.      Documents and communications relating to Whirlpool's design, development and testing of the Whirlpool Steam Dryers.

2.      Documents and communications relating to LG's design, development and testing of the LG Steam Washers and LG Steam Dryers.

3.      Documents and communications relating to Whirlpool's advertising and marketing of the Whirlpool Steam Dryers.

4.      Documents and communications relating to LG's advertising and marketing of the LG Steam Washers and LG Steam Dryers.

5.      Documents and communications relating to LG's sales and distribution of the LG Steam Washers and LG Steam Dryers.

6.  Documents and communications relating to Whirlpool's sales and distribution of the Whirlpool Steam Washers and Whirlpool Steam Dryers.

7.  Documents and communications relating to any comparison testing and results thereof of Whirlpool's Steam Dryers with any non-steam dryer.

8.  Documents and communications relating to any comparison testing and results thereof of LG's Steam Dryers with any non-steam dryer.

9.  Documents and communications relating to any testing and results thereof of any snagging of clothes, clogging, leaking, or safety issues in Whirlpool's Steam Dryer or LG's Steam Dryer.

10.  Documents and communications relating to any comparison testing and results thereof of Whirlpool's Steam Dryers with LG's Steam Dryers.

11.  Documents and communications relating to any testing and results thereof of the condition of clothes upon completion of the SteamFresh™ cycle in LG's Steam Washers.

12.  Documents and communications relating to consumer research and/or consumer preferences regarding laundry purchases, steam laundry and steam appliances.

13.  Photographs and samples of Whirlpool's Steam Dryer.

14.  Photographs and samples of LG's Steam Washer and LG's Steam Dryer.

15.  The Whirlpool website, located at www.whirlpool.com.

16.  The Maytag website, located at www.maytag.com.

17.  The LG website, located at www.lge.com.

18.  The Samsung website, located at www.samsung.com/us.

19.  The Electrolux website, located at www.electroluxusa.com.

20.     The Sears website, related to Kenmore laundry appliances, located at www.sears.com.

All of the foregoing categories of documents are located either at Whirlpool's facility in Benton Harbor, Michigan, or are in the possession of Whirlpool's attorneys. While Whirlpool has disclosed herein all relevant documents which may contain discoverable information of which it is aware, Whirlpool reserves the right to amend or supplement these initial disclosures as warranted by information obtained through further discovery, or to the extent necessary to rebut any of LG's allegations or arguments. Whirlpool further reserves the right to supplement this list through the time of trial.

### III.     Initial Disclosures under Fed. R. Civ. P. 26(a)(1)(C):

Whirlpool is seeking injunctive relief with respect to its counterclaim related to LG's violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2, and the Illinois common law of unfair competition. Whirlpool may also seek attorneys' fees and costs.

### IV.     Initial Disclosures under Fed. R. Civ. P. 26(a)(1)(D):

See insurance agreement previously produced at WHR100485 and WHR100534 that is responsive to the required disclosure.

### V.     Expert Disclosures under Fed. R. Civ. P. 26(a)(2):

1.     Dr. Subbaiah Malladi

2.     Dr. Ravi Dhar

3.     Dr. Stephen Nowlis

4.     Raymond Sims

Whirlpool reserves the right to amend and/or supplement its disclosures.

Dated:  June 1, 2009

Respectfully submitted,

WHIRLPOOL CORPORATION

*/s/Brian D. Roche*
Brian D. Roche
Jennifer Y. DePriest
Vanessa Martí Heftman
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 207-1000

J. A. Cragwall, Jr.
John J. Bursch
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, Michigan 49503-2487
Telephone (616) 752-2000

Attorneys for Defendant, Whirlpool
Corporation

## <u>CERTIFICATE OF SERVICE</u>

I, Vanessa Martí Heftman, an attorney, hereby certify that on June 1, 2009, copies of WHIRLPOOL CORPORATION'S SECOND SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a) have been served on the following counsel of record by electronic mail:

Ronald Y. Rothstein
rrothstein@winston.com
Bryna Joyce Roth Dahlin
bdahlin@winston.com
Shannon Leigh Stevens
sstevens@winston.com
Mary M. Hutchings
mreed@winston.com
Eric L. Broxterman
ebroxterman@winston.com
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL  60601
Fax: (312) 558-5700

