**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LG ELECTRONICS U.S.A., INC.       )
   a subsidiary of LG Electronics, Inc.,  )
   a Korean company,            )
                              )   Civil Action No.: 08 C 242
        Plaintiff,            )
                              )   Judge St. Eve
      v.                  )
                              )   Magistrate Judge Mason
WHIRLPOOL CORPORATION,      )
                              )
        Defendant.          )

**WHIRLPOOL'S MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF UNDISCLOSED TESTING INFORMATION**

Whirlpool Corporation moves *in limine* to preclude LG Electronics U.S.A., Inc. from

introducing at trial any documents or evidence related to instances of testing not previously

disclosed in LG's response to Whirlpool's interrogatory seeking relevant testing information.

The central issue in this lawsuit is whether Whirlpool's steam dryers use steam. As noted

in other briefing, LG has conducted a substantial amount of testing of Whirlpool's steam dryer,

including comparative testing related to LG's and Whirlpool's steam dryers' ability to relax

wrinkles and remove odors – the key benefits claimed and advertised by both companies. (*See*

Docket Nos. 224, 237.)

During discovery, Whirlpool served the following interrogatory:

Identify all testing performed on any LG steam washer and dryer, any Whirlpool
steam washer and dryer, and any other competitor's steam washer and dryer. For
each instance of testing, identify when the testing occurred, who performed the
test, where the test was performed, the machine on which testing was performed
(by brand, model and product number), the protocols used for such testing, the
results of such testing (including any comparisons of test results), the lead person
from LG responsible for such testing, and all documents (by bates-number) that
relate to each instance of testing.

(*See* Whirlpool Corp's. Third Set of Interrogs. to LG Elecs. U.S.A., Inc., No. 1, "Testing

Interrogatory, attached as Ex. A.".)

On November 11, 2008, LG served its initial response to the Testing Interrogatory. As

discovery progressed, and based on the testimony of various LG witnesses, Whirlpool became

concerned that LG had not disclosed all instances of testing requested by the Testing

Interrogatory. As such, shortly after the close of discovery, Whirlpool filed a Motion for Leave

to Conduct Limited Discovery, in which Whirlpool detailed its concerns and the bases for them.

(*See* Docket No. 224; *see also* Docket No. 237 (Whirlpool's Motion to Conduct Limited

Discovery and Reply in Support of Its Motion).)

At the hearing on Whirlpool's motion, counsel for LG represented that "we've identified

everything they've asked us to identify in the interrogatory response" and further acknowledged

that "if we didn't produce the documents as [Whirlpool's] alleging, we can't rely on them at

trial." (July 9, 2009 Tr., at 14-15, attached as Ex. B.) The Court directed LG to put in writing a

representation that all responsive information had been produced. (*Id.* at 14-16.) Consequently,

LG served its final supplemental response to the Testing Interrogatory, in which LG stated "LG

USA has repeatedly stated that it has produced and identified all documents that are responsive

to this interrogatory.... LG USA has conducted several exhaustive searches for responsive

documents to this request. To the extent any documents were created responsive to this request,

they have been searched, reviewed and produced to Whirlpool." (*See* Pl. LG Elecs. U.S.A.,

Inc.'s Supp. Resp. to Whirlpool Corp's. Third Set of Interrogs., dated Aug. 6, 2009, at p. 6,

attached as Ex. C.)

Given LG's representations following the close of discovery as well as the Court's order,

LG should be barred from introducing evidence of testing beyond that disclosed in its response

to the Testing Interrogatory pursuant to Federal Rules of Civil Procedure 26 and 37(c) and

Federal Rule of Evidence 403.[1]

WHEREFORE, Whirlpool respectfully requests that the Court grant its motion and bar

LG from introducing at trial any testing information, including any performance and or

comparison testing of Whirlpool's steam dryers, that it had not disclosed in response to

Whirlpool's Testing Interrogatory, and grant such other and further relief as the Court deems just

and proper.

Dated: August 17, 2010

WHIRLPOOL CORPORATION

By /s/ Brian D. Roche

Brian D. Roche
Jennifer Yule DePriest
Vanessa Martí Heftman
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
Tel: 312.207.1000

---

[1] Pursuant to the Court's requirement that the parties meet and confer regarding motions *in limine*, Whirlpool notified LG of its intention to file a motion *in limine* "asking the Court to preclude LG from offering any evidence beyond that which it produced to Whirlpool during discovery regarding its testing of steam dryers manufactured by both companies, and in particular, which it identified in its response to its supplemental response to Interrogatory No. 1 of Whirlpool's Third Set of Interrogatories, pursuant to Federal Rule of Evidence 403, Federal Rules of Civil Procedure 26 and 37(c)." (Whirlpool Corp's. Statements of Motion in Limine, ¶ 9.) Counsel for LG would not agree to Whirlpool's request to limit the testing evidence to the information disclosed in the interrogatory.

J.A. Cragwall, Jr.
Janet Ramsey
Charles N. Ash, Jr.
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, Michigan 49503-2487
Tel: 616.752.2000

Stephen G. Morrison
James J. McGovern
NELSON MULLINS RILEY &
SCARBOROUGH, LLP
Meridian, 17th Floor
1320 Main Street
Columbia, SC 29201
Telephone: (803) 799-2000

Patrick Coleman Wooten
NELSON MULLINS RILEY &
SCARBOROUGH, LLP
Liberty Center, Suite 600
151 Meeting Street
Charleston, SC 29401-2239
Telephone: (843) 853-5200

Attorneys for Defendant, Whirlpool Corporation

US_ACTIVE-104339362

## CERTIFICATE OF SERVICE

I, Brian D. Roche, an attorney, hereby certify that on August 17, 2010, I filed

**WHIRLPOOL'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNDISCLOSED**

**TESTING INFORMATION** with the Clerk of the Court using the ECF system, which will

send notification of such filings to the following individuals.  In addition, the foregoing

document was served on the following individuals by email:

> Ronald Y. Rothstein
> rrothstein@winston.com
> Eric L. Broxterman
> ebroxterman@winston.com
> Bryna Joyce Roth Dahlin
> bdahlin@winston.com
> John George Marfoe
> jmarfoe@winston.com
> Lawrence R. Desideri
> ldesideri@winston.com
> Winston & Strawn LLP
> 35 West Wacker Drive
> Chicago, IL  60601

