**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LG ELECTRONICS U.S.A., INC., ) <br>    a subsidiary of LG Electronics, Inc., ) <br>    a Korean company, ) <br> ) <br>             Plaintiff, ) <br> ) <br>             v. ) <br> ) <br> WHIRLPOOL CORPORATION, ) <br> ) <br>             Defendant. ) | Civil Action No. 08 C 242 <br><br> Judge St. Eve <br><br> Magistrate Judge Mason |

**PLAINTIFF'S RESPONSE TO WHIRLPOOL'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF DR. JUDITH LEVI**

## **INTRODUCTION**

Whirlpool hired Dr. Judith Levi, an expert in linguistics, to render a sworn declaration under penalty of perjury on probative issues in support of its case. In that sworn declaration, she stated she found that the noun *steam* can have two different senses, or meanings: one is *visible* steam and the other is *invisible* steam. Levi Decl. at ¶¶37-39 (Dkt. 53). First, she opined that visible steam is the "visible phenomenon whose visibility is a function of the (necessarily non-gaseous) water droplets within it." *Id.* at ¶ 38. Second, she opined that invisible steam denotes the invisible gas which is formed when water is heated to or beyond the boiling point. *Id.* at ¶ 39.

At Whirlpool's request, Dr. Levi considered whether another "intermediate" meaning of steam exists, one that would include "vapor arising from a heated substance" or invisible evaporation. Levi Dep. at 95:12-16, PX 487 (Ex. A, C to Whirlpool Mot.). Her conclusion was "that any 'intermediacy' is going to be a function of temperature and humidity, i.e., of environmental conditions—and NOT of distinct senses of the noun steam." *Id.* at 102:17-21, PX 487. She continued, "the situations in which water molecules are dense enough to give a human observer a sense of moisture, but not cold enough to be seen is not one that ordinary people would isolate with a particular *noun* [steam]." *Id.* at 101:3-7. Thus, Dr. Levi rejected the notion that invisible, non-technical steam can exist—such as Whirlpool's invisible "vapor arising from a heated substance." This is the sole nexus to which Whirlpool ties its defense to the Lanham Act literal falsity claim. Now, Whirlpool seeks to hide this damaging evidence through its misapplication of Rule 702 and 403 standards.

If Whirlpool really feared unfair prejudice from Dr. Levi's testimony and the injection of "irrelevant" evidence, it should have moved this Court for a protective order when Dr. Levi's

deposition was noticed. But Whirlpool did not oppose the deposition of Dr. Levi or the production of her materials in discovery, because it knew her testimony was relevant to the issues in this case, and otherwise admissible.

## **ARGUMENT**

In the American system of justice, trials are held to ascertain the truth. *See* Fed. R. Evid. 102. Keeping that goal in mind, a trial court should only exclude evidence when it lacks relevance or when its probative value is substantially outweighed by the danger of unfair prejudice that would induce the jury to decide the case on an improper basis. Fed. R. Evid. 402; 403, *U.S. v. Bogan*, 267 F.3d 614, 623 (7th Cir. 2001). The bulk of Whirlpool's Motion is spent arguing that Dr. Levi's opinion regarding an "intermediate" definition of steam should not be presented at trial because it purportedly lacks relevance and is unhelpful to the jury. Whirlpool also argues that LG should be precluded from calling Dr. Levi at trial because the fact that Whirlpool retained her would be unfairly prejudicial. Dr. Levi's testimony does not lack relevance to issues before this Court, nor will it cause any unfair prejudice to Whirlpool. Therefore, this Court should reject Whirlpool's attempt to exclude Dr. Levi from testifying in this case.

