# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | **Sitting Judge if Other than Assigned Judge** | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 242 | **DATE** | 9/22/2010 |
| **CASE TITLE** | LG Electronics vs. Whirlpool Corp | | |

**DOCKET ENTRY TEXT**

Whirlpool's motion in limine to preclude LG Electronics from introducing improper expert testimony and documents regarding wrinkle testing [441] is granted in part and granted in part without prejudice.

■[ For further details see text below.]            Notices mailed by Judicial staff.

## STATEMENT

Whirlpool has moved in limine to preclude LG Electronics from introducing testimony regarding wrinkle testing through Whirlpool employee, Scot Lau. Whirlpool further seeks to preclude LG from questioning Glenn Clark about a specific e-mail regarding Whirlpool's testing methods. Whirlpool's motion is granted in part and granted in part without prejudice.

### I. Scot Lau

Scot Lau is a lead engineer at Whirlpool in the Controls and Electronics group, and has worked at Whirlpool for over fifteen years. In his role, he "works on engineering projects, is responsible for mentoring other engineers when necessary, works on projects of an appropriate level, is responsible for – depend – depending on the type of project, product development, can be research, can be manufacturing." (Lau Dep at 5.) He also serves as a "Master Black Belt." In order to achieve this title, Mr. Lau had "formal work training through ... [Whirlpool's] Operational Excellence Program or OpEx Program.... [I]t's a program whereby engineers are put through a four-week training, one week per month for four months to learn statistics, experimentation, and critical thought, problem solving, and so on. And then at the end of that time frame, we work with a Master Black Belt – Master Black Belt mentors to get certified." In order to obtain his Master Black Belt, Mr. Lau had to continue his training for an additional two years – "one week a month for two years, to learn to become a Master Black Belt trainer." (*Id.* at 9-10.) In this role, Mr. Lau is "responsible for training other engineers in our OpEx statistical tools and teaching them in the use of statistical tools and analysis." (*Id.* at 10.) Mr. Lau trains other engineers "to run experiments more efficiently, and then to use statistical tools to help analyze those experiments." (*Id.*)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

Lau attended Technical Design Previews (TDPs) related to controls and electronics for the Matador 2A,

2B control, which ultimately became the Duet Steam Dryer at issue in this Lanham Act case. (*Id.* at 14.) Lau examined data from the wrinkle testing performed on the Matador 2A or 2B. He conducted statistical analyses in connection with the TDPs and relevant data. (*Id.* at 18.) Based on his analysis, he made certain recommendations in connection with the dryers. He also reviewed other analyses.

## II.     Analysis

Whirlpool seeks to preclude LG from calling Scot Lau as a witness because Whirlpool claims that Lau is not qualified to give the expert opinions that LG intends to elicit. Whirlpool contends that Lau is an electrical engineer with no prior relevant experience in wrinkle tests. In response, LG asserts that Lau's testimony is lay testimony, not expert testimony, because it pertains to "personal knowledge he gained by virtue of his unique role in analyzing testing plans, data and related documentation." (R. 495, response at 1.) It further contends that it intends to offer Lau's testimony to establish that "the Whirlpool employee charged with statistical validation of wrinkle testing results determined that Whirlpool's cold mist feature (so-called 'steam') did not provide any wrinkle reduction benefits according to the test data he reviewed." (*Id.*) Further, it seeks to call Lau "for the purpose of showing that the highest level statistician[] at Whirlpool indicated [that he] found flaws in the testing, and that the introduction of a cold water mist in Whirlpool's dryers did not reduce wrinkles in the tests they analyzed." (*Id.* at 5-6.)

> Under Rule 701, a lay witness may testify about his opinions or inferences that are:
>
> (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

This subsection was added to Rule 701 to "eliminate the risk that the reliability requirements set forth in Rule 702 [would] be evaded through the simple expedient of proffering an expert in lay witness clothing." Advisory Committee Note (2000). As the Seventh Circuit has noted:

> Rule 701 recently was amended "to emphasize that lay opinion testimony is limited to those observations of a lay witness that are 'not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *[United States v. ]Conn,* 297 F.3d [548,] at 553 [(7th Cir. 2002)] (quoting Fed.R.Evid. 701). The amendment was designed to avoid this very situation – to prevent parties from "proffering an expert in lay witness clothing." Fed.R.Evid. 701 (advisory committee notes). We have noted: Before the 2000 amendment to Rule 701, some courts had become more lenient in the admission of lay opinion on subjects appropriate for expert testimony. The amendment was designed to make clear that courts must scrutinize witness testimony to ensure that all testimony based on scientific, technical or other specialized knowledge is subjected to the reliability standard of Rule 702. *Conn,* 297 F.3d at 553 (internal citations omitted).

*Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Intern., Inc*. 533 F.3d 555, 559 -561 (7th Cir. 2008).

Here, based on a review of Lau's deposition transcript, his testimony and opinions are based on his technical expertise in statistics. An untrained lay person could not make the observations or conclusions made by Lau. As was clear from Lau's deposition, Lau used his statistical knowledge to conduct his analyses. He testified about the "metrics" that were evaluated for the drying performance, the controls used on the dryer cycles, the change in the C&E software, the margins by which the metrics passed the evaluations, whether any statistically significant difference existed between certain cycles, and confidence interval calculations. Only someone with

specialized knowledge could opine on these areas.

LG relies on several non-binding cases which do not provide otherwise.  First, in *CDX Liq. Trust Ex. Rel. CDX Liquidating Trustee v. Venrock Assocs.,* 411 B.R. 591 (Bankr. N.D. Ill. 2009), the bankruptcy court noted that "[l]ay witnesses may draw on knowledge gained from professional experiences and testify regarding particularized knowledge they gained as employees of a business."  *Id.* at 603.  While this is true, as the bankruptcy court also noted, such employees may not give expert opinions.  *Id.*  Here, LG does not identify any lay testimony that it seeks to elicit from Mr. Lau.  Second, the court in *Central States, Southesast & Southwest Areas Pension Fund v. Transport Serv. Co.*, 00 C 6181, 2009 WL 424145 at *3-5 (N..D. Ill. Feb. 17, 2009), addressed an affidavit submitted in connection with a summary judgment motion.  The affidavit was submitted by an employee to support several summary exhibits the proponent sought to admit pursuant to Rule 1006.  The court found that the affidavit contained admissible lay opinion testimony because it pertained to the witness's knowledge of the business and records prepared and kept in the ordinary course of the business.  Here, Lau's testimony is based on his statistical analyses, not on any particularized knowledge of the dryer business.  Finally, *Kondziolka v. Burlington Northern & Santa Fe Railway Co.*, 99 C 2148, 2000 WL 1368041 (N.D. Ill. Sept. 15, 2000) was decided before the amendment to Rule 701, and *Tzoumis v. Tempel Steel Co.*, 168 F. Supp.2d 871 (N.D. Ill. 2001), relies on *Kondziolka*.  As such, they are unpersuasive.

## III.    Glenn Clark

Whirlpool also seeks to preclude the admission of an e-mail from Glenn Clark regarding this same issue.  The Court grants this aspect of the motion without prejudice.  LG has not established any foundation for the admission of this e-mail, and the Court does not have the benefit of reviewing any deposition transcript for Clark.  If LG seeks to introduce this evidence at trial, it will have to lay the foundation outside the presence of the jury before the Court will permit it to proceed in front of the jury.