**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC. | ) | |
|    a subsidiary of LG Electronics, Inc., | ) | |
|    a Korean company, | ) | |
| | ) | Civil Action No. 08 C 242 |
|               Plaintiff, | ) | |
| | ) | Judge St. Eve |
|               v. | ) | |
| | ) | Magistrate Judge Mason |
| WHIRLPOOL CORPORATION, | ) | |
| | ) | |
|               Defendant. | ) | |

**<u>COURT APPROVED JURY INSTRUCTIONS</u>**

## Issue Instruction No. 2

## False Advertising – Lanham Act – Elements of the Claim

LG claims that Whirlpool engaged in false advertising in violation of the Lanham Act. To succeed on this claim, LG must prove five things by a preponderance of the evidence:

1. Whirlpool made a false or misleading statement of fact in a commercial advertisement about the nature and characteristics of its own product. A statement is misleading if it conveys a false impression and actually misleads a consumer. A statement can be misleading even if it is literally true or ambiguous.

2. The statement actually deceived or had the tendency to deceive a substantial segment of Whirlpool's audience.

3. The deception was likely to influence the purchasing decisions of consumers.

4. Whirlpool caused the false statement to enter interstate commerce. A false statement enters interstate commerce if Whirlpool's products are advertised and sold across state lines.

5. LG has been or is likely to be injured as a result of the false statement. Injury includes direct diversion of sales from itself to Whirlpool.

If you find that LG has proved each of these things, then you must find for LG. If, on the other hand, you find that LG has failed to prove any one of these things, then you must find for Whirlpool.

**Issue Instruction No. 6**

**Damages for False Advertising-Actual Damages**

To recover damages, LG must prove two things by a preponderance of the evidence:

1. Whirlpool's false advertising caused actual consumer deception; and

2. As a result, LG sustained injury.

If you find that LG has proved these things, then you must consider what amount of money to award to LG as damages**, if any**. Damages consist of the amount of money required to compensate LG for the injury caused by Whirlpool's false advertising. Plaintiff must prove its damages by a preponderance of the evidence.

You may consider the following types of damages:

- Plaintiff's lost profits on lost sales, which consists of the revenue Plaintiff would have earned but for Whirlpool's infringement, less the expenses Plaintiff would have sustained in earning those revenues.

- Price Erosion. LG also contends that it lost profits because it had to charge lower prices for its products because of Whirlpool's false advertising. If LG proves this, it is entitled to recover the profits it lost as a result of its lowered price in addition to any profits it lost due to sales it did not make because of Whirlpool's false advertising.

## Issue Instruction No. 7

## Damages for False Advertising-Defendant's Profits

In addition to LG's damages, LG may recover the profits Whirlpool gained from the false advertising.  You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money Whirlpool received due to its false advertising.

LG is required only to prove Whirlpool's gross revenue. Whirlpool is required to prove any expenses that it argues should be deducted in determining its profits.  LG is entitled to recover Whirlpool's total profits from its false advertising, unless Whirlpool proves that a portion of the profit is due to factors other than false advertising.

## **Issue Instruction No. 8**

## **Willfulness**

If you find that Whirlpool engaged in false advertising, you must also determine whether LG has proven that, at the time Whirlpool engaged in the false advertising, Whirlpool acted willfully. Whirlpool acted willfully if it knew that its advertising was false or misleading or if it acted with indifference whether its advertising was false or misleading.

### Issue Instruction No. 9

### Illinois Uniform Deceptive Trade Practices Act – Elements

LG alleges that Whirlpool violated an Illinois Statute called the Illinois Uniform Deceptive Trade Practices Act ("Deceptive Trade Practices Act"). In order to prove that Whirlpool has violated this statute, LG must prove by a preponderance of the evidence that Whirlpool has:

(1) represented that goods or services have characteristics, uses, or benefits, that they do not have; or

(2) represented that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; or

(3) engaged in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

## Issue Instruction No. 12

### Illinois Consumer Fraud and Deceptive Business Practices Act – Elements

To prove a violation of the Consumer Fraud Act, LG must prove by a preponderance of the evidence that:

(1) Whirlpool engaged in a deceptive act or unfair practice;

(2) Whirlpool intended for the consuming public to rely on the deception;

(3) the deception occurred in the course of conduct involving trade or commerce;

(4) LG sustained actual damages; and

(5) such damages were proximately caused by Whirlpool's deception.

The deception must have been material to the consumer.  Deception is material where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase.

## <u>Issue Instruction No. 14</u>

## <u>Illinois Consumer Fraud and Deceptive Business Practices Act – Punitive Damages</u>

If you find for LG and if you find that Whirlpool's conduct was willful and wanton and caused damage to LG, and if you believe that justice and the public good require it, you may, in addition to any other damages to which you find LG entitled, award an amount which will serve to punish Whirlpool and to deter Whirlpool and others from similar conduct.

