# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 242 | **DATE** | 9/27/2010 |
| **CASE TITLE** | LG Electronics vs. Whirlpool Corp | | |

**DOCKET ENTRY TEXT**

LG's motion in limine to exclude references to Whirlpool's conspiracy theory about the origins of consumer perceptions of the Whirlpool dryer [447] is granted in part and denied in part.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

Plaintiff, LG Electronics U.S.A., Inc. ("LG"), has filed a motion *in limine* ("Motion") seeking to exclude references to Defendant Whirlpool Corporation's ("Whirlpool") "conspiracy theory" regarding LG's purported "no real steam" campaign. For the following reasons, the Court grants the Motion in part and denies it in part.

### FACTUAL BACKGROUND

The Court has already thoroughly summarized the facts underlying this Motion. (*See* R. 216, 6/15/09 Minute Order at 2-3.) Whirlpool conducted product demonstrations of its Duet® Steam dryer to consumers and sales associates between October 2007 and Spring 2008, asking participants to complete feedback forms regarding their perceptions of the dryer. (R. 447, Pl.'s Mot. at 2.) During that time, the person in charge of the demonstrations, Coleman McIntyre, compiled a "Top 5" list to summarize written comments that he received from salespeople involved in the training sessions. (R. 474, Def.'s Resp. Br. at 3.) At one point, the most-frequent response on the feedback forms was that "'there isn't real steam in the washer and dryer. Whirlpool makes false statements about their steam pair.[1]'" (R. 447, Pl.'s Mot. at 3 (quoting WHR0100005-10).) Mr. McIntyre testified at his deposition that certain unnamed associates at the training sessions stated "'that the LG rep was saying that our steam wasn't real steam.'" (*Id.* at 6 (quoting McIntyre Dep. at 92-93); *see also* R. 474, Def.'s Resp. Br. at 2.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

---

[1] The Court previously addressed the admissibility of the underlying summaries in a separate ruling.

Erika Vallecorsa worked in Whirlpool's Marketing Department. (R. 474, Def.'s Resp. Br. at 2.) When Mr. McIntyre forwarded Ms. Vallecorsa his "Top 5" list in November 2007, Ms. Vallecorsa responded by forwarding to Mr. McIntyre a document entitled "Armed and Ready." (*Id.* at 4.) Under its "Armed and Ready" campaign, Whirlpool "identified the top five anticipated questions and remarks that the competition is likely to use to blemish our products and our brand name." (R 447-2, Ex. 4, Field Sales Training FAQ Sheet at 1.) One of the anticipated questions was: "Does Whirlpool's Duet® Steam dryer use 'real' steam in the dryer?" (*Id.* at 2.) Ms. Vallecorsa testified in her deposition that she created the "Armed and Ready" document "in direct response to the feedback we had gotten from sales associates about comments they had received from competition." (R. 474, Ex. J, E. Vallecorsa Dep. Tr. at 130.) According to Ms. Vallecorsa, "LG reps in the marketplace" provided the information to the sales associates. (*Id.*)

Kwame Green, a salesperson who attended the training sessions, signed a declaration indicating that a number of "unnamed [BrandSmart] trainees [at the demonstrations] 'explained that LG was telling sales associates that Whirlpool's Duet Steam Washer and Dryer lacked real steam, and then asked the trainer for Whirlpool's response.'" (R. 447, Pl.'s Mot. at 5 (quoting Green Decl. at ¶ 10); *see also* R. 474, Def.'s Resp. Br. at 2.) Jim Birtz, a sales associate at one of Whirlpool's trade customers, is purportedly prepared to testify that he recalls "an unnamed BrandSmart sales associate telling Whirlpool's trainers that LG was the source of [the associate's] 'no real steam' questions." (R. 447, Pl.'s Mot. at 5-6 (quoting Birtz Decl. at ¶ 15).)

## ANALYSIS

Plaintiff LG argues that the purported statements to Mr. McIntyre, Ms. Vallecorsa, and Mr. Green are inadmissible because they have multiple levels of hearsay and are unduly prejudicial and confusing. Recognizing that it faces a multi-layer hearsay problem if it offers the statements for their truth, Defendant Whirlpool argues that it seeks to offer Mr. McIntyre's and Ms. Vallecorsa's statements "regarding the existence of LG's 'no real steam' campaign [to] establish their state of mind in drafting the 'Top 5' and 'Armed and Ready' documents, which is not hearsay." (R. 474, Def.'s Resp. Br. at 4.) Furthermore, Whirlpool submits that Mr. Green's testimony "will be offered to corroborate Mr. McIntyre's testimony that salespeople told him that LG was spreading the 'no real steam' message in the marketplace." (*Id.* at 6.) Defendant does not explain how Mr. Birtz's testimony is admissible.

