**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC., ) | | |
| a subsidiary of LG Electronics, Inc., ) | | |
| a Korean company, ) | | |
| ) | | |
| Plaintiff, ) | No. 08 C 242 | |
| ) | | |
| v. ) | Hon. Amy J. St. Eve | |
| ) | | |
| WHIRLPOOL CORPORATION, ) | | |
| ) | | |
| Defendant. ) | | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff LG Electronics U.S.A., Inc. ("LG"), brought the present action against Defendant Whirlpool Corporation ("Whirlpool"), alleging that the latter's false advertising of its purportedly steam-based dryers violated the Lanham Act, the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA"), and the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"). (R. 116.) After a three-week trial, the jury returned a verdict largely in favor of Defendant. (R. 624.) The jury did find in favor of LG, however, on its IUDTPA claim. (*Id.*) LG subsequently filed a motion for a permanent injunction and attorneys' fees (R. 640), which the Court denied on May 5, 2011. (R. 674.) On June 6, 2011, Whirlpool filed a post-trial motion for judgment as a matter of law on the IUDTPA claim. (R. 683.) For the reasons explained below, the Court grants Whirlpool's motion.

**LEGAL STANDARD**

Rule 50(a) provides that a party may bring a motion for judgment as a matter of law "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). The rule further

states that, if the court denies such a motion, it "is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law[.]" Fed. R. Civ. P. 50(b). A party may bring a motion for judgment as a matter of law when it "has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Alexander v. Mount Sinai Hos. Med. Ctr.*, 484 F.3d 889, 902 (7th Cir. 2007).

## ANALYSIS

**I.     The IUDTPA Claim Fails Because LG Failed to Introduce Evidence that Whirlpool's Advertising of its Dryers Occurred Primarily and Substantially in Illinois**

In moving for judgment as a matter of law, Whirlpool submits that the IUDTPA only applies to conduct that occurs "primarily and substantially" in Illinois. (R. 684 at 1 (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853-54 (Ill. 2005).) It then argues that the evidence presented by LG focused exclusively on Whirlpool's nationwide marketing practices, and so the IUDTPA claim necessarily fails. (*Id.* at 1-9.) LG responds by arguing that the Court has already found that *Avery* is inapplicable to the present case and that the Seventh Circuit's decision in *Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430 (7th Cir. 1996), controls. (R. 689 at 9-14.) In any event, LG maintains, Whirlpool has waived its prudential standing argument. (*Id.* at 8-9.) The Court agrees with Whirlpool.

   **A.     The Court Did Not Previously Hold that *Avery* Has No Application to the Present Case**

LG argues that the Court has already held that *Avery* does not apply to this case. (R. 689 at 7, 9.) On October 19, 2010, the Court held that LG had introduced sufficient evidence to

establish a nexus between the challenged behavior and consumer-protection concerns, without which showing the Illinois act would not apply because neither LG nor Whirlpool is a "consumer" under the same. *See Global Total Office Ltd. P'ship v. Global Allies, LLC*, No. 10-CV-1896, 2011 WL 3205487, at *2 (N.D. Ill. July 28, 2011); *Tile Unlimited, Inc. v. Blanke Corp.*, -- F. Supp. 2d --, 2011 WL 1527011, at *3 (N.D. Ill. Apr. 20, 2011); *Classic Bus. Corp. v. Equilon Enters., LLC*, No. 09-CV- 7735, 2011 WL 290431, at *3-4 (N.D. Ill. Jan. 27, 2011); *Axis Hospitality, Inc. v. Hanson*, No. 08-CV-7212, 2010 WL 431662, at *5 (N.D. Ill. Feb. 1, 2010); *Roche v. Country Mut. Ins. Co.*, No. 07-CV-367, 2007 WL 2003092, at *5 n.7 (S.D. Ill. July 6, 2007). To the extent its comments suggested that the limitation on extraterritorial application of Illinois law espoused by *Avery* does not apply to a claim under the IUDTPA, the Court now clarifies that this is not the case.

      **B.**      **As the IUDTPA Has No Extraterritorial Effect, and Because LG Failed to Introduce Evidence that Whirlpool's Challenged Advertising Took Place Primarily and Substantially in Illinois, the IUDTPA Claim Cannot Stand**

