**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC.,<br>a subsidiary of LG Electronics, Inc.,<br>a Korean company, | ) <br> ) <br> ) <br> ) | Civil Action No.: 08 C 242 |
|           Plaintiff, | ) <br> ) | Judge St. Eve |
|    v. | ) <br> ) | Magistrate Judge Mason |
| WHIRLPOOL CORPORATION, | ) <br> ) | |
|           Defendant. | ) | |

**WHIRLPOOL CORPORATION'S MOTION
FOR LEAVE TO FILE *INSTANTER* A REPLY BRIEF IN EXCESS OF 15 PAGES**

Defendant Whirlpool Corporation ("Whirlpool"), pursuant to Local Rule 7.1, respectfully requests that this Court grant it leave to file *instanter* a reply brief in excess of 15 pages in support of its Bill of Costs. The 20-page reply brief is attached hereto. In support of its motion, Whirlpool states as follows:

1.      On September 9, 2011, Whirlpool filed its Bill of Costs, seeking recovery of costs in various categories totaling approximately $530,000. (*See* Dkt. Nos. 694, 695.)

2.      On September 26, 2011, LG filed its Objections to Whirlpool's Bill of Costs, including a 15 page brief and 8 charts detailing LG's specific objections to various categories of expenses. (*See* Dkt. No. 700.)

3.      On October 3, 2001, the Court ordered Whirlpool to file a reply brief in support of its Bill of Costs by October 11, 2011. (Dkt. No. 701.)

4.      Whirlpool submits that the arguments and legal research presented in its reply brief will assist the Court in a just and expedient determination of the issues to be resolved. Whirlpool's reply brief in support of its Bill of Costs is 20 pages long and includes two exhibits. It is attached as Exhibit 1 to this motion.

5.      Whirlpool's counsel contacted LG's counsel regarding this motion, and LG's counsel indicated that LG had no position regarding this motion.

WHEREFORE, for all the foregoing reasons, Whirlpool respectfully requests that the Court grant its motion for leave to file a brief in excess of 15 pages in support of its Bill of Costs.

Dated: October 11, 2011

WHIRLPOOL CORPORATION

By /s/ Brian D. Roche

Brian D. Roche
Jennifer Yule DePriest
Vanessa Martí Heftman
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
Tel: 312.207.1000

J.A. Cragwall, Jr.
Janet Ramsey
Charles N. Ash, Jr.
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, Michigan 49503-2487
Tel: 616.752.2000

Stephen G. Morrison
James J. McGovern
NELSON MULLINS RILEY &
SCARBOROUGH, LLP
Meridian, 17th Floor
1320 Main Street
Columbia, SC 29201
Telephone: (803) 799-2000

Patrick Coleman Wooten
NELSON MULLINS RILEY &
SCARBOROUGH, LLP
Liberty Center, Suite 600
151 Meeting Street
Charleston, SC 29401-2239
Telephone: (843) 853-5200

Attorneys for Defendant, Whirlpool Corporation

## CERTIFICATE OF SERVICE

I, Brian D. Roche, an attorney, hereby certify that on October 11, 2011, I filed

**WHIRLPOOL CORPORATION'S MOTION FOR LEAVE TO FILE** *INSTANTER* **A**

**REPLY BRIEF IN EXCESS OF 15 PAGES** with the Clerk of the Court using the ECF system,

which will send notification of such filings to the following individuals:

Ronald Y. Rothstein
rrothstein@winston.com
Bryna Joyce Roth Dahlin
bdahlin@winston.com
John George Marfoe
jmarfoe@winston.com
Lawrence R. Desideri
ldesideri@winston.com
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL  60601

*/s/ Brian D. Roche*

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

_____

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC.,<br>a subsidiary of LG Electronics, Inc.,<br>a Korean company, | ) <br> ) <br> ) <br> ) | Case No. 08 C 242<br><br>Honorable Amy J. St. Eve |
| Plaintiff, | ) <br> ) | Magistrate Judge Mason |
| v. | ) <br> ) | |
| WHIRLPOOL CORPORATION, | ) <br> ) | |
| Defendant. | ) | |

## WHIRLPOOL CORPORATION'S REPLY BRIEF IN SUPPORT OF BILL OF COSTS

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

1.  Fees of the clerk and marshal – Section 1920(1) .................................................. 1

2.  Court Reporting and Transcription Fees – Section 1920(2) ........................... 1

    a.  Court reporter fees ..................................................................................1

    b.  Transcripts.................................................................................................2

        i.  Stenographic Deposition Transcripts................................2

        ii.  Videotape Deposition Costs..................................................3

3.  Fees for Witnesses – 28 U.S.C. § 1920(3) .............................................................. 7

    a.  Travel ...........................................................................................................7

    b.  Expert Witnesses ......................................................................................7

4.  Fees for Exemplification and Copies – Section 1920(4)................................... 11

    a.  Exemplification ......................................................................................11

    b.  Photocopying ..........................................................................................16

**Cases**

*AMC v. Interconinental*, No. 06 C 63, 2010 WL 4735760 (N.D. Ill. Nov. 15, 2010) .................... 2

*CBT Flint Partners, LLC v. Return Path, Inc.*, 676 F. Supp. 2d 1376 (N.D. Ga. 2009) ........ 19, 20

*Cefalu v. Village of Elk Grove*, 211 F.3d 416 (7th Cir. 2000) ...................................................... 15

*Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445 (7th Cir. 1998) ................................................ 2

*Chemetall GmbH v. ZR Energy, Inc.*, No. 99 C 4334, 2001 WL 1104604 (N.D. Ill. Sept. 18, 2001) ........................................................................................................................................ 1

*DiBella v. Hopkins*, 407 F. Supp. 2d 537 (S.D.N.Y. 2005) .......................................................... 13

*Emmenegger v. Bull Moose Tube Co.*, 33 F. Supp. 2d 1127 (E.D. Mo. 1998) .............................. 9

*Engate, Inc. v. Esquire Deposition Servs. LLC*, No. 01 C 6204, 2006 WL 695650 (N.D. Ill. Mar. 13, 2006) ........................................................................................................................ 5

*Fagbemi v. Spatz*, No. 08 C 3736, 2010 WL 3522946 (N.D. Ill. Sept. 2, 2010) ......................... 18

*Fairley v. Andrews*, No. 03 C 5207, 2008 WL 961592 (N.D. Ill. Apr. 8, 2008) ............. 1, 4, 9, 10

*Finchum v. Ford Motor Co.*, 57 F.3d 526 (7th Cir. 1995) .............................................................. 2

*First City Sec., Inc. v. Shaltiel*, No. 92 C 2620, 1993 WL 408370 (N.D. Ill. Oct. 8, 1993) ......... 16

*First Nat'l Bank in Sioux Falls v. First Nat'l Bank South Dakota*, No. CIV. 06-4101, 2010 WL 4363802 (D. S.D. Oct. 27, 2010) ........................................................................................ 14