_/s/ Vanessa Martí Heftman_____

Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC., | ) | |
| a subsidiary of LG Electronics, Inc., | ) | |
| a Korean company, | ) | |
| | ) | Case No. 08 C 242 |
| *Plaintiff and Counter-defendant,* | ) | |
| | ) | Judge St. Eve |
| v. | ) | |
| | ) | Magistrate Judge Mason |
| WHIRLPOOL CORPORATION, | ) | |
| | ) | |
| *Defendant and Counter-plaintiff.* | ) | |

## WHIRLPOOL CORPORATION'S RESPONSE TO
## LG ELECTRONIC U.S.A., INC'S FOURTH SET OF INTERROGATORIES

Defendant, Whirlpool Corporation ("Whirlpool") hereby responds to LG Electronics

U.S.A., Inc.'s ("LG") Fourth Set of Interrogatories as follows:

### GENERAL RESPONSES AND OBJECTIONS

Whirlpool's responses to LG's Fourth Set of Interrogatories are made subject to each of

the general responses and objections below, and to such other objections as may be stated in the

specific responses to each document request.

1.      Whirlpool objects to the Interrogatory to the extent it seeks documents or

information protected from disclosure by the attorney-client privilege, the attorney work-product

privilege, or any other applicable privilege.

2.      Whirlpool objects to LG's "Definitions and Instructions" to the extent they

impose obligations on Whirlpool beyond what is required by Federal Rule of Civil Procedure 33.

3.      Whirlpool objects to LG's definitions of the words "Whirlpool," "Defendant,"

"You," and "Yours," including the portion of those definitions that includes Whirlpool's "agents

. . . or other persons (including, without limitation, attorneys, accountants and advisors) acting or

purporting to act on its behalf," as inaccurate and overly broad. The only Defendant named in LG's complaint is Whirlpool Corporation. Whirlpool's responses herein are limited to the actual defendant, Whirlpool Corporation.

4.      Whirlpool objects to the Interrogatory to the extent it seeks information regarding trade secrets or other confidential information of Whirlpool.

5.      To the extent Whirlpool objects to any Interrogatory as overly broad or unduly burdensome, Whirlpool stands ready to meet and confer with LG concerning a reasonable limitation, if any, on the scope of the request.

6.      The answers provided herein are based upon information currently available to Whirlpool through due inquiry. Whirlpool's investigation continues, and pursuant to the Federal Rules of Civil Procedure, Whirlpool will supplement its answers as necessary.

7.      Whirlpool reserves the right to modify, amend, or supplement its General Responses and Objections, any additional specific objections, and any Answer made herein.

## ANSWERS TO INTERROGATORIES

1.      Define the word "steam" as it is used in the names and advertisements for the Duet® Steam Dryer, Maytag® Bravos™ Steam Dryer, and Cabrio® Steam Dryer, and as it is used in the name and advertisements for the Duet® Steam Washer.

**RESPONSE: Subject to Whirlpool's General Responses and Objections, Whirlpool uses the word "steam" in the context identified in the Interrogatory consistent with common English usage. Among the common and acceptable definitions of the word "steam" as used by Whirlpool are the ones found by the Court in its Opinion dated March 19, 2008, denying LG's motion for preliminary injunction (and citing Merriam-Webster's Collegiate dictionary (10th Ed. 1999)), which defines steam as a vapor arising from a heated**

substance; the invisible vapor into which water is converted when heated to a boiling point; and the mist formed by the condensation on cooling of water vapor. For similar definitions, see The American Heritage® Dictionary of the English Language (4th Ed. 2000).

2.  Describe how steam is created by the Duet® Steam Dryer, Maytag® Bravos™ Steam Dryer, and Cabrio Steam® Dryer on the one hand, and how steam is created in the Duet® Steam Washer on the other. In doing so, describe each and every difference in how steam is created by the Duet® Steam Dryer and the Duet® Steam Washer. Moreover, if steam creation in the Duet® Steam Dryer, Maytag® Bravos™ Steam Dryer, and Cabrio® Steam Dryer differs in any way, describe each and every difference.