> */s/ Brian D. Roche*

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **LG ELECTRONICS U.S.A., INC.** ) | |
| a subsidiary of LG Electronics, Inc., ) | |
| a Korean company ) | |
| ) | **Civil Action No.: 08 C 242** |
| **Plaintiff/Counterdefendant,** ) | |
| ) | **Judge St. Eve** |
| v. ) | |
| ) | **Magistrate Judge Mason** |
| **WHIRLPOOL CORPORATION,** ) | |
| ) | |
| **Defendant/Counterplaintiff.** ) | |

## WHIRLPOOL CORPORATION'S THIRD SET OF
## INTERROGATORIES TO LG ELECTRONICS U.S.A., INC.

Defendant Whirlpool Corporation ("Whirlpool") hereby requests that Plaintiff LG

Electronics U.S.A., Inc. ("LG") provide written and sworn answers to the following

interrogatories in accordance with Rule 33 of the Federal Rules of Civil Procedure.

## INTERROGATORIES

1.      Identify all testing performed on any LG steam washer and dryer, any Whirlpool

steam washer and dryer, and any other competitor's steam washer and dryer. For each instance

of testing, identify when the testing occurred, who performed the test, where the test was

performed, the machine on which testing was performed (by brand, model and product number),

the protocols used for such testing, the results of such testing (including any comparisons of test

results), the lead person from LG responsible for such testing, and all documents (by bates-

number) that relate to each instance of testing.

2.      With respect to each Count of LG's Second Amended Complaint, describe in

detail all damages or monetary recovery LG is seeking or that LG claims to have suffered as a

result of Whirlpool's alleged false advertising. Identify for each channel of distribution (*i.e.*,

retail, wholesale, consumer direct, etc.) all (a) lost sales, (b) lost profits, (c) loss of reputation, (d) loss of consumer confidence, (e) loss of good will, and (f) any other damage LG claims it has suffered, describing in detail the manner in which each was calculated, including how any components of each were calculated, and identifying by bates number the documents that support LG's damages calculations.

      3.     Identify, by month, product and channel of distribution, the sales of each steam washer and steam dryer sold by LG in the United States since each product was first sold in the United States, including the number of units sold, gross revenue, and gross and net profit and margins, and each and every deduction taken to arrive at the gross and net profit margins. Identify by bates number all documents relating to the requested sales, revenue and profit information.

      4.     For each steam washer and steam dryer sold by LG in the United States, identify the costs associated with the sales of each washer and dryer, including payments to vendors, costs of manufacturing and materials, advertising, and freight. Identify by bates number all documents relating to the requested cost information.

      5.     Identify, by month, since LG first began to sell steam dryers in the United States, all of LG's competitors for steam dryer sales, and identify, by month, LG's market share in steam dryer sales, as well as the market share of each of LG's competitors for these sales. Identify by bates number all documents relating to LG's market share for sales of steam dryers.

      6.     Identify separately by washer and dryer the manufacturer's suggested retail price and the actual average sales price, excluding sales tax and delivery charges, for each of LG's steam washers and dryers.

7.    Identify all promotions and retailer incentives that have been offered for each of LG's steam washers and steam dryers, the dates they were offered and what impact, if any, such promotions or retailer incentives had on the average sales price for each steam washer and steam dryer.

8.    Identify each and every retailer in the United States that sells LG's steam washers and/or steam dryers, the exact corporate name of the LG entity that collects the money from steam washers and/or steam dryers sold to the retailers, and identify by bates number the documents(s) that describe the contractual relationship between each retailer and LG.

9.    Identify each current or former LG employee, agent or representative knowledgeable about the allegations contained in LG USA's Complaint and the allegations set forth in Whirlpool's Answer and Counterclaim and, for such person, describe his or her area of knowledge.

## DEFINITIONS AND INSTRUCTIONS

1.    "LG" shall mean LG Electronics U.S.A., Inc., its predecessors, successors and assigns, and any of its parent companies, subsidiaries, affiliates, officers, directors, agents, employees, or other persons (including, without limitation, its attorneys, accountants, and advisors) acting or purporting to act on its behalf.

2.    "Whirlpool" shall mean the defendant in the action, Whirlpool Corporation.

3.    "Whirlpool steam washers and dryers" shall mean the steam washers and dryers that Whirlpool is currently marketing and any previous versions or iterations thereof, including, but not limited to, the Whirlpool Duet®, Maytag® Bravos™ and Cabrio® steam dryers referenced in the Complaint, First Amended Complaint and/or Second Amended Complaint.

4.     The "LG steam washers and dryers" shall mean the steam washers and steam dryers that LG is currently marketing and any previous versions or iterations thereof, including, but not limited to, the LG steam washers and dryers referenced in the Complaint, First Amended Complaint and/or Second Amended Complaint.

5.     "Documents" means all written, computer-generated, recorded or graphic matter, however stored, produced, or reproduced, pertaining in any way to the subject matter indicated. This includes, without limiting the generality of the foregoing, all originals, copies and drafts of all letters, journals, correspondence, reports, e-mails, memoranda, diaries, calendars, invoices, purchase orders, receipts, bills, checks, estimates, plans, notes, notebooks, files, worksheets, lists, summaries, records, tapes, recordings, agendas, transcripts, notes or memoranda of telephone or personal conversations by or with any persons and all letters, faxes, and e-mails received or sent (whether retained on paper, disc, in a computer file, or in some other form).

6.     The term "communications" means any and all forms of transferring information including, but not limited to, discussions, conversations, meetings, conferences, interviews, negotiations, agreements, understandings, inquiries, facsimiles, memo, e-mail, electronic transmissions and documents.

7.     The term "relating to" or "related to" or "relate to" shall mean, without limitation, the following: with respect to, referring to, pertaining to, involving, concerning, purporting, embodying, establishing, evidencing, comprising, connected with, commenting on, responding to, showing, describing, discussing, analyzing, explaining, reflecting, constituting, deriving from, or presenting.

8.     Where knowledge or information in the possession of a party is requested, the request includes knowledge of the party's agents and representatives, including, unless privileged, the party's attorneys.