### I. Dr. Levi's Testimony Is Relevant To Material Issues of Fact In This Case.

Whirlpool's argument that Dr. Levi's testimony is not relevant and will not assist the trier of fact is belied by Whirlpool's own conduct in retaining her and relying on her opinion. This case deals with Whirlpool's false advertising regarding its claims that its dryers are *steam* dryers. Dr. Levi is an expert in the meaning of words. Levi Decl. at ¶6. Dr. Levi's opinions were injected into this litigation through a sworn declaration in an effort to show LG could not prevail. Thus, the meanings that normal people ascribe to the noun *steam* is a fact in issue in this case and

2

all of Dr. Levi's opinions, and the materials that informed those opinions, are relevant to the issue of what meanings normal people ascribe to the noun *steam*.

Her opinions were that in one sense of the meaning of *steam*, visible steam is the "visible phenomenon whose visibility is a function of the (necessarily non-gaseous) water droplets within it," and that in another sense of the meaning of *steam*, invisible steam denotes the invisible gas which is formed when water is heated to or beyond the boiling point. Levi Decl. at ¶¶38-39. Through discovery, to which Whirlpool did not object or seek to protect, LG uncovered that Dr. Levi considered, at Whirlpool's request, whether another "intermediate" meaning of steam exists in addition to the two discussed above, one that would include "vapor arising from a heated substance" or invisible evaporation. In reliance on her experience as a linguist and her prior research in reaching her opinions on visible and invisible steam, Dr. Levi stated she "would be astonished if laypeople distinguished more than two kinds of physical phenomena denotable by the noun *steam*, i.e., if they would define *steam* as having more than two senses." Levi Dep. at 100: 19-23, PX 487. Thus, Whirlpool's assertion that Dr. Levi formed <u>no opinion</u> regarding the existence of an intermediate sense of steam is false. *See* Defs.' Mtn. at 4.

When asked why she had not included this opinion in her sworn declaration after explaining she did not believe Whirlpool's position had merit, Dr. Levi stated that she was not asked to perform further research on the "intermediate" meaning of *steam*. *See* Levi Dep. at 110:5-11. The clear import of the evidence is that because Dr. Levi voiced an opinion that clearly negated Whirlpool's assertions that normal people ascribe the "vapor arising from a heated substance" meaning to steam, she was discouraged from pursuing it and placing it in her sworn declaration. Thus, that her opinion regarding "vapor arising from a heated source" did not make it into Levi's sworn declaration is not surprising. Its absence from the sworn declaration is no

3

justification for excluding it from the jury, as it was an opinion she did make in this matter.

## II. Dr. Levi's Thoughts on an Intermediate Sense of Steam Are Party-Opponent Admissions

Rule 801(d) provides for the admissibility of experts' reports, such as Levi's sworn declaration and her deposition testimony as party-opponent admissions. *See Collins v. Wayne Crop.*, 621 F.2d 777, 781-82 (5th Cir. 1980); *Samaritan Health Ctr. v. Simplicity Health Care Plan*, 459 F. Supp. 2d 786, 799 (E.D. Wis. 2006). In *Collins*, the plaintiffs attempted to offer an expert's deposition into evidence as an admission of the defendant who had been employed by the defendant to investigate and analyze an accident, which was the focus of the litigation. 621 F.2d at 781-82. The defendant had previously furnished the expert's report to the plaintiffs. *Id*. The court held that the expert was an agent because he was an employee of the defendant and thus the deposition testimony was a party-opponent admission of the defendant's. *Id*. Similarly, in *Samaritan*, the court found an expert's report that had been proffered by a party in its case against the party attempting to use it as evidence against the original party was admissible under all of the subsections of Rule 801(d) as either "a statement of which the party has manifested an adoption or belief in its truth," "a statement by a person authorized by the party to make a statement concerning the subject," or "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." 459 F. Supp. 2d at 799 (citation omitted).

Whirlpool allowed LG to take her deposition and review her materials. The opinions expressed by Dr. Levi in her sworn declaration were expressly adopted by Whirlpool through its retention of and reliance on her in this litigation in conformance with 801(d)(2)(C). Whirlpool entered Dr. Levi's sworn declaration into this litigation to directly respond to the opinions expressed by LG's expert, Dr. Jacobi. *See* Levi Dep. at 34:14-17, 58:23-59:5, 75:5-9, 92:21-23.