When I use the expression "willful and wanton conduct" I mean a course of action which shows actual or deliberate intention to harm.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LG ELECTRONICS U.S.A., INC.   )
 a subsidiary of LG Electronics, Inc.,  )
 a Korean company,     )
             ) Civil Action No. 08 C 242
      Plaintiff,   )
             ) Judge St. Eve
      v.     )
             ) Magistrate Judge Mason
WHIRLPOOL CORPORATION,   )
             )
      Defendant.   )

**<u>DISPUTED JURY INSTRUCTIONS</u>**

## Revised Plaintiff's Issue Instruction No. 3

## **False Advertising – Lanham Act – Literally False By Necessary Implication**

A finding of literal falsity may be based on claims the advertisement conveys by "necessary implication." An advertisement conveys a claim by "necessary implication" when, considering the advertisement in its entirety, you would recognize the claim as if it had been explicitly stated. LG contends that: Whirlpool's naming and advertising of its dryers as steam dryers, because water evaporates in them, necessarily implies the unambiguously false message that its dryers use and create steam whereas conventional dryers do not.

**Whirlpool's Objection:**

Whirlpool objects to LG's inclusion of the last sentence which sets forth the substance of LG's false by necessary implication claim. Given the Court's rulings at the pretrial conference on the parties' proposed instructions and the instructions the Court has indicated it will give the jury, a restatement of LG's contention about Whirlpool's advertising is unnecessary (as the other instructions to be given do not set forth either the express or implied message at issue in this case) and unfairly prejudicial as it will reinforce LG's argument.

Whirlpool also notes that the Court indicated that it would take under advisement the second and third paragraphs of Whirlpool's proposed instruction.

Whirlpool also preserves its objection to the giving of any falsity by necessary implication instruction.

**LG's Response:**

The Court has already approved this instruction in its entirety. The last sentence should therefore not be removed.

**Plaintiff's Issue Instruction No. 4**

**False Advertising – Lanham Act – Consumer Deception**

If the statement in question is literally false or false by necessary implication, LG need not show that the statement either actually deceived customers or was likely to do so, as deception is presumed.[1]

If you find the statement in question is literally true or ambiguous, LG must prove by a preponderance of the evidence that the statement conveys a false impression or is misleading in context by demonstrating actual consumer confusion.[2]  LG can prove actual consumer confusion either through (1) proof of actual confusion or (2) survey evidence demonstrating consumer confusion.[3]

A statement is ambiguous, if it is subject to more than one definition, one of which could be true.[4]

**LG's Response to Court's Request:** LG has reviewed pages 512-513 of *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.,* 586 F.3d 500 (7th Cir. 2009), and is uncertain, based on the language in the opinion, what changes are necessary to this instruction in order to conform it to the Seventh Circuit's standard.  It is clearly Seventh Circuit law that literal falsity enjoys a presumption of deception.  However, the language of the *Schering* decision does not specifically identify what if any limitations should be applied to this presumption.  Judge Posner seems to be acknowledging that some literally false statements are puffery, where no such presumption would be enjoyed.  Puffery, however, is not at issue in this case.  Therefore, LG requests suggestions from the Court regarding what, if any, modifications are required for this instruction.

**Whirlpool's Response to Court's Request:**  Whirlpool, like LG, has reviewed pages 512-513 of *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500 (7th Cir. 2009), and is also uncertain, based on the language in the opinion, what changes are necessary to Whirlpool's proposed instruction in order to conform it to the Seventh Circuit's standard.  For the reasons stated by Whirlpool in support of its proposed instruction (Dkt. 456-12), it is clear that LG must prove actual deception in order to receive the relief it is requesting from the jury and literal falsity only enjoys a presumption of deception for injunctive relief.  This is also evidenced by the fact that all of the cases cited in *Schering-Plough* regarding the literal falsity presumption are either cases requesting injunctive relief or non-Lanham Act cases.  586 F.3d at 510.  Not a single case cited in this *Schering-Plough* discussion awarded damages based on a

---

[1] *Id.*; *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999).

[2] *Hot Wax, Inc.*, 191 F.3d at 819.

[3] *Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1218 (7th Cir. 1997); *Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham*, 960 F.2d 294, 298 (2d Cir. 1992) (holding that plaintiff must demonstrate "that a not insubstantial number of consumers" were confused or mislead).

[4] *Appraisers Coalition v. Appraisal Inst.*, No. 93-0913, 1999 WL 89663 at *4 (N.D. Ill. Feb. 12, 1999)

presumption of deception. *See Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996) (Fair Debt Collection Practices Act ); *Abbott Laboratories v. Mead Johnson & Co.,* 971 F.2d 6 13-14 (7th Cir. 1992) (preliminary injunction); *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 153 (2d Cir. 2007) (preliminary injunction); *Castrol Inc. v. Pennzoil Co.,* 987 F.2d 939, 943 (3d Cir. 1993)(considering damages and injunctive relief but only awarding injunctive relief); *Allsup, Inc. v. Advantage 2000 Consultants, Inc.,* 428 F.3d 1135, 1138 (8th Cir. 2005) (no discussion of damages or injunctive relief). Therefore, like LG, Whirlpool also requests suggestions from the Court regarding what, if any, additional modifications are required for this instruction.