Mr. McIntyre's and Ms. Vallecorsa's proffered testimony is inadmissible to establish the truth of the matter asserted because it is classic hearsay. Whirlpool correctly notes that "'[a]n out of court statement that is offered to show its effect on the hearer's state of mind is not hearsay.'" *Talmage v. Harris*, 486 F.3d 968, 975 (7th Cir. 2007) (quoting *United States v. Hanson*, 994 F.2d 403, 406 (7th Cir. 1993)); *see also Luckie v. Ameritech Corp.*, 389 F.3d 708, 716 (7th Cir. 2004). Conceivably, however, "every utterance could be indicative of someone's state of mind." *United States v. Heidecke*, 900 F.2d 1155, 1163 (7th Cir. 1990) (rejecting the argument that "would restyle the hearsay rule into an evidentiary presumption of admissibility: litigants would merely have to fashion out-of-court statements as probative evidence of someone's thoughts"). State-of-mind evidence must also satisfy the requirements of Federal Rule of Evidence 403 to be admissible.

Whirlpool first argues that the "no steam" comments are relevant to show that neither Mr. McIntyre nor Ms. Vallecorsa believed that the comments reflected consumer confusion. Whirlpool fails to establish why their individual beliefs only about consumer confusion are relevant. It further argues that the "no steam" evidence is relevant to establish why they created the Top 5 document. Again, however, Whirlpool fails to establish why this is relevant. Furthermore, in Mr. McIntyre's November 30, 2007, email, for example, he explains the process of creating his "Top 5" forms, a process that essentially entails tabulating others' comments with negligible analysis:

> What we have done is after every training we have the sales associates fill out feedback forms. They list any comments good or bad that have come up on Whirlpool products. It could be something that a customer has said or something that another associate said about our products. I then sort through the forms and compile the 5 most popular comments. These are the most popular comments of all the trainings this quarter. The rest of the comments are ones that are irrelevant to helping better our product. For example, if an associate wrote that the Duet Steam Washer is too expensive, I would throw that out because if you look at the competition we are similarly priced.

(R 447-2, Ex. 4, 11/30/07 Email.) This summary provides no explanation of the impact that LG's purported "no steam" statements had on the "Top 5" forms, much less Mr. McIntyre's state of mind.

Next, Whirlpool contends that the no steam evidence from Mr. McIntyre and Ms. Vallecorsa is relevant to counter LG's argument that the Insperience documents are evidence of Whirlpool's will or malicious conduct by not responding or taking action once it was on notice of consumer deception. The Court agrees. *See Talmage v. Harris*, 486 F.3d 968, 975 (7th Cir. 2007). If Whirlpool believed that the negative comments were attributable to LG rather than consumers, this is relevant evidence to refute LG's arguments of wilfulness. The parties should submit an agreed limiting instruction consistent with this ruling by September 30, 2010.

Mr. Green's declaration, however, it not admissible. Whirlpool argues that Mr. Green's declaration is admissible under the Rule 807 residual exception because he made it under oath, and LG had the opportunity to cross examine him. (R. 474, Def.'s Resp. Br. at 4.) Courts must narrowly construe Rule 807's residual exception to the hearsay rule. *See Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 631 (7th Cir. 2006); *Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir. 1998). Under that Rule, "[f]ive elements must be satisfied before hearsay is admitted in evidence: '(1) circumstantial guarantees of trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice; and (5) notice.'" *Keri*, 458 F.3d at 631 (quoting *United States v. Hall*, 165 F.3d 1095, 1110 (7th Cir. 1999)). A court's finding that a statement is trustworthy is critical to the statement's admissibility under Rule 807. *See id.*; *United States v. Dumeisi*, 424 F.3d 566, 576 (7th Cir. 2005); *United States v. Romo*, 914 F.2d 889, 896 (7th Cir. 1990) ("Statements which the district court finds not to have such guarantees of trustworthiness cannot be admitted under this Rule."). Whirlpool has not established the reliability – and therefore the admissibility under Rule 807 – of Mr. Green's declaration.[2] Mr. Green was not subject to cross examination when he made the declaration, his declaration encompasses information outside of his personal knowledge in the form of hearsay, and the declaration is uncorroborated. Additionally, Whirlpool has not shown that a short period of time elapsed between the statement and the underlying events, thereby making it difficult for Whirlpool to favorably craft the declaration. As such, Whirlpool has not established that Mr. Green's declaration is sufficiently reliable to be admissible under Rule 807. *See Hall*, 165 F.3d at 1110-11; *United States v. Sinclair*, 74 F.3d 753, 759 (7th Cir. 1996).

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff LG's Motion *in limine* in part and denies it in part.

---

[2] Similarly, Mr. Green may not testify at trial regarding the statements underlying his declaration because those statements are unreliable.