In *Avery*, the Supreme Court of Illinois held that the CFA has no extraterritorial effect, such that only those acts that occur substantially and primarily within Illinois fall within the Act's purview. *Avery*, 835 N.E.2d at 853; *see also Morrison v. YTB Int'l, Inc.*, -- F.3d --, 2011 WL 3132398 (7th Cir. July 27, 2011) (reversing district court dismissal of a complaint under *Avery* because the plaintiff had pleaded sufficient facts to state a plausible claim for relief under the CFA); *Chochorowski v. Home Depot U.S.A., Inc.*, 875 N.E.2d 682, 685 (Ill. App. Ct. 2007); *Van Tassell v. United Mktg. Grp., LLC*, -- F. Supp. 2d --, 2011 WL 2632727, at *8-9 (N.D. Ill. July 5, 2011) (applying *Avery* and finding that the complaint alleging a violation of the CFA failed to state a claim because "the circumstances that relate to the disputed transaction did not

3

occur 'primarily and substantially' in Illinois") (citation omitted). Shortly after, the same court reaffirmed that "the Illinois Consumer Fraud Act does not apply to fraudulent transactions which take place outside the state of Illinois." *Gridley v. State Farm Mut. Auto. Ins. Co.*, 840 N.E.2d 269, 274 (Ill. 2005) (citing *Avery*, 835 N.E.2d at 801). Two important questions follow: First, does the Illinois Supreme Court's holding apply to the IUDTPA? Second, and if so, does evidence of a nationwide form of behavior constitute conduct occurring "substantially and primarily" in Illinois sufficient to trigger application of the Act?

> 1. **A Plaintiff Bringing an Action under the IUDTPA Must Prove that the Complained-of Acts Occurred Substantially and Primarily in Illinois**

*Avery* concerned the CFA, rather than the IUDTPA, and so the Court must determine whether the principles expressed in that opinion apply to the latter statute. In its opposition to Whirlpool's motion for judgment as a matter of law, LG does not argue that *Avery*'s "substantially and primarily" test has no application to the IUDTPA. (R. 689 at *passim*.) Instead, it maintains that the test does not apply to an IUDTPA lawsuit that involves one competitor's suing another for false advertising, as opposed to one in which a consumer is the plaintiff. (*Id.* at 7-8, 10-12.) It argues that a competitor can sue under the IUDTPA if the defendant directed the challenged conduct at consumers nationwide. (*Id.* at 12-13.)

The Court concludes that the rule in *Avery* applies to the IUDTPA. In that case, the Illinois Supreme Court focused on the "the long-standing rule of construction in Illinois which holds that a 'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'" *Avery*, 835 N.E.2d at 853 (citation omitted). Having read the "express provisions of the statute," the Court discerns no "clear intent" that the

4

IUDTPA have extraterritorial effect. *See also Schwartz v. Nat'l Van Lines, Inc.*, 375 F. Supp. 2d 690, 699 (N.D. Ill. 2005) (noting that predictive judgments should favor "'the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability'") (quoting *Birchler v. Gehl Co.,* 88 F.3d 518, 521 (7th Cir. 1996)). LG does not argue otherwise. (R. 689 at *passim*.) As such, LG must demonstrate that "the circumstances that relate to the disputed transaction[s] occur[ed] primarily and substantially in Illinois." *Avery*, 835 N.E.2d at 854; *see also Morrison*, 2011 WL 3132398, at *2 ("If the Illinois Consumer Fraud Act law does not apply because events were centered outside Illinois, then plaintiffs must rely on some other state's law[.]").

Importantly, the consumer-nexus test espoused in *Athey* and the "substantially and primarily" test in *Avery* are not mutually exclusive. Case law reveals, for example, that to prevail under the CFA a plaintiff must satisfy both requirements. *See, e.g.*, *The Clearing Corp. v Fin. & Energy Exch. Ltd.*, No. 09-CV-6665, 2010 WL 2836717, at *6 (N.D. Ill. July 16, 2010) (conducting separate analysis under the CFA for *Avery*'s "primarily and substantially" test and the consumer-nexus test); *Morrison v. YTB Int'l, Inc.*, Nos. 08-565-GPM, 08-579-GPM, 2010 WL 1558712, at *3-6 (S.D. Ill. Apr. 19, 2010), *judgment vacated*, *Morrison*, 2011 WL 3132398 (same). Thus, a plaintiff might meet the consumer-nexus test—if the parties are non-consumer businesses, then because the defendant addressed the challenged trade practices to the market generally or those practices otherwise implicate consumer-protection concerns—and yet lack the right to pursue a private cause of action if those practices did not occur "primarily and substantially in Illinois."