*Fox v. Will County*, No. 04 C 7309, 2009 WL 723385 (N.D. Ill. Mar. 11, 2009) ......................... 9

*Harkins v. Riverboat Servs., Inc.*, 286 F. Supp. 2d 976 (N.D. Ill. 2003) ....................................... 2

*Held v. Held*, 137 F.3d 998 (7th Cir. 1998) ................................................................................... 1

*Hynix Semiconductor Inc. v. Rambus Inc.*, 697 F. Supp. 2d 1139 (N.D. Cal. 2010) ..................... 6

*Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, No. C06-110, 2009 WL 2584838 (N.D. Iowa Aug. 17, 2009) ..................................................................................................... 14

*Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699 (7th Cir. 2008).......................................... 3

*M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404 (7th Cir. 1991) ................................... 19, 20

*Maher v. City of Chicago*, No. 03 C 3421, 2007 WL 2908837 (N.D. Ill. Oct. 2, 2007) ............... 3

*Martec, LLC v. Johnson & Johnson*, No. 07-cv-825-DRH, 2010 WL 669818 (S.D. Ill. Feb. 22, 2010) ..................................................................................................... 14

*Movitz v. First Nat'l Bank of Chicago*, 982 F. Supp. 571 (N.D. Ill. 1997) ................................... 20

*Nat'l Diamond Syndicate, Inc. v. Flanders Diamond USA, Inc.*, No. 00 C 6402, 2004 WL 1557765 (N.D. Ill. July 8, 2004) ..................................................................................................... 3

*Nilssen v. Osram Sylvania, Inc.,* No. 01 C 3585, 2007 WL 257711 (N.D. Ill. Jan. 23, 2007) *affd,* 528 F.2d 1352 (Ill. 2008) ..................................................................................................... 8, 16

*Northbrook Excess & Surplus Ins. Co. v. Proctor & Gamble Co.*, 924 F.2d 633 (7th Cir. 1991) ..................................................................................................... 16

*Odessa Ford, LLC v. T.E.N. Invs., Inc.*, No. CIV A. 07-2161 KHV, 2009 WL 1631850 (D. Kan. June 10, 2009) ..................................................................................................... 6

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, No. 2:07-cv-1294, 2011 WL 1748620 (W.D. Pa. May 6, 2011) ..................................................................................................... 19

*Rhee v. Witco Chem. Corp.*, 126 F.R.D. 45 (N.D. Ill. 1989) ....................................................... 11

*Riley v. UOP LLC*, 258 F. Supp. 2d 841 (N.D. Ill. 2003) ............................................................. 1

*Service Employees Int'l Union v. Rosselli*, No. C 09-00404-WHA, 2010 WL 4502176 (N.D. Cal. Nov. 1, 2010) ..................................................................................................... 6

*Shum v. Intel Corp.*, 682 F. Supp. 2d 992(N.D. Cal. 2009),.......................................................... 7

*Specht v. Google Inc.*, No. 09 C 2572, 2011 WL 2565666 (N.D. Ill. June 27, 2011) ............... 5, 6

*Thabault v. Chait*, No. 85-2441 (HAA), 2009 WL 69332 (D. N.J. Jan. 7, 2009) ......................... 6

*Top Tobacco, L.P. v. North Atlantic Operating Co., No. 06 C* 950, 2007 WL 1149220 (N.D. Ill. Apr. 17, 2007) ..................................................................................................... 4, 7

*Trading Techs., Int'l Inc., v. eSpeed, Inc.*, 750 F. Supp. 2d 962 (N.D. Ill. 2010) ....... 12, 13, 15, 16

*Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, No. C06-110, 2009 WL 2584838 (N.D. Iowa Aug. 17, 2009) ..................................................................................................... 14

*Vardon Golf Co. v. Karsten Mfg. Corp.*, No. 99 C 2785, 2003 WL 1720066 (N.D. Ill. Mar. 31, 2003).................................................................................................................. 4

*Vigortone Ag Prods., Inc. v. PM Ag Prods., Inc.*, No. 99 C 7049, 2004 WL 1899882 (N.D. Ill. Aug. 12, 2004)............................................................................................... 12

*Vito & Nick's, Inc. v. Barraco*, No. 05 C 2764, 2008 WL 4594347 (N.D. Ill. Oct. 10, 2008) ...................................................................................................................... 4, 5

*Whitesell Corp. v. Whirlpool Corp.*, No. 1:05-CV-679, 2010 WL 1875508 (W.D. Mich. May 10, 2010)........................................................................................................... 7

*Z Trim Holdings, Inc. v. Fiberstar, Inc.*, No. 07-cv-161-bbc, 2008 WL 3843507 (W.D. Wisc. Aug. 12, 2008) ................................................................................................ 15

## **Statutes**

28 U.S.C. § 1920(4) ....................................................................................................... 11

## **Rules**

Fed. R. Civ. P. 26(b)(4)(E)(i)-(ii) ................................................................................. 10

Whirlpool's Bill of Costs requests $530,381.67.  LG filed a response arguing that Whirlpool is entitled to recover only $149,178.29.  Setting aside its overbroad general objections to certain entire categories of costs, LG argues alternatively that Whirlpool is entitled to recover only $272,505.58 based on specific objections.  Based on LG's objections, Whirlpool reduces its requested amount to $519,884.12.  (*See* Exhibit A, attached hereto.)

1. **Fees of the clerk and marshal – Section 1920(1)**

Whirlpool agrees with LG that before December 19, 2008, the U.S. Marshals Service rate was $45 per hour, and accordingly reduces the amount requested from $1045 to $895.

2. **Court Reporting and Transcription Fees – Section 1920(2)**

a. **Court reporter fees**

Though LG failed to follow this interpretation in its own bill of costs (*see* Dkt. No. 696), it now contends that for each deposition, other court reporter-related fees are not recoverable to the extent they exceed the allowable per page transcript rates.  Although a minority of courts in this district have read N.D. Ill. L.R. 54.1(b) to limit court reporter attendance or other fees to the per page rate established by the Judicial Conference, the majority view is that other court reporter fees and expenses may be awarded in addition to the maximum allowable per page transcript costs.  *See, e.g., Fairley v. Andrews*, No. 03 C 5207, 2008 WL 961592, at *7 (N.D. Ill. Apr. 8, 2008) (St. Eve, J.); *Riley v. UOP LLC*, 258 F. Supp. 2d 841, 844 (N.D. Ill. 2003) (awarding court reporter attendance fees in addition to the maximum amount per page despite also noting that "[t]his fee covers all costs of transcript production"); *see also Chemetall GmbH v. ZR Energy, Inc.*, No. 99 C 4334, 2001 WL 1104604, at *26 (N.D. Ill. Sept. 18, 2001).