**RESPONSE: Whirlpool objects to this Interrogatory as overly broad and unduly burdensome. Subject to this objection and Whirlpool's General Responses and Objections, Whirlpool states that the Duet® Steam Washer is equipped with a built-in heater that raises the temperature of the water above 100 degrees Celsius to create steam. Steam is created in the Duet® Steam Dryer, Maytag® Bravos™ Steam Dryer and Cabrio® Steam Dryer when the light mist of water sprayed into the dryer drum is combined with heated air and the other heated surfaces and heated clothes in the drum.**

3.  Identify each and every false or misleading statement or representation of fact that Whirlpool contends was made by LG USA in commercial advertising of the products as pled in Whirlpool's Counterclaim, and state whether Whirlpool claims the statement is (1) literally false or (2) literally true or ambiguous, and conveys a false impression or is misleading in context.

**RESPONSE:**

| Statement | Literally False | Conveys False Impression |
|---|---|---|
| The Tromm Steam Dryer "offers unmatched functionality in freshening clothes compared to other dryers on the market" | Yes. | Yes. |
| The SteamFresh™ Cycle on the Tromm Steam Dryer is "steam only" and reduces wrinkles and freshens dry clothes without the use of water. | Yes. | Yes. |
| The Tromm Steam Dryer and Steam Washer offer consumers "the first and only complete steam laundry care option" and that it has "pioneered the first steam washer and dryer." | Yes. | Yes. |
| The SteamFresh™ cycle "reduce[s] wrinkles and refresh[es] clothes in just 15 to 20 minutes." | Yes. | Yes. |
| The SteamFresh™ cycle allows clothes to be "ready-to-wear" in just 20 minutes. | Yes. | Yes. |
| The representation in the "Refresh" commercial that it is safe to reach into the Steam Washer while steam is present. | Yes. | Yes. |

4.    For each statement identified in response to interrogatory number three, state the

basis for Whirlpool's claim that the statement is (1) literally false or (2) literally true or

ambiguous, and conveys a false impression or is misleading in context.

**RESPONSE:**

| Statement | Basis for Literally Falsity | Basis for Conveying False Impression |
|---|---|---|
| The Tromm Steam Dryer "offers unmatched functionality in freshening clothes compared to other dryers on the market" | There is no evidence that the functionality of the Tromm Steam Dryer in freshening clothes is "unmatched." Instead, testing shows that both LG's and Whirlpool's | There is no evidence that the functionality of the Tromm Steam Dryer in freshening clothes is "unmatched." Instead, testing shows that both LG's and Whirlpool's |

- 4 -

|  | steam dryers offer similar results in freshening clothes. | steam dryers offer similar results in freshening clothes. |
|---|---|---|
| The SteamFresh™ Cycle on the Tromm Steam Dryer is "steam only" and reduces wrinkles and freshens dry clothes without the use of water. | The Tromm Steam Dryer injects liquid water into the dryer drum when operating in its SteamFresh™ Cycle. | The Tromm Steam Dryer injects liquid water into the dryer drum when operating in its SteamFresh™ Cycle. |
| The Tromm Steam Dryer and Steam Washer offer consumers "the first and only complete steam laundry care option" and that it has "pioneered the first steam washer and dryer." | The Whirlpool Duet® Steam Washer and Duet® Steam Dryer offer a complete steam care option and were the industry's first steam laundry pair. | The Whirlpool Duet® Steam Washer and Duet® Steam Dryer offer a complete steam care option and were the industry's first steam laundry pair. |
| The SteamFresh™ cycle "reduce[s] wrinkles and refresh[es] clothes in just 15 to 20 minutes." | The SteamFresh™ cycle takes "at least 15 to 20 minutes" but then clothes must be allowed to dry for at least 10 additional minutes before they are dry and ready to be worn. | The SteamFresh™ cycle takes "at least 15 to 20 minutes" but then clothes must be allowed to dry for at least 10 additional minutes before they are dry and ready to be worn. |
| The SteamFresh™ cycle allows clothes to be "ready-to-wear" in just 20 minutes. | The SteamFresh™ cycle takes "at least 15 to 20 minutes" but then clothes must be allowed to dry for at least 10 additional minutes before they are dry and ready to be worn. | The SteamFresh™ cycle takes "at least 15 to 20 minutes" but then clothes must be allowed to dry for at least 10 additional minutes before they are dry and ready to be worn. |
| The representation in the "Refresh" commercial that it is safe to reach into the Steam Washer while steam is present. | The Owner's Manual for the Steam Washer states "Do not reach into the washer while operating. Steam can cause severe burns." | The Owner's Manual for the Steam Washer states "Do not . . . reach into the washer while steam during a steam cycle. Steam can cause severe burns." |

5.      Identify the sales, in number of units and in gross revenue, by product and month, of the Duet® Steam Dryer, Bravos™ Steam Dryer, and Cabrio® Steam Dryer sold by Whirlpool in the United States since each product was first sold in the United States.