9.     The term "person" means and includes, without limiting the generality of its meaning, each natural person, sole proprietorship, partnership, corporate entity, association, trust, public or governmental body or agency and each of them and all past or present officers, agents employees, or other persons acting or purporting to act on such person's behalf.

10.     "Describe" or "state all facts" means to state in detail all discoverable facts that are known to LG, and/or its attorneys or agents.

11.     If an Interrogatory requests that a party "state the basis" for a contention or statement, the party shall set forth in detail all information and evidence that supports the statement or contention identified, including without limitation, the identification of any and all documents that support the statement or contention and the persons who have information concerning such statement or contention.

12.     If any documents are produced in response to the Interrogatories, they shall be produced in their original binders or files and shall be so grouped or identified in the production by the paragraph of the Interrogatory to which they are responsive, and to the extent the documents are responsive to more than one paragraph, they shall be identified under the first paragraph to which they are responsive and referenced to the other paragraphs to which they are responsive.

13.     If the attorney/client privilege or any other privilege is claimed or failure to answer occurs as to any of the following requests, then counsel shall identify the communication,

document, event, statement or fact for which the privilege or failure to answer is claimed, and shall state with particularity the nature of the claimed privilege or reason for failing to answer and shall set forth the statute, rule, decision or other basis for the assertion of the privilege or failure to answer.

14.     "Identify," when used in reference to an individual, shall mean to state his or her full name, present or last known residential address, and present or last known employment position or business affiliation, indicating name of company, job title, employment address, and telephone numbers.

15.     "Identify," when used in reference to a document, shall mean to state, if applicable, the date of the document, the name of the person who prepared the document, the name of the recipient of the document, the subject matter of the document, and the bates number of the document, if produced in this litigation.

16.     Unless otherwise stated, the time period for information sought by these requests extends from January 2005 through the present.

Dated: September 25, 2008

Respectfully submitted,

WHIRLPOOL CORPORATION,
Defendant,

By: _Vanessa H. Heftman_
One of its Attorneys

Brian D. Roche
Jennifer Yule DePriest
Vanessa Martí Heftman
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 207-1000

J. A. Cragwall, Jr.
John J. Bursch
Warner Norcross & Judd LLP
900 Fifth Third Center
Grand Rapids, Michigan 49503
Telephone: (616) 752-2000

*Attorneys for Defendant, Whirlpool
Corporation*

## CERTIFICATE OF SERVICE

 I, Vanessa Martí Heftman, an attorney, hereby certify that copies of **Whirlpool Corporation's Third Set of Interrogatories** were served upon the following counsel of record by *messenger* on this 25th day of September 2008:

    Eric L. Broxterman
    Ronald Y. Rothstein
    Bryna Joyce Roth Dahlin
    David Alexander Latchana
    Shannon Leigh Stevens
    Mary M. Hutchings
    Winston & Strawn LLP
    35 West Wacker Drive
    Chicago, IL  60601

# EXHIBIT B

```
 1                     IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3
     LG ELECTRONICS USA, INC., a     ) Docket No. 08 C 242
 4   subsidiary of LG Electronics,   )
     Inc., a Korean company,         )
 5                                   )
                          Plaintiff,)
 6                                   )
                  vs.                )
 7                                   )
     WHIRLPOOL CORPORATION,          ) Chicago, Illinois
 8                                   ) July 9, 2009
                         Defendant.) 9:11 o'clock a.m.
 9

10               TRANSCRIPT OF PROCEEDINGS - MOTION
                 BEFORE THE HONORABLE AMY J. ST. EVE
11

12   APPEARANCES:

13
     For the Plaintiff:           WINSTON & STRAWN, LLP
14                                BY:  MR. RONALD Y. ROTHSTEIN
                                       MS. BRYNA DAHLIN
15                                35 West Wacker Drive
                                  Chicago, Illinois  60601
16

17   For the Defendant:           REED, SMITH, LLP
                                  BY:  MR. BRIAN D. ROCHE
18                                10 South Wacker Drive, 40th Floor
                                  Chicago, Illinois  60606
19

20   Court Reporter:              MR. JOSEPH RICKHOFF
                                  Official Court Reporter
21                                219 S. Dearborn St., Suite 1232
                                  Chicago, Illinois  60604
22                                (312) 435-5562

23             * * * * * * * * * * * * * * * * * *
                    PROCEEDINGS RECORDED BY
24                  MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED BY COMPUTER
25
```

1          THE CLERK:   08 C 242, LG Electronics vs. Whirlpool

2    Corporation.

3          MR. ROTHSTEIN:   Good morning, your Honor, Ron

4    Rothstein for LG.

5          MS. DAHLIN:   Bryna Dahlin also for LG.

6          MR. ROCHE:   Good morning, your Honor, Brian Roche for

7    Whirlpool Corporation.

8          THE COURT:   Good morning.

9          I have several things before me.

10          I guess my first question that, I think, will dictate

11    at least some of the issues, Mr. Roche, when you moved to

12    dismiss your counterclaims, was it all of the pending

13    counterclaims.

14          MR. ROCHE:   Yes.

15          THE COURT:   That is what I thought.

16          Now, LG has filed a motion for fees and costs as a

17    prevailing party as to that.  Do you want to respond?

18          MR. ROCHE:   Yes, your Honor.

19          Could we have two weeks?

20          THE COURT:   You may.

21          MR. ROCHE:   Or actually, could we have the end of

22    that week, whatever that would be, to the Friday that is two

23    weeks from this Friday?  So, when is that?

24          THE CLERK:   July 24th?

25          MR. ROCHE:   Yes.

1          THE COURT:  July 24th.

2          I do not think I need a reply on that one.  So, I am

3     not going to set a reply date.  If I feel like I do, I will

4     issue a minute order or let you know when you are here on the

5     29th, if that date stands.

6          The motion to compel documents on the privilege log,

7     you will get an answer on that soon -- or a ruling on that.

8          I have two other -- or three other -- motions.  I

9     have two motions to exclude expert reports that were filed by

10    Whirlpool, and I have Whirlpool's motion for leave to conduct

11    limited discovery.

12         Let us talk about the expert motions first.  I know,

13    I think, you contacted Katie and said you did not want to go

14    forward with those at this point.  Is that --

15         MR. ROTHSTEIN:  We've also filed an objection, your

16    Honor.

17         THE COURT:  Okay.  I did see that.

18         MR. ROTHSTEIN:  Yeah.

19         THE COURT:  I did see that.

20         Explain to me a little more clearly what your

21    objection is to going forward on those.