4

Similarly, those opinions that were kept out of Dr. Levi's sworn declaration, *see id*. at 109:19-21, 110:5-11, are admissible under 801(d)(2)(D) over any attempt of Whirlpool to claim it did not adopt them.

### III. Federal Rule Of Evidence 702 Does Not Bar Dr. Levi's Testimony.

This Court should reject Whirlpool's attempt to cloak the issue of whether Dr. Levi's opinions are to be properly admitted to the jury in a *Daubert* analysis. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Whirlpool had no issue whatsoever with Dr. Levi's opinions when she issued her sworn declaration. However, it now realizes Dr. Levi's opinions make clear, in her experience, that everyday people would not ascribe meanings to the noun steam beyond the visible and invisible steam mentioned in her Declaration. *See* Levi Decl., at ¶¶ 38-39. Whirlpool contends that since Dr. Levi was discouraged from doing further research on her opinion concerning an "intermediate" meaning of *steam*, her opinion should be excluded. Dr. Levi's opinion was informed by her specialized knowledge due to her extensive qualifications as a linguist and the research she had performed. Indeed, it is obvious from the context of her statement ("I would be astonished….") that her opinion was so based.

Furthermore, this is not a case where an expert formed an opinion on unobserved data. Dr. Levi formed her opinion after she had observed the data she utilized in forming her first two opinions. Levi Dep. at 100:8-11. She wrote: "I have not observed any data that suggests that the noun steam is used with more than two senses to describe physical phenomena." *Id*. Whirlpool should not be rewarded for being savvy enough to recognize it was not in its best interest to allow Dr. Levi to further her research or reexamine her data and thus suppress an obviously harmful opinion to its defense of the literal falsity theory of the case. Reexamination and further testing are not prerequisites to the admissibility of Dr. Levi's opinion. Whirlpool's

5

argument only speaks to the weight that should be given Dr. Levi's opinion by the trier of fact, not to its admissibility. *See AHP Subsidiary Holding Co. v. Stuart Hale Co.,* 1 F.3d 611, 618 (7th Cir. 1993) (holding that any "shortcomings in the [expert evidence] go to the proper weight of [that evidence] and should be evaluated by the trier of fact").

### IV. Dr. Levi's Testimony Will Not Result In Any Unfair Prejudice To Whirlpool.

Courts engage in a balancing of interests under Federal Rule of Evidence 403 when determining whether to allow a party to call an expert witness to testify once retained by the opposing party. *See, e.g., Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 461 (S.D.N.Y. 1995), *Agron v. Tr. of Columbia Univ. in City of New York*, 176 F.R.D. 445, 450 (S.D.N.Y. 1997). In undergoing the analysis, courts should remain mindful of the fundamental point of a trial, which is to ascertain the truth at trial. *See Agron*, 176 F.R.D. 445 (S.D.N.Y. 1997). To that end, extensive research has confirmed that there is no *per se* rule excluding the testimony of experts once retained by opposing parties. *See, e.g.*, *Peterson v. Willie*, 81 F.3d 1033, 1037 (11th Cir. 1996) (noting the different approaches courts have taken to this situation); *Seeber v. Howlette*, 586 N.W.2d 445, 449 (Neb. 1998). While some courts have excluded such testimony, others have allowed it, and have even allowed the issue of original retention of the expert to reach the jury upon the plaintiff's presentation of its case. *Borges v. Seabulk Intern. Inc.*, No. 3:04CV324, 2010 WL 1571186, at *1 (D. Conn. Apr. 12, 2010); *Broward Co. v. Cento*, 611 So.2d 1339, 1339-40 (Fla. Dist. Ct. App. 1993); *Fenlon v. Thayer*, 506 A.2d 319, 322 (N.H. 1986).