For the Court's consideration, Whirlpool submits the following revised alternative instruction to its Proposed Instruction No. 33, submitted with the pretrial order:

*For LG's claim of literal falsity, LG must prove that the false statements actually deceived a substantial segment of its consumers in order to receive any damages.*[1]

*For LG's implied falsity claim, LG must prove that Whirlpool's advertising actually deceived a substantial segment of its consumers.*[2] *Actual consumer deception must be shown by either direct evidence from consumers or consumer surveys showing that a substantial segment of its consumers were actually misled by Whirlpool's advertising.*[3]

[1] *J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:42 at 27-90 (4th ed. 2008) (stating that "[c]ompared to the showing necessary to obtain an injunction, a higher standard of proof is required to recover damages. For example, plaintiff must prove that at least some customers have been actually deceived, and that plaintiff has been injured by reason of actual consumer reliance on the false advertising"); B. Sanfield v. Finlay Fine Jewelry, 258 F.3d 578, 582 (7th Cir. 2001); Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 819-20 (7th Cir. 1999); FEDERAL CIVIL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT § 13.3.1.; First Health Group v. BCE Emergis, 269 F.3d 800, 805-06 (7th Cir. 2001); Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 13 (7th Cir. 1992); First Health Group Corp. v. United Payors & United Providers, Inc., 95 F. Supp. 2d 845, 848 (N.D. Ill. 2000); Appraisers Coalition v. Appraisal Inst., No. 93 C 913, 1999 WL 89663, at *5 (N.D. Ill. Feb. 12, 1999); Minuteman Int'l, Inc. v. Critical-Vac Filtration Corp., No. 95-C-7255, 1997 WL 370204, at *11 (N.D. Ill. June 27, 1997); Pebble Beach Co. v. Tour 18 I, Ltd., 942 F. Supp. 1513, 1562-63 (S.D. Tex. 1996); Coors Brewing Co. v. Anheuser-Busch Cos., Inc., 802 F. Supp. 965, 969 (S.D.N.Y. 1992).*

[2] *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma., Inc., 586 F.3d 500, 513 (7th Cir. 2009).*

[3] *Rust Envtl. & Infrastructure, Inc. v. Teunissen, 131 F.3d 1210, 1218 (7th Cir. 1997); Docket No. 324, at 12, 15-16 (this Court's summary judgment opinion, quoting and citing Johnson & Johnson * Merck, 960 F.2d at 297-98); Kraft, Inc. v. F.T.C., 970 F.2d 311, 318 (7th Cir. 1992); Rexall Sundown, Inc. v. Perrigo Co., No. 07 Civ 3397, Docket No. 258, Jury Charge at. 27-28 (E.D.N.Y. Apr. 5, 2010); PBM Prods., LLC v. Mead Johnson & Co., No. 3:09-CV-269, Docket No. 222, Trial Tr. Vol. 3 at 1264 (E.D. Va. Nov. 16, 2009).*

**<u>Whirlpool's Initial Objections [set forth in pretrial order submission]</u>:**

First, Whirlpool objects to this proposed instruction because it is a misleading and inaccurate statement of the law.

LG has asserted a claim for damages in this case. As the principal treatise on the Lanham Act states, "[c]ompared to the showing necessary to obtain an injunction, a higher standard of proof is required to recover damages. For example, plaintiff must prove that at least some customers have been *actually deceived*, *and* that plaintiff has been injured by reason of actual consumer reliance on the false advertising." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:42, at 27-90 (4th ed. 2008) (emphasis added), *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 819-20 (7th Cir. 1999) ("to recover money damages under the Act, a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages"); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.,* 258 F.3d 578, 580-81 (7th Cir. 2001); *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.,* 586 F.3d 500, 512 (7th Cir. 2009) (stating that "[m]any literally false statements are not deceptive" and the purpose of the Lanham Act is "to protect sellers from having their customers lured away from them by deceptive ads.")

Second, Whirlpool objects to this proposed instruction because it fails to instruct the jury that deception may be proven by consumer surveys that show that a substantial segment of its consumers were actually misled by Whirlpool's advertising. *Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1218 (7th Cir. 1997); Docket No. 324 at 12, 15-16 (this Court's summary judgment opinion, quoting and citing *Johnson & Johnson * Merck*, 960 F.2d 294, 297-98 (2d Cir. 1992); *Kraft, Inc. v. F.T.C.*, 970 F.2d 311, 319 (7th Cir. 1992); *Rexall Sundown, Inc. v. Perrigo Co.*, Case No. 07 Civ 3397, Docket No. 258, Jury Charge at 27-28 (E.D.N.Y. Apr. 5, 2010); *PBM Prods., LLC v. Mead Johnson & Co.*, No. 3:09-CV-269, Docket No. 222, Trial Tr. Vol. 3 at 1264 (E.D. Va. Nov. 16, 2009).

Third, Whirlpool objects to this proposed instruction because it does not set forth the factors that affect a survey's reliability. *See* Docket No. 324, at 12, 15-16 (this Court's summary judgment opinion, quoting and citing *Johnson & Johnson * Merck Consumer Pharm.,* 960 F.2d at 297-98); and 18 (citing *Muha v. Encore Receivable Mgmt., Inc.,* 558 F.3d 623, 625-26 (7th Cir. 2009) and stating that the Court will look to Lanham Act cases on surveys from other jurisdictions, focusing on precedent, such as *Johnson & Johnson * Merck*, that the Seventh Circuit has cited with approval); *Rexall Sundown, Inc. v. Perrigo Co.*, Case No. 07 Civ 3397, Docket No. 258, Jury Charge at 26-35 (Apr. 5, 2010) (instructing jury on reliability factors for survey); *PBM Prods., LLC v. Mead Johnson & Co.*, No. 3:09-CV-269, Docket No. 222, Trial Tr. Vol. 3 at 1264 (E.D. Va. Nov. 16, 2009) (same).