This reading of the law reconciles *Avery* with *Athey*. The Seventh Circuit in *Athey* made

5

clear that claims under the IUDTPA "must meet the consumer nexus test by alleging that the conduct involves trade practices directed to the market generally or otherwise implicates consumer protection concerns." *Athey*, 89 F.3d at 436-37. Nothing in that court's decision suggests that the consumer-nexus test goes beyond the discrete question whether the challenged practice has a sufficiently close impact on consumers to grant a non-consumer plaintiff a right to bring an action under a consumer-protection statute. *Id.* at *passim*. The Illinois Supreme Court was equally clear in its holding that "a plaintiff may pursue a private cause of action under the Consumer Fraud Act if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery*, 835 N.E.2d at 853-54. Furthermore, the Supreme Court of Illinois referenced neither *Athey* nor the consumer-nexus standard that *Athey* recognized. *Id.* at *passim*. Reading these two opinions together, IUDTPA plaintiffs, like CFA plaintiffs, must satisfy the primarily and substantially test.[1]

Further, LG's argument that the "primarily and substantially" test does not apply to actions under the IUDTPA that involve one competitor's suing another fails. LG offers no authority in support of its proposed distinction between competitor- and consumer-initiated lawsuits under the IUDTPA. Although LG argues that the Illinois Supreme Court in *Avery* fashioned its enunciated test "to deal with consumer claims for deceptive trade practices when the consequences of those practices are felt by consumers *outside* Illinois[,] (R. 689 at 8 (emphasis in original),) nothing in the court's opinion in *Avery* suggests that it sought to distinguish lawsuits brought by consumers and competitors under the IUDTPA. *Avery*, 835

---

[1] LG argues that the consumer-nexus and "primarily and substantially tests" do not apply to false-advertising cases involving competitor claims. (R. 689 at 10-12.) LG does not articulate a convincing rationale for, or cite any case law in support of, this view, which the Court declines to adopt.

N.E.2d at 801, *passim*.

### 2. Evidence of a Nationwide Course of Conduct, Which Does Not Include Evidence of Conduct Specific to Illinois, Does Not Trigger Application of the IUDTPA

LG contends that granting Whirlpool's motion would amount to the "extreme and unprecedented step of declaring Illinois law off-limits to a competitor seeking relief from a nationwide false advertising campaign." (R. 689 at 7.) This contention misconceives the limited reach of the IUDTPA, as defined by the Illinois Supreme Court, and ignores the larger comity- and potentially Constitution-based limitations on extraterritorial application of state law, which do not always allow a court to issue a nationwide injunction based on a violation of state law.[2] Contrary to LG's suggestion, Illinois does not necessarily bar a company harmed by a nationwide practice of false advertising from seeking relief under its laws. To avail itself of Illinois's IUDTPA statute, however, such a plaintiff would have to establish that the challenged advertising occurred primarily and substantially within the state. *Avery*, 835 N.E.2d at 854; *see also IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, No. 04-CV-6504, 2007 WL 164603, at *3 (N.D. Ill. Jan. 12, 2007) (observing that "[t]he *Avery* court set the following test for determining when a transaction occurs 'primarily and substantially' in Illinois; it pointed to

---

[2] Indeed, even if the Supreme Court of Illinois had not limited the reach of the CFA (and, by extension, the IUDTPA) in this manner, concerns of comity can limit courts' ability to issue nationwide injunctions based on a violation of state law. *See, e.g.*, *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 327 (6th Cir. 2001); *see also United States v. AMC Entm't, Inc.*, 549 F.3d 760, 770 (9th Cir. 2008) ("Once a court has obtained personal jurisdiction over a defendant, the court has the power to enforce the terms of the injunctions outside the territorial jurisdiction of the courts, including issuing a nationwide injunction. However, when exercising its equitable powers to issue an injunction, a court must be mindful of any effect its decision might have outside its jurisdiction. Courts ordinarily should not award injunctive relief that would cause substantial interference with another court's sovereignty.") (internal citations omitted).

the following factors to guide the analysis: (i) plaintiff's residence, (ii) where the deception occurred, (iii) where the damage to plaintiff occurred, and (iv) whether plaintiff communicated with defendants or its agents in Illinois"). If a plaintiff cannot make this showing because "events were centered outside Illinois," then it "must rely on some other state's law." *Morrison*, 2011 WL 3132398, at *2.

In this case, LG introduced *no evidence* concerning Whirlpool's advertisements of its dryers in Illinois. Nor did it produce evidence of the parties' contacts with, or relevant activities in, the State that would satisfy the factors highlighted in *Avery*. The most LG can say is what it previously argued to the Court: it "conducted business in Illinois through (i) its extensive relationship with Kenmore (headquartered in Hoffman Estate, Illinois) during the time in which Whirlpool manufactured Kenmore's steam dryer for Sears . . . and (ii) its sales of dryers in Illinois." (R. 649 at 22.) This evidence does not demonstrate that Whirlpool's challenged advertising occurred primarily and substantially in Illinois. *See, e.g.*, *Morrison*, 2011 WL 3132398, at *3 (observing that, in *Avery*, "[t]he only fact favoring application of Illinois law was that State Farm's headquarters, where the replacement-parts policy was adopted, is in Illinois" and so "[t]he Supreme Court of Illinois held that Louisiana rather than Illinois law should govern [Avery's] situation"). LG did not introduce any evidence of advertising in Illinois regarding Kenmore's steam dryers, or any evidence of damages in Illinois stemming from such advertising.