Whirlpool believes that the majority view is the proper interpretation and should be applied here.  The Seventh Circuit has made clear that court reporter attendance fees are recoverable under Section 1920(2).  *Held v. Held*, 137 F.3d 998, 1002 (7th Cir. 1998).  In

addition, actual per page transcript rates are close to or often exceed the Judicial Conference rate. Coupled with the fact that courts in this district have found $35 to $95 per hour to be a reasonable rate for court reporter appearances, under the minority interpretation advocated by LG, prevailing parties would routinely recover only a nominal percentage of the court reporter attendance fees or even nothing at all. This is contrary to the Seventh Circuit's interpretation of Section 1920(2). Indeed, in *Cengr*, the Seventh Circuit determined that the plaintiff should be taxed for the maximum amount allowed by the Judicial Conference *plus* the costs of the court reporter. *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 457 (7th Cir. 1998). Moreover, it is within the Court's discretion to award costs incidental to depositions. *See Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995). As LG has not objected to the reasonableness of the amount charged by the court reporters, these fees should be awarded to Whirlpool.

### b.    Transcripts

### i.    Stenographic Deposition Transcripts

Despite seeking recovery for exhibits and word indexes in LG's own bill of costs, in addition to non-taxable costs such as ASCII transcripts and delivery charges that Whirlpool declined to request, LG contends that Whirlpool's request for exhibit and word index costs should be denied. However, exhibits were indeed essential to understanding the issues in this case and were reasonably necessary for witnesses in their review of depositions. *See Harkins v. Riverboat Servs., Inc.*, 286 F. Supp. 2d 976, 980 (N.D. Ill. 2003) (finding deposition exhibits essential); *AMC v. Intercontinental*, No. 06 C 63, 2010 WL 4735760, at *1 (N.D. Ill. Nov. 15, 2010) (allowing costs for exhibits because they were essential to understanding the issues). Word indexes were reasonably necessary in that they provided a resource to both parties, as well as the Court. For instance, a word index may have assisted the Court in ruling on deposition

designations.  *Maher v. City of Chicago*, No. 03 C 3421, 2007 WL 2908837, at *2 (N.D. Ill. Oct. 2, 2007) (finding word indices a reasonably necessary resource).

LG also contends that Whirlpool is not entitled to recover any costs associated with the depositions of Green and Birtz, because those depositions were scheduled in response to LG's motion for spoliation sanctions.  To the contrary, it was reasonably necessary for Whirlpool to depose Green and Birtz because they had information regarding how LG characterized Whirlpool's steam dryers to third parties.  This information was relevant to Whirlpool's defense—in fact, Green's deposition was used at trial.  However, Whirlpool will withdraw its request of $297.65 for costs related to the Birtz deposition.  Whirlpool should be awarded a total of $35,473.70 for stenographic transcription costs.

### ii.    Videotape Deposition Costs

As a general matter, recovery for *both* stenographic transcription and videotaping costs are allowed if both are necessary and reasonable in the context of the case.  *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699 (7th Cir. 2008).  It can be considered reasonably necessary to videotape a deposition if the deponent is beyond the Court's subpoena power.  *National Diamond Syndicate, Inc. v. Flanders Diamond USA, Inc.*, No. 00 C 6402, 2004 WL 1557765, at *2 (N.D. Ill. July 8, 2004) (St. Eve, J.).  As set forth in detail below, videotaping costs were reasonably necessary in the context of this case.  In addition, to the extent Whirlpool overlooked removing $15.00 shipping and handling charges on four invoices, Whirlpool reduces the amount requested by $60.00 ($15.00 for a deposition taken by Whirlpool and $45.00 for depositions taken by LG).

*Depositions noticed and taken by Whirlpool*

LG challenges the videotaping costs for the depositions of witnesses residing in the United States—specifically, Donner, Green, Jacobi, Kavanaugh, Kavanaugh 30(b)(6), Lee,

Martella, Palmer, Palmer 30(b)(6), Poczkalski, Rao, Reitter, Weinstock, and Wind (as well as for all of the witnesses LG deposed, discussed *infra*).

The videotaped depositions of Green, Kavanaugh, Martella, and Weinstock were actually played during trial, as those witnesses were unavailable and outside the Court's subpoena power, and therefore should be taxed. *Vardon Golf Co. v. Karsten Mfg. Corp.*, No. 99 C 2785, 2003 WL 1720066, at *9 (N.D. Ill. Mar. 31, 2003) (allowing recovery of costs of both videotape and transcript because portions of videotaped depositions were made use of during trial). The videotaped deposition of Wind was used at his *Daubert* hearing during cross-examination, and should also be taxed. (Wind Hr'g Tr. at 73-74, 80.) Likewise, the videotaped depositions of LG's other experts—Jacobi, Rao, and Reitter—should be taxed as well because there was a reasonable possibility that they would be used for a similar purpose either during a *Daubert* hearing or at trial. It was also reasonably necessary to videotape LG's 30(b)(6) deponents because of the potential impact of the testimony of the person designated by LG to testify on its behalf. *Cf. Top Tobacco, L.P. v. North Atlantic Operating Co.*, No. 06 C 950, 2007 WL 1149220, at *7 (N.D. Ill. Apr. 17, 2007) (finding that because damaging testimony was from chairman, "it is hard to overestimate the potential impact of the videotape on a jury"). For instance, portions of Kavanaugh's 30(b)(6) testimony were included in the designations played at trial. There was also the possibility that the representative might be different at trial.

In addition, both costs were reasonably necessary for Donner, Green, and Martella for a separate and independent reason: all of them were non-parties residing outside of the Court's subpoena power. *Fairley*, 2008 WL 961592, at *11 (allowing costs for non-parties because "there was a reasonable possibility that they would be unavailable for trial"); *accord Vito & Nick's, Inc. v. Barraco*, No. 05 C 2764, 2008 WL 4594347, at *3 (N.D. Ill. Oct. 10, 2008)

(finding both fees reasonably necessary for non-party deponents).  Contrary to LG's suggestion

otherwise, Whirlpool does not cite *Engate* for the proposition that all U.S. witnesses residing

outside of the court's subpoena power are automatically unavailable.  However, in this case, it

was reasonable to believe that the U.S. witnesses residing outside of the court's subpoena power

that Whirlpool deposed would potentially be unavailable for trial.  In *Engate*, the U.S. residents

for which the court refused to award videotaping costs consisted of two attorneys hired by

Engate, as well as a court reporter.  *Engate, Inc. v. Esquire Deposition Servs. LLC*, No. 01 C

6204, 2006 WL 695650, at *2 (N.D. Ill. Mar. 13, 2006).  In contrast, here the U.S. residents

Whirlpool deposed were either experts (for which videotaping was reasonably necessary for a

separate reason), non-parties, or current LG employees that in this lengthy litigation reasonably

might not be employed by LG at trial. [1]

*Digitalization and synchronization*

Even for the five videotape depositions of witnesses residing in Korea that LG does not

challenge, LG objects to videotaping costs referred to in the supporting invoices as "DepoView,"

"Legalink Viewer," and "LEF Files," "[t]o the extent that they relate to the digitalization and

synchronization of videotaped depositions."  (Dkt. No. 700 at 5.)  An LEF file contains the video

file, and should be taxed.  Digitizing and synchronizing is reasonably necessary to prepare clips

for illustrative purposes.  *See Specht v. Google Inc.*, No. 09 C 2572, 2011 WL 2565666, at *2

---

[1] In addition, LG's objection to what it characterizes as "Whirlpool's attempt to recover personal expenses" should be rejected.  Specifically, LG objects to a $26.00 parking fee charged by the court reporter at Kavanaugh's deposition (and a $50.00 parking fee charged by the court reporter at Donner's deposition).  The parking fees should be taxed as incidental court reporter costs, and are not "personal expenses" as LG alleges.  LG also objects to a $12.00 "Refreshments" charge that was incurred during Whirlpool's videoconference deposition of LG's Mr. Kim in Seoul, Korea.  The "Refreshments" were for consumption in the conference room in Seoul, and are obviously not a Whirlpool "personal expense" as LG suggests.  Recovery should be allowed either as an incidental cost to the deposition or as a subsistence cost under Section 1920(3).