**RESPONSE: Whirlpool objects to this Interrogatory as overly broad, unduly burdensome and potentially invasive of the attorney-client and attorney work-product privileges. Whirlpool further objects to this Interrogatory on the grounds that the term "sales" is vague and ambiguous. Subject to these objections and Whirlpool's General Responses and Objections, Whirlpool will produce or has produced non-privileged documents from which information responsive to this request may be derived.**

6.      For the Duet® Steam Dryer, Bravos™ Steam Dryer, and Cabrio® Steam Dryer respectively, identify all costs to Whirlpool associated with these dryers for sales in the United States, including payments to vendors, costs of manufacturing and materials, advertising, and freight.

**RESPONSE: Whirlpool objects to this Interrogatory as overly broad, unduly burdensome and potentially invasive of the attorney-client and attorney work-product privileges. Subject to these objections and Whirlpool's General Responses and Objections, Whirlpool will produce or has produced non-privileged documents from which information responsive to this request may be derived.**

7.      Identify separately by dryer Whirlpool's expected and actual gross and net profit margin for the Duet® Steam Dryer, Bravos™ Steam Dryer, and Cabrio® Steam Dryer, and identify each and every deduction taken to arrive at the gross and net profit margins.

**RESPONSE: Whirlpool objects to this Interrogatory as overly broad, unduly burdensome and potentially invasive of the attorney-client and attorney work-product privileges. Subject to these objections and Whirlpool's General Responses and Objections, Whirlpool will produce or has produced non-privileged documents from which information responsive to this request may be derived.**

8.     Identify separately by dryer the manufacturer's suggested retail price and the actual average sales price, excluding sales tax and delivery charges, for the Duet® Steam Dryer, Bravos™ Steam Dryer, and Cabrio® Steam Dryer.

**RESPONSE: Whirlpool objects to this Interrogatory as overly broad and unduly burdensome. Whirlpool further objects to this Interrogatory because it seeks information outside Whirlpool's possession, custody or control. Subject to these objections and Whirlpool's General Responses and Objections, Whirlpool will produce or has produced non-privileged documents containing the Minimum Advertised Price ("MAP") for each of the dryers.**

9.     Identify all promotions and retailer incentives that have been offered for the Duet® Steam Dryer, Bravos™ Steam Dryer, and Cabrio® Steam Dryer, respectively, the dates they were offered and what impact, if any, such promotions or retailer incentives had on the average sales price for each dryer.

**RESPONSE: Whirlpool objects to this Interrogatory as overly broad, unduly burdensome and potentially invasive of the attorney-client and attorney work-product privileges. Subject to these objections and Whirlpool's General Responses and Objections, Whirlpool will produce or has produced non-privileged documents from which information responsive to this request may be derived.**

10.    Identify each and every retailer in the United States that sells the Duet® Steam Dryer, Bravos™ Steam Dryer, and Cabrio® Steam Dryer, and for each retailer, describe how money flows from each retailer to Whirlpool for each dryer sale, and identify by bates number the documents(s) that describe the contractual relationship between each retailer and Whirlpool.

In doing so, identify each entity through which money flows and the exact corporate name of the Whirlpool entity that collects the money.

**RESPONSE: Whirlpool objects to this Interrogatory as extraordinarily overly broad and unduly burdensome. Whirlpool further objects to this Interrogatory because it seeks highly-sensitive information regarding customers that is neither relevant to the pending action nor reasonably calculated to lead to the discovery of admissible information.**

11.    Identify any off-shore entities or bank accounts to which Whirlpool sends money for sales in the United States of the Duet® Steam Dryer, Bravos™ Steam Dryer, and/or Cabrio® Steam Dryer.