22         MR. ROTHSTEIN:  Well, first of all, we pointed out

23    that this was in violation of your Honor's standing order.

24    Your standing order says that motions in limine must be filed

25    with the pretrial order.  We relied on that, your Honor.  We

1    would have --

2          THE COURT:  But the expert motions -- motions to

3    strike experts are not necessarily motions in limine.

4          MR. ROTHSTEIN:  It's a --

5          THE COURT:  I do not know if you styled them as a

6    motion in limine, but --

7          MR. ROTHSTEIN:  They're Daubert motions.

8          THE COURT:  Yeah.  Those -- I did not --

9          MR. ROTHSTEIN:  Daubert motions, to me, are -- we

10   cited a case even where you call a Daubert motion an in limine

11   motion.  That's always been my --

12         THE COURT:  I see them separately.  They certainly

13   can be, but I usually -- I have not given you Daubert dates

14   yet.

15         MR. ROTHSTEIN:  Right.

16         THE COURT:  I have not said one way or the other.

17         I usually do those before.  And I think they have

18   already been -- well, I usually do those before the Final

19   Pretrial Order and motions in limine so in case we have to

20   have a hearing --

21         MR. ROTHSTEIN:  Well --

22         THE COURT:  -- I can do that before the hearing.  So,

23   I am not persuaded by that argument.

24         MR. ROTHSTEIN:  Okay.

25         Well, I think the thrust of the argument, though,

1    your Honor, is that it's untimely in the sense that we would

2    have filed Daubert motions, as well.  And we would have filed

3    Daubert motions and, then, moved for summary judgment on the

4    basis of those Daubert motions, just like Whirlpool did; but,

5    we were expecting that they would be scheduled as part of, you

6    know, the regular schedule; that you'd probably conduct a

7    hearing on the Daubert motions; that we'd likely be able to

8    present our expert in connection with the Daubert motion.

9         And it just seems to us that when you predicate a

10   summary judgment motion on expert issues like this, that it

11   just really doesn't make sense.  I mean, summary judgment

12   should be based on there being no disputed issues of material

13   fact.  We're entitled, as a non-movant, to have all the facts

14   interpreted in our favor.  And as far as we're concerned,

15   predicating a motion on all of these expert issues just

16   doesn't seem to me to be the appropriate course here.

17        THE COURT:  There is a fairly recent Seventh Circuit

18   opinion, I think, from about two months ago -- and Judge

19   Bucklo was the underlying judge; I cannot remember the name of

20   the opinion -- where it said it is perfectly appropriate to

21   address expert issues in the context of summary judgment

22   motions; and, if a Daubert hearing is needed through the

23   course of it, that is perfectly appropriate.

24        So, the law is -- the Seventh Circuit law works

25   against your argument there.

```
 1              I am going to set a briefing schedule on those.

 2              If I hear you correctly, Mr. Rothstein, you are

 3    saying you may have Daubert motions, as well, which is a

 4    separate issue; and, I certainly will afford you the

 5    opportunity to file Dauberts, if you wish to do so.

 6              MR. ROTHSTEIN:  Well, your Honor, we'd like the

 7    opportunity to address all of the Daubert issues together

 8    because, I mean, you know, we should have the opportunity to

 9    bring up their expert issues, as well --

10              THE COURT:  Absolutely.

11              MR. ROTHSTEIN:  -- in defending our summary judgment

12    motion --

13              THE COURT:  Well, I will --

14              MR. ROTHSTEIN:  -- if that's deemed appropriate.

15              THE COURT:  I will give you time on the Daubert.  If

16    you are saying you should have filed a summary judgment with

17    expert issues, the law is out there.  Do not suggest that you

18    have been wronged somehow --

19              MR. ROTHSTEIN:  No, I'm not.

20              THE COURT:  -- because you did not --

21              MR. ROTHSTEIN:  No, I'm not.  I'm saying --

22              THE COURT:  -- know that that was appropriate --

23              MR. ROTHSTEIN:  No, no.

24              THE COURT:  -- to do.

25              MR. ROTHSTEIN:  In opposing -- I'm saying in opposing
```

1      -- the summary judgment motion, we may want to bring up

2   Daubert issues, as well.

3              THE COURT:  Your own or respond to theirs?

4              MR. ROTHSTEIN:  Well, we'd want to respond to theirs,

5   but we'd like to address the inadmissibility of their expert

6   issues, as well.

7              THE COURT:  And that -- if you certainly need to do

8   that in responding to the summary judgment motion, nothing

9   precludes you from doing that.

10             MR. ROTHSTEIN:  Right.

11             THE COURT:  And I have given you a briefing schedule

12  already on that.

13             MR. ROTHSTEIN:  Right.

14             THE COURT:  I am going to give you a briefing

15  schedule on their motion to strike the experts.

16             Three weeks, is that sufficient to respond?

17             MR. ROTHSTEIN:  Your Honor, again, we -- here's the

18  issue that we're confronting.  We've got 80 responses to their

19  statement of facts.  We've got our own statement of facts to

20  prepare.  We've got --

21             THE COURT:  I am just asking you how much time you

22  need.  How much time would you like?

23             MR. ROTHSTEIN:  We were originally envisioning 45

24  days on the summary judgment motion to have an opportunity to

25  respond.

1        THE COURT:  I have already set a briefing schedule on

2    the summary judgment motion, which gave you about 30 days from

3    the time it was filed.

4        MR. ROTHSTEIN:  Right.

5        THE COURT:  I am asking now on the motions to strike

6    how much time you think --

7        MR. ROTHSTEIN:  I think we need about 30 days after

8    the due date for the summary judgment motion.

9        THE COURT:  Okay.

10       Respond to the expert motions to strike by August

11   24th, and then reply -- two weeks later would be Labor Day, so

12   I am not going to schedule it then.  Reply by September 10th.

13       And if I need a Daubert hearing on the motions, I

14   will let you know after I have seen the briefing schedule.  I

15   cannot really determine that.

16       If you feel that you need to raise Daubert issues or

17   challenge experts in connection with the summary judgment

18   motion, then nothing precludes you from doing that, either via

19   separate motion or in response to the summary judgment

20   referring to a separate motion.