In *Rubel*, the district court concluded that the cumulative nature of the expert's testimony along with prejudice it thought would inure to the party who had originally retained the expert outweighed the legitimate interests in allowing the testimony to go before the jury. 160 F.R.D. at 462 (S.D.N.Y. 1995). *Rubel* is inapplicable to this case. First, Dr. Levi is the only linguist who

6

will testify at trial and she is the author of her sworn declaration, thus she possesses unique evidence relevant to issues in this case. Therefore, there is no issue of her testimony being cumulative, which the *Rubel* court noted was determinative in its conclusion to exclude the testimony. *Id.* at 460-61.

Second, the prejudice that the *Rubel* court identified as being "explosive" has been rejected by other courts as not being any more prejudicial than the normal situation where juries assume an expert is retained by the party offering its testimony. *See, e.g.*, *Fenlon*, 506 A.2d at 323 (N.H. 1986) (expert's retention goes to the weight and credibility of her testimony and is thus a routine matter for the jury to decide); *Cogdell v. Brown*, 531 A.2d 1379, 1382 (N.J. Super. Ct. Law Div. 1987). The Seventh Circuit has explained that evidence is unfairly prejudicial only when it will induce the jury to decide a case on an improper basis. *Bogan*, 267 F.3d at 623. Evidence that informs a jury of a witness's credibility and bias is not an improper basis upon which a jury assesses testimony. Thus, this Court should adopt the reasoning that has guided courts to allow evidence of the expert's retention because it bears on the expert's credibility and lack of bias, which juries routinely assess. *See*, Stephen D. Easton, *Red Rover, Red Rover, Send That Expert Right Over: Clearing The Way For Parties To Introduce The Testimony Of Their Opponents' Expert Witnesses*, 55 SMU L. Rev. 1427, 1481-85 (2002) (calling for courts to recognize the probative value of an expert's retention and noting rulings excluding such evidence disregard the general admissibility of bias evidence).

Lastly, Whirlpool summarily cites a concern that allowing an expert to testify for the opposing party would be unfair because it would allow that party to reap the benefits of the other party's effort and expense. See Defs.' Mot. at 9 citing *U.S. v. Cinergy Corp.*, No. 1:99-cv-1693, 2009 WL 1124969, at *2 (S.D. Ind. 2009). The *Cinergy* court concern originates from the *House*

7

decision. *Id.* (citing *FMC Corp. v. Vendo Co.*, 196 F. Supp. 2d 1023, 1043-44 (E.D. Cal. 2002) (citing *House*, 168 F.R.D. at 241)). As discussed earlier, the *House* court allowed the expert of the opposing party to testify. 168 F.R.D. at 248. The clear import of the *House* decision is that once a party has injected an expert's report into litigation and allowed that expert to be deposed, it should not be heard to claim the opposing party cannot be allowed to make use of that expert or her materials on grounds of freeloading. *See id.* at 245. Dr. Levi's sworn declaration, deposition testimony, and other materials have been made available to LG and have been utilized extensively already in this litigation. Therefore, Whirlpool should not now be heard to complain that LG's use of Dr. Levi is freeloading.

## **CONCLUSION**

For the foregoing reasons, LG respectfully urges this Court to deny Whirlpool's Motion *In Limine* to Exclude The Testimony of Dr. Judith Levi.

Dated: August 30, 2010

Respectfully submitted,

LG ELECTRONICS U.S.A., INC.

By: /s/ Bryna J. Dahlin
One of its attorneys

Ronald Y. Rothstein – rrothstein@winston.com
Bryna J. Dahlin – bdahlin@winston.com
Eric Broxterman – ebroxterman@winston.com
John Marfoe – jmarfoe@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600 – telephone
(312) 558-5700 – facsimile

*Counsel for LG Electronics U.S.A., Inc.*

**<u>CERTIFICATE OF ELECTRONIC SERVICE</u>**

I hereby certify that on August 30, 2010, I filed the above and foregoing with the Court's ECF system and by doing so served a copy on all the parties.

/s/ Bryna J. Dahlin
ATTORNEY FOR LG ELECTRONICS
U.S.A., INC.