Fourth, Whirlpool incorporates by reference its objections to LG's Issue Instruction No. 4.

Finally, as an alternative, Whirlpool invites the Court's attention to Whirlpool's Proposed Final Jury Instruction Nos. 33 (deception) and 31 (including survey reliability factors).

**LG's Initial Reply [set forth in pretrial order submission]:**

First, "[w]here a statement or claim made in advertising is literally false, 'the plaintiff need not show that the statement either actually deceived customers or was likely to do so.'" (DE324 at p. 11, citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999); *B. Sanfield v. Finlay Fine Jewelry*, 168 F.3d 967, 971 (7th Cir. 1999)). When literal falsity has been established, deception is presumed, and LG's instruction clearly states this. Further, Whirlpool's objection related to an alleged lack of causal link instruction is misplaced. The element of causation is clearly laid out in Pattern Instruction 13.3.1 and 13.6.1.

Second, contrary to Whirlpool's assertion, LG does explain in this instruction that actual confusion may be demonstrated through consumer surveys. Experts will testify regarding the substantial segment of consumers that were actually deceived. Therefore, an instruction in this regard is unnecessary.

Third, it is inappropriate legal argument for the jury to be instructed on the admissibility of survey evidence. Further, 7th Circuit Pattern Instructions 1.11 and 1.12 already address the issue of weight to be afforded to evidence. Finally, citations to jury instructions given in cases in Virginia and New York do not support the inclusion of such instructions here.

Fourth, LG incorporates by reference its reply to Whirlpool's objections to LG's Issue Instruction No. 4.

**Revised Plaintiff's Issue Instruction No. 5**

**Damages for False Advertising**

If you decide for LG on the question of liability, then you should consider the amount of money to award to LG, if any. This should include damages that LG sustained because of Whirlpool's false advertising, and profits that Whirlpool made because of its false advertising. Plaintiff LG must prove its damages by a preponderance of the evidence.

If you decide for Whirlpool on the question of liability, then you should not consider this issue.

**Whirlpool's Objection:**

Whirlpool objects to the second sentence of this instruction. The jury will be informed of the types of monetary relief it can consider. Whirlpool suggests an instruction without the second sentence, which more closely tracks the Court's proposed instruction on this issue.

**LG's Response:**

The Court has already approved the instruction with the requirement that the burden of proof be added. LG has added the burden of proof and the second sentence should therefore be included.

**Revised Plaintiff's Issue Instruction No. 10**

**<u>Illinois Uniform Deceptive Trade Practices Act –Confusion</u>**

LG has the burden to prove by a preponderance of the evidence that Whirlpool created a likelihood of confusion or misunderstanding regarding the nature, quality or characteristic of Whirlpool's products, but need not prove actual confusion or misunderstanding for you to find that Whirlpool violated the Deceptive Trade Practices Act.

If you find for LG on its Illinois Uniform Deceptive Trade Practices Act claim, you should not consider the question of damages. The Court will determine what damages, if any, to award LG under the Illinois Uniform Deceptive Trade Practices Act.

**<u>Whirlpool Objection:</u>**

Whirlpool understands that the Court indicated that it would give the first paragraph as well as the second paragraph of this instruction (which was provided by the Court and agreed by the parties during the pretrial conference). Whirlpool, however, believes that the first paragraph is redundant of the prior instruction on the elements of a claim (which include the likelihood of confusion standard for liability), and therefore that only the second paragraph above should be given following the elements instruction.

**<u>LG's Response:</u>**

The Court has approved both paragraphs of this instruction. LG, therefore, does not believe the first paragraph should be deleted.

**Revised Plaintiff's Issue Instruction No. 11**

## Illinois Consumer Fraud and Deceptive Business Practices Act – Generally

LG alleges that Whirlpool violated an Illinois Statute called the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"). This Illinois statute prohibits deceptive practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission.[5] A company can be found liable for a violation of the Consumer Fraud Act for causing harm to a competitor when its conduct results in the deception of consumers.[6]

---

[5] *Montgomery v. Nostalgia Lane, Inc.*, 891 N.E.2d 994, 1004 (Ill. App. 2 Dist. 2008).

[6] *See, e.g., Russian Media Group, LLC v. Cable Am., Inc.*, No. 06 C 3578, 2008 WL 360692, at *3 (N.D. Ill. Feb. 7, 2008) (noting that "[c]ourts have allowed businesses to sue under the ICFA for competitive injury when other businesses deceive customers" and that in "such situations, there is no requirement that the deceptive conduct be aimed at the plaintiff"); *Recreation Servs., Inc. v. Odyssey Fun World, Inc.*, 952 F.Supp. 594, 597 (N.D. Ill. 1997) ("Where ... the [ICFA] claim is asserted instead by a business competitor that charges defendant with deceptive conduct aimed at the consuming public ... it clearly makes no sense to require that the plaintiff competitor itself must have relied on the deception.").

**Whirlpool's Objections:**

Whirlpool objects to the last sentence of the above instruction as unnecessary because the jurors will be instructed on the elements of the claim. Whirlpool proposes the following instruction instead:

*LG alleges that Whirlpool violated an Illinois Statute called the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"). This Illinois statute prohibits deceptive practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission.*

**LG's Response:**

LG removed the last paragraph of the initial instruction per the Court's instructions. The final sentence is not duplicative of what is in the elements of the claim instruction and should be included.