Finally, LG points to a number of decisions in this district that have upheld actions taken by competitors under the IUDTPA against nationwide conduct. (R. 689 at 12-13 (citing *Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*, -- F. Supp. 2d --, 2011 WL 1838872, at *6-7 (N.D. Ill. May 11, 2011); *Morningware, Inc. v. Hearthware Home Prods., Inc.*, 673 F.

Supp. 2d 630, 639 (N.D. Ill. 2009); *WMH Tool Grp., Inc. v. Woodstock Int'l, Inc.*, No. 07-CV-3885, 2009 WL 971425 (N.D. Ill. Apr. 8, 2009); *Hyundai Const. Equip. USA, Inc. v. Chris Johnson Equip., Inc.*, No. 06-CV-3238, 2008 WL 4210785 (N.D. Ill. Sept. 10, 2008); *Medallion Prods., Inc. v. H.C.T.V., Inc.*, No. 06-CV-2597, 2006 WL 3065344, at *6-7 (N.D. Ill. Oct. 24, 2006).)

None of these opinions reference *Avery*. *Id.* Nor do any of them address the question whether an IUDTPA claim can stand where a plaintiff exclusively offers evidence of nationwide, as opposed to Illinois-specific, conduct. *Id.* Further, all but two of the cited cases involved motions to dismiss under Rule 12(b)(6), which the courts denied without having occasion to analyze the issue whether the allegedly deceptive behavior occurred "substantially and primarily" in Illinois. *Cf. Morrison*, 2011 WL 3132398, at *3-5. The other two cases, *WMH Tool* and *Hyundai*, involved motions for summary judgment, but neither court engaged in any analysis specific to the IUDTPA.

Ultimately, the precedent relied upon by LG does not help its current argument, for none of those cases addressed the legal question presently before the Court. In light of *Avery* and the preceding discussion, LG failed to establish through the extensive evidence presented at trial that Whirlpool's nationwide advertising of its dryers, or that the parties' other activities relevant to the dispute, occurred primarily and substantially in Illinois. *See generally Morrison*, 2011 WL 3132398, at *4 ("*Avery*'s standard is not exactly self-defining, and the Supreme Court of Illinois said that 'each case must be decided on its own facts,' a formula that gives the trier of fact substantial latitude and implies deferential appellate review."). For that reason, LG's IUDTPA claim fails, and Whirlpool is entitled to judgment as a matter of law.

### 3. Whirlpool Preserved its Argument that the IUDTPA Does Not Apply

Finally, LG argues that Whirlpool has waived its "standing" argument by failing to raise it at the pleading stage.[3] (R. 689 at 7-9.) This claim is unavailing. Whirlpool argued at the outset of the case that "LG cannot succeed on its claims under Illinois state law" on the ground that "a plaintiff may pursue claims under . . . the Illinois Deceptive Trade Practices Act . . . only 'if the circumstances that relate to the disputed transaction occur *primarily and substantially in Illinois*.'" (R. 50 at 20) (emphasis in original) (quoting *Avery*, 835 N.E.2d at 854).) Whirlpool raised this argument just weeks after LG initiated this lawsuit. Nor was this an undeveloped argument of the kind that the Court could deem waived. *See, e.g.*, *Radha Geismann, M.D., P.C. v. Allscripts Healthcare Solutions, Inc.*, 764 F. Supp. 2d 957, 961 (N.D. Ill. 2011). The Court therefore finds that Whirlpool has not waived its argument that LG's IUDTPA claim fails on account of the fact that the challenged advertising did not occur primarily and substantially in Illinois.

## II. The Court Need Not Address Whirlpool's Argument that the IUDTPA Claim Fails on Account of the Fact that Whirlpool's Dryers Use Steam

In light of its finding that LG failed to introduce evidence sufficient to trigger application of the IUDTPA, the Court need not address Whirlpool's alternative argument that the IUDTPA claim fails both because Whirlpool's dryers in fact use steam and because LG failed to prove injury. (R. 684 at 10-17.)

---

[3] The Seventh Circuit recently explained that the question whether a state's law applies in light of the fact that the relevant events took place out of the state is not a matter of standing. *Morrison*, 2011 WL 3132398, at *2.

## CONCLUSION

For the preceding reasons, the Court grants Whirlpool's motion for judgment as a matter on LG's IUDTPA claim.

Dated: August 10, 2011

                                                **ENTERED**

                                                **AMY J. ST. EVE**
                                                **United States District Court Judge**