(N.D. Ill. June 27, 2011) (allowing costs for a $110 hourly rate to digitize and synchronize the deposition videos and $15 per video tape used in each recording). "[S]ynchronization charges are the costs that the video technician charges to synchronize the time of the video to the lines of the transcript [which] enables the video to be cut according to designated lines of transcript and for the text of the testimony to be displayed" *Hynix Semiconductor Inc. v. Rambus Inc.*, 697 F. Supp. 2d 1139, 1151 (N.D. Cal. 2010). Synchronization was reasonably necessary here for the preparation of video transcripts, for a complex trial in which extensive use was made of video clips. *See id.; see also Odessa Ford, LLC v. T.E.N. Invs., Inc.*, No. CIV A. 07-2161-KHV, 2009 WL 1631850, at *7 (D. Kan. June 10, 2009) (allowing recovery for "MPEG DVD and synchronization of each deposition"); *Service Employees Int'l Union v. Rosselli*, No. C 09-00404-WHA, 2010 WL 4502176, at *3 (N.D. Cal. Nov. 1, 2010) (finding compensable fees charged by court reporters for "video digitizing to DVD[s]," and "video synchronizing").

At the very least, the digitization and synchronization costs should be awarded for the videotape depositions played in court—Wind, Green, Kavanaugh, Martella, and Weinstock, for a total of $2,805.00. *Thabault v. Chait*, No. 85-2441 (HAA), 2009 WL 69332, at *12 (D. N.J. Jan. 7, 2009). Alternatively, these costs should be allowed under Section 1920(4) as exemplification.

*Depositions noticed and taken by LG*

LG contends that Whirlpool is entitled to nothing for videotape deposition costs associated with *any* of the depositions noticed and taken by LG, without even addressing Whirlpool's supporting authority (Dkt. No. 695 at 5), or providing any contrary authority, and presumably relying solely on its blanket argument that these witnesses reside in the United States and there was no contention that they were believed to be unavailable for trial.

LG cannot reasonably contend that it was not necessary for Whirlpool to obtain a copy of these videotapes, particularly in light of the fact that LG itself threatened to call many of these witnesses to testify at trial by videotaped deposition, including: Dunsburgen, Rogers Klyn, Voss, Doll, Ficke, Dr. Levi, Brown, Meyer, Lau, Slabbekoorn, Vallecorsa, Hall, Seger, Torres, Tilley, Lesauskis, and Meyer.  (Dkt. No. 508.)  It was LG's decision to videotape its deponents, and it would have been "ill-advised" for Whirlpool to have not obtained a copy.  *Top Tobacco*, 2007 WL 1149220, at *7.  For depositions videotaped by LG, Whirlpool should be awarded $11,963.20.

**3.      Fees for Witnesses – 28 U.S.C. § 1920(3)**

      **a.      Travel**

Although LG has not introduced any evidence of what the "most economical rate reasonably available" at the time was for the challenged business-class flights totaling $6,071.60 for Dr. Dhar and Dr. Malladi, *see Whitesell Corp. v. Whirlpool Corp.*, No. 1:05-CV-679, 2010 WL 1875508, at *3 (W.D. Mich. May 10, 2010), Whirlpool offers to reduce the amount requested for these flights by half, in the amount of $3,035.80.  *See Shum v. Intel Corp.*, 682 F. Supp. 2d 992, 1002 (N.D. Cal. 2009), *aff'd*, 629 F.3d 1360 (Cal. Ct. App. 2011) (reducing reimbursement for first class ticket by half because "no evidence in the record as to the actual cost of a coach versus a first-class ticket").  Thus, Whirlpool reduces the total amount requested for witness travel costs to $18,249.04.

      **b.      Expert Witnesses**

*Ratio of time spent preparing for depositions*

Notably, LG does not contest the reasonableness of the hourly fees charged by the experts.  Based on the extensive document review required, the complexity of issues in this case,

and the breadth of the expert reports (their own as well as those of LG's experts they reviewed), Whirlpool's experts spent a reasonable amount of time preparing for their depositions.

Dr. Ravi Dhar spent a total of 5.75 hours at the deposition and 36.75 hours (not 39 as LG contends) preparing for his deposition. The ratio is approximately 1 to 6.4. Dr. Judith Levi spent a total of 6.25 hours at the deposition and 30.75 hours preparing for her deposition. This is a ratio of approximately 1 to 4.9. Dr. Subbaiah Malladi spent a total of 6.75 hours at his deposition and 28.50 hours preparing for the deposition. This is a ratio of approximately 1 to 4.2. Dr. Stephen Nowlis spent 7 hours at his deposition and approximately 30.50 hours preparing for his deposition, for a ratio of 1 to 4.35. Raymond Sims spent 6.5 hours at his deposition and 38.50 hours preparing for his deposition, for a ratio of approximately 1 to 5.9.

LG states that "[t]he amount of reimbursable deposition preparation time for each witness should, at most, not extend beyond the ratio approved in *Nilssen*." (Dkt. No. 700 at 7.) In *Nilssen v. Osram Sylvania, Inc.*, No. 01 C 3585, 2007 WL 257711, at *5 (N.D. Ill. Jan. 23, 2007), *aff'd*, 528 F.3d 1352 (Ill. 2008), the court found that a ratio three times the length of a particular expert's deposition was reasonable, but nowhere in that decision did the court state that ratios higher than three to one were per se unreasonable. On the contrary, the court in *Nilssen* awarded costs for another expert for 13.25 hours of deposition time and 75.50 hours of deposition preparation. *Id.* This *Nilssen* ratio is 1 to 5.7. The ratios of Whirlpool's experts here all fall either within or only slightly above the ratios of 1:3 and 1:5.7 approved in *Nilssen*, and were reasonable in the context of this case.

<u>Other expert witness activities</u>

Dr. Levi spent 3.5 hours proofreading her deposition for accuracy before having it signed and notarized, Dr. Nowlis spent 5.5 hours, and Dr. Sims spent 7.0 hours. These experts spent a

reasonable amount of time reviewing deposition transcripts of their sworn testimony for accuracy and these costs should be taxed. *Fox v. Will County*, No. 04 C 7309, 2009 WL 723385, at *4 (N.D. Ill. Mar. 11, 2009) (awarding expenses for time expert spent reviewing his deposition).