**RESPONSE: Whirlpool objects to this Interrogatory because it seeks highly-sensitive information that is neither relevant to the pending action nor reasonably calculated to lead to the discovery of admissible evidence.**

12.    Identify by bates number each and every document created by Whirlpool prior to the launch of the Duet® Steam Dryer, including but not limited to engineering specifications and design documents, that support Whirlpool's assertion that steam creation in the Duet® Steam Dryer involves "heat[ing] with air exceeding 100° Celsius," as set forth in Whirlpool's Responses to LG USA's Second Set of Requests for Admission.

**RESPONSE: Whirlpool objects to this Interrogatory as overly broad, unduly burdensome and potentially invasive of the attorney-client and attorney work-product privilege. Whirlpool also objects to this Interrogatory to the extent it asks Whirlpool to identify documents not previously requested during discovery. Subject to these objections and Whirlpool's General Responses and Objections, Whirlpool will identify the responsive documents containing this information after the document production is completed.**

13.     Identify each and every test, study or analysis performed by Whirlpool prior to the filing of this lawsuit on January 10, 2008, including identifying such tests, studies or analyses by document and bates number, that support Whirlpool's assertion that steam creation in the Duet® Steam Dryer involves "heat[ing] with air exceeding 100° Celsius," as set forth in Whirlpool's Responses to LG USA's Second Set of Requests for Admission.

**RESPONSE: Whirlpool objects to this Interrogatory as overly broad, unduly burdensome and potentially invasive of the attorney-client and attorney work-product privilege. Whirlpool also objects to this Interrogatory to the extent it asks Whirlpool to identify documents not previously requested during discovery. Subject to these objections and Whirlpool's General Responses and Objections, Whirlpool will produce or has produced non-privileged documents from which information responsive to this request may be derived.**

14.     Identify each current or former Whirlpool employee, agent or representative knowledgeable about the allegations contained in LG USA's Second Amended Complaint, and the allegations set forth in your Counterclaim and Answer to LG USA's Second Amended Complaint and, for each such person, describe his or her area of knowledge.

**RESPONSE: Whirlpool objects to this Interrogatory as overly broad and unduly burdensome.   Subject to these objections and Whirlpool's General Responses and Objections, Whirlpool states that it currently believes the following employees have knowledge regarding either the allegations contained in LG USA's Second Amended Complaint or Whirlpool's Counterclaim and Answer to LG USA's Second Amended Complaint:**

| Employee | Area of Knowledge |
| --- | --- |
| Appert, Renee | Advertising/Marketing/Public Relations |
| Brown, Scott | Advertising/Marketing/Public Relations |
| Doll, Matthew | Advertising/Marketing/Public Relations |
| Dunsbergen, Kirk | Product Development/Engineering |
| Ficke, Steve | Product Development/Engineering |
| Garey, John | Financial |
| Groppel, Cari | Advertising/Marketing/Public Relations |
| Groppel, Stephen | Product Development/Engineering |
| Hall, Charles | Financial |
| Hassett, Thomas | Advertising/Marketing/Public Relations |
| Jaske, Mark | Product Development/Engineering |
| Krotzer, Marilyn | Product Development/Engineering |
| Lange, Ginger | Advertising/Marketing/Public Relations |
| Lufkin, Anthony | Product Development/Engineering |
| Mondschein, Charles | Product Development/Engineering |
| Muenchow, Meghan | Advertising/Marketing/Public Relations |
| Pickens, Mark | Financial |
| Reed-Granger, Audrey | Advertising/Marketing/Public Relations |
| Rogers, Pam | Advertising/Marketing/Public Relations |
| Saha, Gour | Product Development/Engineering |
| Seger, Angie | Advertising/Marketing/Public Relations |
| Torres, Aida | Advertising/Marketing/Public Relations |
| Tubbs, Travis | Financial |
| Vallecorsa, Erica | Advertising/Marketing/Public Relations |
| Voss, Carolyn | Product Development/Engineering |
| Wikman, Melissa | Advertising/Marketing/Public Relations |
| Douglas Wood | Product Development/Engineering |

**Whirlpool also states that by identifying these employees with possible knowledge it is not agreeing that LG USA may conduct more than 10 depositions without Whirlpool's permission or an order from the Court.**

Dated: September 15, 2008

Respectfully submitted,
WHIRLPOOL CORPORATION, Defendant

By: *[signature]* Vanessa Heftman

Brian D. Roche
Jennifer Yule DePriest
Vanessa Martí Heftman
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 207-1000