21       MR. ROTHSTEIN:  I understand.

22       I think the bigger point that I was making is that we

23   envision that the Daubert issues would be dealt with on a

24   consolidated basis and that's how we wanted to proceed on

25   that.  And we do have Daubert issues.  We thought it would

1     make more sense to deal with them all together.  And I think
2     that's what my point was.
3          THE COURT:  I cannot necessarily agree with that
4     broad statement.  I do not know enough about whether here --
5     and likely they will all get taken up somewhat together.  So,
6     I have given you your briefing schedule.  If you want me to
7     give you a deadline for filing your own Daubert motions, I can
8     certainly do that.
9          MR. ROTHSTEIN:  Well, I mean, you know, as far as
10    we're concerned, we'd like to think about that and contact the
11    Court.  I just -- you know, I was expecting there to be a
12    Daubert schedule and we were going to proceed on that basis.
13    I assume there still will be a Daubert schedule regardless.
14         THE COURT:  Which is what I am asking you.
15         Here is what I am going to do.  I am going to strike
16    your July 29th status and set the status over for August 6th.
17    That way, you will have responded to the summary judgment
18    motion at that point, and we can talk about other Daubert
19    issues.  If you file any motions in connection with the
20    summary judgment on Daubert issues, you can notice them for
21    the 6th and I will take them up then.  Otherwise, I will take
22    up a Daubert schedule, if you wish to file one, at that point.
23         MR. ROCHE:  The schedule that you've set for our
24    motions still stands?
25         THE COURT:  Absolutely.

1          MR. ROCHE:  The expert motions?

2          THE COURT:  Absolutely.

3          Okay.  The last motion I have is Whirlpool's motion

4   for leave to conduct limited discovery.

5          I am not sure -- part of what you are basing this on

6   is testimony from witnesses saying they do not know if things

7   still exist.  LG is under an obligation to supplement

8   responses.  I assume they have gone back and checked.

9          MR. ROTHSTEIN:  Numerous times.

10          THE COURT:  Have you put in writing that you have

11   produced everything that you are aware of that is responsive?

12          MR. ROTHSTEIN:  You mean in the form of a response to

13   a document request?

14          THE COURT:  Or a letter or --

15          MR. ROTHSTEIN:  I think so.

16          MR. ROCHE:  Your Honor, here's --

17          MR. ROTHSTEIN:  We have numerous times.

18          MR. ROCHE:  Here's the practical problem we face.  At

19   trial, it's very difficult to prove the absence of something

20   based on document responses and responses to interrogatories

21   that have pages and pages of objections and qualifying

22   language and refusals to answer questions directly.

23          We then engaged them in a back-and-forth after these

24   documents came, asking them for an explanation.  They refused

25   to give it to us.  They did not give us -- they didn't answer

```
 1    any of our questions about whether the documents exist or
 2    whether they were destroyed.  They refused to answer them.
 3    So, then we said we need witnesses.  And we got a witness --
 4         THE COURT:  Which particular documents are you
 5    talking about?
 6         MR. ROCHE:  We --
 7         THE COURT:  There are various things --
 8         MR. ROCHE:  Yes.
 9         THE COURT:  -- that are the subject of the motion.
10         MR. ROCHE:  What we have, we have an open question
11    about whether they have done additional testing of the
12    Whirlpool dryer performance on wrinkle relaxation and odor
13    removal, where there was testing done and they haven't
14    produced documents.
15         Now, their position is they've produced all the
16    documents.  That's what the lawyers say.  The witnesses'
17    testimony is either ambiguous or directly contradictory of
18    that.
19         THE COURT:  And is this -- I am sorry, go ahead.
20         MR. ROCHE:  So, what we have is a contradiction.  So,
21    if we tried to establish at trial that they conducted testing
22    of documents and never produced them, we do not have complete
23    proof.  We would be subject to rebuttal.  I don't know
24    where -- some witness could come in -- or any witness that
25    they have could come in -- and say, "We never did the
```

 1   testing."

 2          Well, we have ambiguity because the lawyers haven't

 3   confirmed that they have either produced the documents or that

 4   the documents existed at one time and no longer exist.  We

 5   have a witness that says they existed, and we don't have them.

 6          THE COURT:  Why do you not -- I am going to direct LG

 7   to supplement its testing interrogatory response to identify

 8   all testing documents and the subject matter of the testing.

 9          MR. ROTHSTEIN:  Your Honor --

10          THE COURT:  And if you have already produced

11   everything, put that in writing.

12          MR. ROTHSTEIN:  We did, and we put that into our

13   interrogatory response, as well.

14          I don't understand what Mr. Roche just said.

15          THE COURT:  If that is in the interrogatory response,

16   that they have produced everything, what else --

17          MR. ROCHE:  Your Honor, if I had the interrogatory

18   response in front of me -- we could give you a supplemental

19   submission.  You read it and you could see.  Do we have the

20   ability to prove anything out of that?  We can't because of

21   the way they have answered.  They won't answer directly.

22          MR. ROTHSTEIN:  No, your Honor.  We put 80 tests, I

23   believe, into our interrogatory responses.

24          THE COURT:  Are those all testing documents?  Did you

25   identify all --

1         MR. ROTHSTEIN:  We identified all the documents and

2  all the testings by Bates number.

3         MR. ROCHE:  But what they haven't identified is

4  the -- where are the documents?

5         MR. ROTHSTEIN:  They're in the production.

6         THE COURT:  They identified by Bates number.

7         MR. ROCHE:  No, no.  Where are the documents that a

8  witness testified exists that they haven't produced?  They

9  have to either tell us those documents no longer exist or that

10  they haven't produced them.  But we have a huge gap.  Your

11  Honor --

12         MR. ROTHSTEIN:  Your Honor --

13         MR. ROCHE:  -- this is -- for this case.

14         THE COURT:  Is this Mr. Bae?  Who --

15         MR. ROCHE:  Yes, Mr. Bae is the one who identified

16  this, but also their 30(b)(6) witness, Mr. Choi, who is also

17  the witness who is in here as a declarant under affidavits.

18  He was their 30(b)(6) witness on testing, and he described

19  multiple kinds of testing that were done and, then, they

20  didn't produce documents to support all of his testing.  So,

21  we have a gap there.