**Whirlpool's Initial Objections [set forth in pretrial order submission]:**

First, LG's instruction is confusing, misleading, and creates the risk of producing an inconsistent verdict as it suggests the jury is to resolve claims under the Consumer Fraud and Deceptive Trade Practices Act ("Consumer Fraud Act") according to different principles than under the Lanham Act. *See* Whirlpool's Proposed Jury Instruction No. 40 and accompanying legal authority. By LG's own admission, the elements of a claim under the Consumer Fraud Act are "substantially the same" as a claim for relief under the Lanham Act. (*See* Docket Nos. 12 and 24, Mem. of Law in Supp. of Pl. LG Elecs., Inc.'s Mot. for Prelim. Inj., pp. 15-17 ("elements of a claim under the [Deceptive Trade Practices Act] and [Consumer Fraud Act] are substantially the same as a claim for relief under Section 43(a) of the Lanham Act").)

Second, LG's instruction is vague and ambiguous because it fails to define any terms.

Third, LG's instruction that "[a] company can be found liable for a violation of the Consumer Fraud Act for causing harm to a competitor when its conduct results in the deception of consumer" is misleading as it lacks context and therefore suggests that this is the *only* element of a competitor claim under the Act (*e.g.*, by dispensing with the need for LG to prove materiality and proximately-caused damages). LG's cited authority only supports the proposition that, in the competitor suit context, LG must prove that the consuming public, not it, relied on the alleged deception to satisfy the reliance element of a claim under the Consumer Fraud Act. *See*, *e.g.*, *Russian Media Group, LLC v. Cable Am., Inc.*, No. 06 C 3578, 2008 WL 360692, at *3 (N.D. Ill. Feb. 7, 2008); *Recreation Servs., Inc. v. Odyssey Fun World, Inc.*, 952 F. Supp. 594, 597 (N.D. Ill. 1997).

Fourth, LG's instruction that "[i]f you find Whirlpool violated the Deceptive Trade Practices Act, you must find also find a violation of the Consumer Fraud Act has occurred"

misstates the law and is misleading because the Consumer Fraud Act provides only that a violation of the Deceptive Practices Act constitutes a deceptive act or unfair practice under the Consumer Fraud Act claim. 815 ILCS 505/2 ("Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any . . . practice described in Section 2 of the "Uniform Deceptive Trade Practices Act.")

As an alternative to this instruction, Whirlpool invites the Court's attention to Whirlpool's Proposed Final Jury Instruction No. 40.

**LG's Initial Reply [set forth in pretrial order submission]:**

First, Whirlpool cites to no law holding or otherwise suggesting that separate jury instructions are not appropriate on separate counts upon which LG seeks relief. Rather, a court in the Northern District of Illinois has previously stated, "the court prefers [the] method of laying out each of the claims and counterclaims in separate instructions." *Continental X-Ray Corp. v. XRE Corp.*, 1996 WL 131776 (N.D. Ill. Mar. 15, 1996).

Second, LG's instruction contains basic language directly from the statute which is capable of being understood by a jury.

Third, the instruction introduces the statute generally and then in the very next instruction breaks the statute down into the elements LG must prove. This instruction eliminates Whirlpool's concern that the sentence—"[a] company can be found liable for a violation of the Consumer Fraud Act for causing harm to a competitor when its conduct results in the deception of consumer"—will somehow be construed as the only element LG must prove. Because jury instructions are considered as a whole, Whirlpool's objection on this basis holds no weight. *E.g.*, *Byrd v. Illinois Dept. of Public Health*, 423 F.3d 696, 705 (7th Cir. 2005) ("We 'consider a trial court's jury instructions with deference, analyzing them as a whole to determine if they accurately stated the law and did not confuse the jury.'"); *Stuart Park Associates Ltd. Partnership v. Ameritech Pension Trust*, 51 F.3d 1319, 1324 (7th Cir. 1995) (stating that "we use common sense to consider the instructions given as a whole . . .")

Whirlpool's fourth objection ignores settled law as stated in *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 893 N.E.2d 981, 995-96 (Ill. App. 1 Dist. 2008). The court in *Chicago Pizza* stated that "Section 2 of the Consumer Fraud Act provides that the use of any practice described in section 2 of the Deceptive Trade Practices Act also constitutes a violation of the Consumer Fraud Act." *Id.* Further, it is wholly inconsistent for Whirlpool to argue that the elements are the same across all three statutes, but then claim that it is confusing for LG to instruct that a violation of the DTPA also constitutes a violation of the Consumer Fraud Act.

**Revised Plaintiff's Issue Instruction No. 13**

**<u>Illinois Consumer Fraud and Deceptive Business Practices Act – Damages</u>**

If you decide that Whirlpool has violated the Consumer Fraud Act, you must then fix the amount of money which will reasonably and fairly compensate LG for any of the following elements of damages proved by the evidence to have resulted from the conduct of Whirlpool.

Elements of recoverable damages include LG's lost profits and damages from price erosion.