There is also residual time the experts spent on the date of their deposition that is not attributable to time spent on the record:  Dr. Dhar (2.25); Dr. Levi (.75); Dr. Malladi (1.25); Dr. Nowlis (1.0); Sims (.50).  One category of such residual time is travel time to and from the deposition location, at least on the date of the actual deposition.  The fees associated with this travel time should be awarded.  "[T]he weight of authority holds that Rule 26(b)(4)(C) permits recovery of fees for an expert's preparation time and travel time in connection with his deposition.  That is to say, preparation time and travel time are time spent 'responding' to discovery."  *Emmenegger v. Bull Moose Tube Co.*, 33 F. Supp. 2d 1127, 1136 (E.D. Mo. 1998); *see also Fairley*, 2008 WL 961592, at *5 (awarding expert witness fees for expert's "preparation for his deposition, his actual deposition, as well as time and travel expenses in connection with his deposition").  Should the Court agree with LG's objection to travel time to and from Chicago for Dr. Nowlis, only 7.50 hours should be deducted.

*Travel Costs under Rule 26(b)(4)(E)(i)*

Whirlpool reduces its request to tax $1,626.40 for travel costs for Dr. Malladi to $100.00 for taxi fare, which is substantiated.  (Dkt. No. 695 at 15.)  Whirlpool withdraws its request for $1,320.80 for travel costs for Sims.  Further, although not objected to by LG, Whirlpool reduces the requested per diem witness fee for both Dr. Malladi and Sims from $120.00 to $40.00 and withdraws its request for $418.00 each for statutory subsistence costs.  The total reduction for expert travel and subsistence costs is $3,843.20.

## Dr. Judith Levi

Whirlpool retained Dr. Levi as an expert and submitted her declaration as part of its opposition to LG's motion for preliminary injunction. (Dkt. No. 543 at 1.) LG correctly asserts that Whirlpool did not list Dr. Levi as an expert in its Rule 26 disclosures—because Whirlpool did not contemplate using her at trial. LG nevertheless proceeded to take her deposition in May 2009, and questioned her for hours about her work on this case though she had not worked on it since approximately November 2008. Whirlpool is entitled to costs for this deposition because Dr. Levi is an expert, as this Court has already observed. (Dkt. No. 543 at 2.)

Rule 26(b)(4)(E) provides:

"Unless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) *or (D)*; and (ii) for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions."

Fed. R. Civ. P. 26(b)(4)(E)(i)-(ii) (emphasis added). Dr. Levi is "an expert who has been retained or specially employed by another party . . . who is not expected to be called as a witness at trial" under Rule 26(b)(4)(D). The predecessor of Rule 26(b)(4)(E) "was designed to meet the objection that it is unfair to permit one side to obtain without cost the benefit of an expert's work for which the other side had paid, often a substantial sum." *Fairley*, 2008 WL 961592, at *4 (internal quotations and citations omitted). This purpose is underscored here in light of the fact that LG attempted to call Dr. Levi to testify at trial. (*See* Dkt. No. 508.)

## Manifest Injustice

LG has failed to meet the high burden of showing that taxing expert costs would result in "manifest injustice." Though Wright & Miller notes a potential concern with the possibility the deposition process might include ordinary trial preparation, it also emphasizes that "[a]t the same time, it is hard to deny that the deposition-preparation process, like the deposition itself, requires

additional effort by the expert[.]"  81 Charles Alan Wright & Arthur R. Miller, Federal Practice

and Procedure § 2034 (3d ed. 2011).  *Rhee v. Witco Chem. Corp.*, 126 F.R.D. 45, 47 (N.D. Ill.

1989) is not sufficiently analogous to support LG's proposition.  (Dkt. No. 700 at 9.)  *Rhee*

involves whether under Rule 26 a protective order should issue <u>during discovery</u> that would

require the party seeking discovery to pay a portion of the responding party's expert witness fees

for preparation and attendance at a deposition.  *Rhee* has nothing to do with an award of costs

under Rule 54, and does not support the proposition that the ultimate loser at trial can escape its

responsibility under Rule 54 to ultimately bear the costs it forced the winner to incur.  Moreover,

LG's argument that deposition preparation is equivalent to trial preparation fails as to Dr. Dhar,

Dr. Levi (who Whirlpool did not even plan to use as a testifying expert), and Dr. Nowlis because

they did not ultimately testify at trial.  Thus, LG's suggestion that "an equal division of these

costs would be equitable" is unsupported and should be rejected.  (Dkt. No. 700 at 9.)  Expert

costs in the amount of $117,397.00 should be allowed.

**4.**     <u>**Fees for Exemplification and Copies – Section 1920(4)**</u>

      **a.**     **Exemplification**

Section 1920(4) allows for costs for exemplification and copying of materials

"necessarily obtained for use in the case."  28 U.S.C. § 1920(4) (2008).  LG objects to

Whirlpool's entire $109,833.75 request for exemplification because LG incorrectly alleges that

Whirlpool "failed to identify specific exhibits and work performed."  (Dkt. No. 700 at 11.)

Alternatively, LG objects specifically to $37,982.50 of the requested amount, consisting of

$30,670 for courtroom attendance by Whirlpool's technological consultant and $7,312.50 for

what LG attributes to "trial preparation" meetings and "trial runs" of presentations.

LG's attempt to compare Whirlpool's request for exemplification, based on the best

breakdown from retained records, with the generalized categories submitted in *Trading*

*Technologies* is inaccurate.  In *Trading Technologies*, the prevailing party "merely provide[d] a bill for general items such as 'Production Expenses' and 'Graphic and Animation Design' and assert[ed] that whatever exhibits were created using these methods were necessary for use in the case[.]"  *Trading Techs. Int'l Inc., v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 981 (N.D. Ill. 2010).  "[A]lthough the bill of costs need not be so detailed as to make recovery of costs prohibitive, the prevailing party is expected to enumerate the costs associated with different *types* of exhibits."  *Vigortone Ag Prods., Inc. v. PM Ag Prods., Inc.*, No. 99 C 7049, 2004 WL 1899882, at *8 (N.D. Ill. Aug. 12, 2004) (emphasis added).