J.A. Cragwall, Jr.
John J. Bursch
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, Michigan 49503-2487
Telephone: (616) 752-2000

#2204338
013808.125252 GR1575552-2

## CERTIFICATE OF SERVICE

I, Vanessa Martí Heftman, an attorney, hereby certify that on September 15, 2008, copies of **Whirlpool Corporation's Response to LG Electronic U.S.A., Inc's Fourth Set of Interrogatories** have been served on the following counsel of record by electronic mail and by U.S. Mail, postage prepaid:

> Ronald Y. Rothstein
> rrothstein@winston.com
> Bryna Joyce Roth Dahlin
> bdahlin@winston.com
> Shannon Leigh Stevens
> sstevens@winston.com
> Mary M. Hutchings
> mreed@winston.com
> Eric L. Broxterman
> ebroxterman@winston.com
> Winston & Strawn LLP
> 35 West Wacker Drive
> Chicago, IL 60601

By: _Vanessa Heftman_

Group Exhibit C

**T** [33:11] - [33:12]   5/4/2009   Seger, Angela 30(b)(6)

page 33
| | | |
|---|---|---|
| 6 | A. | A Maytag, I really don't have any idea. |
| 7 | Q. | All right. Who -- who would the person that should |
| 8 | | have been identified for the Duet -- or the Bravos and |
| 9 | | the Cabrio be on the issue of identifying and |
| 10 | | confirming these print ads? |
| 11 | A. | Probably Tom **Hassett**. |
| 12 | Q. | Tom **Hassett**, okay. |
| 13 | | Let's just talk about the Duet for a |
| 14 | | second. If you look at the answer to Exhibit -- to |
| 15 | | number 2, number 2 asks to identify, by Bates number, |
| 16 | | all final publicly disseminated versions of print |
| 17 | | advertisements for the Duet Steam Dryer -- and forget |

**T** [57:23]   5/4/2009   Seger, Angela 30(b)(6)

page 57
| | | |
|---|---|---|
| 18 | | So you conceivably could identify the final |
| 19 | | media spend for the entire line of Steam Dryer |
| 20 | | products; is that right? |
| 21 | A. | For Whirlpool brand only. |
| 22 | Q. | What about Bravos and the Cabrio? |
| 23 | A. | That you would have to get from Tom **Hassett**, but he |
| 24 | | works with the same agency -- |
| 25 | Q. | Right. |

page 58
| | | |
|---|---|---|
| 1 | A. | -- so they can provide it. |
| 2 | Q. | So Optimedia would have all that? |
| 3 | A. | Yes. |

**T** [59:13]   5/4/2009   Seger, Angela 30(b)(6)

page 59
| | | |
|---|---|---|
| 8 | | through today. |
| 9 | | MR. ROTHSTEIN: I know. |
| 10 | | MR. ASH: Let's get Mrs. Seger done. |
| 11 | | MR. ROTHSTEIN: I'm trying to get through |
| 12 | | today, and I'm finding I can't. Today is going to be |
| 13 | | incomplete. You should have had Tom **Hassett** here, if |
| 14 | | we were to be complete. But he's not been identified |
| 15 | | to me. |
| 16 | BY MR. ROTHSTEIN: | |
| 17 | Q. | Okay. Now, if you look back at 12 and 13, Exhibits 12 |
| 18 | | and 13. If these represent 2000 -- would these |

**T [11:24]**          10/23/2008  Dunsbergen, Kirk (Whirlpool) 30(b)(6)

```
page 11
19  A    I'm sorry, I missed the question.
20              MR. ROTHSTEIN:  Can you read it back, please?
21              (Previous excerpts of testimony read back).
22  A    Yes.
23  Q    Okay.  And it also contains carbon copy to Carolyn Voss,
24       Christopher Jones, Curt Tremel, Michael Tilley, Robert Meyer,
25       Ryan Bellinger, Thomas Latack, Tochi Omenekur, is that
page 12
1    correct?
2  A    Yes.
3  Q    Okay.  In this e-mail, it says, I would like to -- I would
4       like us as a team to begin to generate the QFD.  What is a
```