22         THE COURT:  Are there additional documents?

23         MR. ROTHSTEIN:  There's no gap.  Your Honor, we laid

24  out exactly the procedure we went through, in terms of

25  electronic discovery and going through everybody's files; and,

1   we sent that protocol over to Whirlpool.  They commented on it

2   twice.  They blessed it twice.  We did everything they asked

3   us to do.

4          And to the extent that they're asking a witness at a

5   deposition, "Do we have every test that you did?" the witness

6   isn't going to know when we did extensive electronic discovery

7   and we pulled all of these files from electronic databases.

8   How would he have all the knowledge of what Whirlpool's in

9   possession of?  He is not one of the attorneys.

10         But we have done an extensive review and protocol and

11  collection of the data, and we've involved Whirlpool in the

12  process.  We've explained to them exactly what we've done.

13  There was no objection at the time.  This was coming on a year

14  ago.  And we have gone back time after time after time, tried

15  to find more documents that they're requesting and we've come

16  up empty at this point.

17         THE COURT:  Okay.

18         MR. ROTHSTEIN:  And we've identified everything

19  they've asked us to identify in the interrogatory responses.

20         THE COURT:  Here is what I want you to do.  I would

21  like you to supplement just confirming -- and maybe you have

22  done this already, but there seems to be some gap -- that the

23  documents that the 30(b)(6) witness mentioned or Mr. Bae

24  mentioned -- I do not have all that transcript testimony, I do

25  not know how they were mentioned; but, to the extent they

1   exist -- you have produced them.  Just confirm that via

2   interrogatory, letter, some way that that is confirmed.

3               MR. ROTHSTEIN:  I think we've done this about five

4   times, but we'll do it, again.

5               THE COURT:  Do it a sixth --

6               MR. ROTHSTEIN:  Okay.

7               THE COURT:  -- if you have, just to make clear that

8   there is no gaps.

9               MR. ROCHE:  We just want it clear, your Honor,

10  without a lot of qualifying language and objections.

11              MR. ROTHSTEIN:  And, your Honor, if we didn't produce

12  documents as he's alleging, we can't rely on them at trial.

13              THE COURT:  Absolutely.

14              MR. ROTHSTEIN:  So --

15              THE COURT:  Well, I think he does not want any

16  surprises or if they are --

17              MR. ROTHSTEIN:  How --

18              THE COURT:  -- helpful to him.

19              MR. ROTHSTEIN:  But these are --

20              MR. ROCHE:  Your Honor --

21              MR. ROTHSTEIN:  -- fictional documents, so, you know

22  --

23              THE COURT:  Just put it in --

24              MR. ROTHSTEIN:  I understand.

25              THE COURT:  -- the letter -- I do not care what

1    format, letter, interrogatory -- something that you sign --

2          MR. ROTHSTEIN:  Fair enough.

3          THE COURT:  -- that that has been turned over.

4          MR. ROCHE:  Your Honor, on this motion there's one

5    open issue.  I don't think it's in dispute.  The last time we

6    were here, you granted the portion of this motion that would

7    allow us to have additional deposition testimony from Mr. Bae.

8    And you said that --

9          THE COURT:  Yes.

10         MR. ROCHE:  -- had to be -- yeah -- that had to be

11   concluded by this week.

12        It was set to go yesterday and they cancelled at the

13   last minute because he had a personal issue.  So, now our time

14   has ended to take his deposition.  Could we have an extension

15   of that?  It's not been rescheduled until the end of July or

16   the last week in July.  It's not something that should affect

17   the summary judgment motions.

18        MR. ROTHSTEIN:  His father passed away.  So, we just

19   asked that it be put off --

20        THE COURT:  Sure.

21        MR. ROTHSTEIN:  -- until he can have his deposition.

22   We have no problem with that.

23        THE COURT:  Try to do it by July 31st.

24        MR. ROCHE:  We can -- that shouldn't be a problem.

25        THE COURT:  And, you know, if he is not ready at that

1    point and you need to move it out, that is fine with me --

2         MR. ROTHSTEIN:  We understand.

3         THE COURT:  -- if you can mutually agree.

4         MR. ROCHE:  Your Honor, there's one other matter.  On

5    Monday, they filed a fee petition pursuant to your earlier

6    order.

7         THE COURT:  That is the one I set the briefing

8    schedule on, I thought.

9         MR. ROTHSTEIN:  No --

10        MR. ROCHE:  No, they filed two fee petitions.

11        THE COURT:  Oh, thank you.  Thank you.  They did.

12        MR. ROTHSTEIN:  One was pursuant to court order.

13        THE COURT:  They did.

14        I need a response to that, please.

15        MR. ROCHE:  Yes.  Can we just have it be the same

16   date as the other one?

17        THE COURT:  Yes.

18        MR. ROCHE:  The --

19        THE COURT:  So, both Record No. 254 and 258, your

20   response is due July 24th.  That is the petition for award of

21   attorneys' fees and costs and the motion for fees and costs as

22   prevailing party.

23        Now, does that cover everything on the motion for

24   leave to conduct limited discovery?  There were some issues

25   about statistical analysis and --

1    MR. ROCHE:  Well, we've got Mr. Bae's deposition --

2    THE COURT:  Okay.

3    MR. ROCHE:  -- that we're hoping that will deal with.

4    THE COURT:  So, the motion is granted, in limited

5    part, and, it sounds like, denied as moot with respect to the

6    other issues.

7    What about settlement, as long as you are here?

8    MR. ROCHE:  Well, when -- we had made a proposal that

9    when the summary judgment motions were filed -- and they now

10   are -- that would be a time to have a mediation.  And that was

11   turned down.  We reported that last time we were here.  And

12   that's -- as far as I understand, that's the status.

13   MR. ROTHSTEIN:  Your Honor, nothing was turned down.

14   I think we just had some discussions back and forth about the

15   scope of the mediation.  And we hit an impasse.  And I think

16   it was Mr. Roche that withdrew his offer of mediation.

17   MR. ROCHE:  Your Honor, that is absolutely not true.

18   THE COURT:  Okay.  Well, now rather than talking

19   about what was said and what was not said --

20   MR. ROCHE:  Okay.

21   THE COURT:  -- would you like me to refer this to

22   Magistrate Judge Mason?

23   I think, just based on what I have seen, that it

24   might be helpful to you to go sit before an objective person

25   and get an evaluation.