Whether any of these elements of damages has been proved by the evidence is for you to determine. [7]

Damages available under the Consumer Fraud Act are the same as the damages available under the Lanham Act. Therefore if you find that Whirlpool violated both the Consumer Fraud Act and the Lanham Act, you should award LG damages only once.

---

[7]   IPI 800.05 (modified); *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 525 (7th Cir. 1995).

**Whirlpool's Objections:**

LG proposed instruction says the "Consumer Fraud Act damages are the same as the damages available under the Lanham Act." This is a misleading and incomplete statement. While the parties agree that the same *types* of damages are available under the Lanham Act and the Consumer Fraud Act, LG's instruction does not identify the separate Illinois nexus requirement for proving a claim under the Consumer Fraud Act. LG is only entitled to damages under the Consumer Fraud Act for transactions that take place within Illinois. *Avery v. State Farm Mut. Auto. Inc. Co.*, 216 Ill. 2d 100, 186, 835 N.E. 2d 801, 853 (2005). A transaction takes place in Illinois "if the circumstances relating to the transaction occur primarily and substantially in Illinois." *Id.* 216 Ill. 2d at 188, 835 N.E. 2d at 854. *See also Vulcan Golf, LLC v. Google, Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008).

Thus, the last paragraph of this instruction should state: "*Damages available under the Consumer Fraud Act are the same type as damages available under the Lanham Act,[1] but may only be awarded based on transactions where the circumstances relating to the transactions occurred primarily and substantially in Illinois.[2] If you find that Whirlpool violated both the Consumer Fraud Act and the Lanham Act, you should award LG damages only once for the same transactions.[3]*"

[1] "In the case of a private claim under the Illinois Consumer Fraud and Deceptive Business Practices Act brought by a business, the plaintiff may claim actual loss in the form of lost profits caused by a competitor's unfair trade practices." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010); *B. Sanfield, Inc.*, 76 F. Supp. 2d at 872-73 (noting that "[t]he Consumer Fraud Act provides for the recovery of 'actual economic damages'" and holding that plaintiff could not recover lost profits because it failed to prove a causal link between the deceptive advertising and any lost customers, and plaintiff could not recover disgorgement of defendant's profits because plaintiff failed to prove a "diversion of business that clearly would otherwise have gone to the plaintiff" and presented "no credible evidence that [defendant] profited at [plaintiff's] expense."), aff'd by 258 F.3d 578, 580-81 (7th Cir. 2001) (affirming district court's finding that plaintiff failed to "establish a causal connection" between claimed lost customers and defendant's advertising); *BASF Corp. v. The Old World Trading Co. Inc.*, No. 86 C 5602, 1993 WL 643419, 30 U.S.P.Q.2d 1337, at *1349 (N.D. Ill. Aug. 30, 1993) (in addressing Consumer Fraud Act claim, court noted "[i]n a false advertising case the measure of damages is typically lost profits.")

[2] *Avery v. State Farm Mut. Auto. Inc. Co.*, 216 Ill. 2d 100, 186, 835 N.E. 2d 801, 853-54 (2005); *Vulcan Golf, LLC v. Google, Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008).

[3] *B. Sanfield, Inc.*, 76 F.Supp.2d at 874 (noting that the plaintiff's "lack of proof of damages" under the Consumer Fraud Act "is also fatal to recovery under the Lanham Act"); *BASF Corp.* 1993 WL 643419, 30 U.S.P.Q.2d 1337, at *1349 ("The proof showed in the Lanham Act count that BASF lost profits as a result of Old World's false advertising. Therefore, BASF's damages are the same on this [Consumer Fraud Act] count as on the Lanham Act count.").

**LG's Response:**

The Court has already approved the instruction on Illinois Consumer Fraud and Deceptive Business Practices Act—Elements. Nowhere in this instruction or the language of the statute is there a requirement that LG prove that the damages it suffered resulted from transactions occurring in Illinois. Whirlpool confuses the jurisdictional requirement of the statute with the burden of proof on damages. The case on which Whirlpool principally relies, *Avery v. State Farm Mut. Auto. Inc. Co.*, 216 Ill. 2d 100, 186, 835 N.E. 2d 801, 853 (2005), is not on point. In *Avery*, the court first addresses whether the plaintiffs may pursue a private cause of action under the Consumer Fraud Act in the first place. *Id.* at 186-87. The court then addresses the issue of damages and states only that "[i]n order to sustain a private cause of action under the Act, a plaintiff must prove that he or she suffered 'actual damage as a result of a violation of [the] Act.' *Id.* at 195. The court does not limit the damages to actual damages resulting from transactions occurring in Illinois. Whirlpool's additional language would merely confuse the jury. No Lanham Act case that LG is aware of has ever limited the analogous state law consumer fraud statute to damages from transactions occurring only within that state. Moreover, Whirlpool has attempted to insert language into the final set of jury instructions the morning the instructions are due to the Court and did not meet and confer regarding the addition. In fact, this is the first time Whirlpool has *ever* raised the issue, knowing full well it is not supported by the case law cited.

LG has added language to the instruction to ensure the jury does not duplicate any damages it awards under the Lanham Act.


**Whirlpool's Initial Objections [set forth in pretrial order submission]:**

First, Whirlpool objects to this instruction because it is misleading and an incorrect statement of law because it provides for a double recovery for the same injury for which LG seeks damages under the Lanham Act. *Dial v. City of O'Fallon*, 411 N.E.2d 217, 222 (Ill. 1980) ("courts in Illinois have long recognized the legal principle that a plaintiff shall have only one satisfaction for an injury irrespective of the availability of multiple theories that recovery for the injury can be sought under") (internal citations omitted).