Whirlpool has identified the *types* of exhibits created and has identified the work and number of hours associated with preparing particular types of exhibits on any given day.  For example, on 10/10/10, there were 4 hours spent on "Video editing; Production of CUFT videos and edited video depositions for review."  (Dkt. No. 695-9 at 13.)  LG's contention that this is insufficient information, and that "Whirlpool has not only failed to identify the services and number of hours associated with each exhibit, but it has failed to even identify the exhibits created[,]" (Dkt. No. 700 at 10) is inconsistent with the tracking of time in the ordinary course of business, and would make recovery of costs prohibitive.  *See Vigortone*, 2004 WL 1899882, at *8.  Although Whirlpool cannot break down the amount of time spent preparing any *specific* CUFT video, this is in stark contrast to the "omission of *any* information identifying the exhibits themselves, or the specific work performed."  *Trading Techs.*, 750 F. Supp. 2d at 981 (emphasis added).  Whirlpool's description of types of exhibits and/or work performed such as "CUFT videos," "preparation of Malladi exhibits for trial presentation," (Dkt. No. 695-9 at 15) or "design and produce demonstrative presentations for trial" (Dkt. No. 695-9 at 19)—necessarily obtained for use in this case—is quite different from merely identifying general categories such

as "Production Expenses." *Trading Technologies*, 750 F.Supp.2d at 980. These services were reasonably necessary for the preparation of exhibits used during *Daubert* hearings and trial. (Suppl. Decl. at ¶ 4, attached as Exhibit B.)

Moreover, "blow-ups, digital presentations of scanned documents, and other computer graphics serve the same function as exhibits and other papers used at trial, and there is no reason to differentiate between the former and the latter in terms of their taxability as costs." *DiBella v. Hopkins*, 407 F. Supp. 2d 537, 540 (S.D.N.Y. 2005). "Digitized copies of documents shown on a television monitor or screen are the functional equivalent of photocopies of documents in jury binders." *Id.* Given the effect of technological advances, it would be difficult to ascertain and provide the level of detail for *each* exhibit that LG contends is necessary for taxation.

_Courtroom attendance_

LG objects to $30,670 in costs for court attendance by Whirlpool's technological consultants. (Dkt. No. 700 at 10.) This challenged amount consists of entire entries that contain "courtroom attendance" as a service performed because LG alleges that it is "impossible" to ascertain the actual costs attributable to courtroom attendance because the invoices are not itemized by task. (*Id.* at 10, n.1.) However, it is easily deduced that the costs attributable to courtroom attendance correspond directly to the number of hours court was in session during a particular day. For example, an entry corresponding to 10/04/2010, the first day of trial, identifies 15 hours for: "Courtroom Attendance, Debriefing meeting, Preparation for Dr. Jacobi and Ficke's testimony." (Dkt. No. 695-9 at 13.) LG challenges the entire 15 hours, yet according to the trial transcript, court was in session for a total of only 3 hours that day. As such, 12 hours ought to be attributable to other tasks for which LG relies only on its blanket objection. In total, approximately 70 hours (at $195 per hour for a total of $13,650) are attributable to

courtroom attendance. Although Whirlpool maintains that the costs for courtroom attendance by Whirlpool's technology consultant are recoverable, should the Court determine that they are not, the amount for exemplification should be reduced by $13,650, rather than by $30,670.

However, the costs for Whirlpool's technology support at trial should be awarded. "[P]roviding an effective presentation of the matter during a hearing (or at trial) in order to aid the fact finder *is* a reasonable necessity." *Martec, LLC v. Johnson & Johnson*, No. 07-cv-825-DRH, 2010 WL 669818, at *3 (S.D. Ill. Feb. 22, 2010) (allowing fees for "Trial Site Manager" incurred for the preparation and presentment of graphics during a *Markman* hearing); *see also Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, No. C06-110, 2009 WL 2584838 (N.D. Iowa Aug. 17, 2009) (approving costs for use of third party technology vendor during trial); *First Nat'l Bank in Sioux Falls v. First Nat'l Bank South Dakota*, No. CIV. 06-4101, 2010 WL 4363802, at *3 (D. S.D. Oct. 27, 2010) (finding technology exemplification services necessarily obtained for use in the case).

The technical presentation of exhibits by Whirlpool's technological consultant was necessary and reasonable to further the illustrative purpose of exhibits during court hearings and trial. (Suppl. Decl. ¶¶ 4-5, Ex. B.) Whirlpool's technological consultant organized, prepared, and presented exhibits to the Court and jury. (*Id.* at ¶ 4. ) Whirlpool's technological consultant also formatted transcripts, including videotaped deposition transcripts, and created demonstrative exhibits. *Id.* This work streamlined the presentation process, saving both the Court and jury time. In addition, this work made sometimes difficult-to-read materials easier for the jury to view and understand during the testimony or presentation. (*Id.* at ¶ 6.) Without this consultant, both the nature and timing of the testimony and presentations would be impacted. (*Id.* at ¶ 7.)

Whirlpool reasonably relied on technical expertise of Whirlpool's consultant to organize, prepare and present exhibits to the court and to the jury. (*Id.*)

LG does not itemize its $7,312.50 objection to what it attributes to "trial preparation" meetings and "trial runs" of presentations, though it is presumably objecting to meetings with attorneys in the days prior to *Daubert* hearings to discuss the exhibits to be used and to trial runs of these presentations. (*See* Dkt. No. 700 at 10, citing Dkt. No. 695-9 at 10-11.)

Contrary to LG's assertion otherwise, these entries are not "similar" to the exemplification claims that LG alleges courts have rejected in the past. As the Court in *Trading Technologies* explains, "the cases draw a line 'between the cost of conducting the research and analysis eventually reflected in the exhibit, and the cost of actually preparing the exhibit itself'." *Trading Techs.*, 750 F. Supp. 2d at 980-81, citing *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427-28 (7th Cir. 2000). "[C]onducting the research and analysis eventually reflected in the exhibit . . . , relates to the work of the attorneys putting together the case[.]" *Z Trim Holdings, Inc. v. Fiberstar, Inc.*, No. 07-cv-161-bbc, 2008 WL 3843507, at *2 (W.D. Wisc. Aug. 12, 2008). In *Z Trim*, the Court awarded costs for a third party vendor even though labeled as "consulting" and "telephone conference" because "those costs reflect nothing more than the cost of the design company in collaboration with defendant's counsel to make sure the demonstration was prepared as counsel had requested." *Id.* The costs presumably objected to by LG correspond to services provided several days before certain *Daubert* hearings, and thus do not relate to the research and analysis stage. Rather, these costs reflect the collaboration of the third party vendor with Whirlpool's counsel to "make sure the demonstration was prepared as counsel had requested" and involves the reasonably necessary fine-tuning and final preparation of exhibits.

### b. Photocopying

<u>*Regular photocopying*</u>

Whirlpool requested $66,269.87 in regular photocopying costs for documents "necessarily obtained for use in this case." LG would only allow Whirlpool to recover a total of $1,348.05, which represents one set of copies of the pleadings filed by Whirlpool. Alternatively, LG asks that the Court reduce the amount by $55,509.09 for a total of $10,760.78.