**T [62:5]**          4/27/2009  Kennedy, Mary (WP)

```
page 61
25  e-mails where you are starting to be included as a
page 62
1   recipient of the communications.  And in the one that
2   we're looking at here, it's the Lynn Voss to Doug Wood,
3   cc Mary Kennedy--
4       A.    Uh-huh.
5       Q.    --Mike Tilley, Curt Tremel.  It says,
6   "Presentation to M2b core team next Monday," and the
7   date of this e-mail is 10-23-2006.  Do you see that?
8       A.    Yes.
9       Q.    It says, "Hi Doug.  I spoke with Mary
10  Kennedy and she's able to fly from Newton next
```

**T [125:6]**          4/27/2009  Kennedy, Mary (WP)

```
page 125
1                    (Deposition Exhibit 17 was
2                    marked for identification.)
3   BY MR. ROTHSTEIN:
4       Q.    Okay.  Now, you sent an e-mail on June 18,
5   2007, to Kirk Dunsbergen and Lynn Voss, Kevin
6   Galloway and Curt Tremel; is that correct?
7       A.    Yes.
8       Q.    Involving the M2B refresh results; is that
9   correct?
10      A.    Yes.
11      Q.    You say, "I have analyzed the M2B refresh
```

**T [198:15]**          5/8/2009  Malladi, Subbaiah (WP Expert)

```
page 198
10      A.    Yes, sir.
11      Q.    Do you see one is Don Rydberg?
12      A.    Yes, sir.
13      Q.    Did you ever interview him?
14      A.    No, sir.
15      Q.    Do you see Curt Tremel?
16      A.    Yes, sir.
17      Q.    He was an inventor of this dryer.  Do you
18  see -- have you ever talked to him before?
19      A.    No, sir.
20      Q.    Do you know who he is?
```

**T [18:23]**          3/23/2009  Rydberg, Don (Whirlpool)

```
page 18
18  A    I see that.
19  Q    And you're described as an inventor, is that
20  right?
21  A    Yeah.  My name is in the location for an
22  inventor.
23  Q    Okay.  And you were listed with Curt Tremel,
24  Jessica Moraniec, Francis Cheo, Tom Latack, Don Tomasi,
```

page 19
1  Steven Ficke, Michele Paustian.
2        Do you recognize all those people?
3     A   I recognize all those names, yes.
4     Q   Okay.  Did you work with all of those people?

**T [19:15]**

3/23/2009   Rydberg, Don (Whirlpool)

page 19
10  water spray and refresh cycle Myst 1 project?
11    A   Yes.
12    Q   Okay.  Who did you work with?
13    A   I worked with -- Is this in any fashion?
14    Q   How about just on this project.
15    A   Well, okay.  Well, Curt **Tremel**, Tom Latack,
16  Don Tomasi, Steve Ficke are the ones that I could say
17  I -- I remember specifically working with on Myst 1.
18    Q   Okay.  And what was the problem to be solved as
19  contained and stated in this Invention Disclosure Sheet?
20    A   It says on Line 1, the problem to be solved was

**T [56:6]**

11/13/2008  Tomasi, Donald  (Whirlpool)

page 56
1   Q.   Okay.  You saw it at sometime in years past, as you
2        were developing the system; is that right?
3   A.   I would think that's a fair assumption because my name
4        is on the document.
5   Q.   Right.  And were you working with Don Rydberg, Curt
6        **Tremel**, Jessica Moraniec, Francis Cheo, and Tom Latack
7        on this project?
8   A.   Don Rydberg, Tom Latack were in my department.
9   Q.   Uh-huh.
10  A.   The others were in other departments, so the -- so -- I
11       mean, this was -- this was later in the development

**T [27:2] - [27:5]**

11/19/2008  Voss, Carolyn  (Whirlpool)

page 26
22  Q.   And is the first e-mail, which is the bottom e-mail, an
23       e-mail from you to Mr. Wood cc'ing Mary Kennedy?
24  A.   That's correct, yes.
25  Q.   Okay.  And Mike Tilley is on it as well?
page 27
1   A.   Yes.
2   Q.   Curt **Tremel** is on it as well; is that right?
3   A.   Yes.
4   Q.   Who is Curt **Tremel**?
5   A.   Curt **Tremel** was the lab supervisor for Maytag and
6        subsequently Whirlpool at the Newton Performance Lab.
7   Q.   Was he at the meeting we were just discussing a few
8        moments ago?
9   A.   No.
10  Q.   In this e-mail you say to Doug, hi Doug, I spoke with