1        I do not care one way or the other.  If you want to

2   go to trial, that is fine with me.  It is going to be

3   expensive, you see already.  You get into Dauberts, that is

4   going to really set the clock ticking and the rates going up

5   with your time, the expert fee time.  It is very expensive

6   going forward.

7        I know this is hotly-contested and there are strong

8   feelings on both sides and you do not necessarily agree on

9   many things at all.  It might be productive for -- to go to

10  Judge Mason and get an objective assessment and see if some of

11  those feelings can be put aside and you can objectively look

12  at this.  If you do not want to, that is --

13       MR. ROTHSTEIN:  I'll talk to my client, your Honor.

14  I have actually successfully mediated in front of Magistrate

15  Mason.  But I --

16       THE COURT:  He is great.

17       MR. ROTHSTEIN:  -- understand his demeanor and I

18  under- -- you know, I've been through the process with him.  I

19  don't know if it would be that productive given where the

20  parties are right now, but we can talk about it.

21       THE COURT:  This is a jury trial, too, right?

22       MR. ROTHSTEIN:  Uh-huh.

23       THE COURT:  The other possibility is to come before

24  me.  I usually refer these because I have so many trials, that

25  it is hard to fit them in.  I will throw that out there.  And

```
 1   I am going to ask you to call Katie by July 24th and let her
 2   know if you would like me to refer it to Magistrate Judge
 3   Mason or schedule one myself.  And if you do not and you want
 4   to go forward with trial, that is fine, too.  But we are going
 5   forward.
 6           I will see you on August 6th.  Remember, I am
 7   striking July 29th, so you do not have to come back on the
 8   29th.
 9           MR. ROCHE:  That's the normal 8:30 wake-up call?
10           THE COURT:  Yes.  I am putting you at the end of
11   my -- I can even make it 8:45 or 9:00, if you like.  I put you
12   at the end because you usually need the time, and I do not
13   want to short you on the time or make everybody else --
14           MR. ROCHE:  We appreciate that.
15           THE COURT:  -- sit through a half hour.
16           Let me just check.
17           (Brief pause.)
18           THE COURT:  I will put you at 9:00 o'clock on the
19   6th.  Does that work all right or would you --
20           MR. ROCHE:  Yes, your Honor, that's fine.
21           THE COURT:  Because if I put you at the end of the
22   8:30, that is about when you usually get in anyway.  So, I
23   will put you at 9:00 on the 6th.
24           MR. ROCHE:  Thank you, your Honor.
25           THE COURT:  Anything else?
```

1          (No response.)

2          MS. DAHLIN:   Thanks.

3                              *     *     *     *     *

4

5     I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.
6

7
      /s/ Joseph Rickhoff                    July 28, 2009
8     Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **LG ELECTRONICS U.S.A., INC.,** | ) | |
| **a subsidiary of LG Electronics, Inc.,** | ) | |
| **a Korean company,** | ) | **Civil Action No. 08 C 242** |
| | ) | |
| **Plaintiff,** | ) | **Judge St. Eve** |
| | ) | |
| v. | ) | **Magistrate Judge Mason** |
| | ) | |
| **WHIRLPOOL CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF LG ELECTRONICS U.S.A., INC.'S SUPPLEMENTAL RESPONSES TO WHIRLPOOL CORPORATION'S THIRD SET OF INTERROGATORIES

Plaintiff LG Electronics U.S.A., Inc. ("LG USA"), by its undersigned counsel, Winston & Strawn LLP, hereby supplements its responses to Defendant Whirlpool Corporation's ("Whirlpool") Third Set of Interrogatories.

## GENERAL OBJECTIONS AND RESPONSES

The following General Objections and Responses apply to all the numbered interrogatories, and the General Objections and Responses shall be deemed continuing as to each interrogatory and are not waived, or in any way limited, by the specific objections and answers.

1. LG USA objects to the interrogatories, including the "Instructions and Definitions" therein, to the extent that Whirlpool seeks to require LG USA to provide information beyond that required by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Illinois, and/or any applicable rules of this Court.

2.     LG USA objects to Whirlpool's interrogatories as vague, overly broad and unduly burdensome to the extent they seek to elicit information that is not reasonably calculated to lead to the discovery of admissible evidence.

3.     LG USA objects to Whirlpool's interrogatories to the extent they seek to elicit information protected by the attorney-client privilege, attorney work product doctrine, or any other available privilege or immunity.

4.     By providing answers to Whirlpool's interrogatories, LG USA does not admit the relevance of such information to the subject matter of this litigation. Further, by providing answers to Whirlpool's interrogatories, LG USA is not waiving any applicable privileges nor shall the inadvertent disclosure of any privileged information operate as a waiver of any applicable privilege or immunity.

5.     LG USA objects to Whirlpool's interrogatories to the extent they seek information that is not within LG USA's possession, custody or control.

6.     LG USA expressly reserves the right to supplement these responses and objections with further additional information and documents as such information and documents become available to it in the course of the litigation.

## SPECIFIC OBJECTIONS AND RESPONSES

**1.     Identify all testing performed on any LG steam washer and dryer, any Whirlpool steam washer and dryer, and any other competitor's steam washer and dryer. For each instance of testing, identify when the testing occurred, who performed the test, where the test was performed, the machine on which testing was performed (by brand, model and product number), the protocols used for such testing, the results of such testing (including any comparisons of test results), the lead person from LG responsible for such testing, and all documents (by bates-number) that relate to each instance of testing.**