Second, even assuming strictly *arguendo* that a separate damages instruction under the Consumer Fraud Act is appropriate (and Illinois Pattern Instruction 800.05 applies to the Act), LG's modified instruction is misleading and an incorrect statement of the law as it omits and otherwise alters crucial portions of the pattern instruction, which requires that the instruction state (a) the precise elements of supportable damages and (b) that the damages must be proved by the evidence to have resulted from the conduct of the defendant. *See* Illinois Pattern Civil Jury Instructions – Civil Instruction § 800.05 (2009). LG's modified instruction also misleadingly suggests to the jury that a monetary award is required.

As an alternative to this instruction, Whirlpool invites the Court's attention to Whirlpool's Proposed Final Jury Instruction No. 40.

**LG's Initial Reply [set forth in pretrial order submission]:**

As previously stated in reply to Whirlpool's Objection to LG's Issue Instruction No. 12, with respect to Whirlpool's argument that double recovery is not allowed, LG agrees to add the following language to the instruction:

*An award of compensatory damages under the Consumer Fraud Act cannot be duplicative of damages awarded under the Lanham Act.*

Second, LG has worded the instruction to exactly mirror the Illinois Pattern Instruction, including a) the precise elements of supportable damages and (b) that the damages must be proved by the evidence to have resulted from the conduct of the defendant:

*If you decide that Whirlpool has violated the Consumer Fraud Act, you must then fix the amount of money which will reasonably and fairly compensate LG for any of the following elements of damages proved by the evidence to have resulted from the conduct of Whirlpool.*

*Elements of recoverable damages include LG's lost profits, damages from price erosion, loss of goodwill and costs of corrective advertising.*

*Whether any of these elements of damages has been proved by the evidence is for you to determine.*

WHIRLPOOL'S PROPOSED LIMITING JURY INSTRUCTION

**Non-Advertising Materials: Liability**

You have heard evidence regarding Whirlpool's training materials and internal documents. The extent to which you can consider and use this evidence is limited. You will be asked at the end of this case to determine whether or not Whirlpool has committed false advertising. Only those materials that are "commercial advertising or promotion" can serve as the basis for a false advertising claim.

Commercial advertising or promotion is prefabricated promotional material that is created and shown to anonymous consumers as part of an organized campaign. For example, a television or newspaper advertisement that is viewed by millions of people is commercial advertising or promotion. Whirlpool's training materials and internal documents do not meet this definition.

For the purposes of determining liability, you cannot consider Whirlpool's training materials or internal documents as evidence of any express or implied message in Whirlpool's advertising because those materials are not commercial advertising or promotion.

Docket No. 537.

**LG's Objection:**

Whirlpool's instruction is gratuitous and would confuse the jury. LG proposes an alternate instruction:

*Training materials that were never disseminated to the public should not be considered commercial advertising or promotional material for the purposes of the Lanham Act claim.*

**Whirlpool's Response:**

LG's proposed instruction fails to include the relevant standards and definitions set forth in the Court's order (Docket No. 537) and cases cited therein.

## COUNT I - FALSE ADVERTISING:  TWO TYPES OF ACTIONABLE ADVERTISING STATEMENTS

The false advertising statements necessary to establish a violation can fall into one of two categories: (1) commercial claims that are literally false or (2) claims that may be literally true or ambiguous, but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers.  The statements in the first category are sometimes referred to as "literally false" statements.  The statements in the second category are sometimes referred to as "impliedly false" statements.  An ambiguous statement is one that is subject to more than one meaning, one of which is true.

_____

*Hot Wax, Inc. v Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999).

### LG's Objection:

Whirlpool adds the final sentence—"An ambiguous statement is one that is subject to more than one meaning, one of which is true" —to the Court's Proposed Instruction #3.  This addition is unnecessary.  LG agrees with the Court's Proposed Instruction #3.

### Whirlpool's Response:

The last sentence merely defines the term "ambiguous statement" and will be helpful to the jury.

WHIRLPOOL'S PROPOSED FINAL JURY INSTRUCTION

**Mitigation of Damages** No. 39 (DISPUTED)

Any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to mitigate those damages. Here, LG, as the plaintiff, has a duty to use reasonable efforts to mitigate its damages. To mitigate means to avoid or reduce damages – that is, to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.

If you should find by a preponderance of the evidence that LG did not take reasonable actions to reduce its damages or that LG failed to seek out or take advantage of any opportunity that was reasonably available under all the circumstances shown by the evidence, then you should reduce the amount of LG's damages, including any lost profits, by the amount LG could have avoided during the period for which you are awarding damages or by the amount that could have been reasonably realized if LG had taken advantage of such opportunity.

Whirlpool must prove both that the reduction should be made and its amount by a preponderance of the evidence.