A prevailing party is not required to submit a detailed bill of costs that would make it economically unfeasible to recover for photocopying, but rather must "provide the best breakdown obtainable from retained records." *Northbrook Excess & Surplus Ins. Co. v. Proctor & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991); *see also Nilssen*, 2007 WL 257711, at *7 (stating that prevailing party "need not identify every document in a complex and intensely litigated case as this"). Unlike in *Nilssen*, where the prevailing party identified as "trial" materials copied over a five-month period, Whirlpool has requested trial related copies for an approximately two-month period, including the three weeks when trial took place. Moreover, costs for "services associated with copying" such as binding or tabs are allowed where "these services are necessary to reproduce a document in a way that is organized and useful to the opposing party and the court." *Trading Techs.*, 750 F. Supp. 2d at 980, quoting *First City Sec., Inc. v. Shaltiel*, No. 92 C 2620, 1993 WL 408370, at *2 (N.D. Ill. Oct. 8, 1993).

LG's overly simplistic proposed methodology for determining the amount of recoverable photocopying costs should be rejected. LG's suggested method involves using the number of binders listed on an invoice as a proxy for the sets of copies made. LG obtains what it considers to be the "proper recoverable amount" by dividing the total cost of an invoice by the number of binders charged, and then multiplying that amount by 3. (*See* Dkt. No. 700-1 at 19, n.3.)

LG's "binder method" produces absurd results when applied to invoices with a large number of binders. For example, with respect to the invoice for trial exhibits that contains 36 binders referred to by LG (*see* Dkt. No. 700 at 12-13), LG divided the total actual invoice amount of $43,481.86 (even though Whirlpool only requested 50% of this amount) by 36, and then multiplied that number by 3 to obtain a total of $3,623.49. LG's method necessarily presumes that every one of the 36 binders contains an identical set of copies—in other words, LG presumes Whirlpool created 36 sets of the same copies of trial exhibits. This is illogical.[2] Likewise, LG applied its method to another large invoice for trial exhibits with 26 binders for $20,002.50 (for which Whirlpool only seeks 50%) and reduces the recoverable amount to $2,307.98. Therefore, under LG's method, Whirlpool would be entitled to recover merely $5,931.47 for these two invoices, which represents less than 10% of the actual total of $63,484.36. Here, where it is documented that Whirlpool actually incurred these photocopying costs during trial, and it is unreasonable to assume that Whirlpool made 36 or 26 copies of one set of documents, for these two trial exhibit invoices Whirlpool should be awarded its conservative request for $31,742.18, which expressly recognizes that some copies may have been made for attorney convenience.[3]

---

[2] Prior to trial, the parties identified a large number of exhibits—DX0001 through DX1075 and PX0001 through PX0899.

[3] Another flaw with LG's proposed methodology is that it is entirely dependent on the existence and size of binders. For instance, LG claims that there should be no recovery at all for the Rao *Daubert* exhibits, presumably only because there are no binders listed on that invoice. Further, LG's "binder method" would penalize Whirlpool for using a larger number of smaller-sized binders. Hypothetically, if an invoice for $1,000 worth of photocopying charges had 3 four-inch binders, under LG's method, the entire $1,000 would be allowed. But, if the very same copies had been made and Whirlpool had instead chosen to put them in 6 two-inch binders, under LG's method, only $500 would be allowed.

Moreover, although three sets of copies per document is the general guideline, it is not an absolute rule. For example, for the Wind *Daubert* hearing, it is logical to conclude based on the invoice that 5 sets of exhibits contained in 5 binders were made. However, this many sets were reasonably necessary here because a set of exhibits was needed for the Court, the Judge's law clerk, the witness, opposing counsel, and for Whirlpool's counsel to use when cross-examining the witness. Thus, five copies were necessarily used to present information to the Court, and therefore costs for each of these sets should be awarded. Likewise, the other photocopies were "necessarily obtained for use in this case."

Finally, Whirlpool will reduce its request for three copies of the pleadings by one set but maintains that it is reasonable to have two copies even though LG was served electronically. *See Fagbemi v. Spatz*, No. 08 C 3736, 2010 WL 3522946, at *2 (N.D. Ill. Sept. 2, 2010) (finding "copying charge for one or two copies of the various papers that have been filed or served in this case is reasonable and non-excessive" despite objection that parties received copies electronically). Two copies of the pleadings filed by Whirlpool were reasonably necessary, particularly in light of the fact that certain pleadings were either redacted or filed under seal. Whirlpool withdraws its request for $1,762.85 based on its inadvertent inclusion of the same invoice twice in its Bill of Costs and its request for $1,348.05 for one set of pleadings.

*Discovery-Related Costs*

LG contests the entire $70,585.12 requested for discovery-related costs. Alternatively, LG argues that the amount should be reduced by $28,521.81 to exclude "the conversion, processing, imaging and OCRing of documents produced to Whirlpool". (Dkt. No. 700 at 14.) However, LG has misidentified at least $5,401.14 worth of costs incurred for the purpose of

responding to LG's discovery requests.  (Suppl. Decl. ¶¶ 8-9, Ex. B.)  Therefore, amount in controversy under LG's specific objection should be $23,120.67.

In 2008, Congress amended section 1920(4), changing recoverable costs from "fees for exemplification and copies of *papers*" to "fees for exemplification and the costs of making copies of *any materials.*"  Third party vendor charges for services related to electronic discovery are "the electronic equivalents of exemplification and copying."  *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, No. 2:07-cv-1294, 2011 WL 1748620, at *8 (W.D. Pa. May 6, 2011) (noting courts have taxed costs in "a number of decisions . . .  because . . . the steps third-party vendor performed appeared to be the electronic equivalents of exemplification and copying").  These "highly technical" services "are certainly necessary in the electronic age," and "are not the type of services that attorneys or paralegals are trained for or are capable of providing."  *CBT Flint Partners, LLC v. Return Path, Inc.*, 676 F. Supp. 2d 1376, 1381 (N.D. Ga. 2009).

Further, under the parties' Proposed Joint Electronic Discovery Protocol signed on July 1, 2008, the parties agreed to produce documents as "single-page, 300 dpi Group IV TIFF images" and to provide an IPRO LFP file showing page breaks for each document included in the production.  The scanning and imaging of documents for possible production were therefore reasonably necessary to respond to LG's discovery requests.  Whirlpool should be awarded $47,464.45 in costs for "responding" to LG's discovery requests.

Further, Whirlpool should be allowed costs associated with what LG describes as the "conversion, processing, imaging, and OCRing of documents produced to Whirlpool" by LG and third parties in the amount of $23,120.67.  First, costs are recoverable for hard copies of documents produced by opposing and third parties under Section 1920(4) and to the extent the invoices reflect charges for hard copies, these should be allowed.  *M.T. Bonk Co. v. Milton*

*Bradley Co.*, 945 F.2d 1404, 1410 (7th Cir. 1991) (finding district court did not abuse its discretion for awarding costs for documents produced by opposing party and third parties); *Movitz v. First Nat'l Bank of Chicago*, 982 F. Supp. 571 (N.D. Ill. 1997) (awarding plaintiffs costs for copies presumably of discovery documents produced by defendant). Second, as LG recognizes, electronic discovery costs are recoverable for responding to discovery requests. (*See* Dkt. No. 700 at 13.) As courts have recognized, e-discovery services "are the 21st Century equivalent of making copies." *CBT*, 676 F. Supp. 2d at 1380-81. It follows that if costs of hard copies of documents produced to Whirlpool are allowed, and if electronic discovery costs are allowed as the electronic equivalent of photocopying, these costs related to documents produced to Whirlpool should be allowed as well.