**T [118:4]**

11/19/2008  Voss, Carolyn  (Whirlpool)

page 117
24       wrinkle performance with Myst cycles.
25  Q.   And you asked that this be prepared; is that right?
page 118
1   A.   I believe so.
2   Q.   And Mary Kennedy was the lab engineer; is that right?
3   A.   Yes, that's correct.
4   Q.   And it was approved by Curtis **Tremel**?
5   A.   Yes.
6   Q.   Okay.  And let me just see if I understand this.  The
7        title is, Kenmore and Whirlpool Matador 2A marketing
8        claims for wrinkle performance with Myst cycles; is
9        that right?

**T [43:12]**

11/13/2008  Tomasi, Donald (Whirlpool)

```
page 43
9              twenty years ago.  One of my engineers came up with the
10             patent.
11      Q.     Who was that?
12      A.     Fred Chernetski.
13      Q.     Can you spell that?
14      A.     No, Excuse me.  I think it was our patent attorney that
15             found it.  Somehow that patent made its way to me.
```

**T [43:16]**

11/13/2008  Tomasi, Donald (Whirlpool)

```
page 43
13      Q.     Can you spell that?
14      A.     No, Excuse me.  I think it was our patent attorney that
15             found it.  Somehow that patent made its way to me.
16      Q.     Who is Fred Chernetski?
17      A.     He's an engineer that works for me.
18      Q.     Okay.  Does he still work for you?
19      A.     Yes.
```

**T [43:21]**

11/13/2008  Tomasi, Donald (Whirlpool)

```
page 43
18      Q.     Okay.  Does he still work for you?
19      A.     Yes.
20      Q.     And how do you spell his last name?
21      A.     C-h-e-r-n-e-t-s-k-i.
22      Q.     Okay.  And you said that you found a patent from
23             eighteen to twenty years ago?
24      A.     That had been expired, yes, but it actually -- it was
```

**T [45:24]**

11/13/2008  Tomasi, Donald (Whirlpool)

```
page 45
21      A.     It was a nozzle connected to a water line.
22      Q.     And that's what the patent disclosed?
23      A.     Yes.
24      Q.     And what involvement did Fred Chernetski have with this
25             system?
page 46
1       A.     Nothing other than -- and I'm not sure he was the one.
2              I don't know if it came from him or if it came from our
```

**T [10:23]**

2/20/2009  Meyer, Robert (Whirlpool)

```
page 10
20             myself and Kirk Dunsbergen.  Both Kirk and I were
21             responsible for technical projects related to dryers.
22      Q.     And, at that time, who reported to you?
23      A.     Fred Chernetski, Steve Koza, Jim Carow, Roger
24             Woodenruff, Alex Minkin, John Rybarczyk.
25      Q.     What was your relationship at the time, work-wise,
page 11
1              with Mr. Tilley, Mike Tilley?
```

**T [91:5]**

2/20/2009  Meyer, Robert (Whirlpool)

```
page 91
2       A.     I'm listed on the team.
3       Q.     Yep.  And it says, Chris Jones.  Do you see that?
4       A.     Yes.
5       Q.     Fred Chernetski.  Do you see that?
6       A.     Yes.
7       Q.     These are all people we've mentioned here today,
8              right?
```

**T [19:6]**

2/24/2009  Tilley, Michael (Whirlpool)

```
page 19
```

```
3   Q.   Okay.
4   A.   -- as an NAR Tech Lead.
5   Q.   All right.  And that included Bob Meyer, Chris Jones,
6        Fred Chernetski, John Andrasi, John Rybarczyk, Roger
7        Woodruff, and Don Rydberg?
8   A.   That's correct.  Although, I will say that Bob -- Bob
9        Meyer reported directly to Tomasi.
```

T [120:19]

4/27/2009   Kennedy, Mary (WP)

page 120
16       Q.    Okay.   This appears to be a series of e-mail
17   communications involving you with some attachments--
18   or an attachment.   It's WHR40158-R through 40165-R.
19   And who is Martha **Wah**?
20       A.    I've heard the name, but I'm not exactly
21   sure of her position.