2

**RESPONSE:**

LG USA objects to Interrogatory No. 1 on the grounds that it is vague, compound and overly broad. LG USA further objects that this interrogatory seeks information related to products not at issue in this litigation. LG USA further objects on the grounds that the term "protocols" is vague and ambiguous. Subject to these specific objections and its General Objections, and without waiving them, LG USA states as follows:

| Documents/Protocols Relating to Test | Name of Test | Persons/Entries Performing Test | Location of Test | Date of Test |
|---|---|---|---|---|
| LG069358 | Steam course test of Electrolux Iron Aid (Dryer) | Choi, Chul Jin | DAC Lab. | Mar. 2007 |
| LG072571 | Input Power & Max Temperature | Bae, Sang Hun Choi, Chul Jin | DAC Lab. | Oct. 2007 |
| LG069351 | Reduce static (Comparison), Easy iron (LG), Power (Comparison) | Bae, Sang Hun Kim, Min Ji (Easy Iron) Choi, Chul Jin | DAC Lab. | Oct. 2007  July 2007 (Easy Iron) |
| LG071444 | Sanyo steam washer study | LG WM Division MD Group member | LG WM Division | Aug. 2004 |
| LG071468 | Performance comparisons | Yoon Joo Hawn Bae, Sang Hun Choi, Chul Jin | LG WM Division | Aug. 2007 (Photos)  Nov. 2007 (Data) |
| LG072029 | Photos of Kenmore HE5 | Yoon Joo Hawn Bae, Sang Hun Choi, Chul Jin | LG WM Division | Aug. 2007 |
| LG070083 | Operation Algorithm Analysis | Ji Yoo Chol | DA Lab.(seoul) | Dec. 2007 |

| LG045121; LG070035; LG070042; LG070049; LG070056; LG070065; LG070075 | Wrinkle Release | Choi, Chul Jin Bae, Sang Hun Kim, Dong An (LGE)  INTERTEK | LGE Quality Assurance Department, Washing Machine Div. | Oct. 2007 |
|---|---|---|---|---|
| LG045094 | Odor | Ulsan Univ. (Prof. Yang, Sung Bong)  INTERTEK | Ulsan Univ. | Oct. 2007 |
| LG045111 | Static Charge | Choi, Chul Jin Bae, Sang Hun Kim, Dong An (LGE)  INTERTEK | LGE Quality Assurance Department, Washing Machine Div. | Sept. 2007 |
| LG045093 | Easy Iron | Choi, Chul Jin (LGE)  Bae, Sang Hun (LGE) | LGE DAC Lab In Changwon | First Half of 2007 |
| LG005647, LG007256 | LG Steam Dryer Field Test | Matthew Nygren, Underwriters Laboratories, Dong-An Kim (LGE); | Chicago | September, 2007 |
| LG045118 | Uniformity Test of Steam Spraying and Drying | Choi, Chul Jin (LGE)  Bae, Sang Hun (LGE) | LGE DAC Lab In Changwon | June-July 2007 |
| LG006542 | SteamWasher Wrinkle and Odor test | | LG and Ulsan Dept. of Chemistry Lab | |
| LG010061 | Performance test of LG SteamWasher | Kim Dong-An, INTERTEK | Seoul, Korea | November, 2005 |
| LG010078; LG10090 | Performance test of LG | Kim Dong-An, INTERTEK | Seoul, Korea | December, 2005 |

| | SteamWasher | | | |
|---|---|---|---|---|
| LG048067 LG048074; LG048077; LG048081; LG048083; LG048085; LG048086; LG048090; LG048095 | Design and testing of Injection System of LG Steam Generator | LG | LG WM division | 2005 |
| LG048100; LG048118; LG048130; LG048138; LG048153; LG048230; LG048619; LG048620; LG048630; LG048632; LG048638; | Landmark / Alpha Generator Design and testing | LG | LG WM Division | 2005 |
| LG049183 | LG Electronics discovery Steam Dryer Presentation and testing results | LG | LG WM Division | May 21, 2007 |
| LG051771 | ITS Test Results – Washer Comparison | ITS-Korea | ITS-Korea | |
| LG056146 | Wrinkle Removal and Danish wear (Gentelness) test | Intertek Testing Services, Korea; Kyu Sang, Yi (FITI Testing); John J. Park (INTERTEK Korea) | Korea | December, 2005 |
| LG056204; LG056206 | Comparative testing of LG and Whirlpool spray time, static reducing ability and | LGE Internal | Korea | |

| | energy use | | | |
|---|---|---|---|---|
| LG057780;<br>LG072954 | Performance<br>test of LG<br>Steam Washer | Kim Doong-An<br>(Intertek) | Korea | November,<br>2005 |
| LG057797 | Performance<br>test of LG<br>Steam Washer | Kim Doong-An<br>(Intertek) | Korea | December,<br>2005 |
| LG058257 | ITS & Energy<br>Star data | ITS – Korea | Korea | November,<br>2005 |
| LG070035 | Performance<br>Test of LG<br>SteamWasher | Ulsan<br>University,<br>Intertek,<br>coordinated by<br>J.H. Yoon | Ulsan,<br>Korea | November,<br>2007 |

In addition to the above listed documents and in accordance with rule 33(d), the following documents are responsive to Interrogatory No. 1: LG069351; LG069374; LG069516; LG069653; LG069902; LG070089; LG070194; LG070256; LG070365; LG070462; LG070560; LG070652; LG070750; LG071008; LG071393; LG071410; LG071427; LG071468; LG071474; LG071546; LG071647; LG071741; LG071885; LG072034; LG072181; LG072427; LG072571; and LG072971.[1] LG USA has repeatedly stated that it has produced and identified all documents that are responsive to this interrogatory. *See* 3/6/09 letter to Ms. DePriest; 3/11/09 letter to Ms. DePriest; 3/16/09 letter to Ms. DePriest; and 3/20/09 letter to Ms. DePriest. LG USA has conducted several exhaustive searches for responsive documents to this request. To the extent any documents were created responsive to this request, they have been searched, reviewed and produced to Whirlpool.

---

[1] Each bates number refers to the first page of each document.

Dated:  August 6, 2009

Respectfully submitted,

**LG ELECTRONICS U.S.A., INC.**

By:  <u>  Eric Broxterman    </u>
       One of its attorneys

Ronald Y. Rothstein – rrothstein@winston.com
Eric L. Broxterman – ebroxterman@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600 – telephone
(312) 558-5700 – facsimile

*Counsel for LG Electronics U.S.A., Inc.*

7

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **Plaintiff LG Electronics U.S.A., Inc.'s Supplemental Objections and Responses to Whirlpool Corporations' Third Set of Interrogatories** has been served on the following counsel of record via electronic mail this 6th day of August, 2009.

Brian D. Roche – broche@reedsmith.com
Jennifer DePriest – jdepriest@reedsmith.com
Vanessa C. Martí – vmarti@reedsmith.com


____Eric Broxterman____
One of LG USA's Attorneys

8