---

*See* IPI 33.02 ("In fixing the amount of money which will reasonably and fairly compensate the plaintiff, you are to consider that a person whose business is damaged must exercise ordinary care to minimize existing damages and to prevent further damage. Damages proximately caused by a failure to exercise such care cannot be recovered."); *Williams Elec. Games, Inc. v. Barry*, No. 97 C 3743, 2001 WL 1104619, at *16 (N.D. Ill. Sept. 18, 2001) ("In Illinois, however, the doctrine of mitigation of damages 'applied in virtually every type of case in which recovery of a money judgment or award is authorized.'"); *Rao v. Covansys Corp.*, No. 06 C 5451, 2007 WL 141892, at *2 (N.D.Ill. Jan. 17, 2007) ("the duty to mitigate damages is applicable in a variety of situations in which plaintiff claims damages based upon tort . . ."); *Super Wash, Inc. v. Sterling*, No. 04 C 4618, 2006 WL 533362, at *7-8 (N.D. Ill. Mar. 2, 2006) (trademark infringement case where summary judgment was granted as to liability in favor of plaintiff; court declined to rule on availability of enhanced damages and attorneys fees in advance of damages phase of trial, in part because equitable considerations "will play a significant role in the remedy phase" and the court knew "of no reason why [plaintiff] did not have a duty to mitigate its damages"); *Fluid Control Prods., Inc. v. Aeromotive, Inc.,* No. 4:09-CV-1667, 2010 WL 427765, at *4 (E.D. Mo. Feb. 1, 2010) (declining to strike mitigation affirmative defense in Lanham Act false advertising case where defendant's profits were at issue, and rejecting plaintiff's argument that it had no duty to mitigate damages under the Lanham Act because plaintiff had no law to support that argument); McCarthy on Trademarks and Unfair Competition §§ 1:8 and 1:11 (4th ed.) ("unfair competition is a commercial tort" and "areas such as trademark law, false advertising, and misappropriation are all merely species of the genus of unfair competition."); *cf.* FEDERAL

CIVIL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT § 3.12, 4.12 and 9.05 (2009); NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTION § 5.3 ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES) AT SUPPLEMENTAL DAMAGES INSTRUCTION § 1.1 p. 558 (2000).

**LG's Response:**

There are simply no cases which support Whirlpool's mitigation of damages instruction. Indeed the cases Whirlpool adds to support its instruction are not even Lanham Act cases. The three cases Whirlpool cited in its original Reply are clearly distinguishable.

In *Fluid Control Products, Inc. v. Aeromotive, Inc.*, No. 4:09-CV-1667, 2010 WL 427765 at *4 (E.D. Mo. Feb. 1, 2010), the plaintiff moved to strike the defendant's affirmative defense of failure to mitigate damages. The plaintiff argued, in part, that it "ha[d] no duty to mitigate its damages under the Lanham Act, as no such requirement is established in 15 U.S.C. § 1117." *Id.* The district court declined to strike the defense, reasoning that the plaintiff "ha[d] not established as a matter of law that [the defense] [was] insufficient on its face." *Id.* This ruling was issued in the context of a motion to strike. As the district court noted, such motions "are not favored and infrequently granted." *Id.* at *1. Moreover, they are evaluated under a standard that is highly deferential to the non-movant.

In *Hyundai Constr. Equip. U.S.A., Inc. v. Chris Johnson Equip., Inc.*, No. 06 C 3238, 2008 WL 4671749 at *2 (N.D. Ill. Oct. 21, 2008), the plaintiff requested an order requiring the defendant to pay treble damages pursuant to 15 U.S.C. § 1117(a). The district court noted that in deciding whether to award such damages, it was allowed to consider "'the impact of the unlawful conduct directly on the plaintiff competitor, the systemic distortion which the wrongdoer's conduct has upon the particular product market, and the costs incurred by the competitor in its effort to mitigate the damages.'" *Id.* The district court referenced the mitigation of damages as a reason to *enhance*—not decrease—a damages award under the Lanham Act. Further, any mitigation of damages would be contrary to the Court's order on corrective advertising. Under *Hyundai*, mitigation efforts would be compensable.

In *Super Wash, Inc. v. Sterling*, No. 04 C 4618, 2006 WL 533362 at *7-8 (N.D. Ill. Mar. 2, 2006), the plaintiff and a defendant entered into a licensing agreement under which the defendant was entitled to use the plaintiff's marks in the operation of the defendant's business. After the licensing agreement was terminated, the defendant purportedly invited the plaintiff to remove a sign that displayed the plaintiff's marks. *Id.* After granting summary judgment in favor of the plaintiff on the issue of infringement, the district court noted that under 15 U.S.C. § 1117(a), "any award for a Lanham Act violation is 'subject to the principles of equity.'" *Id.* It then observed: "If defendants truly invited [the plaintiff] to remove the exterior sign upon termination of the licensing agreement, then it is possible that the damages [the plaintiff] incurred (if any) could have been limited to the expense of removing the sign. We know of no reason why [the plaintiff] did not have a duty to mitigate its damages." *Id.* However, the district court ultimately declined to rule on the issue of damages. Thus, the above-quoted language is merely dicta. Moreover, unlike the plaintiff in *Super Wash*, LG did not possess an obvious and

ready method of mitigating its damages.  Based on the Court's ruling striking damages for corrective advertising, a mitigation of damages instruction is inappropriate.

**Whirlpool's Response:**

The Court requested additional support for Whirlpool's mitigation instruction, and Whirlpool complied with that request.  LG has not cited any cases indicating that mitigation is *not* an appropriate defense to its tort-based claim.