WHEREFORE, Whirlpool respectfully requests that the Court award Whirlpool costs in the amount of $519,884.12. (Ex. A.)

Dated: October 11, 2011                    Respectfully submitted,


                                           WHIRLPOOL CORPORATION

                                           By */s/ Brian D. Roche*_____

                                               Brian D. Roche
                                               Jennifer Yule DePriest
                                               Vanessa Martí Heftman
                                               REED SMITH LLP
                                               10 South Wacker Drive, 40th Floor
                                               Chicago, IL 60606
                                               Tel: 312.207.1000

J.A. Cragwall, Jr.
Janet Ramsey
Charles N. Ash, Jr.
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, Michigan 49503-2487
Tel: 616.752.2000

Stephen G. Morrison
James J. McGovern
NELSON MULLINS RILEY &
SCARBOROUGH, LLP
Meridian, 17th Floor
1320 Main Street
Columbia, SC  29201
Telephone:  (803) 799-2000

Patrick Coleman Wooten
NELSON MULLINS RILEY &
SCARBOROUGH, LLP
Liberty Center, Suite 600
151 Meeting Street
Charleston, SC  29401-2239
Telephone:  (843) 853-5200

Attorneys for Defendant, Whirlpool Corporation

5782848-11

# EXHIBIT A

| Category of Costs | Whirlpool's Amount Requested in Bill of Costs | LG's Proposed Recoverable Amount | LG's Proposed Alternative Recoverable Amount Where Applicable | Whirlpool Adjusted Recoverable Amount |
|---|---|---|---|---|
| Subpoena fees | $1045.00 | $895.00 | [No change] | $895.00 |
| Total Stenographic Transcript Costs for Depositions | $35,771.35 | $24,426.98 | [No change] | $35,473.70[1] |
| Videotaped Depositions by Whirlpool | $33,798.00 | $11,511.05 | [No change] | $33,783.00[2] |
| Videotaped Depositions by LG | $12,008.20 | $0 | [No change] | $11,963.20[3] |
| Witness Travel Costs | $21,284.84 | $15,213.24 | [No change] | $18,249.04[4] |
| Expert witness fees | $121,240.20 | $37,238.63 | [No change] | $117,397.00[5] |
| Exemplification - Exhibits | $109,833.75 | $0 | $71,851.25[6] | $109,833.75 |
| Regular Photocopying | $66,269.87 | $1,348.05 | $10,760.78 | $63,158.97[7] |
| Discovery-related Costs | $70,585.12 | $0 | $42,063.31[8] | $70,585.12 |
| Other amount not in dispute | $58,545.34 | $58,545.34 | $58,545.34 | $58,545.34 |
| **Total** | **$530,381.67** | **$149,178.29** | **$272,505.58[9]** | **$519,884.12** |

5818167-3

---

[1] The adjusted recoverable amount withdraws the request for costs related to the Birtz deposition.
[2] The adjusted recoverable amount eliminates the $15.00 shipping charge for the Choi videotaped deposition.
[3] The adjusted recoverable amount eliminates the total of $45.00 shipping charges for the videotaped depositions of Dhar, Dunsbergen, and Rogers/Seger.
[4] The adjusted recoverable amount reflects a reduction of $3,035.80 for travel expenses.
[5] The adjusted recoverable amount reflects a reduction of $3,843.20 for expert costs.
[6] Whirlpool contends that the alternative recoverable amount based on LG's specific objection should be $88,871.25 because $17,020 is not attributable to "court attendance." (Dkt. 700 at 10.)
[7] The adjusted recoverable amount reflects a reduction of $1,762.85 based on an inadvertent inclusion of the same invoice twice and a reduction of $1,348.05 for one set of pleadings.
[8] Whirlpool contends that the alternative recoverable amount based on LG's specific objection should be $47,464.45 because $5,401.14 is not attributable to "the conversion, processing, imaging, and OCRing of documents produced to Whirlpool." (Dkt. 700 at 14.)
[9] LG's total proposed alternative recoverable amount is obtained by adding the proposed alternative recoverable amount in each category (if any) to LG's "proposed recoverable amount" for each category where no alternative was proposed (as indicated by "no change").

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

_____

| | | |
|---|---|---|
| LG ELECTRONICS U.S.A., INC., | ) | Case No. 08 C 242 |
| a subsidiary of LG Electronics, Inc., | ) | |
| a Korean company, | ) | Honorable Amy J. St. Eve |
| | ) | |
| Plaintiff, | ) | Magistrate Judge Mason |
| | ) | |
| v. | ) | |
| | ) | |
| WHIRLPOOL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF JANET L. RAMSEY

I, Janet L. Ramsey, hereby state under penalty of perjury, the following:

1.      I have personal knowledge of the matters set forth in this declaration, and, if called as a witness, I could and would competently testify to these facts under oath.

2.      I am an attorney for Whirlpool Corporation.  I am submitting this Supplemental Declaration in response to LG's Opposition, and in support of Whirlpool's submission of a Bill of Costs in this case pursuant to 28 U.S.C. § 1920, Federal Rule of Civil Procedure 54(a) and Local Civil Rule 54.1 of the Northern District of Illinois.  I make this declaration of my own personal knowledge.

3.      Pursuant to 28 U.S.C. § 1924, I verify that the costs listed in the Bill of Costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed.

4.      Whirlpool used the services of third party technology vendors to further the illustrative purpose of exhibits during court hearings and trial.  This work included organizing,

preparing and presenting exhibits to the court and jury. Whirlpool's technological consultant also formatted transcripts, including videotaped deposition transcripts, and created demonstrative exhibits.

5.     Whirlpool reasonably relied on its consultant's technological expertise in organizing, preparing and presenting these exhibits in the best possible manner for the court and jury's review.

6.     This work streamlined the presentation process, saving both the court and jury time. In addition, this work made sometimes difficult-to-read materials easier for the jury to view and understand during the testimony or presentation.

7.     Without this consultant, both the nature and timing of the testimony and presentations would be impacted. Whirlpool reasonably relied on Whirlpool's technological consultant to organize, prepare and present exhibits to the court and to the jury.

8.     LG challenges Whirlpool's request for discovery-related costs that relate to "the conversion, processing, imaging and OCRing of documents produced to Whirlpool[.]" (Dkt. 700 at 14.) However, LG has misidentified at least $5,401.14 worth of costs that were incurred for the purpose of responding to LG's discovery requests, including Invoice 11759311 (Dkt. 695-11 at 8-9), and Invoice 07-6441 (Dkt. 695-11 at 71).

9.     The internal scanning of documents by Warner Norcross & Judd LLP, for which there are no invoices, was related to responding to LG's discovery requests.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 11, 2011.

_____

_____

Janet L. Ramsey

5815929-3